# Exhibit L



Baosheng Media Group Holdings Limited
C/- Harneys Fiduciary (Cayman) Limited
PO Box 10240
4th Floor, Harbour Place
103 South Church Street
George Town, Grand Cayman
KY1-19001
Cayman Islands

**D: +1 345 815 1747**

**E: christopher.levers@ogier.com**

**E: corey.byrne@ogier.com**

Ref:  LVS/CBY/507986.00001

**BY HAND**

10 April 2024

Dear Sir/Madam

**FSD 113 OF 2022 (DDJ) – In the Matter of Baosheng Media Group Holdings Limited (the "Company")**

We act for Orient Plus International Limited (the "**Petitioner**").

We enclose, by way of service, sealed copies of the following:

1       Winding Up Petition dated 9 April 2024 (the "**Petition**") seeking an order that the Company be wound up pursuant to section 92(e) of the Companies Act;

2       Verifying affidavit of Dong Hu sworn on 9 April 2024, together with Exhibit DH-1;

3       The First Affidavits of Michael Green, Kam Chung Hang (Forrest) and Ho Kwok Leung Glen of Deloitte & Touche and Deloitte Touche Tohmatsu sworn on 9 April 2024 respectively confirming their consent to act in accordance with Order 3, rule 4(2) of the Companies Winding Up Rules (2023 Consolidation); and

4       Summons for Directions dated 9 April 2024 which is listed for hearing at 10am on 30 April 2024.

We recommend that you obtain independent legal advice.

Yours faithfully

**Ogier (Cayman) LLP**

**Ogier**
89 Nexus Way
Camana Bay
Grand Cayman, KY1-9009
Cayman Islands
T +1 345 949 9876
F +1 345 949 9877
**ogier.com**                    A list of Partners may be inspected on our website

Digitally signed by Advance Performance Exponents Inc.
Date: 2024.04.10 08:02:18 -05:00
Reason: Apex Certified
Location: Apex



IN THE GRAND COURT OF THE CAYMAN ISLANDS

FINANCIAL SERVICES DIVISION

CAUSE NO. FSD 113 OF 2024 (DDJ)

IN THE MATTER OF SECTION 94 OF THE COMPANIES ACT (2023 REVISION)

AND IN THE MATTER OF BAOSHENG MEDIA GROUP HOLDINGS LIMITED

---

### WINDING UP PETITION

---

**TO THE GRAND COURT**

The humble petition of Orient Plus International Limited of Wickhams Cay II, Road Town, Tortola, VG1110, British Virgin Islands (the **"Petitioner"**) shows that:-

1　　　　The Petitioner presents this petition for:

(a)　　　the winding up of Baosheng Media Group Holdings Limited (the **"Company"**) pursuant to or section 92(e) of the Companies Act (2023 Revision) (the **"Companies Act"**) on the grounds that it is just and equitable that the Company be wound up; and

(b)　　　the appointment of Michael Green of Deloitte & Touche, PO Box 1787, 8th Floor, 60 Nexus Way, Camana Bay, Grand Cayman, Cayman Islands KY1-

This Petition is filed by Ogier (Cayman) LLP, Attorneys-at-Law for the Petitioner, whose address for service is:
89 Nexus Way, Camana Bay, Grand Cayman KY1-9009, Cayman Islands (LVS/CBY/507986.00001)

1　　　　　　　　　　　　　　GCMLAW-14357239-8

1109, together with Ho Kwok Leung Glen and Kam Chung Hang (Forrest) of Deloitte Touche Tohmatsu of 35/F, One Pacific Place, 88 Queensway, Hong Kong SAR as joint official liquidators of the Company.

**The Company**

2      The Company was incorporated under the laws of the Cayman Islands on 4 December 2018 as an exempted company with limited liability and with registration number 345894 pursuant to the Companies Act.

3      The registered office of the Company is at Harneys Fiduciary (Cayman) Limited at 4th Floor, Harbour Place, 103 South Church Street, PO Box 10240, Grand Cayman KY1-1002, Cayman Islands.

4      The principal place of business of the Company is East Floor 5, Building No. 8, Xishanhui, Shijingshan District, Beijing 100041, People's Republic of China ("**PRC**").

5      The Company's Memorandum of Association provides for unrestricted objects. The principal object of the Company is to act as the holding company for an international corporate group which provides online marketing services in the PRC. The business of the Company includes advising advertisers on online marketing strategies, offering advertising optimization services and facilitating the deployment of online advertisements of various forms such as search ads, in-feed ads, mobile app ads and social media marketing ads, helping online media procure advertisers to buy their ad inventory and facilitating ad deployment on their advertising channels.

6      The authorised share capital of the Company is US$9,600,000 divided into 1,000,000,000 ordinary shares of a par value of US$0.0096 each as per the latest prospectus supplement released by the Company on 7 February 2024 (the "**2024 Prospectus Supplement**").

7      The Company's shares presently trade publicly on the Nasdaq Capital Market ("**NASDAQ**") under the symbol "BAOS".

8      The current directors of the Company are:

This Petition is filed by Ogier (Cayman) LLP, Attorneys-at-Law for the Petitioner, whose address for service is: 89 Nexus Way, Camana Bay, Grand Cayman KY1-9009, Cayman Islands (LVS/CBY/507986.00001)

GCMLAW-14357239-8

| Name | Appointment |
|------|-------------|
| Shasha Mi (Chairperson and CEO) | July 2022 |
| Sheng Gong (Director) | At or prior to IPO |
| Yun Wu (Independent Director) | December 2023 |
| Guangyao Zhu (Independent Director) | September 2022 |
| Changhong Jiang (Independent Director) | February 2022 |

**The Petitioner**

9       The Petitioner is a business company incorporated in the British Virgin Islands ("**BVI**") on 6 June 2018.

10      The Petitioner is a wholly owned subsidiary of Ebang International Holdings Inc. which is a global blockchain and fintech company based in the PRC and listed on the NASDAQ.

11      As at the date of this Petition, the Petitioner holds a total of 40,850 ordinary shares in the Company. As averred below, the Petitioner's shares have been consolidated twice; the earliest such consolidation occurring on 24 May 2022. Prior to these consolidations, the Petitioner held 784,314 shares.

**Golden and Union High-Tech**

12      Two other shareholders of the Company, Golden Genius International Limited ("**Golden**") and Union High-Tech Development Limited ("**Union High-Tech**"), support the Petitioner in bringing these proceedings and in seeking orders for the winding up of the Company.

13      Golden is a company incorporated in the BVI with the registered address at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, VG1110, British Virgin Islands. Golden holds 36,459 ordinary shares in the Company. As a result of the share consolidations pleaded below, Golden holds its shares in the Company on a consolidated basis. Prior to the consolidations, Golden held 700,000 shares.

14      Union High-Tech is a company incorporated in the Marshall Islands with the registered address at Incorporated in Trust Company Complex, Ajeltake Road,

This Petition is filed by Ogier (Cayman) LLP, Attorneys-at-Law for the Petitioner, whose address for service is:
89 Nexus Way, Camana Bay, Grand Cayman KY1-9009, Cayman Islands (LVS/CBY/507986.00001)

3                                                          GCMLAW-14357239-8

Ajeltake Island, Majuro, Marshall Islands. Union High-Tech holds 61,275 ordinary shares in the Company. As a result of the share consolidations pleaded below, Union High-Tech holds its shares in the Company on a consolidated basis. Prior to the consolidations, High-Tech held 1,176,470 shares.

**The shareholding in the Company**

15      The Company is the holding company for the Baosheng group of companies (the "**Baosheng Group**"). The structure of the Baosheng Group is illustrated diagrammatically in Schedule A to this Petition.

16      The 2024 Prospectus Supplement states that, as at 7 February 2024, the significant shareholders of the Company include the following:

   (a)     An Rui Tai Investment Limited ("**An Rui Tai**") which is a business company incorporated under the laws of the BVI, holds 22.4% of the Company's shares. An Rui Tai, in turn, is 90% owned by Ms Wenxiu Zhong, the founder and former controller, CEO and chairperson of the Company, and 10% owned by Mr Sheng Gong, one of its current directors.

   (b)     Deng Guan Investment Limited ("**Deng Guan**"), which is a business company incorporated under the laws of the BVI, holds 6.31% of the Company's shares. In turn, Deng Guan is wholly owned by Mr Hui Yu.

   (c)     PBCY Investment Limited ("**PBCY**"), which is a business company incorporated under the laws of the BVI, holds 10.18% of the shares. The shares in PBCY are held as follows: (i) 86.35% held by Pubang Landscape Architecture Co., Ltd. (through a Hong Kong subsidiary) which is a joint stock company established in the PRC with limited liability on 19 July 1995, whose shares are listed on the Shenzhen Stock Exchange (stock code: 002663.SZ); and (ii) 13.65% held by CCY Holdings Limited which is a business company incorporated under the laws of the BVI which is wholly owned by Mr Yick Yan Chan.

17      Following the initial public offering (described below), a number of public shareholders of the Company purchased shares in the Company on the NASDAQ

This Petition is filed by Ogier (Cayman) LLP, Attorneys-at-Law for the Petitioner, whose address for service is:
89 Nexus Way, Camana Bay, Grand Cayman KY1-9009, Cayman Islands (LVS/CBY/507986.00001)

4                                                    GCMLAW-14357239-8

and, as at 7 February 2024, public shareholders hold 57.03% of the shares in the Company.

18    EJAM Group Co., Ltd. ("**EJAM Group**") was an indirect shareholder in the Company prior to the initial public offering through two wholly owned subsidiaries: EJAM New Media Holdings Limited (a BVI entity) and EJAM International Limited (a Hong Kong entity). EJAM Group is a joint stock company established in the PRC with limited liability on 23 November 2010, whose shares are quoted on the National Equities Exchange and Quotations (stock code: 834498).

19    As of 30 June 2023, pursuant to the unaudited consolidated financial statements and related notes published on 28 September 2023, EJAM Group was noted to be indirectly holding 6.82% of the shares in the Company. However, the current shareholding percentage of EJAM Group is unclear from the 2024 Prospectus Statement.

20    Further, utilizing the shelf registration process (as described below), the 2024 Prospectus Supplement also announced the issue of up to US $2 million new shares in the Company to VG Master Fund SPC ("**VG**"). The Petitioner is unaware as to whether any shares in the Company have in fact been issued to VG.

**Corporate structure of the Baosheng Group**

21    The Baosheng Group previously conducted business through Beijing Baosheng Technology Company Limited ("**Beijing Baosheng**"), a limited liability company established in the PRC on 17 October 2014.

22    Following the initial public offering, Beijing Baosheng is now a wholly owned indirect subsidiary of the Company. The Company holds its shares in Beijing Baosheng through two other subsidiaries:

(a)    Baosheng Media Group Limited ("**Baosheng BVI**"), a business company incorporated under the laws of the BVI; and

(b)    Baosheng Media Group (Hong Kong) Holdings Limited ("**Baosheng Hong Kong**"), a Hong Kong company with limited liability.

This Petition is filed by Ogier (Cayman) LLP, Attorneys-at-Law for the Petitioner, whose address for service is:
89 Nexus Way, Camana Bay, Grand Cayman KY1-9009, Cayman Islands (LVS/CBY/507986.00001)

5                                          GCMLAW-14357239-8

23    Baosheng Group conducts the business through a number of PRC-incorporated wholly owned operating subsidiaries:

    (a)    Horgos Baosheng Advertising Company Limited ("**Horgos Baosheng**"), a wholly owned subsidiary of Baosheng Beijing;

    (b)    Baosheng Technology (Horgos) Company Limited ("**Baosheng Technology**"), a wholly owned subsidiary of Baosheng Beijing;

    (c)    Kashi Baosheng Information Technology Company Limited ("**Kashi Baosheng**"), a wholly owned subsidiary of Baosheng Beijing;

    (d)    Baosheng Network Technology Co., Ltd. ("**Baosheng Network**"), a wholly owned subsidiary of Baosheng Hong Kong; and

    (e)    Beijing Xunhuo E-commerce Co., Ltd. ("**Beijing Xunhuo**"), a wholly owned subsidiary of Baosheng Network.

**The IPO**

24    On 10 July 2020, the Company filed a registration statement with the United States Securities Exchange Commission (the "**SEC**") in respect of an initial public offering of 5,000,000 ordinary shares at the estimated offering price of $5 to $6 per ordinary share.

25    After a series of amendments, the registration statement became effective on 5 February 2021.

26    On 8 February 2021, the Company published an announcement confirming the pricing of its initial public offering of 6,000,000 ordinary shares at a price of $5 per share (the "**IPO**") and the ordinary shares of the Company began to trade on the NASDAQ.

27    On 9 February 2021, the Company filed a final prospectus and the IPO completed on 10 February 2021 as a result of a firm commitment underwriting .

This Petition is filed by Ogier (Cayman) LLP, Attorneys-at-Law for the Petitioner, whose address for service is:
89 Nexus Way, Camana Bay, Grand Cayman KY1-9009, Cayman Islands (LVS/CBY/507986.00001)

GCMLAW-14357239-8

28    As a result of the IPO, including the exercise of the over-allotment option by the underwriter (described below), the Company received net proceeds of approximately US$31.2 million.

**Sale of shares to the Investors**

29    Each of the Petitioner, Golden and Union High-Tech (together, the "**Investors**") purchased shares in the Company following the IPO.

30    On 2 March 2021, the Company's lead underwriter, Univest Securities LLC ("**Univest**"), exercised its over-allotment option in full to purchase an additional 900,000 ordinary shares for $4.5 million. On that same day, Golden purchased 700,000 shares from Univest for $3.5 million.

31    On 17 March 2021, the Company entered into a Securities Purchase Agreement and a Registration Rights Agreement with the Petitioner and Union High-Tech for the issue of ordinary shares and warrants to purchase half an ordinary share at an exercise price of $5.61 per ordinary share (the "**Private Placement**").

32    Under the Securities Purchase Agreement, the Company issued:

(a)    784,314 ordinary shares and 784,314 warrants for a consideration of $4 million to the Petitioner; and

(b)    1,176,470 ordinary shares and 1,176,470 warrants for a consideration of $6 million to Union Hi-Tech.

33    On 18 March 2021, the Company filed a second registration statement as required by the Registration Rights Agreement. A public release from the Company on the NASDAQ on the same date states that the Company intended to use the $10 million from the Private Placement for "*investment for blockchain-based marketing activities and cryptocurrency associated business.*"

34    On 30 March 2021, the second registration statement became effective.

This Petition is filed by Ogier (Cayman) LLP, Attorneys-at-Law for the Petitioner, whose address for service is:
89 Nexus Way, Camana Bay, Grand Cayman KY1-9009, Cayman Islands (LVS/CBY/507986.00001)

GCMLAW-14357239-8

35    On 4 August 2023, the Company filed a third registration statement, authorizing a shelf registration process. This third registration statement, as amended, was declared effective on 26 September 2023. As described in the accompanying prospectus, under this shelf registration process, the Company may, from time to time, in one or more offerings, offer and sell up to US$100,000,000 of any combination of the Company's ordinary shares, debt securities, warrants, rights, and units.

**Relationship with Sogou**

36    Beijing Sogou Information Services Co., Ltd ("**Sogou**") is a technology company incorporated in the PRC that offers a search engine called Sogou Search. It is understood that Sogou Search is one of the largest and most popular such search engines in the PRC.

37    Sogou conducted business on behalf of the Sogou group of companies as a variable interest entity of that corporate group. Insofar as the Petitioner is aware, the holding company of the Sogou group of companies was Sogou Inc. which was a Cayman Islands holding company and was previously listed on the New York Stock Exchange until its acquisition discussed below.

38    From 2015 until March 2021, Sogou and the Company (through its subsidiaries, including Beijing Baosheng and Horgos Baosheng), entered into a series of annual agency agreements (the "**Sogou Agency Agreements**").

39    It was a common feature of the Sogou Agency Agreements that:

    (a)    The Company was appointed as an "authorised agent" of Sogou;

    (b)    Sogou was to place advertisements for customers of the Company on its search engine website including search ranking ads, brand direct ads and display ads; and

    (c)    Each agreement had a term of one year and was subject to renewal upon expiry.

This Petition is filed by Ogier (Cayman) LLP, Attorneys-at-Law for the Petitioner, whose address for service is: 89 Nexus Way, Camana Bay, Grand Cayman KY1-9009, Cayman Islands (LVS/CBY/507986.00001)

GCMLAW-14357239-8

40    In each of 2019, 2020 and 2021, Sogou was the Company's largest customer comprising 45.6%, 68.9% and 41.8% of all of the Company's revenue, respectively.

41    The Petitioner does not have access to all documents and/or information in relation to the annual Sogou Agency Agreements. As such, it does not know whether any other of the Company's subsidiaries also entered into similar agreements and, if so, their terms or current status.

**The Criminal Investigation**

42    The Petitioner understands that ten members of senior management of the Company were detained and investigated by the Police Department of Jiangsu Province, PRC, and the Company was fined by the PRC authorities in relation to a criminal investigation (the "**Criminal Investigation**") pertaining to the services rendered by the Company to Sogou and a Chinese gaming company based in Wuxi, Jiangsu Province, China (the "**Gaming Company**").

43    Based on available information, it is understood that the Gaming Company conducted an illicit gambling operation within the PRC and unlawfully transmitted gambling proceeds to Suncity Group, one of the largest junket operators in Macau Special Administrative Regions of China, in violation of local PRC laws. The Company, in conjunction with Sogou (pursuant to the Sogou Agency Agreement), provided search ranking advertising services to the Gaming Company, which was the basis for the Criminal Investigation, the resultant detention of the Company's management and fine.

44    The best particulars which the Petitioner is able to provide about the Criminal Investigation prior to discovery herein are as follows:

(a)    In or around November/December 2020 (shortly prior to the IPO), the entire management team of ten individuals employed by the Company were taken away for questioning by the police department of Wuxi, Jiangsu Province in relation to an ongoing criminal investigation of Sogou and its relationship with Suncity Group;

This Petition is filed by Ogier (Cayman) LLP, Attorneys-at-Law for the Petitioner, whose address for service is:
89 Nexus Way, Camana Bay, Grand Cayman KY1-9009, Cayman Islands (LVS/CBY/507986.00001)

GCMLAW-14357239-8

(b)    As a result of the Criminal Investigation, the Company was forced to completely shut down its business for over a month, its then CEO Ms Zhong went into hiding and Yanjun Hu, the controlling person of EJAM Group, was forced to step in to functionally run the company;

(c)    The Criminal Investigation was concluded in the second half of 2021 (after the IPO) and it was determined that the Company was liable for promoting a gaming company in contravention of the Criminal Law of PRC and the Company was fined over RMB10 million by the PRC government; and

(d)    Sogou was also fined by the PRC government in the amount of RMB1.4 billion.

45    At no time did the Company disclose the Criminal Investigation to the Investors in negotiations for the purchase of their shares, nor was there any mention of it in the public filings lodged in support of the IPO and/or the Private Placement, and/or in its subsequent public filings including the 2020 or 2021 Annual Reports filed on 30 April 2021 and 16 May 2022 (respectively). The Petitioner contends that the Company's failure to disclose the Criminal Investigation constitutes, among other things, a material misstatement and omission pursuant to the Securities Act of 1933.

46    On 1 February 2024, the Investors brought proceedings against the Company, its directors and the IPO underwriters in the United States District Court for the Southern District of New York alleging contraventions of Sections 11, 12(a)(2) and 15 of the Securities Act of 1933. In these proceedings, the plaintiffs claim that, *inter alia*, the defendants failed to disclose the Criminal Investigation in its public filings at the time of the IPO including the registration statements and the prospectus.

**Loss of relationship with Sogou**

47    On 29 September 2020, Sogou announced that it had entered into an Agreement Plan of Merger ("**Merger Agreement**") to become a privately-held indirect wholly-owned subsidiary of Tencent Holdings Limited ("**Tencent**") a NASDAQ-listed, PRC-based technology company. The Merger Agreement was completed on September 2021.

48      Given the close relationship between Sogou and the Company, it is to be inferred that the Company was aware of Sogou's entry into the Merger Agreement. However, despite its likely knowledge of the Merger Agreement, the Company did not disclose the existence and/or status of the Merger Agreement in public filings in support of the IPO and the Private Placement. Instead, the Company only set out generic risk factors relating to the potential risk of losing its top customers.

49      In April 2021, following announcement of the Merger Agreement, the Company and Sogou's existing authorised agency agreement expired and the Company was unsuccessful in re-negotiating any new agency agreement. As such, the Company lost authorised agent status for its largest customer. Until discovery herein, it is inferred that this loss of status is the cause, although not the sole cause, of the significant decline in revenue from 2021 onwards as pleaded in paragraphs 53 and 58 below.

50      In or around 2022, Tencent began an investigation into alleged fraudulent, corrupt and dishonest conduct within its operations implementing a line of conduct called the "Tencent high-voltage line" (the "**Tencent Internal Investigation**"). The Tencent Internal Investigation included an investigation of Sogou's business relationships, a matter which it is averred that the Company must have known.

51      It is inferred that, as a result of the Tencent Internal Investigation, Tencent subsequently made the determination that it would not renew Sogou's relationship with the Company as a result of findings of unlawful conduct on the part of the Company and its management. Until discovery herein, the best particulars of facts from which this is to be inferred that the Petitioner can give are as follows:

(a)      The Company was involved in and found liable as a result of the Criminal Investigation which would have been known to those conducting the Tencent Internal Investigation;

(b)      On 16 January 2023, Tencent announced that it was terminating 70 staff members and 'blacklisting' certain companies following investigations by Tencent's Anti-Fraud Investigation Department. This blacklist included Beijing Baosheng and Horgos Baosheng;

This Petition is filed by Ogier (Cayman) LLP, Attorneys-at-Law for the Petitioner, whose address for service is: 89 Nexus Way, Camana Bay, Grand Cayman KY1-9009, Cayman Islands (LVS/CBY/507986.00001)

GCMLAW-14357239-8

(c)    Although the exact reasoning behind the blacklisting of the Company's subsidiaries is presently unclear to the Petitioner, it understands that, under Tencent's internal policy, companies engaged in the following conduct will be added to its blacklist: (i) fraud; (ii) corruption and embezzlement; (iii) data security violation and breach of confidentiality (iv) conflict of interest; (v) damage company or employees' rights; and (vi) other violation of laws, regulations and internal policies of Tencent; and

(d)    At page 15 of its 2022 Annual Report dated 8 May 2023 (the "**2022 Annual Report**"), the Company expressed "*uncertainty*" about the possibility of re-obtaining authorised agent status with Sogou but did not mention the blacklisting by Tencent or the reasons for that blacklisting.

52    It is averred that the Criminal Investigation, the Merger Agreement, the Tencent Internal Investigation and the blacklisting of the Company by Tencent was information which significantly impacted the likelihood that the Company would be able to re-obtain authorised agency status, was therefore material and ought to have been disclosed.

**The Company's financial performance**

53    Prior to the IPO, the Company consistently reported robust revenue figures, surpassing tens of millions, contributing to the success of the IPO for the Company. Since the IPO in February 2021, the Company's financial performance has suffered significantly. This precipitous decline is illustrated by comparing annual revenue between 2018 and 2022:

| Year | Annual revenue | Annual revenue (gross profit) |
|------|----------------|-------------------------------|
| 2018 | US$16,156,876 | US$14,686,949 |
| 2019 | US$17,846,900 | US$15,991,736 |
| 2020 | US$11,911,229 | US$10,654,876 |

This Petition is filed by Ogier (Cayman) LLP, Attorneys-at-Law for the Petitioner, whose address for service is: 89 Nexus Way, Camana Bay, Grand Cayman KY1-9009, Cayman Islands (LVS/CBY/507986.00001)

12                                          GCMLAW-14357239-8

|      |              |              |
| ---- | ------------ | ------------ |
| 2021 | US$3,911,560 | US$1,834,044 |
| 2022 | US$2,415,098 | (US$31,843)  |

54    Following the termination of the Company's relationship with Sogou described above, the Company's business has suffered with its annual revenue dropping significantly, resulting in the Company making a loss in 2022.

55    The sharp decline in revenue has not been explained satisfactorily by the Company. This is particularly so where such a precipitous decline cannot be solely attributed to the failure to renew the Sogou Agency Agreements and the subsequent blacklisting of the Company by Tencent where, as pleaded above, the Sogou Agency Agreements only accounted for approximately 41.8% of all of the Company's revenue in 2021.

56    The Petitioner therefore has significant concerns regarding the veracity of the information provided as part of the Company's IPO process and in its more recent public filings.

57    As a result of its financial issues, the Company has undertaken two share consolidations:

(a)    On 4 February 2022, the Company received a written notification from the NASDAQ that it was not in compliance with the minimum bid price requirement in the NASDAQ rules which require listed securities to maintain a minimum bid price of US$1.00 (the "**First NASDAQ Notification**").

(b)    On 24 May 2022, in response to the First NASDAQ Notification, and following a resolution passed at the 2022 Annual General Meeting on 28 April 2022, the Company announced that it would be consolidating ordinary shares in the company by a 3.2:1 ratio so that 3.2 ordinary shares with par value of $0.0005 per share would become one ordinary share with par value of $0.0016 (the "**First Share Consolidation**").

(c)    On 19 December 2022, the Company received another written notification from the NASDAQ that it was not in compliance with the minimum bid price

This Petition is filed by Ogier (Cayman) LLP, Attorneys-at-Law for the Petitioner, whose address for service is:
89 Nexus Way, Camana Bay, Grand Cayman KY1-9009, Cayman Islands (LVS/CBY/507986.00001)

13                                    GCMLAW-14357239-8

requirement in the NASDAQ rules which require listed securities to maintain a minimum bid price of US$1.00 (the "**Second NASDAQ Notification**").

(d)     On 21 March 2023, in response to the Second NASDAQ Notification, and following a resolution passed at the 2023 Annual General Meeting on 6 March 2023, the Company announced that it would be consolidating ordinary shares in the Company by a 6:1 ratio so that six ordinary shares with par value of US$0.0016 per share would become one ordinary share with par value of $0.0096 (the "**Second Share Consolidation**").

58      As a result of the overall decline in the Company's value, the Investors have lost approximately 96% of their investment in the Company.

**The Related Party Transactions**

59      On pages 111-112 of the 2022 Annual Report, the Company provided disclosures of certain related party transactions. This relevantly includes transactions in which services were purportedly purchased from Horgos Zhijiantiancheng Technology Co Ltd ("**HZT**"), a related party of the Company.

60      HZT is:

(a)     described as a "*media and advertiser with the Company*" and provides software and IT services;

(b)     listed as the Company's fourth largest customer in 2021 comprising 7.6% of all of the Company's revenue; and

(c)     a wholly owned subsidiary of EJAM Group, which is a significant shareholder of the Company, and therefore, a related party of the Company.

61      HZT and Baosheng Technology (an indirect wholly owned subsidiary of the Company) were parties to a series of agreements, referred to as the Channel Cooperation Agreements, pursuant to which Baosheng Technology entrusted HZT to provide "*network information services*" to its customers. The Petitioner does not have access to all documents and/or information in relation to the Channel

This Petition is filed by Ogier (Cayman) LLP, Attorneys-at-Law for the Petitioner, whose address for service is:
89 Nexus Way, Camana Bay, Grand Cayman KY1-9009, Cayman Islands (LVS/CBY/507986.00001)

14                                          GCMLAW-14357239-8

Cooperation Agreements, including copies of all prior versions of the Channel Cooperation Agreements.

62    The copies of the Channel Cooperation Agreements of which the Petitioner has had sight lack clarity in defining the scope or nature of the network information services provided by HZT. The absence of clarity is concerning, particularly considering the substantial sums involved in the Channel Cooperation Agreements.

63    As disclosed on pages 111-112 of the 2022 Annual Report, the following amounts were paid in respect of services purchased by the Company from HZT:

(a)    US$11,298,397 in 2021; and

(b)    US$4,464,919 in 2022.

(the "**Related Party Transactions**")

64    It is contended that by causing the Company to enter into the Related Party Transactions, the directors have not acted bona fide in the best interests of the Company and/or for a proper purpose. Until discovery herein, the best particulars of facts from which this is to be inferred that the Petitioner can give are as follows:

(a)    the Related Party Transactions are disproportionate when measured against the Company's annual revenue in 2021 and 2022 which was $3.9 million in 2021 and $2.4 million (respectively);

(b)    the quantum of the Related Party Transactions do not match the amount of payments received by EJAM Group. According to EJAM Group's 2021 and 2022 Annual Reports, EJAM Group only received "advertising revenue" from Baosheng Technology in an amount of RMB 696,884 (approx. US$97,000) in 2021 and RMB 582,139 (approx. US$81,000) in 2022; and

(c)    the Channel Cooperation Agreements are vague and lacking in detail, particularly for transactions that amount to US$15 million and it is unclear what services (if any) were to be provided under the Agreements.

This Petition is filed by Ogier (Cayman) LLP, Attorneys-at-Law for the Petitioner, whose address for service is:
89 Nexus Way, Camana Bay, Grand Cayman KY1-9009, Cayman Islands (LVS/CBY/507986.00001)

GCMLAW-14357239-8

**The SPA**

65      In an SEC filing dated 27 November 2023, the Company disclosed that, on 17 November 2023 it entered into a securities purchase agreement (the "**SPA**") with an unnamed investor (the "**Noteholder**") pursuant to which the Company agreed to issue the Noteholder senior convertible promissory notes (the "**Notes**") in the form attached to the SPA as Exhibit A (the "**Convertible Note Form**") in an original principal amount of not more than US$42million which were convertible into the Company's ordinary shares of a par value of $0.0096 per share in accordance with the terms of the SPA and the Convertible Note Form. The filing states that the Company expects the Notes to be issued in December 2023.

66      On 13 December 2023, the Company and the Noteholder executed an amendment to the SPA (the "**Amendment**"). Pursuant to the Amendment, the parties mutually agreed to revise the conversion floor price of the Notes from $0.10 per share to $0.80 per share, in response to comments from NASDAQ (the "**Conversion Floor Price**"). The closing price of the Company's ordinary shares on that date was US$3.99 per share.

67      As of the date of this Petition, the identity of the Noteholder has not been disclosed and it is not clear whether the Notes have been issued to the Noteholder.

68      If the Notes have been issued to the Noteholder and the Noteholder exercises the option to convert the Notes into shares, the Petitioner's shareholding will be diluted to less than 1%.

69      By causing the Company to enter into the SPA and/or the Amendment and/or to issue the Notes, it is averred that the directors have not acted bona fide in the best interests of the Company and/or for a proper purpose. The best particulars of facts from which this is to be inferred which the Petitioner can give until discovery herein are as follows:

        (a)     No reasonable investor would invest $42 million in a Company which suffered a loss continuously in its most recent reported financial years and has been struggling financially since 2021;

This Petition is filed by Ogier (Cayman) LLP, Attorneys-at-Law for the Petitioner, whose address for service is:
89 Nexus Way, Camana Bay, Grand Cayman KY1-9009, Cayman Islands (LVS/CBY/507986.00001)

GCMLAW-14357239-8

(b)    The identity of the Noteholder remains undisclosed; and

(c)    the terms of the SPA and the Convertible Note Form are unusual for a supposedly arm's length commercial transaction between unrelated parties. For example:

(i)    For a transaction of such considerable magnitude, the closing conditions and representations and warranties are surprisingly limited in scope, comprising only the most basic representations and warranties and easily attainable closing requirements, such as confirming valid authority, enforceability and proper incorporation, among other things;

(ii)    Under section 9.9 of the SPA, the Company agrees to indemnify and hold harmless the Noteholder and all its officers, directors, employees, attorneys, and agents for loss or damage arising as a result of or related to any breach or alleged breach by Company of any of its representations, warranties, covenants or obligations set forth in the SPA, including advancement of expenses as they are incurred. The Noteholder does not give a reciprocal indemnity, nor is the indemnity subject to customary carve-outs for matters such as the fraud or wilful default of the Noteholder;

(iii)    Under sections 5 and 6 of the Convertible Note Form, the Noteholder is entitled to convert all or any of the outstanding balance of the Notes into ordinary shares at any time until the Notes are fully repaid. The Conversion Price is calculated as 75% of (i.e. a 25% discount to) the *lowest* closing price (rather than a volume-weighted average price) of the last fifteen trading days immediately prior to the date of the applicable conversion notice, subject to the Conversion Floor Price.

(iv)    Under section 5(d) and (e) of the Convertible Note Form, at any time before the Company receives a Conversion Notice, the Company shall have the right to prepay the outstanding balance upon notice to the Bondholder. If this right is exercised, the Company must pay an amount

This Petition is filed by Ogier (Cayman) LLP, Attorneys-at-Law for the Petitioner, whose address for service is:
89 Nexus Way, Camana Bay, Grand Cayman KY1-9009, Cayman Islands (LVS/CBY/507986.00001)

GCMLAW-14357239-8

equal to 110% of the outstanding balance of the Notes. As such, this provision imposes a 10% penalty on the Company for early repayment. Notably, as of 30 June 2023, the Company's cash was approximately $3.7 million, being almost 10% of the principal amount advanced under the SPA; and

(v)    Under section 7 of the Convertible Note Form, a "Trigger Event" occurs if: (A) the Company enters into a "Fundamental Transaction" (such as a merger) without the consent of 50% of the holders of the Notes; and (B) if the Company or any of its affiliates materially breaches any "Other Agreement" which is defined broadly to include "all existing and future agreements" between the Company and the Bondholder or their respective affiliates.

70    It is averred that, in light of the foregoing, it is to be inferred that the purpose of the SPA and/or the issue of the Notes is to facilitate a takeover of the Company, or some other transaction that would prejudice the interests of existing shareholders including the Investors. This is particularly so where, if the shares are converted, the Noteholder would become a 90% shareholder in the Company.

**Grounds for Winding Up**

71    In the respects aforesaid, the management of the Company have acted unfairly and/or oppressively towards the Petitioner, the other Investors and other minority shareholders and/or the affairs of the Company have been conducted with a lack of probity and the Petitioner and the other Investors have justifiably lost confidence in the management of the Company.

72    The Petitioner's loss of trust and confidence in the conduct and management of the Company's affairs is justified by:

(a)    The significant concerns held by the Petitioner regarding the accuracy of the pre-IPO disclosures by the Company;

(b)    The management of the Company following the IPO resulting in significant downturn in revenue for which no explanation has been provided;

This Petition is filed by Ogier (Cayman) LLP, Attorneys-at-Law for the Petitioner, whose address for service is: 89 Nexus Way, Camana Bay, Grand Cayman KY1-9009, Cayman Islands (LVS/CBY/507986.00001)

18        GCMLAW-14357239-8

(c)    The failure by the directors of the Company to disclose the Criminal Investigation, the Merger Agreement, the Tencent Internal Investigation and the blacklisting of the Company by Tencent to shareholders and prospective investors in the Company;

(d)    The entry by the Company into the Related Party Transactions in breach of their obligation to act in the best interests of the Company and/or for proper purposes; and

(e)    The entry into the SPA and/or the issue of the Notes to the Noteholder, which, upon conversion, would lead to a substantial shift in control and significant dilution of the Petitioner's and other Investors' interest in the Company and were therefore entered into and/or issued in breach of their obligation to act in the best interests of the Company and/or for proper purposes.

73    Further and/or in the alternative, the Petitioner considers that there is a need for an independent insolvency practitioner to be appointed to investigate:

(a)    the current financial circumstances of the Company;

(b)    the conduct by the Company's management including, but not limited to, causing the Company to enter into the Related Party Transactions and the SPA; and

(c)    the availability of claims against current or former directors of the Company in relation to their management of the Company.

74    In the premises, it is just and equitable that the Company be wound up in accordance with section 92(e) of the Companies Act and that the JOLs are appointed.

**Your Petitioner therefore humbly prays that:-**

(1)    The Company be wound up in accordance with section 92(e) of the Companies Act.

(2)    Michael Green of Deloitte & Touche, PO Box 1787, 8th Floor, 60 Nexus Way, Camana Bay, Grand Cayman, Cayman Islands KY1-1109 together with Ho Kwok

This Petition is filed by Ogier (Cayman) LLP, Attorneys-at-Law for the Petitioner, whose address for service is:
89 Nexus Way, Camana Bay, Grand Cayman KY1-9009, Cayman Islands (LVS/CBY/507986.00001)

19                                                    GCMLAW-14357239-8

Leung Glen and Kam Chung Hang (Forrest) of Deloitte Touche Tohmatsu, 35/F, One Pacific Place, 88 Queensway, Hong Kong SAR be appointed as joint official liquidators of the Company (the "**JOLs**").

(3)    The registered office of the Company be moved to Deloitte & Touche, PO Box 1787, 8th Floor, 60 Nexus Way, Camana Bay, Grand Cayman, Cayman Islands KY1-1109.

(4)    The JOLs be authorised to act jointly and severally in their capacity as liquidators of the Company.

(5)    The JOLs shall not be required to give security for their appointment.

(6)    The JOLs be authorised to exercise within and outside the Cayman Islands any of the powers conferred on them by the Court pursuant to Section 110(2) and Part II of the Third Schedule of the Companies Act without further sanction or intervention of the Court.

(7)    The JOLs be authorised to carry out any act or exercise any power considered by them to be necessary or desirable in connection with the liquidation of the  and the winding-up of its affairs and to prevent the dissipation of the assets of the  and its subsidiaries in any jurisdiction.

(8)    The JOLs be authorised to take any such action as may be necessary or desirable to obtain recognition of the JOLs and/or their appointment in any other relevant jurisdiction and to make applications to the courts of such purpose.

(9)    The JOLs have the power to appoint agents in the Cayman Islands, the PRC and elsewhere to do any business contemplated by this order which they are unable to do themselves or which can more conveniently be done by an agent.

(10)    The JOLs be authorised to take control of such of the direct and/or indirect subsidiaries of the  (the "**Subsidiaries**") and/ joint ventures, investments, associated companies, businesses or other entities in which the  holds an interest (or such shares of the Company) (the "**Associated Companies**" and, together with the  and the Subsidiaries, the "**Group**"), in each case wherever located, as the JOLs shall think fit; to call or cause to be called such meetings of such Subsidiaries and/or

This Petition is filed by Ogier (Cayman) LLP, Attorneys-at-Law for the Petitioner, whose address for service is:
89 Nexus Way, Camana Bay, Grand Cayman KY1-9009, Cayman Islands (LVS/CBY/507986.00001)

GCMLAW-14357239-8

Associated Companies and/or to sign such resolutions (in accordance with the provisions of any relevant constitutional or related documentation of such companies) and take such other steps, including applications to appropriate courts and/or regulators, as the JOLs shall consider necessary to appoint or remove directors, legal representatives, officers and/or managers to or from such Subsidiaries and/or Associated Companies, and in each case take such steps as are necessary to cause the registered agents (or other equivalent corporate administrators) of such Subsidiaries or Associated Companies to give effect to the changes to the boards of directors, legal representatives, officers and/or managers of such companies or entities, including (without limitation) effecting changes to the company registers of such Subsidiaries or Associated Companies as may be deemed appropriate by the JOLs; and/or to take such other action in relation to all such Subsidiaries or Associated Companies as the JOLs shall think fit for the purpose of protecting the Assets and managing the affairs of the  (which, for the avoidance of doubt, shall include the assets and affairs of the Subsidiaries and Associated Companies).

(11)    The JOLs be at liberty to appoint counsel, attorneys, and/or any other professional advisors, whether in the Cayman Islands or elsewhere as they may consider necessary to advise and assist them in the performance of their duties an don such terms as they may think fit and to remunerate them out of the assets of the Company.

(12)    The remuneration and expenses of the JOLs shall be paid out of the assets of the Company.

(13)    The JOLs be at liberty to apply generally to the Court to make such orders for regulating the future conduct of the affairs of the Company as the Court shall see fit.

(14)    Such further or other relief be granted as the Court deems appropriate.

(15)    The Petitioner's costs of and incidental to the petition shall be paid forthwith out of the assets of the Company on indemnity basis.

AND your Petitioner will ever pray etc.

Dated the 9th day of April 2024

This Petition is filed by Ogier (Cayman) LLP, Attorneys-at-Law for the Petitioner, whose address for service is:
89 Nexus Way, Camana Bay, Grand Cayman KY1-9009, Cayman Islands (LVS/CBY/507986.00001)

21                                    GCMLAW-14357239-8

_____

**Ogier (Cayman) LLP**
**Attorneys for the Petitioner**

NOTE:     This petition is intended to be served on the Company at its registered office at Harneys Fiduciary (Cayman) Limited at 4th Floor, Harbour Place, 103 South Church Street, PO Box 10240, Grand Cayman KY1-1002, Cayman Islands

This Petition is filed by Ogier (Cayman) LLP, Attorneys-at-Law for the Petitioner, whose address for service is: 89 Nexus Way, Camana Bay, Grand Cayman KY1-9009, Cayman Islands (LVS/CBY/507986.00001)

22     GCMLAW-14357239-8

### NOTICE OF HEARING

**TAKE NOTICE THAT** the hearing of this petition will take place at the Law Courts, George Town, Grand Cayman, on _____30 April 2024_____ at 10:00am.

Any correspondence or communication with the Court relating to the hearing of this petition should be addressed to the Registrar of the Financial Services Division of the Grand Court at PO Box 495, Grand Cayman, KY1-1106, telephone 345 959 4296.

This Petition is filed by Ogier (Cayman) LLP, Attorneys-at-Law for the Petitioner, whose address for service is:
89 Nexus Way, Camana Bay, Grand Cayman KY1-9009, Cayman Islands (LVS/CBY/507986.00001)

23                                    GCMLAW-14357239-8

## SCHEDULE A – DIAGRAM OF CORPORATE STRUCTURE OF BAOSHENG GROUP[1]



_____

[1] This diagram was extracted from the 2024 Prospectus Supplement.

This Petition is filed by Ogier (Cayman) LLP, Attorneys-at-Law for the Petitioner, whose address for service is:
89 Nexus Way, Camana Bay, Grand Cayman KY1-9009, Cayman Islands (LVS/CBY/507986.00001)

24                                      GCMLAW-14357239-8