UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Orient Plus International Limited; Union Hi-Tech Development Limited; and Golden Genius International Limited, <br><br> Plaintiffs, <br><br> v. <br><br> Baosheng Media Group Holdings Limited; Wenxiu Zhong; Sheng Gong; Yu Zhong; Zuohao Hu; Adam (Xin) He; Yue Jin; Yanjun Hu; Univest Securities, LLC; The Benchmark Company, LLC; WestPark Capital, Inc.; Friedman LLP; and Marcum LLP, <br><br> Defendants. | Case No. 1:24-cv-00744-JLR |

## BAOSHENG MEDIA GROUP HOLDINGS LIMITED'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

HOLLAND & KNIGHT LLP
787 Seventh Avenue, 31st Floor
New York, New York  10019
Tel:  (212) 513-3200

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................... 1

FACTS .............................................................................................................................. 3

    I.    Baosheng's Business and 2021 Initial Public Offering.................................. 3

    II.   Plaintiffs' Purchases of Baosheng Securities ............................................... 4

    III.  Plaintiffs Allege a Flimsy and Mysterious "Investigation" ........................... 5

    IV.  Baosheng's IPO Disclosures ........................................................................ 6

    V.   Baosheng's Post-Prospectus Filings and This Litigation............................... 7

LEGAL STANDARD ........................................................................................................ 8

ARGUMENT .................................................................................................................... 9

    I.    Plaintiffs' Claims are Time-Barred and Have Not Plausibly Alleged
        Discovery-Tolling ........................................................................................ 9

    II.   Orient and Union's Section 12(a)(2) Claims Must Be Dismissed ............... 10

        A.    Orient and Union Cannot Demonstrate that the SPA was a Public Offering
            Issued Pursuant to a Prospectus.................................................................. 11

        B.    *Slack* Does Not Change the Outcome. ...................................................... 12

        C.    *Morrison* Precludes Orient and Unions' Claims Based on Wholly
            Foreign Transactions. .................................................................................. 15

        D.    Orient and Union Cannot Plausibly Allege Use of Interstate Wires
            for a Wholly Foreign Transaction ............................................................... 16

    III.  The Complaint Does Not Plausibly Allege that the Investigation was Material .......... 17

    IV.  Baosheng Had No Duty to Disclose the Investigation as a Matter of Law................. 19

    V.   Plaintiffs' Complaint of Allegedly Omitted Facts Fails to
        Note the Disclosed Risks............................................................................. 21

    VI.  Plaintiffs' Own Allegations Negate Causation ........................................... 23

    VII. Plaintiffs Fail to Satisfy the Applicable Rule 9(b) Heightened Pleading Standard ...... 23

CONCLUSION ............................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
    671 F.3d 140 (2d Cir. 2011) ................................................................................................ 8

*Asay v. Pinduoduo Inc.*,
    2020 WL 1530745 (S.D.N.Y. Mar. 30, 2020 ....................................................................... 22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................................................................................... 9, 24

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................ 8

*Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*,
    364 F. Supp. 3d 253 (S.D.N.Y. 2019) .................................................................................. 3

*City of Pontiac Policemen's and Firemen's Ret. Sys. v. UBS AG*,
    752 F.3d 173 (2d Cir. 2014) .................................................................................... 16, 19, 20

*Constr. Laborers Pension Tr. for S. Cal. v. CBS Corp.*,
    433 F. Supp. 3d 515 (S.D.N.Y. 2020) ................................................................................ 19

*Davidoff v. Farina*,
    2005 WL 2030501 (S.D.N.Y. Aug. 22, 2005) ............................................................... 21, 22

*Diehl v. Omega Protein Corp.*,
    339 F. Supp. 3d 153 (S.D.N.Y. 2018) ................................................................................ 19

*DiFolco v. MSNBC Cable LLC*,
    622 F.3d 104 (2d Cir. 2010) ................................................................................................ 3

*Dodds v. Cigna Sec., Inc.*,
    12 F.3d 346 (2d Cir. 1993) .................................................................................................. 9

*ECA & Local 134 Ibew Joint Pension Trust v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009) .............................................................................................. 17

*Flag Telecom Holdings, Ltd. Sec. Litig.*,
    308 F. Supp. 2d 249 (S.D.N.Y. 2004) ................................................................................ 18

*Franklin Savings Bank of N.Y. v. Levy*,
    551 F. 2d 521 (2d Cir. 1977) ............................................................................................. 16

*Gotham Holdings, LP v. Health Grades, Inc.*,
    534 F. Supp. 2d 442 (S.D.N.Y. 2008) ........................................................................... 13, 14

*Gustafson v. Alloyd Co.*,
    513 U.S. 561 (1995) ....................................................................... 11, 12, 13

*Halperin v. eBanker USA.com, Inc.*,
    295 F.3d 352 (2d Cir. 2002) ...................................................................... 18

*Ho v. Duoyuan Glob. Water, Inc.*,
    887 F. Supp. 2d 547 (S.D.N.Y. 2012) ......................................................... 9

*IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of
    Scotland Grp.*,
    783 F.3d 383 (2d Cir. 2015) ...................................................................... 18

*In re Banco Bradesco S.A. Sec. Litig.*,
    277 F. Supp. 3d 600 (S.D.N.Y. 2017) ............................................... 19, 20, 21

*In re Fuwei Films Sec. Litig.*,
    634 F. Supp. 2d 419 (S.D.N.Y. 2009) ......................................................... 24

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
    643 F. Supp. 2d 562 (S.D.N.Y. 2009) ......................................................... 14

*In re Lululemon Sec. Litig.*,
    14 F. Supp. 3d 553 (S.D.N.Y. 2014) ........................................................... 18

*In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*,
    272 F. Supp. 2d 243 (S.D.N.Y. 2003) ......................................................... 19

*In re Morgan Stanley Info. Fund Sec. Litig.*,
    592 F.3d 347 (2d Cir. 2010) ............................................................... 10, 17

*In re Morgan Stanley Tech. Fund Sec. Litig.*,
    643 F. Supp. 2d 366 (S.D.N.Y. 2009) ......................................................... 19

*In re Petrobras Sec. Litig.*,
    116 F. Supp. 3d 368 (S.D.N.Y. 2015) ................................................... 10, 13

*In re Smart Techs., Inc. S'holder Litig.*,
    295 F.R.D. 50 (S.D.N.Y. 2013) .................................................................. 15

*In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*,
    774 F. Supp. 2d 584 (S.D.N.Y. 2011) ......................................................... 23

*In re TVIX Sec Litig.*,
    25 F. Supp. 3d 444 (S.D.N.Y. 2014) ........................................................... 19

*In re UBS AG Sec. Litig.*,
    2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012) .............................................. 20

iii

*In re Vivendi Universal, S.A., Sec. Litig.*,
 842 F. Supp. 2d 522 (S.D.N.Y. 2012) ................................................................... 15

*In re Yukos Oil Co Sec Litig.*,
 2006 WL 3026024 (S.D.N.Y. Oct. 25, 2006) ........................................................ 25

*Jiajia Luo v. Sogou, Inc.*,
 465 F. Supp. 3d 393 (S.D.N.Y. 2020) ..................................................... 20, 21, 24

*Makarova v. United States*,
 201 F.3d 110 (2d Cir. 2000) ..................................................................................... 8

*McMahan & Co. v. Wherehouse Entm't*,
 65 F.3d 1044 (2d Cir.1995) ................................................................................... 23

*Merck & Co., Inc. v. Reynolds*,
 559 U.S. 633 (2010) ................................................................................................. 9

*Miao v. Fanhua, Inc.*,
 442 F. Supp. 3d 774 (S.D.N.Y. 2020) ................................................................... 24

*Morrison v. Nat'l Australian Bank Ltd.*,
 561 U.S. 247 (2010) ..................................................................................... 2, 11, 15

*Novak v. Kasaks*,
 216 F.3d 300 (2d Cir. 2000) ................................................................................... 20

*Olkey v. Hyperion 1999 Term Trust, Inc.*,
 98 F.3d 2 (2d Cir. 1996) ......................................................................................... 21

*Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*,
 538 F. Supp. 2d 662 (S.D.N.Y. 2008) ................................................................... 19

*Police and Fire Ret. Sys. of the City of Detroit v. La Quinta Hldgs. Inc.*,
 2017 WL 4082482 (S.D.N.Y. Aug. 24, 2017) ...................................................... 17

*Resnik v. Swartz*,
 303 F.3d 147 (2d Cir. 2002) ................................................................................... 19

*Richman v. Goldman Sachs Grp., Inc.*,
 868 F. Supp. 2d 261 (S.D.N.Y. 2012) ................................................................... 21

*Rombach v. Chang*,
 355 F.3d 164 (2d Cir. 2004) ........................................................................... 17, 24

*Schillner v. H. Vaughan Clarke & Co.*,
 134 F.2d 875 (2d Cir. 1943) ................................................................................... 16

*SEC v. Revelation Cap. Mgmt. Ltd.*,
 246 F. Supp. 3d 947 (S.D.N.Y. 2017) ................................................................... 16

*Slack Techs., LLC v. Pirani,*
    598 U.S. 7598 (2023) ................................................................................. *passim*

*Staehr v. Hartford Fin. Servs. Grp.,*
    547 F.3d 406 (2d Cir. 2008) ......................................................................... 3

*Wandel v. Gao,*
    590 F. Supp. 3d 630 (S.D.N.Y. 2022) ..................................................... 19, 20

*White v. UMG Recordings, Inc.,*
    2021 WL 6052106 (S.D.N.Y. Dec. 21, 2021) ............................................. 9

*Yung v. Lee,*
    432 F.3d 142 (2d Cir. 2005) ....................................................................... 13

## **Statutes**

15 U.S.C. § 77e ............................................................................................. 4

15 U.S.C. § 77k ....................................................................................... 17, 22

15 U.S.C. § 77l ................................................................................... 10, 11, 17

17 C.F.R. 230.901, *et seq* ............................................................................ 4

Federal Rule of Civil Procedure § 8(a) ..................................................... 24

Federal Rule of Civil Procedure § 9(b) ................................................. 24, 25

Federal Rule of Civil Procedure § 12(b) ................................................. 1, 8

Securities Act § 2(a)(7) ............................................................................. 16

Securities Act § 4(a)(2) ........................................................................... 5, 12

Securities Act § 5 ........................................................................................ 4

Securities Act § 6 ....................................................................................... 15

Securities Act § 10(b) ................................................................................ 17

Securities Act § 11 ............................................................................... *passim*

Securities Act § 12 ............................................................................... *passim*

Securities Exchange Act § 10(b) ............................................................... 15

Defendant Baosheng Media Group Holdings Limited ("Baosheng" or the "Company"), by and through undersigned counsel, respectfully submits this memorandum in support of its motion to dismiss, pursuant to FRCP 12(b)(1) and (6), the Second Amended Complaint ("Complaint") filed by plaintiffs Orient Plus International Limited ("Orient"), Union Hi-Tech Development Limited ("Union"), and Golden Genius International Limited ("Golden") (collectively, "Plaintiffs").

## PRELIMINARY STATEMENT

The Complaint should be dismissed with prejudice because Plaintiffs do not — and cannot— plead facts sufficient to state claims against Baosheng under Sections 11 or 12(a)(2) of Securities Act of 1933 ("Securities Act").  As it pertains to Baosheng, Plaintiffs bring claims as follows:

| Plaintiff | Claim | Basis for Dismissal |
|---|---|---|
| Golden Genius International Limited | Section 11; Section 12(a)(2) | Time-barred<br>Failure to plead duty<br>Failure to plead materiality<br>Failure to satisfy pleading standard |
| Orient Plus International Limited<br><br>*and*<br><br>Union Hi-Tech Development Limited | Section 12(a)(2) | Time-barred<br>No standing due to private purchase<br>Purely foreign transaction<br>No interstate wires<br>Failure to plead duty<br>Failure to plead materiality<br>Failure to satisfy pleading standard |

*First*, the transactions about which all three Plaintiffs complain are time-barred under the applicable one-year statute of limitations.  It was public information and Plaintiffs long knew about Baosheng's revenue and financial issues, and Plaintiffs have not alleged any facts giving rise to an

inference that their alleged failure to discover the core facts until June 2023 was reasonable.[1]

*Second*, it is also critical to properly characterize and contextualize Union and Orient's claims – which arise from the purchase of *unregistered shares in a private offering* pursuant to a Securities Purchase Agreement ("SPA"). These claims are not cognizable under Section 12(a)(2) of the Securities Act because (i) they were not registered shares in a public offering, (ii) they assert "foreign claims" under *Morrison v. National Australian Bank Ltd.*, 561 U.S. 247 (2010), and (iii) they fail to meet the statutory requirement for use of interstate wires.

*Third,*  while Defendants vigorously contest the Complaint's false allegations, even Plaintiffs' false Complaint does not plausibly allege (i) that Baosheng had any *duty* to disclose, in early 2021, an ongoing and incomplete foreign investigation of a third party or that company management might be witnesses, or (ii) *how* that alleged incomplete investigation of another company was material to Baosheng at that time. These deficiencies are compounded in light of Plaintiffs' burden to satisfy Federal Rule of Civil Procedure (the "Rule") 9(b)'s heightened pleading standard. Plaintiffs' bald and conclusory disclaimer that no fraud or scienter is alleged does not and cannot erase intent and fraudulent misconduct allegations that permeate the Complaint (and the parallel Cayman Petition). The law is clear on what constitutes pleading with particularity, which the Complaint utterly fails to do.

Under these circumstances, the Court should dismiss with prejudice the Complaint in its entirety as against Baosheng.

---

[1] Plaintiffs "learned of this information from a significant shareholder of BAOS, who had inside knowledge of the operations and conduct of BAOS executives leading up to the IPO." Second Amended Complaint, Dkt. 82 ("2d Am. Compl.") ¶ 82.

## FACTS[2]

### I.    Baosheng's Business and 2021 Initial Public Offering

Founded in 2014 as an online marketing agency, Baosheng has grown into a multi-channel online marketing solutions provider incorporated under the laws of the Cayman Islands and headquartered and operating in Beijing, China. 2d Am. Compl. ¶ 5; Ex. C (Prospectus).[3] Through its established relationships with a wide range of media entities, Baosheng helps advertisers manage and optimize their online marketing strategies. Ex. C at 4. Baosheng also partners with search engine operators and various social media platforms to procure advertisers and facilitate ad deployment on their advertising channels. *Id.*

Pursuant to an amended Form F-1,[4] filed on February 8, 2021 and declared effective by the SEC on February 5, 2021 (the "Registration Statement"), Baosheng registered 6,000,000 ordinary shares of stock. 2d Am. Compl. ¶ 31; Ex. B (Registration Statement). On February 8, 2021, the Company made its initial public offering of 6,000,000 ordinary shares at a price of $5 per share (the "IPO"), and those shares began trading on Nasdaq. *See* Ex. D (Feb. 8, 2021 Press Release on Pricing of the Company's Initial Public Offering).  The IPO was made by means of a prospectus filed on February 9, 2021 (the "Prospectus").  Ex.  C).  On February 10, 2021, Baosheng completed

---

[2] Citations to "Ex. __" throughout refer to exhibits attached to the Declaration of Shasha Mi in support of this motion ("Shasha Mi Decl.").  Baosheng respectfully requests that this Court take judicial notice of various publicly-filed documents, including press releases and SEC filings, which may properly be considered on a motion to dismiss.  *See, e.g.*, *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008) (noting ability to take judicial notice of regulatory filings to determine motion to dismiss); *Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*, 364 F. Supp. 3d 253, 262 (S.D.N.Y. 2019) (taking judicial notice of press release).

[3] Baosheng's Prospectus and other SEC filings are incorporated by reference into the Complaint and may be considered by this Court in deciding this motion.  *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (noting court's ability to consider documents incorporated by reference in complaint on motion to dismiss).

[4] Foreign private issuers ("FPIs") are required to file certain forms with the Securities and Exchange Commission ("SEC"). Form F-1 is the registration statement used by FPIs for an initial public offering and may also be used for follow-on offerings. FPIs are required to file with the SEC annual reports on Form 20-F and furnish to the SEC current reports on Form 6-K

its IPO in a firm-commitment underwriting that raised $30 million and also granted the underwriters an over-allotment option to purchase additional ordinary shares at the public offering price. *See* Ex. D (Feb. 10, 2021 Press Release on Closing of the Company's Initial Public Offering). Univest Securities, LLC ("Univest") was the lead underwriter on Baosheng's IPO, with the Benchmark Company, LLC ("Benchmark") and WestPark Capital, Inc. (WestPark") serving as secondary underwriters. 2d Am. Compl. ¶¶ 56, 60.

## II.    Plaintiffs' Purchases of Baosheng Securities

On March 2, 2021, Univest exercised its over-allotment option to purchase $4.5 million worth of ordinary shares, and in turn sold $3.5 million of those shares directly to Plaintiff Golden. *Id.* ¶¶ 33, 34; Ex. E (Mar. 3, 2021 Form 6-K). After the IPO concluded in early March 2021, Plaintiffs Orient and Union entered into a Securities Purchase Agreement, dated as of March 17, 2021 (the "SPA"), and purchased $10 million worth of unregistered shares from Baosheng on March 17, 2021 in a private placement offering under Regulation S ("Private Placement").[5] *Id.* ¶ 35; Ex. F (SPA), at 1. The next day, Baosheng closed the Private Placement. Ex. G (Mar. 18, 2021 Form 6-K). Hence, Orient and Union purchased, and own, unregistered shares not obtained in a public offering. However, the Complaint falsely alleges that Baosheng "filed a second Registration Statement *to register those [Private Placement] shares* on March 18." 2d Am. Compl ¶ 35.

In reality, Baosheng filed a separate Form F-1 on March 18, 2021, declared effective by the SEC on March 30, 2021, to register the *later* resale of securities by Orient and Union (the "Resale Registration"). Ex. H.   The Resale Registration did not register Orient and Union's Private Placement shares. *See id.* 2-4. The SPA itself also confirms that the underlying transaction in which

---

[5] Section 5 of the Securities Act requires offers and sales of securities to be registered unless an exemption from registration applies. Regulation S provides an exemption from such registration requirements for securities offerings made outside the United States to non-U.S. purchasers. Hence, a securities offering made outside of the United States in reliance on Regulation S is not required to be registered under the Securities Act.  15 U.S.C. § 77e; 17 C.F.R 230.901 *et seq.*

Orient and Union purchased their shares was an *offshore private placement offering of unregistered securities*, that none of the Private Placement securities had been registered, that the securities were subject to various restrictions and would have to be "registered for resale," and that the securities were otherwise *also exempt from registration* under Section 4(a)(2) of the Securities Act.  Ex. F, SPA §§ 3.2(c) ("Purchaser Status"), 4.1(b) ("Transfer Restrictions").  Baosheng's Resale Registration did not magically transmogrify Union and Orient's privately purchased shares into securities obtained in a public offering.

**III.    Plaintiffs Allege a Flimsy and Mysterious "Investigation"**

Plaintiffs do not allege any substantive details about the supposed investigation on which they base this case.  They do not because they cannot and there is no truth to them.  Plaintiffs do not even identify basic details of the investigation, including which government agency conducted the investigation, when the investigation started, what it was about, who the actual targets were, what those parties' alleged crimes were, whether or why Baosheng or any of its personnel were witnesses, what the investigation concluded, why Baosheng supposedly was fined (Baosheng was not), the identity of the customer they contend Baosheng lost as a result of the investigation or why the investigation led to the loss – the very details required for a material and disclosable event.

Plaintiffs do not allege that such key details were known by *or even available to* Baosheng in February 2021. In fact, in relying on a single source broadly described as a "significant shareholder" with "inside knowledge," 2d Am. Compl.  ¶ 82, Plaintiffs fail to even plausibly allege that there actually was any investigation *into Baosheng* or that Baosheng was penalized (unsurprising, given there was no fine). Despite all this, Plaintiffs contend that Baosheng was obligated to disclose this mysterious investigation before its conclusion or before any purported fine was assessed.

Interestingly, some of the unfavorable details lacking in Plaintiffs' Complaint here *are* set forth in a currently-pending – and in Baosheng's view, frivolous – proceeding in the Grand Court of the Cayman Islands, entitled *In the Matter of Baosheng Media Group Holdings Limited*, Cause No. FSD 113 of 2024 (DDJ) (the "Cayman Proceeding").  *See* Ex. L (Cayman Petition).  There, Orient, with the "support" of Union and Golden, filed a Petition against Baosheng alleging that Baosheng and its largest customer, Beijing Sogou Information Services Co., Ltd ("Sogou"), were investigated for providing search ranking advertising services to an unnamed gaming company that conducted an illicit gambling operation in China and transmitted gambling proceeds to Suncity Group in Macau.  *Id.* ¶¶ 42-46.

## IV.    Baosheng's IPO Disclosures

In contrast to Plaintiffs' overly broad allegations, the Prospectus and Registration Statement included extensive and detailed risk disclosures regarding the evolving regulatory landscape for digital marketing in China and potential liability Baosheng faced under so-called "Advertising Laws," including risks related to Sogou, a company-identified "top customer"; government investigations and regulatory and criminal penalties; and the risk that Baosheng could be held liable for the unlawful actions *of its clients*. For instance, the following operational and financial risks were disclosed to investors:

- Sogou, a "top customer" made up "a significant percentage" of Baosheng's total revenue, and failure to renew their "agency agreement" contract (subject for renewal each year) "could result in a material adverse impact on our financial performance and business prospects."  Ex. C at 15-16, 18.

- Regulatory penalties or other punishments could be entered "against our business stakeholders (i.e., advertisers and media)," exposing Baosheng to "penalties and disruption of our business, which may adversely affect our results of operations and financial performance." *Id.* at 21.

- Government actions and civil claims that Baosheng could face as an "advertising operator" subject to China's Advertising Law "in connection with false, fraudulent misleading, or otherwise illegal marketing content for

which [they] provide agency services," where Chinese authority could impose "penalties" or "confiscate [its] advertising revenue," and cause Baosheng "to lose market share, advertising customers, industry partners, and other business partnerships." Baosheng could "even be subject to government or regulatory investigation (including but not limited to those relating to advertising materials which are alleged to be illegal) as a result of such third-party conduct." *Id.* at 22.

- Government investigations, regulatory enforcement actions, and civil and criminal penalties that Baosheng could face by operating in "the online advertising industry in China with constantly evolving legal and regulatory frameworks," with no assurance that Baosheng "employees or agents" would adequately follow compliance policies and procedure. *Id.* at 26.

- Other risks and uncertainties relating to relatively new regulation of the digital marketing industry, noting the Chinese government "prohibited the dissemination of information through the Internet" in violation of Chinese laws and regulations, and Baosheng faced "potential liability for any unlawful actions of our clients," emphasizing it had "no control over" how its advertiser and media clients applied reviewed standards and it was "difficult to determine the type of content that may result in liability to us." *Id.* at 29.

## V.    Baosheng's Post-Prospectus Filings and This Litigation

Plaintiffs contend that Baosheng had "an express obligation to disclose the "Chinese authorities' investigation," because "in the months leading up to the IPO" certain Baosheng directors and executives "knew" about it (though what they allegedly knew has not been plead) and "knew" the company was "essentially shut down" as a result. 2d Am. Compl. ¶¶ 53, 87. Plaintiffs claim that this conduct "directly resulted in significant losses," the "loss of a key client" (albeit unnamed), and a decrease in Baosheng's stock price since Plaintiffs' initial investment in March 2021. *Id.* ¶¶ 83–84.

In April 2021, Baosheng disclosed negative financial results for fiscal year 2020, including a 33.3% decrease in annual revenues, a 33.4% decrease in profits, and a 37.9% decrease in net income, which Baosheng primarily attributed to the COVID pandemic. *See* Ex. I (Apr. 30, 2021 Form 20-F). In September 2021, Baosheng reported further decreases in revenue in the first half of 2021 due to the expiration of its lucrative agency agreement with Sogou, a risk it had previously

disclosed. *See* Ex. J (Sept. 30, 2021 Press Release Baosheng Media Group Holdings Limited Reports Financial Results for the First Half of 2021)). In May 2022, Baosheng filed its annual report for fiscal year 2021 where it noted its agency agreement with Sogou expired in March 2021. *See* Ex. K (May 17, 2022 Form 20-F) at 84.

Notwithstanding these robust disclosures—all of which are omitted from the Complaint—Plaintiffs waited until February 2024 to file this lawsuit alleging that the IPO offering materials were "inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements not misleading, omitted to state material facts," and "concealed and failed to disclose material facts." 2d Am. Compl ¶¶ 87, 109. Recognizing they not only lack sufficient facts but are also too late, Plaintiffs broadly allege that they "discovered the material misstatements and omissions" in June 2023 when they "learned of this information from a significant shareholder" supposedly possessing "inside knowledge" of the alleged (but poorly described) conduct. *Id*. ¶ 82.

## **LEGAL STANDARD**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United Stat*es, 201 F.3d 110, 113 (2d Cir. 2000). The burden is on the plaintiff to establish standing and "must allege facts that affirmatively and plausibly suggest that it has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).

Under Rule 12(b)(6), a complaint may be dismissed "for failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A complaint will not survive a motion to dismiss if it does not contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A claim only has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Although courts must draw all reasonable inferences in the plaintiff's favor and assume all well-pleaded factual allegations to be true, they are not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *White v. UMG Recordings, Inc.*, 2021 WL 6052106, at *2 (S.D.N.Y. Dec. 21, 2021) (quotations omitted).

## **ARGUMENT**

## I.      **Plaintiffs' Claims are Time-Barred and Have Not Plausibly Alleged Discovery-Tolling**

There is a one-year limitations period for bringing claims under Section 11 and Section 12, commencing when the plaintiff discovers or should have discovered the "the facts constituting the alleged fraud." *Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 349 (2d Cir. 1993).

A plaintiff is on inquiry notice of a securities law violation "when a reasonably diligent plaintiff would have discovered the facts constituting the violation." *Ho v. Duoyuan Glob. Water, Inc.*, 887 F. Supp. 2d 547, 564 (S.D.N.Y. 2012) (citing *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633 (2010)). Plaintiffs must plead compliance with the statute of limitation by setting forth: "(1) the time and circumstances of the discovery of the fraudulent statement; (2) the reasons why it was not discovered earlier (if more than one year has lapsed); and (3) the diligent efforts which plaintiff undertook in making or seeking such discovery." *Ho*, 887 F. Supp. 2d at 565.  *See Dodds*, 12 F.3d at 350 ("[W]hen the circumstances would suggest to an investor of ordinary intelligence the probability that she has been defrauded, a duty of inquiry arises, and knowledge will be imputed to the investor who does not make such an inquiry.").

Plaintiffs' Securities Act claims are untimely because they filed this lawsuit more than one year after they could have discovered, with reasonable diligence, the alleged failure to disclose the investigation. Plaintiffs' conclusory allegations are that they only learned of the investigation that "directly resulted in significant losses" to Baosheng's revenue in June 2023 from an unnamed, non-

party source whose reliability and credibility cannot be assessed. 2d Am. Compl. ¶¶ 81–83. Indeed, not only is this mysterious shareholder source unnamed, but Plaintiffs also provide no detail about the circumstances under which they finally came to learn about the investigation from him, her, or it and why they could not possibly have discovered it sooner. As shareholders themselves, Plaintiffs could have taken steps to request, obtain, and inspect Baosheng's books and records or made other efforts to assess whether there was any cause for concern upon the loss of Sogou as a customer.

Morever, Baosheng actually issued a press release on September 30, 2021 noting the negative impact on revenue "mainly caused by the decrease of $6.0 million in revenue from Sogou, as the authorized agency agreement between the Company and Sogou ended in March 2021," before which Sogou was the Company's "top publisher." *See* Ex. J. Hence Plaintiffs – all sophisticated investors – had inquiry notice of negative financial and business developments at Baosheng more than two years before this lawsuit was commenced.

## II.    Orient and Union's Section 12(a)(2) Claims Must Be Dismissed

Section 12(a)(2) of the Securities Act imposes liability on "anyone who 'offers or sells a security ... by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact.'" *In re Petrobras Sec. Litig.,* 116 F. Supp. 3d 368, 384 (S.D.N.Y. 2015) (citing 15 U.S.C. § 77*l*). To state a claim under Section 12(a)(2), Plaintiffs must show that: "(1) the defendant is a 'statutory seller'; (2) the sale was effectuated 'by means of a prospectus or oral communication'; and (3) the prospectus or oral communication 'include[d] an untrue statement of a material fact or omit[ted] to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading.'" *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010) (quoting 15 U.S.C. § 77*l*(a)(2)).

On June 1, 2023, the Supreme Court decided *Slack,* in which it construed Section 11 of the Securities Act strictly so as to prelude all non-public issuance transactions from that Section's ambit but left open the *possibility* that non-public issuance transactions could still fall within Section 12. *Slack Techs., LLC v. Pirani*, 598 U.S. 759, 767-68 (2023). Clinging to this dicta, Orient and Union not only base their claims on the thinnest of reeds, but further present an outright false characterization of Baosheng's supplemental registration statement in their Complaint in a desperate attempt to *manufacture* the nexus a broad reading of *Slack*'s footnote still requires.

For the avoidance of doubt, *Slack* did not authorize non-public issuance Section 12 claims but rather remanded the case for an evaluation of the nexus issues without deciding whether even the tightest nexus sufficed. Baosheng respectfully submits that expanding Section 12 is both against public policy and this case would not qualify even if such expansion were warranted. Moreover, in this particular case, even if there were an argument for Section 12 expansion and even if there were a sufficient (but as-yet-judicially defined) nexus, Orient and Union's private placement transactions under the SPA are *wholly foreign*, rendering the Supreme Court's *Morrison* precedent directly applicable and foreclosing them completely. *Morrison*, 561 U.S. at 267. And on top of all these fatal defects, Orient and Union fail to plausibly plead another necessary element for all Securities Act claims – use of interstate wires – as the SPA was negotiated exclusively between foreign parties and executed wholly abroad. *See* Shasha Mi Decl. ¶¶ 8–9.

### A. Orient and Union Cannot Demonstrate that the SPA was a Public Offering Issued Pursuant to a Prospectus.

Under Section 12(a)(2), a "seller" is liable for material misstatements or omissions made in a "prospectus" or oral communication relating to a prospectus in the offer or sale of the issuer's securities. This section is more restrictive than Section 11, which provides purchasers of a registered security with a cause of action against issuers and underwriters for material misstatements or omissions in a registration statement. In *Gustafson*, the Supreme Court clarified

that the term "prospectus" in Section 12(a)(2) is a term of art that refers *only* to offering documents used in connection with SEC-registered public offerings. *Gustafson v. Alloyd Co.*, 513 U.S. 561, 571 (1995) (holding that plaintiffs' private sale agreement did not qualify as a "prospectus").

Here, Orient and Union admit – because they must – that they acquired Baosheng's *unregistered* shares through the SPA, not through the February 2021 IPO.[6] 2d Am. Compl. ¶ 35 (alleging Orient and Union purchased "$10 million worth of unregistered BAOS ordinary shares . . . pursuant to a Regulation S or a Section 4(a)(2) exemption." The SPA sets out the explicit terms of the contract wherein Orient and Union purchased *restricted* shares in a non-public offering, as referenced by Plaintiffs, *i.e.*, securities exempt from registration under Regulation S or Section 4(a)(2) private placement exemption. *See* Ex. F at § 3.2(c). This private sale closed on March 18, 2021, *after* the IPO in February closed and *after* overallotment shares were issued on March 3, 2021. *See* Ex. G. The SPA simply does not qualify as a "prospectus" under the definition articulated in *Gustafson*, *i.e.*, "a document that describes a public offering of securities." 513 U.S. at 584. Because Orient and Union have not alleged that they purchased their shares in the IPO or any other public offering, they lack standing under Section 12(a)(2) and their claims must be dismissed. *See In re Petrobras Sec. Litig.,* 116 F. Supp. 3d at 384 (applying *Gustafson* to conclude plaintiffs lacked standing with respect to Section 12(a)(2) claim where plaintiffs failed to allege they purchased shares in public offering).

### B.    *Slack* Does Not Change the Outcome.

In *Slack*, the Supreme Court held in a unanimous decision that Section 11 "requires a plaintiff to plead and prove that he purchased shares traceable to the allegedly defective registration statement." 598 U.S. at 770. The Supreme Court left open the question of whether this standing

---

[6] Plaintiffs' allegations of oral "references" to the Prospectus do not change the express and explicit language of the documents governing the transaction nor do they magically confer standing.

requirement also applies to Section 12(a)(2) claims. *Id.* at 770 n.3. The plain text of the statute, precedent, and the overarching policy concerns of the Securities Act require and portend an analogous tracing requirement to claims under Section 12(a)(2) – one which Orient and Union cannot satisfy because they purchased unregistered shares in the Private Placement.

In fact, the Supreme Court closely examined the statutory text in *Gustafson*, noting that Section 12(a)(2) was "linked" to the new federal duties created by the Securities Act – namely, the registration and disclosure obligations concerning public offerings. *Gustafson*, 513 U.S. at 571. The "by means of a prospectus or oral communication" phraseology in Section 12(a)(2) requires a direct link between the "document soliciting the public to acquire securities," *id.* at 574, and the seller's "obligation to distribute the prospectus in the first place." *Id.* at 571. Applying *Gustafson*, the Second Circuit has explained that Section 12(a)(2) limits liability to public offerings only and does not encompass securities acquired "through a private transaction, whether primary or secondary." *Yung v. Lee*, 432 F.3d 142, 149 (2d Cir. 2005). Transactions that are exempt from registration, such as offerings and sales in an offshore transaction made under Regulation S or Section 4(a)(2)'s private offering exemption, do not carry a "legal obligation to provide a prospectus" and are not subject to liability under Section 12(a)(2). Indeed, the fact that a "prospectus was included in the sales offering documents made available to purchasers is irrelevant" where there is "no obligation to issue a prospectus for the sales at issue." *Gotham Holdings, LP v. Health Grades, Inc.*, 534 F. Supp. 2d 442, 445 (S.D.N.Y. 2008); *see also In re Giant Interactive Grp., Inc. Sec. Litig.*, 643 F. Supp. 2d 562, 574 (S.D.N.Y. 2009) ("[T]he [*Yung*] court established that the relevant inquiry in determining whether Section 12(a)(2) liability could attach was whether the sale of the security carried with it the legal obligation to provide a prospectus.").

Apparently conceding they did not purchase securities in the IPO, Orient and Union rather allege that underwriter Univest "made oral statements to [them] referencing the Prospectus as an inducement to enter" into the SPA.  2d Am. Compl. ¶ 105.  However, as noted above, even providing a copy of the Prospectus itself would be insufficient to give rise to liability, let alone an oral statement about the prospectus.

Orient and Union next attempt to salvage their Section 12(a)(2) claim by alleging – in an egregious attempt to mislead this Court – that the unregistered shares they purchased through the Private Placement were "registered" by means of a "second Registration Statement" filed on March 18, 2021 and declared effective by the SEC on March 30, 2021. 2d Am. Compl. ¶ 35.  However, as plainly demonstrated on its face, the March 18 filing was a *resale registration document* for unrestricted future sales of security. *See* Ex. H at 102 ('This prospectus relates to the *possible resale* by the Selling Shareholders [i.e., Orient and Union]") (emphasis added) and II-2 (Item 7. Recent Sales of Unregistered Securities). It does not and cannot change the nature of Orient and Union's underlying transaction or confer standing for a Section 12(a)(2) claim where there is none.

The SPA directly refutes Orient and Union as well.  First, the SPA states that the securities purchased therein were not "integrated with prior offerings by the Company."  Ex. F § 3.1(y).  For the avoidance of doubt, Univest was not a signatory to this private contract between Baosheng and Orient and Union, and Univest is nowhere mentioned in the contract. There are also numerous statements in the SPA that the securities purchased are exempt from registration, including representations by Orient and Union that the issuance of securities was intended to be exempt from the registration requirements of pursuant to Regulation S and Section 4(a)(2) of the Securities Act. *Id.* § 3.2(c)(iv).

Setting aside the fact that Orient and Union do not (and cannot) even provide detail concerning any "oral statements," for motion to dismiss purposes, the fact that such baseless,

conclusory allegations are given any favorable inference just serves to underscore why a direct tracing requirement must hold for all Section 12(a)(2) claims, regardless of *Slack dicta*.  While Plaintiffs may point to the footnote in *Slack* cautioning lower courts that Section 11 and Section 12(a)(2) do not "necessarily travel together," 598 U.S. at 770 n. 3, this hardly warrants the conclusion that Section 12(a)(2) liability extends so broadly as to cover securities with such a tenuous connection to the public offering as alleged here. Indeed, applying a traceability requirement while also preserving strict liability *prevents* the dilution of responsibility and reinforces the protective framework intended by the Securities Act: protecting market integrity and safeguarding everyday investors – not sophisticated investors like Orient and Union who enjoy direct access to issuers and purchase securities under a private agreement as opposed to a public offering.

C. ***Morrison* Precludes Orient and Unions' Claims Based on Wholly Foreign Transactions.**

In *Morrison*, the Supreme Court established a transactional test that limited the extraterritorial reach of the federal securities laws to "transactions in securities listed on domestic exchanges[ ] and domestic transactions in other securities." 561 U.S. at 267. *Morrison* concerned claims brought under Section 10(b) of the Securities Exchange Act of 1934, but courts have applied *Morrison* to claims brought under the Securities Act as well.  *See, e.g.*, *In re Vivendi Universal, S.A., Sec. Litig.*, 842 F. Supp. 2d 522, 529 (S.D.N.Y. 2012) ("*Morrison* permits Securities Act claims only 'in connection with the purchase or sale of a security listed on an American stock exchange, and the purchase or sale of any other security in the United States.'").

The filing of a registration statement alone does not create standing. *In re Smart Techs., Inc. S'holder Litig.*, 295 F.R.D. 50, 56–57 (S.D.N.Y. 2013). A private plaintiff does not have standing to bring a Section 11 or Section 12(a)(2) claim "if a foreign issuer registered shares in the United States pursuant to section 6 of the Securities Act" unless the individual "acquired" (Section

11) or "purchased" (Section 12(a)(2)) the security pursuant to the registration statement or prospectus. *Id.* at 57 n.10.  Courts in the Second Circuit also routinely find that the fact that a security is cross-listed on a domestic exchange like NASDAQ does not render the transaction "domestic" under *Morrison* if the purchase of shares occurs extraterritorially. *See SEC v. Revelation Cap. Mgmt. Ltd.*, 246 F. Supp. 3d 947, 953 (S.D.N.Y. 2017) (citing *City of Pontiac Policemen's and Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 181 (2d Cir. 2014)).

Here, Baosheng, Orient, and Union are all foreign entities, the SPA was neither negotiated nor signed in the United States, and the purchased shares were issued in the Private Placement. Sasha Mi Decl. ¶ 9.  Orient and Union did not purchase these ordinary shares pursuant to the IPO Prospectus but through an extraterritorial private contract. And as established above, they cannot manufacture a claim by incorrectly insisting that these shares were later "registered" (they were not) when they signed a contract acknowledging these purchases as "offshore transactions" that were "exempt" and "unregistered" securities.  Ex. F §§ 3.2(c), 4.1(b).

### D.    Orient and Union Cannot Plausibly Allege Use of Interstate Wires for a Wholly Foreign Transaction

Violations of Section 12(a)(2) are explicitly premised upon the use of "interstate commerce," which is defined in Section 2(a)(7) of the Securities Act to mean "trade or commerce in securities or any transportation or communication relating thereto among the several States or between the District of Columbia or any Territory of the United States and any State or other Territory, or between any foreign country and any State, Territory, or the District of Columbia." *Franklin Savings Bank of N.Y. v. Levy*, 551 F. 2d 521 (2d Cir. 1977); *Schillner v. H. Vaughan Clarke & Co.*, 134 F.2d 875 (2d Cir. 1943).  The Complaint makes a conclusory assertion that the interstate wires were used, but beyond identifying the "mails and telephonic communications and facilities of the NASDAQ and of EDGAR," Plaintiffs fail to provide further detail. 2d Am. Compl. ¶ 23. Setting aside Golden's alleged purchase of Baosheng's shares from Univest, it strains

credulity to believe that Orient and Union's purchase of shares in the Private Placement through the SPA – a wholly foreign transaction of foreign parties – could involve any interstate wires. Indeed, the SPA signature page lists addresses in China for both Orient and Union, *see* Ex. F (PDF pp. 36–37), and the contract was executed electronically and by email in China. *See* Shasha Mi Decl. ¶ 9.

## III.    The Complaint Does Not Plausibly Allege that the Investigation was Material

The Securities Act, while providing for potentially strict liability, imposes strict standing and privity requirements. *See Slack*, 598 U.S. at 763. Section 11 provides a right of action for material misstatements or omissions in (and only in) a registration statement, and Section 12(a)(2) provides a right of action for material misstatements or omissions in (and only in) a "prospectus or oral communication." 15 U.S.C. §§ 77k(a), 77l(a)(2). To prevail on a Section 11 or 12(a)(2) claim, Plaintiffs must allege facts sufficient to show that the Prospectus or Registration Statement contained: (i) a material misrepresentation; (ii) a material omission in contravention of an affirmative duty to disclose the omitted information; or (iii) a material omission of information that is necessary to prevent an existing statement from being misleading. *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d at 360.[7] A statement or omission is material if "there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to act." *ECA & Local 134 Ibew Joint Pension Trust v. JP Morgan Chase Co.*, 553 F.3d 187 (2d Cir. 2009). That is, a fact is material if there is a substantial likelihood that its disclosure would significantly alter the total mix of information made available and thereby "mislead a reasonable investor regarding

---

[7] All the alleged misrepresentations or omissions underlying the Section 11 and Section 12 claims are the same and therefore analyzed together. *See, e.g., Police and Fire Ret. Sys. of the City of Detroit v. La Quinta Hldgs. Inc.*, 2017 WL 4082482, at *5 (S.D.N.Y. Aug. 24, 2017) ("The standard for determining whether a defendant made a material misstatement or omission is essentially the same under Section 10(b), Section 11, and Section 12.") (citing *Rombach v. Chang*, 355 F.3d 164, 172 n.7 (2d Cir. 2004)).

the nature of the securities offered." *Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 357 (2d Cir. 2002). In assessing materiality, courts evaluate both qualitative and quantitative factors, "adjudged by the facts as they existed when the registration statement became effective." *Flag Telecom Holdings, Ltd. Sec. Litig.*, 308 F. Supp. 2d 249, 254 (S.D.N.Y. 2004); *see also IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp.*, 783 F.3d 383, 390 (2d Cir. 2015) (listing the quantitative and qualitative factors for evaluating materiality); *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 580-81 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015) (contemporaneous falsity required for false or misleading statements which was missing).

The Complaint boils down to one wholly conclusory allegation—that the IPO materials omitted the material fact that Baosheng "was under investigation by Chinese authorities" due to its ties to "other Chinese entities that were engaging in activities illegal under the laws of China" in the months before the IPO. 2d Am. Compl. ¶¶ 36–54. What Plaintiffs fail to acknowledge in the Complaint is that the Prospectus and Registration Statement warned of the possibility that Baosheng could face government investigations, criminal penalties, and liability for the unlawful action of its clients. *See* Ex. C at 15-16, 18, 21-22, 26, 29. Despite these detailed risk disclosures, all Plaintiffs made the business decision to purchase Baosheng's shares. Indeed, none of the Plaintiffs have alleged in the Complaint that, had they known of the investigation, they would not have purchased Baosheng's shares.

Further, materiality must be determined as of the time Baosheng is alleged to have been required to disclose the investigation – in February 2021 as part of the IPO – but Plaintiffs' claims about the investigation are either undated or clearly post-date the IPO. *See* 2d Am. Compl. ¶¶ 47, 48, 51. In particular, Plaintiffs allege that the investigation did not conclude until the second half of 2021, *after* Plaintiffs purchased their shares in the first quarter of 2021. According to Plaintiffs, Baosheng should have predicted in February 2021 the likelihood of a forthcoming fine (which did

not happen) and material disruption of its operations (which did not happen) and disclosed the *likelihood* to investors. *Id.* ¶ 53.

Plaintiffs' allegations amount to nothing more than a demand that companies must be clairvoyant about possible worst outcomes in third-party investigations and immediately disclose any prognostications and inferences therefrom. Or, worse yet, to confess to something that has not yet materialized. This is not the law. Courts routinely reject such pleadings that depend on a premature disclosure or a "chain of contingencies to materialize." *Diehl v. Omega Protein Corp.*, 339 F. Supp. 3d 153, 167 (S.D.N.Y. 2018). *See City of Pontiac*, 752 F.3d at 184 ("Disclosure is not a rite of confession"); *Constr. Laborers Pension Tr. for S. Cal. v. CBS Corp.*, 433 F. Supp. 3d 515, 538 (S.D.N.Y. 2020) ("An increase in a risk does not mean the risk has already come to pass"); *In re TVIX Sec Litig.*, 25 F. Supp. 3d 444, 450 (S.D.N.Y. 2014) (rejecting "hindsight" or "backward-looking assessment"); *Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, 538 F. Supp. 2d 662, 672 (S.D.N.Y. 2008) ("An earlier statement is not somehow made misleading simply because it failed to foretell a ... problem which later materialized.").

## IV.    Baosheng Had No Duty To Disclose The Investigation As A Matter Of Law

An alleged omission is not actionable "in the absence of a duty to disclose, even if the information would have been material." *In re Morgan Stanley Tech. Fund Sec. Litig.,* 643 F. Supp. 2d 366, 375 (S.D.N.Y. 2009) (citing *Resnik v. Swartz*, 303 F.3d 147, 154 (2d Cir. 2002)). To plead their Securities Act claims under both Sections 11 and 12(a)(2), Plaintiffs must allege that Baosheng "had a legal obligation to disclose the allegedly omitted information." *In re Merrill Lynch & Co., Inc. Research Reps. Sec. Litig.*, 272 F. Supp. 2d 243, 248 (S.D.N.Y. 2003). This duty "arises only when the issuer knew – or should have known – of the omitted fact at the time the statements were made." *Wandel v. Gao*, 590 F. Supp. 3d 630, 640 (S.D.N.Y. 2022) (citations

omitted). Again, "[c]lairvoyance is not required." *Id.* (citing *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000)).

In the Second Circuit, "[t]here is no free-standing obligation under United States law to disclose even criminal conduct that is uncharged—let alone insufficient regulatory compliance." *Jiajia Luo v. Sogou, Inc.*, 465 F. Supp. 3d 393, 413 (S.D.N.Y. 2020). "[C]ompanies do not have a duty to disclose uncharged, unadjudicated wrongdoing." *City of Pontiac*, 752 F.3d at 184; *see also In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 650 (S.D.N.Y. 2017) (there is "no affirmative duty to speculate or disclose uncharged, unadjudicated wrongdoing or mismanagement"). Absent an express prior disclosure about the matter, "a corporation has no affirmative duty to speculate or disclose uncharged, unadjudicated wrongdoings or mismanagement, illegal internal policies, or violations of a company's internal codes of conduct and legal policies." *In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *31. (S.D.N.Y. Sept. 28, 2012), *aff'd sub nom. City of Pontiac*, 752 F.3d 173.

By Plaintiffs' own allegations (which Baosheng credits as true only for the purpose of this motion but notes their falsity), at the time of the IPO, Baosheng was only the subject of an ongoing investigation, not any criminal charge or adjudication. *See* 2d Am. Compl. ¶ 47. As a matter of law, Baosheng had no duty to disclose the investigation at the time in question.

As best as Baosheng can understand, Plaintiffs appear to know this but try avoid it by arguing that Item 8 of Form 20-F required Baosheng to affirmatively disclose the investigation. 2d Am. Compl ¶¶ 88, 110. However, the language in Item 8 only requires disclosures of "legal or arbitration proceedings." Form 20-F, Item 8(7) (detailing foreign issuers disclosures). A "proceeding" is plainly not the same as an "investigation." Reference to practice under Regulation S-K, Item 103 is illuminating on this point, as it is well understood that "[a]n investigation on its own is not a 'pending legal proceeding' until it reaches a stage when the agency or prosecutorial

authority makes known that it is contemplating filing suit or bringing charges." *Richman v. Goldman Sachs Grp., Inc.*, 868 F. Supp. 2d 261, 272 (S.D.N.Y. 2012).  Again, Plaintiffs do not allege that Baosheng was the subject of anything other than an investigation.  Accordingly, Item 8 does not alter the conclusion that Baosheng had no duty to disclose the investigation. To the extent Plaintiffs attempt to hang their hat on Baosheng's duty to disclose a potential fine that may have been assessed after the IPO, that contention should be rejected.  Plaintiffs seek to hold Baosheng liable for not correctly foretelling possible future outcomes (predicated on a fine Plaintiffs allege but in fact did not happen) and ignore that Baosheng "had no affirmative duty to specifically accuse itself of wrongdoing." *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d at 651.

**V.     Plaintiffs' Complaint of Allegedly Omitted Facts Fails to Note the Disclosed Risks**

The Complaint provides no detail about the "investigation" or why Chinese Authorities supposedly imposed a "multi-million RMB fine" as to Baosheng in the second half of 2021 (which did not happen). 2d Am. Comp. ¶ 51. However, another public pleading by these same Plaintiffs does contain both immunizing particularity and Rule 9b-invoking scienter.  Ex. L (Cayman Petition).  In the Cayman Petition, Orient alleges that there was a "criminal investigation" not of Baosheng itself, but into Baosheng's customer Sogou, relating to the search ranking advertising services Sogou provided to another company.  Id. at 43–44.  The Cayman Petition goes on to allege (and Baosheng vigorously disputes) that when the criminal investigation of Sogou concluded in the second half of 2021, Baosheng was found "liable for promoting" the gaming company. Id. at 44(c).

Even taking the false Cayman Petition pleadings as true here (which the Court is not required to do), this exact risk was specifically disclosed in the Prospectus and had yet to materialize at the time of Plaintiffs' transactions because, by their own allegations, the investigation was still ongoing. *See Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2, 5 (2d Cir. 1996)

(dismissing Securities Act claim where, as here, the IPO offering documents "warn[ed] investors of exactly the risk the plaintiffs claim was not disclosed"). Courts should dismiss complaints predicated on IPO statements where the risks and facts underlying it have been disclosed. *See, e.g.*, *Davidoff v. Farina*, 2005 WL 2030501, at *10 (S.D.N.Y. Aug. 22, 2005).

Indeed, Baosheng's offering materials "warned of the exact risk that was threatened and [allegedly] later materialized." *Jiajia Luo*, 465 F. Supp. 3d at 411. For instance, in the Prospectus, Baosheng informed investors that it was exposed to liability and could face "civil and criminal penalties" and material "business interruptions" for their *media partners*' non-compliance with the Advertising Laws (even noting Baosheng had no ability to "identify" or "correct in a prompt and proper manner" their partners' non-compliance). Ex. C at 21, 22, 26. These materials also specifically disclosed that any failure to renew its agency agreement with Sogou could have a material impact on Baosheng's operations. Ex. C at 15-16, 18.

Accordingly, Plaintiffs' argument that Baosheng failed to disclose the "significant risk" of losing its "biggest client" (not pleaded but assumed to be a reference to Sogou) or being under investigation for penalties is *directly contradicted* by the offering materials, which clearly identified Sogou as a "top customer," identified the risk of its revenue concentration with Sogou, described various efforts to "mitigate" the company's "over-reliance" on Sogou, and even disclosed the risk of liability and business interruptions for their customers' non-compliance with the Advertising Laws. Ex. C at 21, 22, 26, 105. The Prospectus made clear to investors that Baosheng's agency agreement with Sogou was subject to annual renewal about which there was no guarantee and that "any failure to renew these agreements or any termination of such agreements" could have a material impact on Baosheng's operations. *Id.* at 15-16, 18. Plaintiffs do not, and cannot, plead "how further disclosure would have significantly altered the total mix of information available to a reasonable investor or disclosed a trend not otherwise explained in the offering documents." *Asay*

*v. Pinduoduo Inc.*, 18-cv-7625, 2020 WL 1530745, at \*10 (S.D.N.Y. Mar. 30, 2020), *aff'd*, 2021 WL 3871269 (2d Cir. Aug. 31, 2021). In the context of strict liability Securities Act omission cases, disclosures actually made are not fact questions, they are legal question that may be resolved on a motion to dismiss. *See generally, Davidoff*, 2005 WL 2030501, at \*1.

## VI.    Plaintiffs' Own Allegations Negate Causation

Claims under Sections 11 and 12(a)(2) are subject to an affirmative defense of "negative causation," which precludes recovery for price declines that are not the result of an alleged misrepresentation. *See* 15 U.S.C. §§ 77k(e) (Section 11 affirmative defense), 77*l*(b) (Section 12(a)(2) affirmative defense). While Plaintiffs do not have to affirmatively plead loss causation for Securities Act claims, those claims nonetheless may be dismissed if "it is apparent on the face of the complaint that the alleged loss is not causally connected to the misrepresentations at issue." *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, 774 F. Supp. 2d 584, 588 (S.D.N.Y. 2011); *see also McMahan & Co. v. Wherehouse Entm't*, 65 F.3d 1044, 1049 (2d Cir. 1995) ("A price decline before disclosure may not be charged to defendants."). Here, Plaintiffs claim that the 96% decline in Baosheng's stock price is caused by the purported "investigation." 2d Am. Compl. ¶ 84. However, Plaintiffs admitted in the Cayman Proceeding – a bad faith parallel litigation designed to wrest control of Baosheng from its management – that "the loss of a key client," which was identified as Sogou, a customer accounting for more than 40% of Baosheng's revenue, "[was] the cause" of the significant decline in Baosheng's revenue. Ex. L (Cayman Petition) ¶¶ 49, 54. Judicial estoppel prevents Plaintiffs from arguing to the contrary here.

## VII.    Plaintiffs Fail to Satisfy the Applicable Rule 9(b) Heightened Pleading Standard

The Complaint hinges on allegations that Baosheng's executive team knowingly "concealed" material information to "induce" Plaintiffs to enter the SPA (as to Orient and Union) and purchase common shares (as to all Plaintiffs). *See* 2d Am. Compl. ¶¶ 53 (directors and

executives "knew"), 104-05 (inducement), and 109 ("concealed and failed to disclose material facts"). Although Plaintiffs purport to plead strict liability claims with a generic fraud disclaimer, their allegations unavoidably sound in fraud.[8] *See Jiajia Luo*, 465 F. Supp. 3d at 408 & n.7 (where a complaint alleges that defendants "knew" and "were aware" of adverse, undisclosed facts and hid them, the complaint is "replete with explicit claims of fraud").

Thus, Plaintiffs' claims are subject to Rule 9(b)'s heightened pleading requirements.[9] *See, e.g.*, *In re Fuwei Films Sec. Litig.*, 634 F. Supp. 2d 419, 436 (S.D.N.Y. 2009) ("[C]ourts have repeatedly noted that the insertion of a simple disclaimer of fraud is insufficient to avoid Rule 9(b) standards when Securities Act claims sound in fraud.") (internal quotation marks omitted). Rule 9(b) requires that Plaintiffs: "(1) specify the statements that the plaintiff[s] contend[] were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach*, 355 F.3d at 170. Plaintiffs cannot "couple[] a factual statement with a conclusory allegation of fraudulent intent" to support the inference that defendants acted recklessly or with fraudulent intent; Plaintiffs must "explain why the statements were fraudulent." *Id.* at 172, 176.

The Complaint falls far short of satisfying Rule 9(b)'s requirements. Plaintiffs' vague, conclusory allegations of an "investigation" that resulted in a "multi-million RMB fine" at some unspecified point in "the second half of 2021" depends on an anecdote from an anonymous source with "inside knowledge." 2d Am. Compl. ¶¶ 51, 82; *see Miao v. Fanhua, Inc.*, 442 F. Supp. 3d

---

[8] The gravamen of the Cayman Petition also makes the Plaintiffs' coy disclaimer of scienter particularly meaningless.

[9] Ultimately, though, Plaintiffs' threadbare assertions fail to meet the plausibility standard under Federal Rule of Civil Procedure 8(a). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted).

774, 800 (S.D.N.Y. 2020) ("courts have tended not to credit uncorroborated statements of unnamed witnesses who are sourced secondhand—with whom plaintiffs' counsel have not themselves interacted").

Furthermore, as discussed above, the Complaint is utterly devoid of any detail on "who, when, or how" as to what Chinese laws were allegedly violated, by whom, which Chinese authority led the investigation, whether or how Baosheng was involved, and more. Plaintiffs do not point to any regulatory enforcement action or findings of wrongdoing based on Baosheng's own practices. Having failed to identify "even a single instance in which the [regulator] challenged" the Company's own conduct, *In re Yukos Oil Co Sec Litig.*, 2006 WL 3026024, at *14 (S.D.N.Y. Oct. 25, 2006), the Complaint—based on an isolated, unverified account—falls short of establishing the requisite degree of particularity required by Rule 9(b).

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss the Complaint with prejudice.

Dated: New York, New York
      May 22, 2024

                                        Respectfully submitted,

                                        HOLLAND & KNIGHT LLP

                                        By:  _____ */s/ Warren E. Gluck* _____

                                        Warren E. Gluck, Esq.
                                        Jessica B. Magee, Esq. (*pro hac vice*)
                                        Jasmine S. Chean, Esq.
                                        Kayla Joyce, Esq.
                                        787 Seventh Avenue, 31st Floor
                                        New York, NY 10019
                                        Tel:  212-513-3200
                                        Email: Warren.Gluck@hklaw.com
                                              Jessica.Magee@hklaw.com
                                              Jasmine.Chean@hklaw.com
                                              Kayla.Joyce@hklaw.com

                                        *Counsel for Defendant*
                                        *Baosheng Media Group Holdings Limited*