UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Orient Plus International Limited; Union Hi-
Tech Development Limited; and Golden Genius
International Limited,

                    Plaintiffs,

vs.

Baosheng Media Group Holdings Limited;
Wenxiu Zhong; Sheng Gong; Yu Zhong; Zuohao
Hu; Adam (Xin) He; Yue Jin; Yanjun Hu;
Univest Securities, LLC; The Benchmark
Company, LLC; WestPark Capital, Inc.;
Friedman LLP; and Marcum LLP,

                    Defendants.

Civil Action No. 1:24-cv-00744-JLR

---

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS UNIVEST SECURITIES, LLC, THE BENCHMARK COMPANY, LLC,**
**AND WESTPARK CAPITAL, INC.'S**

**MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

**AND**

**JOINDER TO BAOSHENG MEDIA GROUP HOLDINGS LIMITED'S**
**MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

## **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF FACTS ................................................................................. 3

    A.   BAOS's IPO ............................................................................................ 3

    B.   BAOS's Stock Price Declines As It Makes Negative Financial
         Disclosures, Including The Loss Of Its Largest Customer, Sogou, In Early
         2021........................................................................................................... 4

    C.   Plaintiffs Allege That In Reality, BAOS Was Under An Undisclosed
         Government Investigation, And That This Investigation "Became Clear"
         To The Underwriters Pre-IPO.................................................................. 5

III.  LEGAL STANDARDS ...................................................................................... 6

IV.  ARGUMENT ..................................................................................................... 7

    A.   The Complaint Cannot Survive Rule 9(b). .............................................. 7

         1.   Rule 9(b) Applies Where Securities Act Claims Sound In Fraud. ............ 7

         2.   Plaintiffs' Boilerplate Disclaimers Cannot Avoid Rule 9(b)'s
               Application to Their Claims Against The Underwriters............................ 8

         3.   The Complaint Fails to Satisfy the Heightened Pleading Standards
               Of Rule 9(b) As To The Underwriters. ..................................................... 12

    B.   Even Under A Negligence Theory, The Complaint Fails..................................... 14

         1.   The Underwriters May, As A Matter of Law, Rely on Expertised
               Materials Such as Audited Financials And Legal Opinions When
               Conducting Reasonable Due Diligence. .................................................. 15

         2.   Reasonableness Exists Even Assuming The Disclosures Regarding
               Chinese Governmental Investigations Were Not-Expertised. .................. 16

V.   JOINDER IN BAOS'S MOTION TO DISMISS ............................................ 17

VI.  CONCLUSION.................................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Alcatel Sec. Litig.*,
  382 F. Supp. 2d 513 (S.D.N.Y. 2005)......................................................................12

*In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*,
  794 F. Supp. 1424 (D. Ariz. 1992) ........................................................................16

*In re Ambac Financial Group, Inc. Securities Litig.*,
  693 F. Supp. 2d 241 (S.D.N.Y. 2010)....................................................................11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................6

*Carroll v. LeBoeuf, Lamp, Greene & MacRae, LLP*,
  623 F. Supp. 2d 504 (S.D.N.Y. 2009).......................................................................9

*In re Chembio Diagnostics, Inc. Sec. Litig.*,
  616 F. Supp. 3d 192 (E.D.N.Y. 2022) ....................................................................11

*In re Countrywide Financial Corp. Sec. Litig.*,
  588 F.Supp.2d 1132 (C.D.Cal. 2008) ....................................................................15

*In re Elan Corp.*,
  2004 WL 1305845 (S.D.N.Y. May 18, 2004) ........................................................12

*Endo v. Albertine*,
  863 F. Supp. 708 (N.D. Ill. 1994) ....................................................................16, 17

*Feit v. Leasco Data Processing Equip. Corp.*,
  332 F. Supp. 544 (E.D.N.Y. 1971) ........................................................................16

*In re Gentiva Sec. Litig.*,
  932 F.Supp.2d 352 (E.D.N.Y. 2013) ..................................................................7, 14

*Gotham Holdings, LP v. Health Grades, Inc.*,
  534 F. Supp. 2d 442 (S.D.N.Y. 2008).....................................................................19

*Harris v. Amtrust Fin. Servs., Inc.*,
  135 F. Supp. 3d 155 (S.D.N.Y. 2015).....................................................................14

*In re HEXO Corp. Securities Litigation*,
  524 F.Supp.3d 283 (S.D.N.Y. 2021).......................................................................11

*Johnson v. NYFIX, Inc.*,
   399 F. Supp. 2d 105 (D. Conn. 2005) ...................................................................................12

*In re JP Morgan Chase Sec. Litig.*,
   363 F. Supp. 2d 595 (S.D.N.Y. 2005) .........................................................................7, 10, 12

*Luo v. Sogou, Inc.*,
   465 F. Supp. 3d 393 (S.D.N.Y. 2020) ................................................................................4, 8

*McDonald v. City of Troy*,
   542 F. Supp. 3d 161 (N.D.N.Y. 2021) ...............................................................................10

*In re Meta Materials Inc. Sec. Litig.*,
   2023 WL 6385563 (E.D.N.Y. 2023) ...................................................................................11

*In re Micro Focus Int'l Plc Sec. Litig.*,
   2020 WL 5817275 (S.D.N.Y. 2020) .....................................................................................7

*Pani v. Empire Blue Cross Blue Shield*,
   152 F.3d 67 (2d Cir. 1998) ..................................................................................................15

*Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*,
   645 F. Supp. 2d 210 (S.D.N.Y. 2009) ............................................................................7, 12

*In re Qudian Inc. Sec. Litig.*,
   2019 WL 4735376 (S.D.N.Y. Sept. 27, 2019) .....................................................................6

*In re Refco, Inc. Sec. Litig.*,
   503 F. Supp. 2d 611 (S.D.N.Y. 2007) ...........................................................................18, 19

*Reynolds-Sitzer v. Eisai, Inc.*,
   586 F. Supp. 3d 123 (N.D.N.Y. 2022) ..........................................................................2, 3, 14

*Ross v. Lloyds Banking Group, PLC*,
   2012 WL 4891759 (S.D.N.Y. 2012) ...................................................................................13

*Sado v. Israel*,
   882 F. Supp. 1401 (S.D.N.Y. 1995) .....................................................................................9

*Schneider v. Traweek*,
   1990 WL 169856 (C.D. Cal. 1990) .....................................................................................16

*Shuvalova v. Cunningham*,
   2010 WL 5387770 (N.D. Cal. 2010) .....................................................................................9

*In re Software Toolworks Inc.*,
   50 F.3d 615 (9th Cir. 1994) .................................................................................................15

*South Cherry St. v. Hennessee Group*,
    573 F.3d 98 (2d Cir. 2009)..........................................................................................10

*SUN, A Series of E Squared Investment Fund, LLC v. Sundial Growers Inc.*,
    2021 WL 4482276 (S.D.N.Y. 2021)..............................................................................7

*Teams. Local 445 v. Dynex Cap*,
    531 F.3d 190 (2d Cir. 2008)..........................................................................10, 13, 14

*Teamsters Allied Benefit Funds v. McGraw*,
    2010 WL 882883 (S.D.N.Y. 2010)..............................................................................13

*Yung v. Lee*,
    432 F.3d 142 (2d Cir. 2005)........................................................................................18

**Statutes**

15 U.S.C. § 77k(a), § 77l(a)(2) ............................................................................................6

Defendants Univest Securities, LLC ("**Univest**"), The Benchmark Company, LLC ("**Benchmark**"), and Westpark Capital, Inc.'s ("**Westpark**," collectively with Univest and Benchmark, the "**Underwriters**"), respectfully move to dismiss Plaintiffs' Second Amended Complaint (the "**Complaint**" or "**SAC**").

## I.     <u>INTRODUCTION</u>

This is a securities fraud claim arising out of Baosheng Media Group Holdings Limited ("BAOS" or the "Company")'s February 2021 IPO on the Nasdaq. Plaintiffs allege that, pre-IPO, BAOS "knew" that it was under a major government investigation, which had "essentially shut down" its business. SAC ¶ 53. Plaintiffs also allege that the existence of this investigation and the "material operational disruptions caused by the ... investigation ... *became clear*" to the Underwriters as a result of their close contacts with the Company. *Id.* ¶ 59 (emphasis added).

Despite this, Plaintiffs allege that BAOS and its Underwriters chose not to disclose. Instead, one of BAOS's major shareholders secretly took control of BAOS and puppeteered it to falsify IPO registration documents, which claimed that there were no material legal proceedings other than two garden variety civil lawsuits. *Id.* ¶¶ 36, 43. Plaintiffs allege that the Underwriters, despite the truth being "clear" to them, did nothing to correct these falsehoods, and that Univest even affirmed these false statements to Plaintiffs, in order to sell BAOS's stock to them.

The nature and severity of these allegations means that Plaintiffs complaint must be dismissed, as to the Underwriters, for several reasons, regardless of whether they sound in fraud or negligence.

***First***, seeking a lower pleading standard, Plaintiffs conclusorily cast their claims against the Underwriters in terms of negligence. This fails because: (i) Plaintiffs affirmatively alleged that the fraud "became clear" to the Underwriters, who hid it from the investing public; (ii)

Plaintiffs pled only a single course of conduct sounding squarely in fraud, while failing to plead *any* distinct facts to support a negligence theory; and (iii) all of Plaintiffs' attempts to disclaim fraud are conclusory boilerplates. Indeed, even ignoring the allegation of a known falsehood, the complaint still does not sound in negligence because it is not plausible for any underwriter of a NASDAQ IPO to overlook an "essentially shut down" company with a puppet CEO, unless such underwriter was extremely reckless. The complaint must satisfy Rule 9(b).

*Second*, under Rule 9(b), "[p]leading fraud with particularity means specifying the who, what, when, where, and how of the fraud." *Reynolds-Sitzer v. Eisai, Inc.*, 586 F. Supp. 3d 123, 135 (N.D.N.Y. 2022) (cleaned up). But here, all of the fact allegations about the Underwriters appear in just *six* conclusory paragraphs, three of which are copies of the other.

In these, Plaintiffs state that the fraud "became clear" to Underwriters simply because they were in "communication" with BAOS. *Cf.* SAC ¶¶ 56-59 *with* ¶¶ 61-63. But nothing is said about the "who, what, when, where, and how." In light of Plaintiffs' allegation that they learned of the fraud through access to "inside knowledge of the operations and conduct of BAOS executives leading up to the IPO" (SAC ¶ 82), this failure to particularize is fatal.

*Third*, even treating the claims against the underwriters as sounding in negligence, they still fail. Underwriters can, as a matter of law, rely on expertised materials such as audited financials and legal opinions when conducting due diligence. Here, Dentons LLP, BAOS's PRC counsel, gave an opinion letter attached to the registration statement confirming that BAOS's disclosures concerning legal proceedings and risks were accurate. The Underwriters were entitled to rely on it when conducting "reasonable" due diligence.

*Finally*, Orient and Union's § 12(a)(2) claim arises from an *unregistered*, foreign private placement, warranting dismissal as discussed in BAOS's motion, in which the Underwriters join.

## II.    <u>STATEMENT OF FACTS</u>

### A.    <u>BAOS's IPO</u>

BAOS is an online marketing solutions provider. SAC ¶ 5. It advises advertisers on online marketing strategies, offers advertising optimization services, and facilitates the deployment of online ads. *Id.*

BAOS filed its first Registration Statement with the SEC on July 10, 2020. *Id.* ¶¶ 30-31 Following amendments, the Registration Statement became effective on February 5, 2021. *Id.* BAOS then completed its IPO and was listed on NASDAQ on February 10, 2021. *Id.*

Univest served as the lead underwriter for BAOS's IPO, while Benchmark and WestPark served as secondary underwriters. *Id.* ¶¶ 56, 60.

Plaintiff Golden purchased $3.5 million BAOS shares from Univest on March 2, 2021. *Id.* ¶ 34. Plaintiffs Orient and Union purchased $10 million BAOS shares from BAOS on March 17, 2021. *Id.* ¶ 35.

BAOS's IPO registration statement and prospectus disclosed no active government investigations, and under "Risk Factors" and "Business – Legal Proceedings", disclosed one pending and one recently decided material legal proceeding. SAC ¶¶ 36, 43; *cf.* Ex. A (IPO registration statement and prospectus), at 25, 108-109.

The registration and offering materials stated, under "**LEGAL MATTERS**", that "Legal matters as to PRC law will be passed upon for us by Dentons LLP." *Id.* at 159. Accordingly, Dentons LLP, as "PRC counsel for the Company," issued an Opinion Letter on the subject that accompanied the IPO materials. Ex. B. The Opinion Letter defined "Governmental Agency" and "Governmental Authorization" as follows:

> "<u>Governmental Agency</u>" means any national, provincial or local governmental, regulatory or administrative authority, agency or commission in the PRC, or any court, tribunal or any other judicial or arbitral body in the PRC, or anybody

exercising, or entitled to exercise, any administrative, judicial, legislative, **police**, regulatory, or taxing authority or power of similar nature in the PRC.

"Governmental Authorization" means any license, approval, consent, waiver, order, sanction, certificate, authorization, filing, declaration, disclosure, registration, exemption, permission, endorsement, annual inspection, clearance, qualification, permit or license by, from or with any Governmental Agency pursuant to any PRC Laws.

*Id.* at 2. Under these definitions, it opined:

The ... **business license** ... of each PRC Subsidiaries comply with the requirements under applicable PRC Laws in all material respects, and have been approved by the competent **Governmental Agencies** to the extent such approval is required, and are in full force and effect. To the best of our knowledge after due inquiry, none of the PRC Subsidiaries has taken any corporate action, nor have any legal proceedings commenced against it, ... **for any adverse suspension, withdrawal, revocation or cancellation of any of its Governmental Authorizations**.

*Statements in the Prospectus*. All statements set forth in the Prospectus under the captions "Prospectus Summary", "**Risk Factors**", "Dividend Policy", "**Business**", "Regulations", and "Taxation", in each case **insofar as such statements describe or summarize PRC legal or regulatory matters, constitute our opinions on such matters in all material aspects, and are fairly disclosed and correctly set forth therein, and nothing has been omitted from such statements which would make the same misleading in any material aspects.**

*Id.* at 3-4 (bold emphasis added).

**B.    BAOS's Stock Price Declines As It Makes Negative Financial Disclosures, Including The Loss Of Its Largest Customer, Sogou, In Early 2021.**

BAOS's IPO registration materials, which identified its largest customer by far as a company called "Sogou", warned of the risks of its revenue concentration with this one customer, and further warned of the risk that its contract with Sogou may not be renewed. Ex. A (Feb. 9, 2021 IPO Registration Statement and Prospectus), at 18-19 (warning that "Certain customers contributed to a significant percentage of our total revenue" and identifying "Sogou" specifically.)

On April 30, 2021, BAOS filed its annual report for fiscal year 2020. The accompanying press release summarized a series of negative financial results. Including a 33.3% decrease in annual revenues, a 33.4% decrease in profits, and a 37.9% decrease in net income, which it primarily attributed to the COVID pandemic. Ex. C (April 30, 2021 6-K), at 1-2.

On September 30, 2021, BAOS disclosed its results for the first half of 2021, which showed further deterioration. Ex. D (September 30, 2021 6-K), at 1. Specifically, BAOS suffered a 75.4% reduction in revenue, an 84.3% drop in gross profit, a 138.7% fall in income, a 104.4% decrease in net income, and a 103.3% reduction in earnings per share. *Id*. It disclosed that the drop in revenues was primarily due to the expiration of the Sogou agreement. *Id*. at 2-3.

As BAOS subsequently explained in its annual report for 2021, after Sogou was acquired by Tencent, one of China's largest tech companies, Tencent began "restructuring" the business, and while BAOS has "been trying", "there is uncertainty as to whether and when we can successfully secure an authorized agency status with Sogou." Ex. E (2021 20-F), at 14.

BAOS's financial challenges persisted. In its annual report for fiscal year 2022, BAOS disclosed that, "[t]he COVID-19 outbreak had materially disrupted our business and operations, slowed down Chinese overall economy, curtailed our consumers' spending ... ." Ex. F (2022 20-F), at 23. As a result, BAOS experienced a further 38.3% decline in revenues and a 101.7% decrease in gross profit that year. *Id*. at 23, 91.

**C.**     <u>**Plaintiffs Allege That In Reality, BAOS Was Under An Undisclosed Government Investigation, And That This Investigation "Became Clear" To The Underwriters Pre-IPO.**</u>

Plaintiffs allege that all of the above disclosures were false because in reality, BAOS was "essentially shut down" pre-IPO due to an undisclosed Chinese government investigation, which BAOS's entire board and executive suite "knew" about. SAC ¶ 53.

Plaintiffs allege that, with its business "shut down," someone named Yanjin Hu, who is identified nowhere in BAOS's IPO materials but who appears to be the beneficial owner of one of BAOS's largest shareholders, "took actual control" of BAOS in the lead-up to the IPO. *Id.* ¶¶ 49-50; Exs. G, H (Forms 13G and 13D dated March 7, 2022, showing Yanjin Hu shareholdings in BAOS through an entity named EJAM).

In this undisclosed "shadow CEO" capacity, Hu purportedly controlled BAOS's "securities filings, including the Registration Statement and Prospectus." SAC ¶ 49. Also under his control, the "essentially shut down" BAOS hid the truth in order to conduct the IPO. *See e.g. id.* ¶¶ 53-54.

Plaintiffs allege that in the lead up to the IPO, the Underwriters were in constant "communication" and "conversations with" the primary perpetrators of the fraud, through which communications "***it became clear*** that BAOS was under investigation." *Id.* ¶¶ 57-63 (emphasis added). Yet they failed to diligence or correct the false statements in the registration materials, and still underwrote the IPO and sold stock to Plaintiffs. *Id.*; *see also id.* ¶¶ 45-46.

## III.    LEGAL STANDARDS

To survive a Rule 12(b)(6) motion, a plaintiff must plead "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This means "nudg[ing] [the] claims across the line from conceivable to plausible ... ." *In re Qudian Inc. Sec. Litig.,* 2019 WL 4735376, at *4 (S.D.N.Y. Sept. 27, 2019). To assert claims under Sections 11 and 12(a)(2), Plaintiff must plead that a defendant made "an untrue statement of a material fact or omi[ssion]." 15 U.S.C. § 77k(a), § 77l(a)(2).

District courts in this Circuit have consistently held that "the heightened pleading standard of Rule 9(b) applies to Section 11 and Section 12(a)(2) claims insofar as the claims are

premised on allegations of fraud." *SUN, A Series of E Squared Investment Fund, LLC v. Sundial Growers Inc.*, 2021 WL 4482276, at *5 (S.D.N.Y. 2021); *see also In re Micro Focus Int'l Plc Sec. Litig.*, 2020 WL 5817275, at *3 (S.D.N.Y. 2020) (same).

## IV.    ARGUMENT

### A.    The Complaint Cannot Survive Rule 9(b).

#### 1.    Rule 9(b) Applies Where Securities Act Claims Sound In Fraud.

"Even where a plaintiff claims to bring a negligence action, a court may apply Rule 9(b) pleading requirements where the wording and imputations of the complaint are classically associated with fraud." *Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, 645 F. Supp. 2d 210, 226 (S.D.N.Y. 2009) (internal citation omitted.) "[T]he wording and imputations of the complaint are classically associated with fraud when plaintiffs allege that the registration statement contained 'untrue statements of material facts' and that 'materially false and misleading' statements were issued." *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 635 (S.D.N.Y. 2005); *see also In re Gentiva Sec. Litig.*, 932 F.Supp.2d 352, 394 (E.D.N.Y. 2013) (same).

The Complaint is replete with these hallmarks of fraud. *See e.g.*, SAC ¶ 54 ("BAOS's Registration Statement, Prospectus, and other public securities filings ***did not disclose*** any of this information to investors, making the Registration Statement and Prospectus ***materially misleading***."), ¶ 87 ("The Registration Statement for the IPO was ***inaccurate and misleading***, contained ***untrue statements of material facts***, omitted to state other facts necessary to make the statements made not misleading."), ¶ 91 ("the Registration Statement contained ***misrepresentations of material facts and omissions of material fact*** necessary to make the statements made therein not misleading."), ¶ 109 ("The Prospectus contained ***untrue statements***

*of material facts*, omitted to state other facts necessary to make the statements made not misleading, and *concealed and failed to disclose material facts*.") (emphasis added).

Indeed, the alleged underlying conduct is, at base, that BAOS "knew" about the government investigation and its purported detrimental impacts on BAOS, but chose not to disclose the information to investors. *See* SAC ¶¶ 47-54. Plaintiffs further allege that "it became clear" to the Underwriters "that BAOS was under investigation[,]" but that they also "fail[ed]" to correct the IPO registration statement and prospectus. *Id.* ¶¶ 59, 63.

Where a complaint alleges that defendants "knew" and "were aware" of adverse undisclosed facts and hid them, the complaint is "replete with explicit claims of fraud." *Luo v. Sogou, Inc.*, 465 F. Supp. 3d 393, 408 & n.7 (S.D.N.Y. 2020).

### 2.     Plaintiffs' Boilerplate Disclaimers Cannot Avoid Rule 9(b)'s Application to Their Claims Against The Underwriters.

Despite alleging the orchestration of a fraudulent IPO, Plaintiffs pivot and allege, in conclusory fashion, that the Underwriters were merely "negligent" in "failing to correct the securities filings." SAC ¶ 55. Plaintiffs then attempt to disavow fraud through various boilerplate disclaimers. *Id.* ¶¶ 86, 103, 118.

These bare assertions do not provide an outlet from Rule 9(b), for several reasons.

*First*, Plaintiff affirmatively and specifically alleged fraud by the Underwriters. Here, Plaintiffs have alleged intentional fraud by BAOS's entire board, executives, *and* a large shareholder, perpetrated for the specific purpose of pushing through a fraudulent IPO. *Supra*, at 5-6. Throughout, the Underwriters were alleged to be "in direct communication" and "conversations with" the primary perpetrators. *Id.* ¶¶ 57-62. Assuming these allegations to be true, there can only be two possibilities, either: (i) the Underwriters aware of the fraud and were

complicit in it; or (ii) the Underwriters were unaware of the fraud despite their access to the perpetrators.

Plaintiffs have explicitly chosen <u>scenario one</u> by alleging that the Underwriters failed to correct BAOS's IPO materials "***when it became clear that BAOS was under investigation***." SAC ¶¶ 59, 63 (emphasis added). Plaintiffs conclusorily allege that, in so doing, the Underwriters were "at least negligent." *Id.* But fraudulent conduct is not "at least" negligent as the two are opposing legal concepts. Negligence, by nature, requires no scienter, fraud does. *See Carroll v. LeBoeuf, Lamb, Greene & MacRae, LL*P, 623 F. Supp. 2d 504, 510 (S.D.N.Y. 2009) ("Negligent misrepresentation 'involves most of the same elements as fraud, with a negligence standard substituted for the scienter requirement.'") (citing cases); *see also Sado v. Israel*, 882 F. Supp. 1401, 1406 (S.D.N.Y. 1995) ("Scienter, or knowledge that a representation is false, is an essential element of a fraud claim."). Accordingly, "[s]ince the defendant's ['clear'] knowledge of falsity is an element of fraud, no claim for 'negligent' fraud exists." *Shuvalova v. Cunningham*, 2010 WL 5387770, at *6 (N.D. Cal. 2010). In short, instead of somehow encompassing negligence as "at least" a sub-set of fraud, Plaintiffs' "became clear" allegation forecloses the possibility of stating a negligence claim as to the Underwriters.

Even ignoring the "became clear" allegation and assuming that the Underwriters were not aware (<u>scenario two</u> above), there can be no negligence either because no underwriter could have failed to discover that the business they were underwriting was "essentially shut down" unless such an underwriter was extremely reckless to the point of being willfully ignorant (*i.e.* scienter).

The Second Circuit has held that, "[i]n elaborating as to what may constitute recklessness in the context of a private securities fraud action, we have referred to conduct that 'at the least . . . is highly unreasonable and which represents an extreme departure from the standards of ordinary

care to the extent that ***the danger was either known to the defendant or so obvious that the defendant must have been aware of it***,' … or to evidence that the 'defendants failed to review or check ***information that they had a duty to monitor***, or ignored ***obvious*** signs of fraud,' and hence 'should have known that they were misrepresenting material facts.'" *South Cherry St. v. Hennessee Group*, 573 F.3d 98, 109 (2d Cir. 2009) (emphasis original) (internal citation omitted). "An ***egregious*** refusal to see the ***obvious***, or to ***investigate the doubtful***, may in some cases give rise to an inference of…recklessness." *Id.* (citing cases).

Assuming that the truth did not "bec[o]me clear" to the Underwriters, Plaintiffs would essentially be alleging that Underwriters somehow overlooked the facts that BAOS was: (1) under a government investigation known to the board and executive team, (2) so disrupted by such investigation that it had "essentially shut down" as a result, and (3) controlled by someone who was not its CEO, which CEO was a mere puppet.

In other words, they refused "to see the obvious, or to investigate the doubtful," *i.e.* were reckless. *Id.* This triggers the heightened pleading standard of Rule 9(b). *See Teams. Local 445 v. Dynex Cap*, 531 F.3d 190, 194 (2d Cir. 2008) ("In addition to actual intent, the Second Circuit has also concluded that recklessness is a sufficiently culpable mental state in the securities fraud context."); *see also In re JP Morgan Chase Secs. Litig.,* 363 F.Supp.2d 595, 635 (S.D.N.Y.2005) ("[p]laintiffs cannot evade the Rule 9(b) strictures by summarily disclaiming any reliance on a theory of … recklessness.").

In sum, the magnitude and depth of the fraud alleged leaves no possibility of negligence. *See McDonald v. City of Troy*, 542 F. Supp. 3d 161 (N.D.N.Y. 2021) ("Although a plaintiff is typically permitted to plead different causes of action in the alternative, … when a plaintiff's factual allegations are only consistent with a theory of intentional conduct, negligence claims

must be dismissed.") (citing cases); *see also In re HEXO Corp. Securities Litigation*, 524 F.Supp.3d 283, 299 & fn. 17 (S.D.N.Y. 2021) (dismissing Securities Act claims upon finding that Plaintiffs' claims under the Securities Act and the Exchange Act claims "rest on the same theory – that defendants knew [about the falsity] – such that they are 'almost a mirror image' of one another."). Here, the Underwriters either knew of the fraud as alleged, or were unaware of massive falsehoods in plain sight (in which case they would have been extremely reckless).

*Second*, Plaintiffs may "plead Section 10(b) fraud and Section 11 ... negligence claims as alternatives, as long as the complaint is organized in a way that allows the court to determine which allegations support which claim." *In re Meta Materials Inc. Sec. Litig.*, 2023 WL 6385563 (E.D.N.Y. 2023); *see also In re Chembio Diagnostics, Inc. Sec. Litig.*, 616 F. Supp. 3d 192, 202 (E.D.N.Y. 2022) ("In the Second Circuit, courts accept a securities complaint pleading fraud and negligence theories in the alternative where the plaintiff supports the two theories with ***distinct narratives of the defendants' wrongdoing***."); *see also In re Ambac Financial Group, Inc. Securities Litig.*, 693 F. Supp. 2d 241, 263 (S.D.N.Y. 2010) ("plaintiffs should '***specifically plead*** alternate theories of fraud and negligence' in order to avoid heightened pleading standards for their Securities Act claims.") (emphasis added).

Here, Plaintiffs have not attempted to "specifically plead" "distinct narratives" supporting fraud by BAOS and negligence by the Underwriters. Instead, they simply affixed the words "at least negligent" to the Underwriters' alleged failure to disclose the fraud when "it became clear" to them. SAC ¶¶ 59, 63. Such conclusory window dressing is insufficient to disclaim the allegations' substance: fraud.

*Third*, Plaintiffs "cannot evade the Rule 9(b) strictures by summarily disclaiming any reliance on a theory of fraud." *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 635

(S.D.N.Y. 2005). As such, courts in this district have consistently held that "boilerplate disclaimers" that the allegations do not sound in fraud are "insufficient to remove those allegations from the requirements of Rule 9(b)." *In re Alcatel Sec. Litig.*, 382 F. Supp. 2d 513, 530 (S.D.N.Y. 2005); *see also In re Elan Corp.*, 2004 WL 1305845, at *7 (S.D.N.Y. May 18, 2004) ("Notwithstanding the Plaintiffs' fraud disclaimer, the Section 11 claims in this case are peppered with" language "classically associated with fraud."). Here, Plaintiffs' fraud disclaimers consist of conclusory, one-sentence boilerplates. *Id.* ¶¶ 86, 103, 118.

Here, not only do Plaintiffs affirmatively allege fraud on the Underwriters' part, but the complaint is also devoid of any attempt to establish a distinct narrative for negligence that is separate from the fundamentally fraud-based allegations. The entire complaint sounds in fraud.

### 3. The Complaint Fails to Satisfy the Heightened Pleading Standards Of Rule 9(b) As To The Underwriters.

"[A] party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "As the Section 11 claims are based in fraud, Plaintiffs must allege [defendants'] fraudulent intent with more specificity." *Police Fire Retirement System v. Safenet*, 645 F. Supp. 2d 210, 241 (S.D.N.Y. 2009). When Plaintiffs "fail to specify any details about [defendants'] knowing participation in making the alleged fraudulent misrepresentations in the [issuer's] registration statement," Sections 11 and 12(a)(2) claims fail. *Id.*; *see also Johnson v. NYFIX, Inc.,* 399 F. Supp. 2d 105, 122 (D. Conn. 2005) (plaintiffs must "adequately allege that the defendants knew or were reckless in not knowing" falsity to state a Section 11 claim).

Here, Plaintiffs did not plead any particulars about the Underwriters' role in the fraud. There are no facts suggesting that the Underwriters had any motive or intent to defraud, nor any facts about how or when the investigation "became clear" to them through their alleged contacts with BAOS, nor how they could have been so reckless as to be unaware.

Rather, Plaintiffs conclusorily alleged that the Underwriters knew or should have known of the fraud due merely to their roles as underwriters, which gave them access to BAOS. SAC ¶¶ 57, 61. Similar attempts to conclusorily allege scienter are regularly rejected. *See Ross v. Lloyds Banking Group, PLC*, 2012 WL 4891759, at *10 (S.D.N.Y. 2012) (rejecting scienter allegations that "appear premised solely upon the individual defendants' positions within [the Company], not fact-based allegations of actual knowledge—let alone 'strong circumstantial evidence' of recklessness."); *Teamsters Allied Benefit Funds v. McGraw*, 2010 WL 882883, at *9 (S.D.N.Y. 2010) ("Courts have routinely rejected the attempt to plead scienter based on allegations that because of defendants' board membership and/or their executive managerial positions, they had access to information concerning the company's adverse financial outlook.") (citing cases).

Indeed, "[w]here plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information." *Teams. Local 445*, 531 F.3d 190, 196 (internal citation omitted). Yet, despite alleging that they learned of the fraud from "a significant shareholder of BAOS, who had ***inside knowledge*** of the operations and conduct of BAOS executives leading up to the IPO" (SAC ¶ 82 emphasis added), Plaintiffs made "no allegation that explains how, when and to what extent the [Underwriters] received information" concerning the purported investigation. *Ross*, 2012 WL 4891759, at *10.

Nor have Plaintiffs "specifically identified any reports or statements that would have come to light in a reasonable investigation and that would have demonstrated the falsity of the allegedly misleading statements." *Teams. Local 445*, 531 F.3d 190, 196 (finding failure to plead scienter); *see also Harris v. Amtrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155 (S.D.N.Y. 2015) (finding that the complaint failed to plead scienter because the complaint "failed to 'specifically

identif[y] ... reports or statements that would have come to light in a reasonable investigation [or] that would have demonstrated the falsity of the allegedly misleading statements.")

"Pleading fraud with particularity means specifying the who, what, when, where, and how of the fraud." *Reynolds-Sitzer*, 586 F. Supp. 3d, at 135 (cleaned up). Troublingly here, Plaintiffs fail to allege what the purported government investigation of BAOS was even about other than the comically vague allegation that it was "due to [BAOS's] involvement with other Chinese entities that were engaging in activities illegal under the laws of China." SAC ¶ 47. But what kind of "involvement"? With which "other Chinese entities"? What "activities" were these other entities engaged in? Which "laws" were violated? Presumably Plaintiffs' deeply embedded insider, when accusing the Company and its Underwriters, would have explained these details, which any rational listener would have demanded to believe a fraud of such severity.

The fact that such basic information is unpled suggests speculation and rumormongering—exactly the sort of thing Rule 9(b)'s particularity requirement was meant to eliminate.

Finally, Plaintiffs affirmatively disclaimed all allegations of scienter wholesale. SAC ¶¶ 86, 103 (averring that Plaintiffs "do not claim that Defendants committed intentional or reckless misconduct or that Defendants acted with scienter or fraudulent intent.") These disavowals are independently dispositive indicia of Plaintiffs' failure to meet Rule 9(b). *See In re Gentiva Sec. Litig.,* 932 F. Supp. 2d 352, 394 (E.D.N.Y. 2013) ("the Plaintiff has failed to comply with Rule 9(b) with regard to the Section 11 claim, because it expressly disclaims all allegations of scienter and recklessness."). Because it fails to particularize, the Complaint must be dismissed.

**B.**    <u>**Even Under A Negligence Theory, The Complaint Fails.**</u>

Ignoring the above and assuming that the court treats the claims against Underwriters as one for negligence, these claims fail as a matter of law because "[u]nderwriters may absolve

themselves from liability under sections 11 and 12(a)(2) by establishing a 'due diligence' defense." *In re Software Toolworks Inc.*, 50 F.3d 615, 621 (9th Cir. 1994).

Whether an Underwriter was diligent enough to enjoy the due diligence defense is subject to "the standard of reasonableness[, which] shall be that required of a prudent man in the management of his own property." *Id.* (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 208, 96 S.Ct. 1375, 1388, 47 L.Ed.2d 668 (1975) (cleaned up).

Although the question of reasonableness/negligence is usually a question of fact, "reasonableness becomes a question of law and loses its triable character if the undisputed facts leave no room for a reasonable difference of opinion." *Id.* at 621-622 (internal citation omitted); *see also Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) ("An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint.")

Here, the complaint shows that the Underwriters met the reasonableness standard, and thus enjoy the due diligence defense as a matter of law.

1.    **The Underwriters May, As A Matter of Law, Rely on Expertised Materials Such as Audited Financials And Legal Opinions When Conducting Reasonable Due Diligence.**

"An underwriter need not conduct due diligence into the 'expertised' parts of a prospectus, such as certified financial statements." *In re Software Toolworks Inc.*, 50 F.3d 615, at 623; *see also In re Countrywide Financial Corp. Sec. Litig.*, 588 F.Supp.2d 1132, 1175 (C.D.Cal. 2008) (granting motion to dismiss and holding that "Underwriter Defendants have a due diligence defense on the face of the [complaint] as a matter of law ... because underwriters may reasonably rely on audited financial statements ... .").

Just as auditors are experts with respect to financial statements on which they opine, counsel are experts on legal proceedings, and certainly "expert" as to the existence of legal

proceedings against their clients. *In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 794 F. Supp. 1424, 1453 (D. Ariz. 1992) ("The court holds that an attorney who provides a legal opinion used in connection with an SEC registration statement is an expert within the meaning of Section 11."); *Schneider v. Traweek*, 1990 WL 169856 (C.D. Cal. 1990) ("An attorney who expressly consents to the inclusion of, or reference to his opinion in a registration statement can be considered an 'expert' within the meaning of [Section 11].")

Here, PRC counsel issued an unequivocal opinion letter stating that the portions of the registration materials disclosing legal and regulatory proceedings were accurate. *Supra*, at 3-4. The Underwriters should be entitled to rely on PRC counsel's expertise.

### 2. Reasonableness Exists Even Assuming The Disclosures Regarding Chinese Governmental Investigations Were Not-Expertised.

Underwriters "cannot, of course, be expected to possess the intimate knowledge of corporate affairs of inside directors, and their duty to investigate should be considered in light of their more limited access." *Feit v. Leasco Data Processing Equip. Corp.*, 332 F. Supp. 544, 582 (E.D.N.Y. 1971); *see also Endo v. Albertine*, 863 F. Supp. 708, 732 (N.D. Ill. 1994) (same).

Here, even Plaintiffs recognize that the alleged government investigation was not conducted openly, and it took Plaintiffs over three years to discover the fraud, and only through someone with "***inside knowledge*** of the operations and conduct of BAOS executives." SAC ¶¶ 81-82 (emphasis added).

Indeed, if the Underwriters were not recklessly unaware of an essentially non-existent business, the existence of the Dentons Opinion Letter means that BAOS would have necessarily been deceiving both the Underwriters ***and*** BAOS's own counsel. But if that were the case, the Underwriters, with their comparatively more limited access, cannot as a matter of law be expected to suspect: (i) BAOS's counsel was being defrauded; that (ii) BAOS's representations

about its business existence were fraudulent; and (iii) conduct such diligence as to uncover an undisclosed government investigation happening overseas, for example by obtaining the same level of "inside knowledge" that Plaintiffs had from a third party to learn of the same.

Were that the standard for reasonableness, it would in essence require Underwriters to assume total fraud on the part of issuers, and not rely on *anything* issuers tell them. "Underwriters cannot be expected, however, to ferret out everything that management knows about the company." *Endo*, 863 F. Supp. 708, 732 (internal citation omitted).

In sum, the negligence theory is simply implausible. It is implausible because no underwriter, in the absence of collusion or extreme recklessness, could fail to discover by the exercise of reasonable due diligence that an issuer was, in reality, "essentially shut down." SAC ¶ 53; *see also supra* Section IV.A.2. As such, Plaintiffs were at least required to, but did not, allege the particulars required by Rule 9(b) for how they could have been so reckless.

It is also implausible because a "reasonable" (or non-reckless) underwriter can, as a matter of law, rely on issuer counsel's expertised opinion as to the existence of material legal proceedings. By the same token, it cannot, as a matter of law, be required to suspect the issuer to the point of questioning the very existence of its business, particularly in light of the counsel opinion and audited financials.

## V.    JOINDER IN BAOS'S MOTION TO DISMISS

All Underwriters also respectfully join in BAOS's concurrent motion to dismiss to the extent it is applicable to the claims against them. Dkt. 97-99. Specifically, BAOS's arguments about particularity, negative causation, and an apparent Cayman Islands proceeding Plaintiffs brought containing allegations that directly contradict the SAC, all illustrate how the SAC is implausible, and require dismissal as to all defendants.

Separately, Univest also joins in BAOS's Section 12(a)(2) arguments.

In addition to BAOS's arguments, it appears that only Plaintiff Golden has alleged a Section 12(a)(2) claim against Univest. *See* SAC ¶¶ 107-108 (alleging that Univest is a statutory seller for the sale of securities to Golden only, whereas BAOS is a statutory seller for the sale of securities to Union and Orient).

Indeed, Univest was not a signatory to the SPA between Plaintiffs Orient, Union and BAOS. *Id*. ¶ 35. To the extent that Union and Orient allege any Section 12(a)(2) liability against Univest based on a purported oral communication (*id*. ¶ 105), BAOS's arguments in support of dismissing Plaintiffs' 12(a)(2) claim also applies to Univest.

As detailed in BAOS's motion, Section 12(a)(2) limits liability to public offerings with an obligation to distribute a prospectus, and does not encompass securities acquired "through a private transaction, whether primary or secondary." *Yung v. Lee*, 432 F.3d 142, 149 (2d Cir. 2005). Whether alleged misstatement are made through "oral communications" "does not change the analysis," because this phrase "refers only to oral communications relating to a prospectus." *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 625 (S.D.N.Y. 2007). In other words, because there was no prospectus in connection with the private purchase to begin with, there can be no oral communication related to it. Accordingly, "[e]ven where the defendants' marketing efforts in connection with the private transaction relied heavily upon [a prior] prospectus used in a public offering, there [i]s no liability because defendants were not obligated to distribute the prospectus in connection with that [private] transaction." *Id*.; *see also Gotham Holdings, LP v. Health Grades, Inc.*, 534 F. Supp. 2d 442, 445 (S.D.N.Y. 2008) ("The fact that a "prospectus was included in the sales offering documents made available to purchasers is irrelevant" where there is "no obligation to issue a prospectus for the sales at issue.").

In short, the law requires a prospectus for the *particular* share purchase alleged to violate Section 12(a)(2). Here, because Plaintiffs allege only that Univest made an oral communication referencing the *IPO* prospectus, but not any prospectus for the unregistered, private placement SPA transaction involving Union and Orient, Univest cannot be liable for that prospectus-less SPA transaction under Section 12(a)(2).

## VI.    <u>CONCLUSION</u>

For the reasons stated above, the Court should dismiss the SAC with prejudice.

Respectfully Submitted,

Dated: May 22, 2024                                   **MORROW NI LLP**

By: _____

Angus F. Ni
41 Madison Ave, 31st Floor,
New York, NY 10010
(646) 453-7294
angus@moni.law

*Attorneys for Underwriters*

## <u>CERTIFICATE OF FORMATTING COMPLIANCE</u>

The undersigned certifies that this brief complies with the Court's formatting rules, requiring all text to be double spaced. This brief contains 19 pages.

Dated: May 22, 2024                    **MORROW NI LLP**

By: _____

Angus F. Ni
41 Madison Ave, 31st Floor,
New York, NY 10010
(646) 453-7294
angus@moni.law

*Attorneys for Underwriters*