UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Orient Plus International Limited; Union Hi-Tech Development Limited; and Golden Genius International Limited, <br><br> Plaintiffs, <br><br> vs. <br><br> Baosheng Media Group Holdings Limited; Wenxiu Zhong; Sheng Gong; Yu Zhong; Zuohao Hu; Adam (Xin) He; Yue Jin; Yanjun Hu; Univest Securities, LLC; The Benchmark Company, LLC; WestPark Capital, Inc.; Friedman LLP; and Marcum LLP, <br><br> Defendants. | Civil File No. 1:24-cv-00744-JLR |

## __THIRD AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL__

Plaintiffs Orient Plus International Limited ("Orient"), Union Hi-Tech

Development Limited ("Union") and Golden Genius International Limited ("Golden")

(collectively, "Plaintiffs"), for their Third Amended Complaint against Defendants

Baosheng Media Group Holdings Limited ("BAOS" or the "Company"); directors

Wenxiu Zhong, Sheng Gong, Yu Zhong, Zuohao Hu, and Adam (Xin) He (collectively,

the "Director Defendants"); CFO Yue Jin; controlling person Yanjun Hu (collectively,

with the Director Defendants, the "Individual Defendants"); underwriters Univest

Securities, LLC ("Univest"), The Benchmark Company, LLC ("Benchmark"), and

WestPark Capital, Inc. ("WestPark"); auditor Friedman LLP ("Friedman") and Marcum

LLP ("Marcum") (collectively, "Defendants") state and allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs bring this action against Defendants seeking damages, rescission, and other relief for damages caused by Defendants' misstatements and material omissions in public securities filings with the United States Securities Exchange Commission ("SEC") related to BAOS's initial public offering on or about February 8, 2021 and a stock purchase agreement between BAOS and Plaintiffs on or about March 17, 2021.  BAOS currently trades on NASDAQ and has since its public listing.  Plaintiffs assert claims against Defendants under Section 11, Section 12, and Section 15 of the Securities Act of 1933 (the "Securities Act")[1], and the common law.

## PARTIES

2.      Plaintiff Orient Plus International Limited is a business entity incorporated in the British Virgin Islands, with its principal place of business at 12 Marina View #20-02B, Asia Square Tower 2, Singapore, 018961.

3.      Plaintiff Union Hi-Tech Development Limited is a business entity incorporated in the Marshall Islands with its registered address located at Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands MH96960.

4.      Plaintiff Golden Genius International Limited is a business entity incorporated in the British Virgin Islands, with its registered address located at Vistra

---

[1] Plaintiffs expressly state that, at this time, Plaintiffs' claims under Sections 11, 12, and 15 are asserted based solely on the theories of strict liability and negligence.

Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, VG1110, British Virgin Islands.

5.      Defendant Baosheng Media Group Limited is a business entity incorporated under the laws of the Cayman Islands.  On or about February 5, 2021, BAOS registered to trade its securities on the NASDAQ stock exchange under the ticker "BAOS" pursuant to a foreign private issuer exemption (the "IPO").  BAOS is an online marketing solution provider based in China.  Among other services, BAOS advises advertisers on online marketing strategies, offers advertising optimization services and facilitates the deployment of online ads of various forms such as search ads, in-feed ads, mobile app ads and social media marketing ads.

6.      Defendant Univest Securities, LLC served as the lead underwriter for BAOS's IPO.  Univest is a New York limited liability company, with its principal place of business located at 75 Rockefeller Plaza, Suite 1838, New York, NY 10019.

7.      Defendant The Benchmark Company, LLC, served as an underwriter for BAOS's IPO.  Benchmark is a Delaware limited liability company, with its principal place of business located at 150 E. 58th Street, 17th Floor, New York, NY 10155.

8.      Defendant WestPark Capital, Inc., served as an underwriter for BAOS's IPO.  WestPark is a Colorado corporation with its principal place of business located at 1800 Century Park E., Ste. 220, Los Angeles, CA 90067.

9.      Defendant Friedman LLP served as an independent auditor at the time of BAOS's IPO.  Friedman is a New York limited liability partnership.  Its principal place of business is 165 Broadway, 21st Floor, New York, NY 10019.

3

10.     Defendant Marcum LLP is a New York limited liability partnership.  Its principal place of business is 10 Melville Park Rd., Melville, NY 11747.  Marcum is a Certified Public Accounting firm that in September 2022 "merged" with BAOS's former independent auditor—Friedman LLP.

11.     Defendant Wenxiu Zhong was, at all times relevant to this Amended Complaint, chairperson of the board and Chief Executive Officer of BAOS.  On information and belief, Wenxiu Zhong is a citizen of and resides in China.  Wenxiu Zhong signed BAOS's Registration Statement.

12.     Defendant Sheng Gong was, at all times relevant to this Amended Complaint, a director of BAOS.  On information and belief, Sheng Gong is a citizen of and resides in China.  Sheng Gong signed BAOS's Registration Statement.

13.     Defendant Yu Zhong was at the time of BAOS's IPO, an independent director of BAOS. At all times relevant to this Complaint, Yu Zhong was a member of BAOS's audit committee. On information and belief, Yu Zhong is a citizen of and resides in China.

14.     Defendant Zuohao Hu was at the time of BAOS's IPO, an independent director of BAOS. At all times relevant to this Complaint, Yu Zhong was a member of BAOS's audit committee. On information and belief, Zuohao Hu is a citizen of and resides in China.

15.     Defendant Adam (Xin) He was at the time of BAOS's IPO, an independent director of BAOS. At all times relevant to this complaint, Adam (Xin) He was also the

chairperson of BAOS's audit committee.  On information and belief, Adam (Xin) He is a citizen of China and resides in the United States and China.

16.     Defendant Yue Jin has been the Chief Financial Officer of BAOS since January 2020.  On information and belief, Yue Jin is a citizen of and resides in China. Yue Jin signed BAOS's Registration Statement.

17.     Defendant Yanjun Hu was, at all times relevant to this Amended Complaint, in actual control of a significant percentage of BAOS stock, and had actual control over BAOS in the months leading up to its IPO.  On information and belief, Yanjun Hu is a citizen of and resides in China.

## JURISDICTION & VENUE

18.     The claims asserted herein arise under and pursuant to Sections 11, 12(a)(2), and 15 of the Securities Act (15 U.S.C. §§ 77K, 77l(a)(2), and 77(o)) and the common law.

19.     This Court has subject matter jurisdiction over the Securities Act claims in this action pursuant to Section 22 of the Securities Act (15 U.S.C. § 77v) and 12 U.S.C. § 1331.

20.     This court has subject matter jurisdiction over the common law claims pursuant 28 U.S.C. § 1367 because the common law claims form part of the same case and controversy as the Securities Act claims.

21.     Venue is properly in this District pursuant to Section 22 of the Securities Act and 28 U.S.C. § 1391(b) and (c).  The violations of law complained of herein occurred in substantial part in this District.

22.    In connection with the acts and conduct alleged herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the mails and telephonic communications and facilities of the NASDAQ and of EDGAR.

23.    This Court has personal jurisdiction over BAOS due to its sufficient minimum contacts with the United States and the State of New York.  BAOS targeted investors in the United States via publishing materials in English pursuant to SEC rules and sold securities in the United States via the NASDAQ.

24.    This Court has personal jurisdiction over the Director Defendants and the CFO due to their sufficient minimum contacts with the United States and the State of New York.  Directors Wenxiu Zhong and Sheng Gong, as well as Yue Jin (BAOS's CFO) signed BAOS's Registration Statement knowing the statement would be filed with the SEC in the United States to permit BAOS to sell securities to investors in the United States via the NASDAQ.  Each of the Director Defendants and CFO had control over the contents of BAOS's public filings, knew those documents would be filed in the United States with the SEC, and directed those filings toward United States investors, among others.  The Director Defendants and CFO accordingly purposefully availed themselves of the United States and the State of New York, and are subject to personal jurisdiction in this forum.

25.    This Court has personal jurisdiction over Yanjun Hu (the controlling person) due to his sufficient minimum contacts with the United States and the State of New York.  As detailed further below, he had actual control over BAOS in the months preceding BAOS's IPO, and accordingly controlled the statements included within

BAOS's Registration Statement and Prospectus, knowing these statements would be filed in the United States for the purpose of inducing investors in the United States to purchase BAOS's securities.

26.     This Court has general personal jurisdiction over Univest, Friedman, and Marcum, as they are formed under the laws of the state of New York and maintain their principal place of business in New York.  The Court also has personal jurisdiction over these entities due to their sufficient minimum contacts with the United States and the State of New York.  Univest and Friedman each assisted in preparing the Registration Statement and Prospectus at issue in this claim, knowing it would be filed for the purpose of selling securities in the United States via the NASDAQ.

27.     This Court has general personal jurisdiction over Benchmark as its principal place of business is located in the State of New York.  The Court also has personal jurisdiction over Benchmark due to its sufficient minimum contacts with the United States and the State of New York.  Benchmark assisted in preparing the Registration Statement and Prospectus at issue in this claim, knowing it would be filed for the purpose of selling securities in the United States via the NASDAQ.

28.     This Court has personal jurisdiction over WestPark due to its sufficient minimum contacts with the United States and the State of New York.  WestPark assisted in preparing the Registration Statement and Prospectus at issue in this claim, knowing it would be filed for the purpose of selling securities in the United States via the NASDAQ.

## FACTS

I.    **BAOS'S PUBLIC FILINGS AND PLAINTIFFS' PURCHASE OF BAOS'S STOCK**

29.    BAOS filed a registration statement with the SEC on July 10, 2020.

30.    After a series of amendments, the registration statement became effective on February 5, 2021 (the "Registration Statement"), and its ordinary shares began trading on NASDAQ on February 8, 2021.  The Registration Statement incorporated by reference each prospectus filed by the Company pursuant to Rule 424(b) prior to the date of the IPO.  Each such prospectus was deemed to be part of the Registration Statement for purposes of determining liability under the Securities Act.

31.    Defendants Wenxiu Zhong, Chief Executive Officer and Chairperson of the Board; Yue Jin, Chief Financial Officer; and Sheng Gong, Director signed the Registration Statement.

32.    At the time the Registration Statement became effective, five Defendants served as directors of BAOS: Wenxiu Zhong, Sheng Gong, Yu Zhong, Zuohao Hu, and Adam (Xin) He.

33.    Three of these Defendants served on the audit committee, Adam (Xin) He, Yu Zhong, and Zuohao Hu.  Adam (Xin) He served as the chairperson of the audit committee.

34.    Among other things, members of the audit committee were responsible for "reviewing with the independent auditors any audit problems or difficulties and management's response; discussing the annual audited financial statement with

management and the independent auditors; . . . meeting separately and periodically with management and the independent auditors; and monitoring compliance with our code of business conduct and ethics, including reviewing the adequacy and effectiveness of [BAOS's] procedures to ensure proper compliance."

35.     The Registration Statement identifies Defendant Univest as BAOS's lead underwriter for the IPO.

36.     Defendants The Benchmark Company, LLC and WestPark Capital, Inc. also served as underwriters for BAOS's IPO.

37.     The Registration Statement identifies Defendant Friedman as BAOS's independent auditor.

38.     In a Registration Statement filed on August 4, 2023, BAOS stated that "Friedman LLP was merged with Marcum LLP on September 1, 2022."

39.     BAOS filed its final Prospectus on February 9, 2021 (the "Prospectus"), and completed its initial public offering through a firm commitment underwriting on February 10, 2021, raising $31.2 million.

40.     On March 2, 2021, BAOS's lead underwriter, Univest, exercised its over-allotment option under the firm commitment underwriting agreement to purchase an additional $4.5 million worth of ordinary shares for sale to the public.

41.     On the same day, Plaintiff Golden purchased $3.5 million worth of BAOS ordinary shares directly from Univest.  Golden continues to hold these shares and can trace its purchase directly to the Registration Statement containing the material misstatements and omissions that form the basis for this claim.

42.    On March 17, 2021, Plaintiffs Orient and Union together entered into a stock purchase agreement ("SPA") with BAOS to purchase $10 million worth of unregistered BAOS ordinary shares directly from BAOS pursuant to a Regulation S or a Section 4(a)(2) exemption under the Securities Act.  On March 18, 2021, BAOS filed a "Form F-1 Registration Statement Under the Securities Act of 1933" reflecting this sale. The second registration statement became effective on March 30, 2021.

II.    **CHINESE AUTHORITIES DETAIN BAOS'S MANAGEMENT TEAM, CAUSING THE COMPANY TO SUSPEND ITS OPERATIONS ALL WHILE SOLICITING INVESTMENT FROM PLAINTIFFS AND AT THE TIME BAOS'S REGISTRATION STATEMENT BECAME EFFECTIVE**

43.    In or about June 2023, Hu Dong, the principal of Plaintiff Orient had a telephone call with Defendant Yanjun Hu to discuss Plaintiffs' investment in BAOS, BAOS's reduced share price, and certain transactions between BAOS and Yanjun Hu or companies owned or controlled by Yanjun Hu, among other things.

44.    During the call, Yanjun Hu disclosed that in the months leading up to BAOS's IPO, that BAOS executives and managers were taken into custody by Chinese authorities, that one executive went into hiding, BAOS suspended its operations, and Yanjun Hu took control of the Company.

45.    This call was recorded and a certified transcript of the recording and an accompanying translation into English is attached hereto as **Exhibit A**.  This transcript is expressly incorporated into the complaint by reference. The person identified as person "A" in the transcript is Yanjun Hu.  The person identified as person "B" is Hu Dong.

46.    Yanjun Hu told Hu Dong that:

> Back in 2019, because of the issue with YOUYOU, which I
> helped her, oh, was it in 2020? Was it 2020 or 2021? I helped
> her handle it, which was, People were being arrested at Sogou.
> It was Sogou, because, back then it was a, I think it involved
> gambling funds in Macau. What was involved was that it had
> a domestic gaming company, which used Sogou to promote
> this game. Essentially, it can be understood that at that time,
> the Ministry of Public Security set up a special project to
> specifically investigate this case. The money earned by the
> domestic gaming company, was then remitted back to the
> gambling funds in Macau. This was the so-called "Alvin Chau
> Cheok Wa" incident.

47.    Based on statements by Yanjun Hu and upon information and belief, those

Chinese authorities investigated BAOS because of its relationship with Sogou, a large

internet search engine and BAOS's largest customer.  Sogou was involved with the

Suncity Group ("Suncity"), a gaming company that had been under investigation by the

Chinese authorities since 2019 for illegal gambling and money laundering activities.  The

Chinese Authorities then targeted BAOS because, upon information and belief, BAOS

promoted Suncity on Sogou.

48.    Yanjun Hu also told Hu Dong "at the time, ten members of BAOSHENG's

senior management were arrested on the spot.  A lot of people were also arrested from

Sogou as well.  After the arrests, the entire company's operations were suspended."

49.    Yanjun Hu clarified that this was in "[t]he year of 2020" and "[t]he year of

2021" and that "a month or two before the company was listed.  They started arresting

people."

50.    Yanjun Hu stated that this resulted in the complete termination of BAOS's

relationship with Sogou, "including the agency rights." According to the Company's

Form 20-F filed with the SEC on or around May 17, 2022, the Company's "annual authorized agency agreement with Sogou expired in March 2021, which was not renewed subsequently."

51.    Yanjun Hu confirmed he took control of the BAOS:

> That's why later, when I dealt with this issue, I took over the company as a matter of course. I had no choice.—I had invested too much, so I had to do it. At the time, YOUYOU even hid away, she was too scared. Later on, it was a good thing that she hid away. Back then, I asked her to turn off her mobile phone, and I told her I would take care of this matter.

52.    Based on the statements by Yanjun Hu and upon information and belief:

a.    Beginning one to two months before and continuing through the date of the IPO, BAOS was under investigation by the Chinese authorities. This investigation involved China's Ministry of Public Security.

b.    Beginning one to two months before and continuing through the date of the IPO, Chinese authorities detained ten members of BAOS management team and its CEO went into hiding because of this investigation.

c.    The investigation by Chinese authorities and related detentions caused significant disruptions to the Company, which suspended its operations in the months leading up to the IPO.

d.    At and around the time of the IPO, the Company was controlled by Yanjun Hu, an undisclosed non-management, non-director stockholder.

e.    This investigation was not resolved until the second half of 2021, resulted in a fine of almost 10 million RMB.

f.  As a direct result of the investigation, the Company lost is largest client, Sogou, which accounted for 82.3% of its revenue in the year prior to its IPO.

53.  As described further below, BAOS's Registration Statement, Prospectus, and other public securities filings did not disclose any of this information to investors, making the Registration Statement and Prospectus materially misleading.

54.  At the time BAOS entered into the SPA with Orient and Union, the Individual Defendants knew the investigation had caused BAOS's to suspend its operations and that BAOS's relationships with Sogou was at significant risk.

55.  Because it possessed this information, BAOS breached the provisions in the SPA that warranted that there had been no events with a material adverse effect on the company, that it was not under investigation, that it was not in violation of any law, and that its prior filings, including its February 9, 2021 Prospectus, did not contain any untrue statements or omissions of material fact.

## III.  BAOS'S MATERIAL MISSTATEMENTS AND OMISSIONS IN ITS REGISTRATION STATEMENT AND PROSPECTUS

56.  The Registration Statement and Prospectus contain numerous materially false or misleading statements, omit to state material facts necessary to make the statements therein not misleading, and omit to state information required by SEC regulations.

A.      **Statements About Legal Proceedings**

57.      In the Registration Statement and Prospectus, BAOS noted that it was

subject to one pending and one recently decided material legal proceeding, listing an

employment dispute and a breach of contract dispute:

> We ***may*** from time to time become a party to various legal administrative
> proceedings arising in our ordinary course of our business.  As of the date
> of this prospectus, we are a party to one pending and one recently decided
> material legal proceedings.  On April 16, 2019, Ms. Chen Chen filed a
> lawsuit in a court in Beijing against Beijing Baosheng, with Baosheng
> Hong Kong named as third party in the complaint, requesting to be
> recognized as a 5% equity interest holder in Beijing Baosheng pursuant to
> an equity ownership agreement Ms. Chen Chen previously signed with
> Beijing Baosheng on March 17, 2016 (the 'Equity Ownership Agreement')
> (the 'Equity Ownership Dispute').  Ms. Chen Chen claimed that she had
> satisfied the conditions set forth in the Equity Ownership Agreement and
> was accordingly entitled to the 5% equity interest in Beijing Baosheng.
> Ms. Chen Chen sought to be recognized as 5% equity interest holder in
> Beijing Baosheng and receive such equity interest, and to be compensated
> for litigation related expenses.  On June 2, 2020, Ms. Chen Chen
> voluntarily filed a motion to withdraw this case.  On June 16, 2020, the
> court granted the motion.  In addition, in June 2019, Ms. Chen Chen filed a
> lawsuit in a court in Beijing against Beijing Baosheng (the 'Contractual
> Dispute'), seeking to terminate the Equity Ownership Agreement and be
> compensated in the amount of RMB47.65 million ($6,838,404),
> representing the alleged fair market value of the 5% equity interest in
> Beijing Baosheng to which she claimed title, and for any litigation related
> expenses.  As confirmed by our PRC counsel, if the court rules in favor of
> Ms. Chen Chen and grants her all her demands, we may be exposed to a
> maximum amount of RMB47.65 million ($6,838,404) in liabilities.  We
> believe the Contractual Dispute is without merit and we are defending
> ourselves vigorously.  As of the date of this prospectus, this case is still
> being reviewed.  There is uncertainty, however, regarding the timing or
> ultimate resolution of this lawsuit and other legal proceedings in which we
> are involved.  Further, Ms. Chen Chen filed a labor dispute case against
> Horgos Baosheng, Beijing Branch with the Beijing Shijingshan District
> Labor Dispute Arbitration Committee (the 'Committee') on the grounds
> that her previous employment with Horgos Baosheng, Beijing Branch was
> wrongfully terminated.  Ms. Chen Chen sought compensation for her lost
> pay, lost benefits, and litigation related expenses, and award of punitive

damages.  The Committee issued a judgment on August 23, 2019, ruling in favor of Ms. Chen Chen and granted her the damages in the sum of RMB424,161 ($60,873).  Horgos Baosheng, Beijing Branch appealed the case to a court in Beijing in December 2019.  On April 23, 2020, the court issued a final judgment that upheld the previous ruling.  As a result, we compensated Ms. Chen Chen a total of RMB424,161 ($60,873) on May 28, 2020.  As we routinely enter into business contracts with our advertisers, we have been and may continue to be involved in legal proceedings arising from contract disputes.  In 2019, Horgos Baosheng brought a breach of contract claim against Beijing Xingyuan Automobile Information Technology Co., Ltd. and sought recovery of RMB3.85 million in aggregate.  In April 2020, Bejing Baosheng brought a breach of contract claim against Guangzhou Aiyou Information Technology Co. Ltd. and sought recovery of RMB1,255,000 in aggregate.  These two cases are still being reviewed.

58.    The statements identified in ¶ 57 are materially false or misleading, including because they fail to state material facts necessary to make the statements therein not misleading, because, in addition to the "one pending and one recently decided material legal proceeding" it disclosed, BAOS was also party to legal proceedings initiated by the Chinese authorities related to BAOS's involvement with Sogou and Suncity.  This legal proceeding was material because it resulted in the detention of ten BAOS executives and managers and caused BAOS to effectively shut down in the months leading up to and at the time of the IPO.

**B.    Statements About Management**

59.    BAOS stated in its Registration Statement and Prospectus that "[r]elying on our management's extensive industry experience, deep industry insights and well-established network of media resources, we have grown rapidly from a start-up online marketing agency founded in 2014 to a multi-channel online marketing solution provider."

15

60. BAOS repeatedly stated in its Registration Statement and Prospectus that one of its "competitive strengths" was its "experienced and visionary management," specifically identifying Defendant Wenxiu Zhong as an essential member of the leadership team.

61. BAOS further stated in its Registration Statement and Prospectus:

Our executive management personnel have extensive experience and knowledge in the online advertising industry, bringing us a deep understanding of the business operations in the online advertising industry and the needs of advertisers and media, as well as valuable industry connections. Ms. Wenxiu Zhong, our chairperson of the board and chief executive officer, has devoted more than 14 years in the advertising industry. Ms. Wenxiu Zhong founded our Company with a vision to capitalize on the boom of online advertising industry with the emergence of innovative means to deliver effective online advertisement at low cost. Under her leadership, our gross billing and revenue have grown from $150.6 million and $16.2 million, respectively, in 2018 to $202.7 million and $17.8 million, respectively, in 2019. We also attribute our business growth to our core management team which possess on average over nine years' experience in the advertising industry…. With their extensive knowledge and experience in the online advertising industry, our core management, especially Ms. Wenxiu Zhong, our founder, chairperson of the board and chief executive officer, brings us valuable market insights and well-balanced connections and access to business resources on both the media side and the advertiser side, which, we believe, have significantly contributed to our relationship building and effective relationship management with media, and brings us in-depth knowledge of the operating mechanism of advertisers, their common advertising needs and insights on the approaches to establish business partnerships with them, all of which have contributed to our business growth and market presence."

62. BAOS also stated in its Registration Statement and Prospectus:

Set forth below is information concerning our directors, executive officers, and other key employees. The following individuals are the members of the Board and the executive management of the Registrant.

| Name | Age | Position(s) |
|------|-----|-------------|
| Wenxiu Zhong | 38 | Chairperson of the board and Chief Executive Officer |
| Sheng Gong | 38 | Director |
| Yue Jin | 39 | Chief Financial Officer |

....

The following is a brief biography of each of our executive officers and directors or director nominees:

**Wenxiu Zhong**, age 38, is our founder, chairperson of the board, and chief executive officer.  She was appointed as a director on December 4, 2018.  She joined our Company in April 2015 as the chief executive officer of Beijing Baosheng and was appointed as the legal representative and the sole director of Beijing Baosheng in September 2015.  Ms. Wenxiu Zhong has over 14 years of experience in the advertising industry.  Prior to joining our Company, Ms. Wenxiu Zhong served as the vice president of Weimeng Xingkong (Beijing) Information Technology Co., Ltd. from April 2012 to March 2015.  From October 2008 to November 2011, Ms. Wenxiu Zhong served as the national media director of Beijing Union Damei Advertising Co., Ltd.  From November 2006 to August 2008, Ms. Wenxiu Zhong worked at Tensyn Digital Marketing Technology Joint Stock Company, a company listed on the Shenzhen Stock Exchange (Stock Code: 300392).  Ms. Wenxiu Zhong received a bachelor's degree in computer and application from Heibei University of Science and Technology in 2006.

**Yue Jin**, age 39, serves as our chief financial officer and our financial director.  Mr. Yue Jin is responsible for managing our finances, evaluating our financial risks and opportunities, and is responsible for financial reporting.  Mr. Yue Jin has over 10 years of financial experience.  Prior to joining us in January 2020, Mr. Yue Jin served as the financial director at Using Media Group from November 2018 to December 2019.  From May 2011 to October 2018, Mr. Yue Jin served as the financial manager and vice financial director at Beijing Zoom Interactive Online Marketing Technology Co., Ltd.  Mr. Yue Jin received a bachelor's degree in accounting from Capital University of Economics and Business in Beijing in 2003.  Sheng Gong, age 38, serves as the national sales director of our SEM advertising, and is primarily responsible for overseeing the business development, sales and marketing of our SEM services.  Mr. Sheng Gong has over 10 years of experience in business development and sales and marketing in the media industry in China.  Prior to joining us, Mr. Sheng Gong worked as a sales director at Beijing Jinyuan Interative Technology Advertising Co., Ltd., from March 2013 to May 2016.  From October 2008 to February 2013, Mr. Sheng Gong worked as a director of the customer

department of Beijing Zhenyu Hezhong Advertising Co., Ltd.  From July 2007 to October 2008, Mr. Sheng Gong worked at Beijing Tensyn Digital Marketing Technology Joint Stock Company.  Mr. Sheng Gong received a bachelor's degree in computer application from Beijing Jianshe University in 2004.

63.     The statements identified in ¶¶ 59-62 are materially false or misleading, including because they fail to state material facts necessary to make the statements therein not misleading, because, at the time of Registration Statement and Prospectus, BAOS was not managed by these individuals.  Rather, Chinese authorities had detained many of these individuals or they had gone into hiding and unable to manage BAOS.  Defendant Yanjun Hu controlled BAOS during this period.

### C.     Statements About Growth

64.     BAOS stated in its Registration Statement and Prospectus that "[w]e have successfully implemented our business model, and our business experienced substantial growth from our inception to December 31, 2019."

65.     BAOS also stated in its Registration Statement and Prospectus that it had seen "rapid growth" "since the arrival of Wenxiu Zhong," and that it "expect[s to] continue to expand."

66.     BAOS further stated in its Registration Statement and Prospectus that "[w]e have successfully implemented our business model."

67.     BAOS stated in its Registration Statement and Prospectus, under the heading "Our Growth Strategy - Expanding our business scale and securing authorized agency status of additional media," that:

The online advertising market in China is evolving rapidly. According to the Frost and Sullivan Report, the number of internet users in China is expected to grow at a CAGR of 4.5% and reach 969.6 million in 2022, representing an internet penetration rate of 68.1%. Among these internet users, it is expected 99.0% will be mobile users. The growth of the online advertising market will outpace its offline counterpart. It is estimated that online advertising will account for near 80% of the total advertising expenditure in China in 2022, growing from 56.8% in 2017. We believe the growth of the online advertising market will fuel the need for online advertising services as advertisers seek to optimize their online marketing strategy. Emerging media also need to partner with such online advertising service providers to procure advertisers to buy their ad inventory. This creates an enormous opportunity for online advertising service providers like us. To capture the potential growth of the online advertising service market, we intend to continuously expand our advertiser base, increase the amount of advertising spend from our advertisers and broaden our media resources with authorized agency relationships. To increase our advertiser base, we will continue to actively attract new advertisers to place ads through us and seek to increase the advertising spend of our existing advertisers. We will also seek to include more high-profile and sizeable advertisers from various industries. We believe this will reinforce our reputation as a reliable online advertising services provider in different industries, which we believe would extend our reach to advertisers in those industries. In addition, we believe a sizeable advertiser base will help us secure additional authorized agency status of media. Advertisers are in a constant search for media which would mostly effectively reach their target customers at the lowest cost. As the online marketing industry evolves, the popularity of media may change quickly. Therefore, it is critical for us to identify new media resources which could offer advertising services sought after by advertisers. We will keep an eye on popular media which have already acquired massive traffic as well as those up-and-coming media with innovative advertising formats which are expected to attract significant amount of audiences in the future, and seek to secure authorized agency status with them. Then we will seek to enter into agency agreement with the relevant media, which will typically set out the ad inventory available for sale, credits terms, rebate policies as well as

requirements for payment of performance deposits by us as authorized agency. Such authorized agency status would position us as the gateway to such media. It also allows us to benefit from the rebate policies which usually come with such authorized agency status and generate additional revenue for us. If we can secure access to popular media with authorized agency status, it will in turn help us attract more advertisers to use our services. This would create a virtuous cycle to fuel the growth of our advertiser and media bases. ***This strategy has seen us securing the authorized agency status for distributing the ad inventory of Sogou*** and Shenma, two leading search engines in China, in 2016 and 2017, respectively. When we expected in-feed advertising as the future hot spot of online advertising, we secured the authorized agency status of Kuaishou (a short-video platform) in 2018. In 2019, we secured the authorized agency status of for the ad inventory of one of the most popular online news portals and a number of short-video platforms in China. We believe such a strategy has contributed to our revenue growth in the fiscal years 2019 and 2018, and will continue to do so in the future. We will keep ourselves abreast of the latest changes of the online advertising landscape, understand the need of our advertisers and identify the potential media with which we could seek to establish authorized agency relationships.

68.    The statements identified in ¶¶ 64-67 are materially false or misleading, including because they fail to state material facts necessary to make the statements therein not misleading. Chinese authorities detained ten executives and managements or others went into hiding, which made it practically impossible for BAOS to execute its growth strategy. In fact, BAOS had suspended operations and Defendant Yanjun Hu took control of the Company in or around the time of the IPO.

**D.    Sogou**

69.    BAOS stated in its Registration Statement and Prospectus that "the fact that we are one of the authorized agencies of Sogou renders us one of the go-to online advertising service providers for acquisition of ad inventory offered by Sogou."

70.    BAOS further stated in its Registration Statement and Prospectus that "We have been an authorized agency of Sogou since 2016, and was its top authorized agency with reference to our comprehensive capability in 2017."

71.    BAOS also stated in its Registration Statement and Prospectus that its "strategy has seen us securing the authorized agency status for distributing the ad inventory of Sogou."

72.    BAOS also stated in its Registration Statement and Prospectus that "Sogou, of which we are its authorized agency since 2016, had been our top customer since we obtained our authorized agency status.  We were recognized as the top authorized agency for Sogou in 2017, which we consider signifies our success in delivering SEM services and procuring advertisers for Sogou."

73.    The statements identified in ¶¶ 69-72 are materially false or misleading, including because they fail to state material facts necessary to make the statements therein not misleading. In connection with an investigation of Sogou, Chinese authorities detained ten executives and managements or others went into hiding, BAOS had suspended operations, and Defendant Yanjun Hu took control of the Company in or around the time of the IPO.   BAOS's agency agreement with Sogou expired in March 2021, the same month Plaintiffs purchased shares in BAOS.  Upon information and

belief, BAOS's Directors and Executives knew or should have known that BAOS would not be able to renew its agency agreement with Sogou at the time it made these statements in its Registration Statement and Prospectus.

      **E.**      **Risk Factors**

74.     BAOS also included certain risk factors in its Registration Statement and Prospectus that were false and misleading because the risks had already materialized and were harmful to the business.

75.     BAOS stated in its Registration Statement and Prospectus that "***[i]f*** we fail to maintain our relationships with our business stakeholders, mainly advertisers and media, our business, results of operations, financial condition and business prospects ***could*** be materially and adversely affected." This risk had already materialized because BAOS knew, or should have known, that it would lose its relationship with Sogou, which accounted for over 80% of BAOS's revenue in the year prior, because of the Chinese authorities' investigation.

76.     BAOS stated in its Registration Statement and Prospectus that "[c]ertain customers contributed to a significant percentage of our total revenue during the six months ended June 30, 2020 and the fiscal years 2019 and 2018, and losing one or more of them ***could*** result in a material adverse impact on our financial performance and business prospects." This risk had already materialized because BAOS knew, or should have known, that it would lose its relationship with Sogou, which accounted for over 80% of BAOS's revenue in the year prior, because of the Chinese authorities' proceedings against Sogou.

77.     BAOS stated in its Registration Statement and Prospectus that "[n]on-compliance with laws and regulations on the part of any third parties with which we conduct business *could* expose us to legal expenses, compensations to third parties, penalties and disruption of our business, which *may* adversely affect our results of operations and financial performance."  This risk had already materialized because Sogou's non-compliance with laws and regulations had already caused disruption to BAOS's business by triggering the Chinese authorities' investigation into BAOS and detention of its executives and managers.

78.     BAOS stated in its Registration Statement and Prospectus that "*[i]f* we fail to attract, recruit or retain our key personnel including our executive officers, senior management and key employees, our ongoing operations and growth *could* be affected." This risk had already materialized because key personnel, including Defendant Wenxiu Zhong, were detained by or hiding from Chinese authorities.

79.     BAOS stated in its Registration Statement and Prospectus that "[l]egal claims, government investigations or other regulatory enforcement actions *could* subject us to civil and criminal penalties."  This risk had already materialized because the Chinese authorities were already investigating BAOS and that investigation led to significant civil penalties.

80.     BAOS stated in its Registration Statement and Prospectus that "[u]ncertainties regarding interpretation and enforcement of the laws, rules and regulations in China *may* impose adverse impact on our business, operations and profitability."  This risk had already materialized because the uncertainties associated

with the Chinese government's investigation and detention of BAOS executives had adversely impacted BAOS's business, operations, and profitability prior to its IPO.

### F. Portions Of The Registration Statement Prepared Or Certified By Friedman.

81.    The Registration Statement contained Friedman's audit reports on the Company's financial statements as of December 31, 2019 and 2018 dated May 6, 2020, except for Note 15, as to which the date was July 10, 2020, which stated:

a.    "In our opinion, the consolidated financial statements present fairly, in all material respects, the financial position of the Company as of December 31, 2019 and 2018, and the results of its operations and its cash flows for each of the years in the two-year period ended December 31, 2019, in conformity with accounting principles generally accepted in the United States of America."

b.    "These consolidated financial statements are the responsibility of the Company's management."

c.    "Our audits included performing procedures to assess the risks of material misstatement of the financial statements, whether due to error or fraud, and performing procedures that respond to those risks.  Such procedures included examining, on a test basis, evidence regarding the amounts and disclosures in the consolidated financial statements.  Our audits also included evaluating the accounting principles used and significant estimates

made by management, as well as evaluating the overall presentation of the

consolidated financial statements."

d.    "We believe that our audits provide a reasonable basis for our opinion."

82.    Friedman consented to the inclusion of its unqualified reports of BAOS's

financial statements for 2018 and 2019 in the Registration Statement and Prospectus in

connection with the IPO:

> We hereby consent to the inclusion in this Amendment No. 3 to Form F-1 of
> our report dated May 6, 2020, except for note 15, as to which the date is July
> 10, 2020, with respect to the consolidated balance sheets of Baosheng Media
> Group Holdings Limited and subsidiaries as of December 31, 2019 and 2018,
> and consolidated statements of income and comprehensive income, cash
> flows and changes in shareholders' equity for each of the years in the two-
> year period ended December 31, 2019.  We also consent to the reference to
> our firm under the heading 'Experts' in such Registration Statement."
> January 27, 2021 Registration Statement at Exhibit 23.1.

These consents are dated January 27, 2021 and February 8, 2021

83.    The statements identified in ¶¶ 81-82 are materially false or misleading,

including because they fail to state material facts necessary to make the statements

therein not misleading, because:

a.    Friedman had failed to comply with applicable professional standards

related to its consent to inclusion of its audit reports in the Registration

Statement;

b.    The Company's management team, including the CEO, in place at the time

Friedman issued its audit report, were detained or in hiding as a result of

the investigation by Chinese authorities;

c.  The Company was being run at the time of the IPO by an undisclosed non-management, non-director stockholder;

d.  The investigation had caused the company to suspend operations in the months leading up to the IPO; and

e.  BAOS was likely to lose its largest client.

84.  Professional standards require auditors to exercise due professional care in performing their work.  *See* AS 1015, Due Professional Care in the Performance of Work.  Due professional care requires the auditor to exercise professional skepticism. *See* AS 1015.07.  Under AS 1015.09, "[t]he auditor neither assumes that management is dishonest nor assumes unquestioned honesty."

85.  As part of issuing its consents, Friedman was required under the Securities Act and auditing standards to extend its procedures with respect to subsequent events from the date of its audit reports to the effective date of the Registration Statement, or as close thereto as is reasonable and practicable under the circumstances.

86.  Under PCAOB auditing standard AS 4101, Responsibilities Regarding Filings Under Federal Securities Statutes (formerly AU 711), including its requirement to perform procedures outlined in paragraph .12 of AS 2801, Subsequent Events, Friedman was required to:

a.  Read the entire Prospectus and other pertinent portions of the Registration Statement;

b.  Inquire of and obtain written representations from officers and other executives responsible for financial and accounting matters about whether

any events occurred, other than those reflected in the Registration

Statement, that in their opinion had a material effect on the audited

financial statements included therein or that should be disclosed in order to

keep those statements from being misleading;

c.    Read the latest available interim financial statements to make any

appropriate comparisons and inquire of officers and other executives having

responsibility for financial and accounting matters as to whether interim

statements were prepared on the same basis as that used for the statements

under audit;

d.    Inquire of officers and other executives having responsibility for financial

and accounting matters whether there had been any changes in the

Company's related parties or any significant new related-party transactions;

e.    Inquire of the Company's legal counsel concerning litigation, claims, and

assessments;

f.    Obtain a letter of representation from appropriate officials, generally the

CEO, CFO, or others with equivalent positions in the entity, regarding

subsequent events; and

g.    Make such additional inquiries or perform such procedures as considered

necessary and appropriate to dispose of questions that arise in carrying out

the foregoing procedures, inquiries, and discussions.

87.    AS 4101 specifically instructs the auditor to consider withholding consent

or modifying its report under certain circumstances, including where it discovers

subsequent events that may require adjustment or disclosure in the financial statements or becomes aware that facts may have existed at the date of its report that might have affected its report had it then been aware of those facts.

88.    In addition, AS 2905, Subsequent Discovery of Facts Existing at the Date of the Auditor's Report, creates obligations triggered by discovery of "new information which may have affected the report had [the auditor] been aware of such facts." When the auditor becomes aware of information which relates to financial statements previously reported on by him, but which was not known to him at the date of his report, and which is of such a nature and from such a source that he would have investigated it had it come to his attention during the course of his audit, he should, as soon as practicable, undertake to determine whether the information is reliable and whether the facts existed at the date of his report.  In this connection, the auditor should discuss the matter with his client at whatever management levels he deems appropriate, including the board of directors, and request cooperation in whatever investigation may be necessary.  When the subsequently discovered information is found both to be reliable and to have existed at the date of the auditor's report, the auditor should take action if the nature and effect of the matter are such that (a) his report would have been affected if the information had been known to him at the date of his report and had not been reflected in the financial statements and (b) he believes there are persons currently relying or likely to rely on the financial statements who would attach importance to the information.  Those can include actions to prevent future reliance on the audit report and further discussions with the audit client.

89.     Further AS 2405, Illegal Acts by Clients, addresses the auditor's responsibilities when learning of possible illegal acts by the audit client, including "[i]nvestigation by a governmental agency."  If specific information comes to the auditor's attention that provides evidence concerning the existence of possible illegal acts that could have a material indirect effect on the financial statements, the auditor should apply audit procedures specifically directed to ascertaining whether an illegal act has occurred.  Those procedures include inquiries of management.  Depending on how that investigation proceeds, the auditor may be required to issue an adverse or qualified opinion, disclaim an opinion, or withdraw from the engagement.

90.     Upon information and belief, it would not have been possible for Friedman to have complied with the applicable professional standards in connection with its consent to inclusion of its audit reports due to the detention of the Company's executives and managers.  Among other things, the required procedures involve numerous inquiries of management and obtaining written representations of management.  If Friedman performed those procedures, exercising due professional care and professional skepticism, it would have learned the Company's management team was no longer running the Company, who was in fact running the Company, that operations had been suspended, and the nature and scope of the investigation and its likely effects.  That knowledge would have called into question the credibility of the management team that had prepared the financial statements Friedman had audited and issued its report upon and required Friedman to consider pulling its audit reports and/or withholding consent to

its inclusion in the Registration Statement and Prospectus, procedures it could not complete in accordance with professional standards.

91.    If Friedman did not learn that the Company's executives and managers were no longer running the Company and it had suspended operations as a result of the investigation by Chinese authorities in connection with its consent procedures, then it had not complied with professional standards in performing those procedures and failed to disclose that material fact about its inquiry.

92.    If Friedman did learn that the Company's executives and managers were no longer running the company and it had suspended operations as a result of the investigation by Chinese authorities in connection with its consent procedures, then it failed to comply with professional standards in nonetheless providing consent to the inclusion of its unqualified audit reports and failed to disclose that material fact about its inquiry as well as the material facts it had learned that do not fairly align with its audit report and consent.

93.    Friedman also certified the Company's 2019 and 2018 financial statements included in the Registration Statement and Prospectus, which included the following statements:

a.    "On an ongoing basis, management reviews these estimates and assumptions using the currently available information.  Changes in facts and circumstances may cause the Company to revise its estimates.

b.    "Management reviews the adequacy of the allowance for doubtful accounts on an ongoing basis, using historical collection trends and aging of

receivables.  Management also periodically evaluates individual customer's financial condition, credit history and the current economic conditions to make adjustments in the allowance when necessary."

c.  Repeatedly referred to "Ms. Wenxiu Zhong, the chairperson of the Company's board of directors and the chief executive officer ('CEO') of the Company."

94.  The statements identified in ¶ 93 are materially false or misleading, including because they fail to state material facts necessary to make the statements therein not misleading, because:

a.  The Company's management team, including the CEO who prepared these financial statements that Friedman certified, were detained or in hiding as a result of the investigation by Chinese authorities;

b.  The Company was being run at the time of the IPO by an undisclosed non-management, non-director stockholder; and

c.  The investigation had caused the company to suspend operations in the months leading up to IPO.

**G.  Omissions Of Facts Required To Be Disclosed By SEC Regulations.**

95.  Item 303 of Regulation S-K, 17 CFR § 229.303, requires companies to disclose "any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations" and "material events and uncertainties known to

management that are reasonably likely to cause reported financial information not to be necessarily indicative of future operating results or of future financial condition."

96.     The Chinese authorities' investigation into BAOS and detention of its executives and managers, which caused BAOS to suspend operations, was a material event and uncertainty that was known to management and reasonably likely to cause BAOS's reported financial information to not be indicative of its future financial condition and have a material unfavorable impact on its revenue because BAOS would not be able to generate significant revenue while its operations were suspended and it was uncertain when, if ever, normal operations would resume.

97.     Item 103 of Regulation S-K, 17 CFR § 229.103, requires companies to disclose "any material pending legal proceedings, other than ordinary routine litigation incidental to the business, to which the registrant or any of its subsidiaries is a party or of which any of their property is the subject."

98.     The Chinese Authorities' investigation into BAOS was a material legal proceeding that BAOS was a party to because it resulted in the detention of at least ten executives and managers, which itself resulted in the Company suspending operations.

## IV.    BAOS'S FALSE REPRESENTATIONS AND WARRANTIES IN THE SPA

99.     In the March 17, 2021 SPA, BAOS further referenced its public filings, including its Prospectus, and solicited Orient and Union's purchase of additional securities based upon the information contained therein.

100.    In the SPA, BAOS made numerous warranties, including

a. That "there has been no event, occurrence or development that has had or that could reasonably be expected to result in a Material Adverse Event. SPA § 3.1(b). The SPA defined "Material Adverse Event" to include an event that has "a material adverse effect on the results of operations, assets, business, or condition (financial or otherwise) of the Company and the subsidiaries, taken as a whole." SPA §3.1(b)(ii).

b. That there was no "investigation pending" by any government entity that could reasonably be expected to have a Material Adverse Effect on the company. SPA § 3.1(j).

c. That the company has not "been in violation of any statute, rule, ordinance or regulation of any governmental authority having proper jurisdiction over the Company or its Subsidiaries." SPA § 3.1(l).

101. BAOS also specifically warranted that none of its prior filings, including its Prospectus, "contained any untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary in order to make the statement therein, in the light of the circumstances under which they were made, not misleading." SPA § 3.1(x).

## V.    BAOS'S UNDERWRITERS AND AUDITOR NEGLIGENTLY APPROVED ITS SECURITIES FILINGS

102. Given the significant disruption caused by the investigation into BAOS by Chinese authorities, those persons and entities that assisted BAOS with its securities

filings were negligent in failing to correct the securities filings to prevent a material misstatement or omission.

### A.    UNIVEST

103.    Defendant Univest served as BAOS's lead underwriter for the IPO.

104.    Due to its role, Univest would or should have been in direct communication with BAOS's directors and senior executives in preparing for the IPO.

105.    This level of access to and communication with BAOS's directors and senior executives was significantly greater than the access and communication available to Plaintiffs.

106.    Univest would or should have known that BAOS was under investigation due to the material operational disruptions caused by the Chinese authorities' investigation and from conversations with BAOS's executives.

107.    Univest was at least negligent in failing to conduct adequate diligence or investigation into the accuracy of the Registration Statement and Prospectus when it became clear that BAOS was under investigation.

### B.    BENCHMARK AND WESTPARK

108.    Defendants Benchmark and WestPark served as BAOS's secondary underwriters for the IPO.

109.    Due to their role, Benchmark and WestPark would or should have been in direct communication with BAOS's directors and senior executives in preparing for the IPO.

110.    This level of access to and communication with BAOS's directors and senior executives was significantly greater than the access and communication available to Plaintiffs.

111.    Benchmark and WestPark would or should have known that BAOS was under investigation due to the material operational disruptions caused by the Chinese authorities' investigation and also from conversations with BAOS's executives.

112.    Benchmark and WestPark were at least negligent in failing to conduct adequate diligence or investigation into the accuracy of the Registration Statement and Prospectus when it became clear that BAOS was under investigation.

### C.    MARCUM MERGES WITH FRIEDMAN

113.    Marcum is a certified public accounting firm and following a merger in 2022 is a continuation of Friedman, which served as the certified public accountant for BAOS in preparing its securities filings for the IPO.

114.    Although Friedman nominally remains an active New York limited liability partnership, press releases from Marcum state that in or about September 2022, Friedman merged into Marcum.

115.    In a May 3, 2022 press release, Marcum announced that "Friedman will merge into Marcum."

116.    In a September 6, 2022 press release, Marcum announced that "[t]he previously announced merger of Marcum LLP ("Marcum") and Friedman LLP ("Friedman") is now complete, effective as of September 1."

117.    Friedman's X (Twitter) page and LinkedIn page both state, "Effective September 1, 2022, Friedman LLP is now Marcum."

118.    Additionally, in a Registration Statement filed on August 8, 2023, BAOS noted that "Friedman LLP was merged with Marcum LLP on September 1, 2022."

119.    In that same Registration Statement filed on August 8, 2023, BAOS noted that Friedman had "filed its application to withdraw the PCAOB registration on December 30, 2022."

120.    Public records of the PCAOB illustrate that Friedman requested to withdraw its PCAOB registration.  That request is currently pending.

121.    After filing of the original complaint, counsel for Plaintiffs received an email from counsel for Marcum, Bruce R. Braun on February 21, 2024 asking to set up a telephone call.  Counsel for Plaintiffs and counsel for Marcum spoke on Friday February 23, 2024.  During that call, Mr. Braun informed counsel for Plaintiffs that it was Marcum's position that Friedman should have been named in place of Marcum.  Mr. Braun noted that the press release from Marcum and Friedman state the two entities merged, but he reiterated his position that they are separate entities.  Counsel for Plaintiffs asked whether counsel for Marcum could provide any documents to support their position, and counsel for Marcum noted they would consider providing supporting documents.  As of the filing of this Amended Complaint, counsel for Plaintiffs have not received any documents from counsel for Marcum.

122.    After receiving information that Friedman may be a proper defendant to the action, despite Friedman and Marcum's repeated press releases and other statements

noting they merged, Plaintiffs filed this Amended Complaint on March 5, 2024, approximately a week after Plaintiffs' call with Counsel for Marcum.

123.    Friedman consented to the inclusion of its unqualified reports of BAOS's financial statements for 2018 and 2019 in the Registration Statement and Prospectus in connection with the IPO.  These consents are dated January 27, 2021 and February 8, 2021.

124.    Based on its failure to discover and/or disclose the BAOS investigation and resulting consequences, Friedman did not perform sufficient procedures, and accordingly, its consents omitted material facts that made them misleading to an ordinary investor.

125.    Had Friedman performed the required procedures in accordance with applicable professional standards, it would have discovered that BAOS was under investigation, that it had suffered material operational disruptions due to the Chinese authorities' investigation, that its management team was detained by and/or in hiding from the Chinese authorities, and would have learned that BAOS's relationship with its largest client was at risk.

126.    Friedman was at least negligent in failing to (i) adhere to PCAOB auditing standards; and/or (ii) conduct adequate diligence or investigation in connection with the Registration Statement.

## VI.    PLAINTIFFS DISCOVER THE MATERIAL MISSTATEMENT OR OMISSION

127.    Plaintiffs discovered the material misstatements and omissions in BAOS's public filings in June 2023, approximately seven months before filing the initial Complaint.

128.    Defendants never disclosed the Chinese authorities' investigation, detention, and penalties to investors or the public.

129.    Plaintiffs learned of this information during a conversation between Hu Dong (a principal for Plaintiff Orient) and Defendant Yanjun Hu, a significant shareholder of BAOS who had inside knowledge of the operations and conduct of BAOS executives leading up to the IPO.

130.    Given the non-public nature of the Chinese authorities' proceedings against BAOS and its executives, information related to it could not have been independently discovered through reasonable diligence.

## VII.    DECLINE IN STOCK PRICE

131.    The conduct underlying the material misstatements and omissions directly resulted in significant losses to BAOS's revenue, including through the loss of its key client as a direct and proximate result of the risk concealed by the materially false or misleading statements alleged above.

132.    Since Plaintiffs' initial investment of $13.5 million in March 2021, BAOS's stock price has declined approximately 96%.

## COUNT 1
### (Section 11)
### By Golden against BAOS, the Director Defendants, Yue Jin; Univest, Benchmark, WestPark, Friedman, and Marcum

133.    Plaintiff Golden repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

134.    This count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of Golden against all Defendants.  Golden does not claim in this pleading that Defendants committed intentional or reckless misconduct or that Defendants acted with scienter or fraudulent intent.

135.    The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

136.    Apart from its obligation to disclose information to prevent the Registration Statement from containing inaccurate or misleading statements or omissions, BAOS had an express obligation to disclose the Chinese authorities' investigation as it would any other proceeding.  *See, e.g.*, SEC Form 20-F Part I, Item 8(7) (detailing required disclosures for foreign private issuers like BAOS, and noting that disclosures of such proceedings are required).

137.    Defendant BAOS is the registrant for the IPO.  As such, BAOS is strictly liable for the materially inaccurate statements contained in the Registration Statement and Prospectus and the failure of the Registration Statement and the Prospectus to be

complete and accurate.  By virtue of the Registration Statement containing material misrepresentations and omissions of material facts necessary to make the statements therein not false and misleading, BAOS is liable under Section 11 of the Securities Act.

138.    The Director Defendants and Yue Jin each signed the Registration Statement either personally or through an Attorney-in-Fact and/or caused its issuance or served as directors of BAOS at the time the Registration Statement was effective.  The Director Defendants and Yue Jin each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Registration Statement.  They had a duty to ensure such statements were true and accurate and that there were no omissions of material facts that would make the statements misleading.  By virtue of their failure to exercise reasonable care, the Registration Statement contained misrepresentations of material facts and omissions of material fact necessary to make the statements made therein not misleading.  As such, the Director Defendants and Yue Jin are liable to Golden.

139.    As underwriters, Univest, Benchmark, and WestPark had a duty to make reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Registration Statement.  They had a duty to ensure such statements were true and accurate and that there were no omissions of material facts that would make the statements misleading.  By virtue of their failure to exercise reasonable care, the Registration Statement contained misrepresentations of material facts and omissions of material fact necessary to make the statements made therein not misleading.  As such, Univest, Benchmark, and WestPark are liable to Golden.

140.    As BAOS's auditor, Friedman (which later merged with Marcum) consented to the inclusion of its unqualified audit reports on BAOS's financial statements.  In approving these consents, under AS 4101, Friedman was required to conduct diligence to ensure subsequent events had not rendered its prior approval of BAOS's financial and accounting disclosures to be materially misleading or inaccurate.

141.    Friedman was negligent in failing to comply with this obligation.  Had Friedman conducted adequate diligence prior to issuing its consents, it would have discovered that BAOS was under investigation, that BAOS's executive team had been detained for this investigation causing the company to suspend operations, and that BAOS was likely to lose its largest clients.

142.    Friedman's failure to perform these necessary and required procedures meant that its consents omitted material facts that made them misleading to Golden.

143.    Marcum is liable for Friedman's failures because it merged with Friedman, and is a mere continuation of Friedman.

144.    By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated, Section 11 of the Securities Act.

145.    Golden acquired BAOS shares traceable to, and in reliance on, the Registration Statement and without knowledge of the untruths alleged herein.

146.    Golden sustained damages when the price of BAOS's shares declined substantially due to material inaccuracies in the Registration Statement.

147.     This action was brought within one year after the discovery of the untrue

statements and omissions, within three years of the effective date of the Registration

Statement, and within three years of the date of the IPO.

## COUNT 2
### (Section 12(a)(2))
### By Golden Against BAOS and Univest

148.     Plaintiff Golden repeats and realleges each and every allegation contained

in the foregoing paragraphs as if fully set forth herein.

149.     This count is brought by Golden pursuant to Section 12(a)(2) of the

Securities Act, 15 U.S.C. § 77l.

150.     Golden purchased common units in BAOS's IPO.

151.     For purposes of this count, Golden affirmatively states that they do not

claim that Defendants committed intentional or reckless misconduct or that Defendants

acted with scienter or fraudulent intent.

152.     Defendants BAOS and Univest were sellers, offerors, and/or solicitors of

purchasers of the BAOS common unit offered pursuant to the Prospectus.  Defendants

issued, caused to be issued, and/or signed the Registration Statement in connection with

the IPO.  The Registration Statement and Prospectus were used to induce investors, such

as Golden, to purchase BAOS common units.

153.     Golden purchased BAOS shares from Univest based on Univest's oral

statements and the information contained in the Prospectus.

154.    BAOS was a statutory seller under Section 12(a)(2) and SEC Rule 159A because it is the issuer of the securities that Golden purchased as part of the initial distribution of such securities.

155.    Univest was a statutory and direct seller under Section 12(a)(2) because it passed title to the securities being sold to Golden.

156.    The Prospectus contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and concealed and failed to disclose material facts.

157.    Apart from its obligation to disclose information to prevent the Prospectus from containing inaccurate or misleading statements or omissions, BAOS had an express obligation to disclose the Chinese authorities' investigation as it would any other similar proceeding. *See, e.g.*, SEC Form 20-F Part I, Item 8(7) (detailing required disclosures for foreign private issuers like BAOS, and noting that disclosures of such proceedings are required).

158.    As set forth more specifically above, the Prospectus contained untrue statements of material fact and omitted to state material facts necessary in order to make the statements, in light of circumstances in which they were made, not misleading.

159.    Golden did not know, nor could they have known, of the untruths or omissions contained in the Prospectus.

160.    The Defendants named in this Count were obligated to make a reasonable and diligent investigation of the statements contained in the Prospectus to ensure that such statements were true and that there was no omission of material fact required to be

stated in order to make the statements contained therein not misleading.  None of the Defendants named in this Count made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Prospectus were accurate and complete in all material respects.

161.    This claim was brought within one year after discovery of the untrue statements and omissions in the Prospectus, within three years of the effective date of the Registration Statement, and within three years after the date of the IPO.

162.    By reason of the misconduct alleged herein, the Defendants named in this Count violated Section 12(a)(2) of the Securities Act and are liable to Golden who purchased or acquired BAOS's common shares pursuant to the Prospectus, and has been damaged as a result of such violation.  Accordingly, Golden has the right to rescind and recover the consideration paid for their units, and hereby tender their units to the Defendants sued herein.

### COUNT 3
### (Section 15)
### By Golden against the Director Defendants, Yue Jin, and Yanjun Hu

163.    Golden repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

164.    This count is asserted by Golden against the Director Defendants, Yue Jin (BAOS's CFO), and Yanjun Hu (the controlling person) pursuant to Section 15 of the Securities Act, 15 U.S.C. § 77o.

165.    For purposes of this count, Golden affirmatively states that it does not claim that Defendants committed intentional or reckless misconduct or that Defendants acted with scienter or fraudulent intent.

166.    At all times relevant to this Amended Complaint, the Director Defendants, Yue Jin, and Yanjun Hu acted as controlling persons of BOAS within the meaning of Section 15 of the Securities Act.  By reason of their ownership interest, senior management positions, directorships at BAOS, or actual control of BAOS as alleged above, these Defendants, individually and acting pursuant to a common plan, had the power to influence and exercised the same to cause BAOS to engage in the conduct complained of herein and were therefore control persons of BAOS.  By reason of such conduct, the Director Defendants, Yue Jin, and Yanjun Hu are liable pursuant to Section 15 of the Securities Act.

## COUNT 4
### (Breach of Contract)
### By Plaintiffs Orient and Union against BAOS

167.    Plaintiffs Orient and Union repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

168.    Through the above-described misstatements and omissions, BAOS breached the SPA, which was a valid contract between BAOS and Orient and Union.

169.    Orient and Union performed all of their obligations under the SPA.

170.    Pursuant to section 3.1 of the SPA, BAOS warranted that there had been no development that could reasonably be expected to have a material adverse effect on the company, that BAOS was not under investigation, that BAOS was not in violation of any

laws of the jurisdiction's in which it operated, and that its public disclosures, including its Registration Statement and Prospectus, contained no material misstatements or omissions.

171.    BAOS breached the SPA because the warranties in sections 3.1(b), (j), (l), & (x) were false.  The Chinese authorities investigation into BAOS (i) was reasonably expected to have material adverse impact on BAOS, (ii) was ongoing at the time BAOS warranted no investigations were ongoing, (iii) showed that BAOS was in violation of Chinese law, and (iv) established that BAOS's public disclosures contained material misrepresentations and omissions.

172.    Orient and Union have been harmed by BAOS's breach because Orient and Union would not have entered into the SPA, and subsequently lost money on their investments in BAOS, without the warranties in section 3.1.

### DEMAND FOR JURY TRIAL

173.    Plaintiffs demand a jury trial on all issues so triable.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment as follows:

1.  That the Court award compensatory damages in favor of Plaintiffs as appropriate against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

2.  That the Court award Plaintiffs their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

3. Awarding rescission or rescissory measure of damages as to Counts 2 and 4; and

4. That the Court award such other and further relief as the Court may deem just and proper.

Respectfully Submitted,                    DORSEY & WHITNEY LLP

Dated: November 1, 2024

By   */s/ Ian Blodger*
      Daniel Goldberger
      goldberger.dan@dorsey.com
      51 West 52nd Street
      New York, NY 10019
      Telephone: (212) 415-9200
      Facsimile: (212) 953-7201


      Thomas P. Swigert (*NY #* 5858840)
      swigert.tom@dorsey.com
      Michael Rowe (*pro hac vice)*
      rowe.michael@dorsey.com
      Ian Blodger (*pro hac vice*)
      blodger.ian@dorsey.com
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 340-2600
Facsimile: (612) 340-2868

*Attorneys for Plaintiffs Orient Plus
International Limited, Union Hi-Tech
Development Limited, and Golden
Genius International Limited*