UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Orient Plus International Limited; Union Hi-Tech Development Limited; and Golden Genius International Limited, | |
| Plaintiffs, | Case No. 1:24-cv-00744-JLR |
| v. | Honorable Jennifer L. Rochon |
| Baosheng Media Group Holdings Limited; Wenxiu Zhong; Sheng Gong; Yu Zhong; Zuohao Hu; Adam (Xin) He; Yue Jin; Yanjun Hu; Univest Securities, LLC; The Benchmark Company, LLC; WestPark Capital, Inc.; Friedman LLP; and Marcum LLP, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

**FRIEDMAN LLP'S AND MARCUM LLP'S JOINT MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS THE
THIRD AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................... 6

   I.   Friedman's Audit Report And Consents ............................................................ 6

   II.   Golden's Allegations Regarding Baosheng's IPO Documents ........................... 8

ARGUMENT ....................................................................................................................... 9

   I.   Golden Fails to Allege Facts Supporting Opinion Liability Under *Omnicare* ................ 10

     A.   The Alleged Misstatements In Friedman's Audit Report Are Statements Of Opinion Under *Omnicare* ................................................................................................ 10

     B.   Golden Fails to Allege A False Statement of Opinion Under *Omnicare* ..................... 12

       1.   Golden Fails to Plead—And In Fact Disclaims—Subjective Falsity ...................... 12

       2.   Golden Does Not Allege Materially False "Embedded" Statements of Fact .......... 14

       3.   Golden Has Not Alleged A Material Omission Of Fact ......................................... 15

   II.   Golden Fails To Allege Facts Demonstrating That Baosheng's Financial Statements Violated GAAP or Other Disclosure Requirements ............................................... 22

   III.   Golden's Claim Against Friedman Is Untimely ......................................................... 25

   IV.   Baosheng's Arguments Regarding the Statute of Limitations Also Apply to the Independent Auditor Defendants .................................................................................. 27

CONCLUSION ................................................................................................................... 27

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abramson v. Newlink Genetics Corp.*,
965 F.3d 165 (2d Cir. 2020)................................................................10, 14, 16

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
529 F. Supp. 3d 111 (S.D.N.Y. 2021)..................................................13, 23

*In re AmTrust Fin. Servs., Inc. Sec. Litig.*,
2019 WL 4257110 (S.D.N.Y. Sept. 9, 2019)........................................12, 18

*In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*,
381 F. Supp. 2d 192 (S.D.N.Y. 2004)..................................................23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................18

*In re Banco Bradesco S.A. Sec. Litig.*,
277 F. Supp. 3d 600 (S.D.N.Y. 2017)..................................................24

*Barilli v. Sky Solar Holdings, Ltd.*,
389 F. Supp. 3d 232 (S.D.N.Y. 2019)..................................................26

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................18

*Bensinger v. Denbury Res. Inc.*,
31 F. Supp. 3d 503 (E.D.N.Y. 2014) ..................................................26

*Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*,
582 U.S. 497, (2017)..........................................................................6, 25, 26

*In re China Valves Tech. Sec. Litig.*,
979 F. Supp. 2d 395 (S.D.N.Y. 2013)..................................................2, 5, 22, 23

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017) ..............................................................14

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
752 F.3d 173 (2d Cir. 2014)................................................................5, 24

*City of Warwick Ret. Sys. v. Carvana Co.*,
CV 2022-013054, slip op. (Ariz. Sup. Ct. Mar. 13, 2023) ..................3, 14, 21

*City of Warwick Ret. Syst. v. Carvana Co.*,
  CV 2022-013054, slip op. (Ariz. Sup. Ct. Oct. 26, 2023) ....................................................17

*Deephaven Priv. Placement Trading, Ltd. v. Grant Thornton & Co.*,
  454 F.3d 1168 (10th Cir. 2006) ...........................................................................................21

*Fed. Deposit Ins. Corp. for Colonial Bank v. First Horizon Asset Sec. Inc.*,
  291 F. Supp. 3d 364 (S.D.N.Y. 2018)............................................................................6, 25, 26

*Herman & MacLean v. Huddleston*,
  459 U.S. 375 (1983)..............................................................................................................20

*Hunt v. Bloom Energy Corp.*,
  2021 WL 4461171 (N.D. Cal. Sept. 29, 2021) ......................................................3, 14, 15, 17

*Hurst v. Enphase Energy, Inc.*,
  2021 WL 3633837 (N.D. Cal. Aug. 17, 2021) ......................................................................23

*Jaroslawicz v. M&T Bank Corp.*,
  962 F.3d 701 (3d Cir. 2020)..................................................................................................16

*Jiajia Luo v. Sogou, Inc.*,
  465 F. Supp. 3d 393 (S.D.N.Y. 2020)..............................................................................5, 24

*Johnson v. CBD Energy Ltd.*,
  2016 WL 3654657 (S.D. Tex. July 6, 2016).................................................................. *passim*

*Martin v. Quartermain*,
  732 F. App'x 37 (2d Cir. 2018) ............................................................................................13

*Mehedi v. View, Inc.*,
  2023 WL 3592098 (N.D. Cal. May 22, 2023) ......................................................................13

*New Eng. Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*,
  122 F.4th 28 (2d Cir. 2023) ...................................................................................... *passim*

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015)................................................................................................... *passim*

*In re OSG Sec. Litig.*,
  971 F. Supp. 2d 387 (S.D.N.Y. 2013)..................................................................................23

*In re Pareteum Sec. Litig.*,
  2021 WL 3540779 (S.D.N.Y. Aug. 11, 2021)......................................................................23

*Peifa Xu v. Gridsum Holding Inc.*,
  2021 WL 773002 (S.D.N.Y. Feb. 23, 2021)..................................................................25, 26

*In re Petrobras Sec. Litig.*,
　　2016 WL 1533553 (S.D.N.Y. Feb. 19, 2016)..........................................................................15

*Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*,
　　721 F.3d 95 (2d Cir. 2013)..........................................................................................26

*Querub v. Hong Kong*,
　　649 F. App'x 55 (2d Cir. 2016) .......................................................................... *passim*

*Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA*,
　　92 F.4th 415 (2d Cir. 2024) ...........................................................................................6

*Roth v. Jennings*,
　　489 F.3d 499 (2d Cir. 2007)...........................................................................................6

*Rubke v. Capitol Bancorp Ltd.*,
　　551 F.3d 1156 (9th Cir. 2009) .....................................................................................14

*Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*,
　　2022 WL 3572474 (M.D. Pa. Aug. 18, 2022) .................................................................15, 17

*Silvercreek Mgmt., Inc. v. Citigroup, Inc.*,
　　248 F. Supp. 3d 428 (S.D.N.Y. 2017)..........................................................................26

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
　　645 F. App'x 72 (2d Cir. 2016) .......................................................................... *passim*

*Special Situations Fund III QP, L.P. v. Marrone Bio Innovations, Inc.*,
　　243 F. Supp. 3d 1109 (E.D. Cal. 2017)........................................................................3, 14, 15

*Stein v. U.S. Xpress Enters., Inc.*,
　　2020 WL 3584800 (E.D. Tenn. June 30, 2020)...........................................................13

*In re SunEdison, Inc. Sec. Litig.*,
　　300 F. Supp. 3d 444 (S.D.N.Y. 2018)................................................................. *passim*

*In re Tarragon Corp. Sec. Litig.*,
　　2009 WL 10732259 (S.D.N.Y. Mar. 27, 2009) ...........................................................22

*Tongue v. Sanofi*,
　　816 F.3d 199 (2d Cir. 2016)........................................................................................2, 16

*In re Velti PLC Sec. Litig.*,
　　2015 WL 5736589 (N.D. Cal. Oct. 1, 2015)...............................................................13

**Statutes**

15 U.S.C. § 77k.............................................................................................................10

iv

15 U.S.C. §77k(a)(4) .................................................................................................2

15 U.S.C. § 77m ...............................................................................................25, 27

28 U.S.C. § 2072(b) ..............................................................................................26

**Other Authorities**

PCAOB AS 4101.10(b) ..........................................................................................19

SFAS No. 154, *Accounting for Changes and Error Corrections* ..................................23

Defendants Friedman LLP ("Friedman") and Marcum LLP ("Marcum") (together, the "Independent Auditor Defendants") jointly move for dismissal of the Third Amended Complaint (Dkt. No. 128; the "TAC"), with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

Plaintiffs Orient Plus International Limited ("Orient"), Union Hi-Tech Development Limited, and Golden Genius International Limited ("Golden") (collectively, "Plaintiffs") filed this lawsuit against Baosheng Media Group Holdings Limited ("Baosheng" or the "Company") and others, including certain of Baosheng's underwriters and directors, its Chief Financial Officer, and one of its investors. Only one of the three Plaintiffs, Golden, brings a claim against Baosheng's independent financial statement auditor, Friedman, and the accounting firm Friedman's partners later joined, Marcum, alleging solely violations of Section 11 of the Securities Act of 1933 based on statements the Independent Auditor Defendants made in filings related to Baosheng's initial public offering ("IPO").

The TAC does not come close to remedying the fundamental deficiency in Golden's first three pleadings: the absence of any ***factual*** allegations regarding material misstatements or omissions in Friedman's audit opinions, as required under the Supreme Court's controlling decision in *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 575 U.S. 175, 185–86 (2015). Instead, Golden's new allegations regarding Friedman[1] consist entirely of recitations of Friedman's audit opinions and consents (TAC ¶¶ 81–82), formulaic legal assertions (*id.* ¶¶ 83, 93–94), paragraphs-long regurgitations of various auditing standards (*id.*

---

[1] Golden makes no allegations regarding any statements or omissions by Marcum itself. Instead, Golden alleges that Marcum is liable for Friedman's alleged violation of Section 11 because, according to Golden, Marcum "merged with" and "is a mere continuation of" Friedman." *E.g.*, TAC ¶ 143. Golden recognizes that Marcum's position is that Marcum and Friedman "are separate entities" and "Friedman should have been named in place of Marcum" in this action. *Id.* ¶ 121.

¶¶ 85–89), and conclusory surmisals that are devoid of facts regarding Friedman's work (*id.* ¶¶ 90–92). While this window dressing might have the false gloss of substance, it falls far short of the Supreme Court's demanding standard for asserting Section 11 liability based on an opinion. *See Tongue v. Sanofi*, 816 F.3d 199, 210 (2d Cir. 2016) (quoting *Omnicare*, 575 U.S. at 194) (alleging opinion liability under *Omnicare* "is no small task for an investor"). Accordingly, Golden's sole Section 11 claim against the Independent Auditor Defendants (Count I) fails, once again, for multiple, independently dispositive reasons.

**First**, the Section 11 claim against the Independent Auditor Defendants fails because the only actionable statements by Friedman contained in Baosheng's IPO filings are the opinions in Friedman's audit report on the Company's financial statements for the years 2018 and 2019 (the "Audit Report"). Friedman issued this Audit Report and consented to its inclusion in Baosheng's IPO materials **before** the alleged events that give rise to Golden's claim, and in any event Golden's threadbare allegations regarding the Audit Report and consents fail to meet the requirements for alleging a false statement of opinion under the Securities Act.

As Baosheng's independent auditor, Friedman can be liable under Section 11 only for material misstatements or omissions contained in its Audit Report—not for misstatements Baosheng may have made in its own financial statements. *See* 15 U.S.C. §77k(a)(4); *In re China Valves Tech. Sec. Litig.*, 979 F. Supp. 2d 395, 413 (S.D.N.Y. 2013). The Second Circuit has repeatedly affirmed that statements in independent auditors' reports are statements of **opinion** subject to the stringent requirements the Supreme Court articulated in *Omnicare*. *See New Eng. Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*, 122 F.4th 28, 39–43 (2d Cir. 2023); *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 645 F. App'x 72, 75–76 (2d Cir. 2016) ("*Special Situations*"); *Querub v. Hong Kong*, 649 F. App'x 55, 58 (2d Cir.

2016). Accordingly, to state a claim against the Independent Auditor Defendants under Section 11, Golden is required to plead facts showing that Friedman either: (1) "did not hold" (*i.e.*, subjectively disbelieved) its opinions when it consented to their incorporation in Baosheng's IPO documents, (2) "embedded" material misstatements of fact into its opinions, or (3) omitted material facts about its inquiry or knowledge forming the basis for its opinions that rendered the opinions materially misleading to a reasonable investor. *New Eng. Carpenters*, 122 F.4th at 42.

The TAC comes nowhere close to meeting this demanding standard. First, Golden does not—and cannot—allege Friedman "did not hold" the opinions expressed in its Audit Report. To the contrary, Golden expressly disclaims any allegation of fraudulent intent against Friedman. *See* TAC ¶ 134. Second, Golden does not and cannot allege that Friedman's opinions contained untrue "embedded statements of fact." Courts have been nearly unanimous in holding that the "embedded facts" theory of *Omnicare* does not apply in this context. *See, e.g.*, *Johnson v. CBD Energy Ltd.*, 2016 WL 3654657, at *12 (S.D. Tex. July 6, 2016); *Hunt v. Bloom Energy Corp.*, 2021 WL 4461171, at *15 (N.D. Cal. Sept. 29, 2021); *Special Situations Fund III QP, L.P. v. Marrone Bio Innovations, Inc.*, 243 F. Supp. 3d 1109, 1119 (E.D. Cal. 2017) ("*Marrone Bio*"); *City of Warwick Ret. Sys. v. Carvana Co.,* CV 2022-013054, slip op. at 23 (Ariz. Sup. Ct. Mar. 13, 2023) ("*City of Warwick I*") (attached as Exhibit A).[2] Third, Golden does not and cannot allege that Friedman omitted ***any*** "particular," much less "material," facts about Friedman's inquiry or knowledge related to its Audit Report or to its consents allowing Baosheng to include the Audit Report in the IPO materials. *See Omnicare*, 575 U.S. at 194

---

[2] References in the form "Exhibit __" or "Ex. __" refer to the exhibits to the Declaration of Karim Basaria, dated December 20, 2024.

Golden's claim instead is premised on a theory that an alleged investigation by unspecified Chinese authorities about unspecified illegal activities somehow rendered the Company's "financial and accounting disclosures" in its IPO materials "misleading or inaccurate." TAC ¶ 140. But the scant, vague allegations Golden has added to this latest iteration of its pleading— regarding a purported investigation into Baosheng by Chinese authorities and the arrest of Baosheng executives—do not bolster the Section 11 claim against Friedman, and they are speculative and conclusory in any event. In fact, while Golden relies on a transcript of the telephone call about the purported investigation, that transcript *undermines* the foundational basis for Golden's claim because it demonstrates that if Baosheng ever became the target of this mysterious investigation by Chinese authorities, that occurred *after the IPO* and therefore, *after Friedman issued its consents*. *See, e.g.*, Exhibit A to TAC ("Transcript") at 45 at 15:07-44, 48 at 18:30-55.

Golden's new allegations concerning Friedman also do not contain any "particular" or "material" factual statements about Friedman's knowledge, inquiry, or procedures, the omission of which would have made Friedman's audit opinions false when it issued the consents. *See Omnicare*, 575 U.S. at 194. In fact, Golden fails to draw any connection between the alleged investigation that forms the basis of its claim and Friedman's audit opinions and consents. Nor could it, because again, the alleged investigation that forms the basis for Golden's claim *post-dates the IPO and Friedman's work*. *See id.* These failures are fatal to Golden's claim.

*Second*, the Court should dismiss Golden's Section 11 claim against the Independent Auditor Defendants for the separate, independent reason that Golden has failed to allege any facts demonstrating a material misstatement or omission in Baosheng's financial statements. This defect is fatal: an auditor's liability is "'derivative of the Company's—if plaintiffs have failed to allege a

material misstatement . . . they have failed to allege [the auditor] erred in not discovering and/or disclosing the phantom misstatement.'" *In re China Valves*, 979 F. Supp. 2d at 413.

Golden extrapolates from a few sparse and vague allegations about the investigation and posits bald conclusions about how the investigation somehow bears on the accuracy of the Company's financial statements on which Friedman issued opinions that it later consented to have incorporated into the IPO materials. Golden does not (and cannot) allege that Baosheng has ever restated its financial statements, which it would have been required to do if it had determined that they were materially misstated, and no court or regulator found that the Company's financial statements violated GAAP. Furthermore, the Transcript on which Golden relies confirms that any investigation did not target Baosheng until at least after the IPO and therefore was not disclosable. *See* Transcript at 45 at 15:07-44, 48 at 18:30-55. And even if one were to assume (contrary to the Transcript) that the investigation into ***Baosheng*** (rather than its customers) began before the IPO, Golden does not allege any facts demonstrating that this purported investigation met the specific criteria for disclosure under Generally Accepted Accounting Principles ("GAAP") or any other requirements that govern public company disclosures. Indeed, it is well settled that public companies have "no free-standing obligation under United States law" to disclose such information. *Jiajia Luo v. Sogou, Inc.*, 465 F. Supp. 3d 393, 413 (S.D.N.Y. 2020); *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014). This defect dooms Golden's claim because without a GAAP violation in the Company's underlying financial statements, Golden cannot allege a material misstatement or omission in the Audit Report opining on those financial statements in the IPO materials. *See In re China Valves*, 979 F. Supp. 2d at 413.

***Third***, as to Friedman specifically, Golden's Section 11 claim is barred under the statute's three-year statute of repose. While Golden named Marcum in its initial complaint, filed before the

statute of repose lapsed, Golden did not add Friedman to this case until after the repose period had

expired, and the statute of repose permits no exceptions. *See, e.g.*, *Cal. Pub. Emps.' Ret. Sys. v.*

*ANZ Sec., Inc.*, 582 U.S. 497, 505–08 (2017) ("*ANZ Sec.*"); *Fed. Deposit Ins. Corp. for Colonial*

*Bank v. First Horizon Asset Sec. Inc.*, 291 F. Supp. 3d 364, 370 (S.D.N.Y. 2018).

## FACTUAL BACKGROUND

Baosheng is a China-based company that provides online marketing services and solutions.

TAC ¶ 5. In February 2021, Baosheng became listed on the NASDAQ by making its IPO. *Id.* As

part of the IPO, Baosheng filed several documents with the Securities and Exchange Commission

containing the Company's audited financial statements for the years ending December 31, 2018

and 2019. *See id.* ¶¶ 81–82. Plaintiffs allegedly purchased shares of Baosheng in connection with

or after the IPO. *Id.* ¶¶ 41–42.

## I.    Friedman's Audit Report And Consents

In May 2020, several months before the IPO, Friedman issued the Audit Report, in which

it opined on the Company's year-end 2018 and 2019 financial statements. *See id.* ¶ 81. Then, on

January 27 and February 8, 2021, Friedman consented to having that Audit Report incorporated

by reference in certain of Baosheng's IPO filings (the "Consents"). *Id.* ¶¶ 82, 123, 140. Golden's

claim against the Independent Auditor Defendants is based solely on statements in Friedman's

Audit Reports and the limited procedures Friedman was required to perform for the Consents. *See,*

*e.g.*, *id.* ¶¶ 82–83, 140–42. In the TAC, Golden quotes from the Audit Report and Consents, *see*

*id.*, which the Court may consider on a Rule 12 motion,[3] and they are attached hereto as Exhibits

B, C, and D.

---

[3] *See, e.g.*, *Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA*, 92 F.4th 415, 436 (2d Cir. 2024) (cleaned up) ("In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."); *Roth v. Jennings*, 489

In the section of its Audit Report titled, "***Opinion* on the Financial Statements**," Friedman opined that Baosheng's year-end 2018 and 2019 financial statements were fairly presented in all material respects:

> In our ***opinion***, the consolidated financial statements present fairly, in all material respects, the financial position of the Company as of December 31, 2019 and 2018, and the results of its operations and its cash flows for each of the years in the two-year period ended December 31, 2019, in conformity with accounting principles generally accepted in the United States of America.

Ex. B at F-2 (PDF p. 166) (emphases added); *see also* TAC ¶ 81(a) (quoting *id.*). Under the section titled, "**Basis for *Opinion***," Friedman further opined, "We ***believe*** that our audits provide a reasonable basis for our ***opinion***." Ex. B at F-2 (PDF p. 166) (emphases added); *see also* TAC ¶ 81(d) (quoting *id.*).

The Consents themselves do not purport to convey any operative facts or opinions. Each Consent consists of only two sentences, stating that Friedman consented to the inclusion or incorporation of its Audit Report and "the reference to our firm under the heading 'Experts'" in the Company's IPO documents. Exs. C, D; *see also* TAC ¶ 82 (quoting *id.*). The Company's IPO documents do not contain any financial statements for the year ending December 31, 2020, nor do they incorporate any other audit report by Friedman.

In its TAC, Golden recites a litany of procedures it alleges an auditor is required to conduct when evaluating whether events that occur after the date of the financial statements have rendered the auditor's reports "materially misleading or inaccurate." *Id.* ¶¶ 86–89, 140 (paraphrasing Public Company Accounting Oversight Board ("PCAOB") auditing standards ("AS") 4101, 2801, 2905,

---

F.3d 499, 509 (2d Cir. 2007) ("When a complaint alleges . . . that a document filed with the SEC failed to disclose certain facts, it is appropriate for the court, in considering a Rule 12(b)(6) motion, to examine the document to see whether or not those facts were disclosed.").

and 2405). Golden then surmises that, "[b]ased on its failure to discover and/or disclose the [Baosheng] investigation and resulting consequences, Friedman did not perform sufficient procedures" in connection with issuing its Consents. *Id.* ¶ 124. Golden concludes that the nondisclosure of the purported investigation "rendered" Baosheng's financial statements and Friedman's Consents "materially misleading or inaccurate." *Id.* ¶ 140. Golden never alleges that Friedman did not actually hold the opinions in its Audit Report at the time of the IPO. Nor does Golden assert facts regarding Friedman's inquiry into or knowledge concerning the opinions in its Audit Report that could have made the opinions materially misleading to a reasonable investor at the time of the IPO. Indeed, Golden does not allege any facts whatsoever about Friedman's knowledge, inquiry, or procedures. And Golden does not (and cannot) allege that Baosheng has ever restated any of the financial statements on which Friedman opined, that Friedman has withdrawn its Audit Report or Consents, or that any federal or state regulator has ever found that Baosheng's financial statements violated GAAP or omitted material disclosures.

## II.   <u>Golden's Allegations Regarding Baosheng's IPO Documents</u>

With few specifics, Golden alleges that Baosheng was "under investigation" by "Chinese authorities" in the "months leading up to" the IPO; that unspecified Baosheng "executives and managers were taken into custody" (in some unspecified place for some unspecified time); that "one executive went into hiding" (again in an unspecified place for some unspecified time); and that the company's operations were "suspended" (yet again for an unspecified amount of time). *Id.* ¶¶ 44–52. Golden alleges that this supposed investigation into Baosheng "caused significant disruptions to the Company," forcing it to "suspend[] its operations in the months leading up to the" IPO, resulting in an unspecified authority imposing a fine in the second half of 2021, and causing the Company to lose "[its] largest client." *Id.* ¶ 52(c), (e)-(f).

Golden makes no specific factual allegations regarding the reason for the investigation into Baosheng, instead alleging only that it was in some vague way connected to an investigation of a separate Chinese gambling company allegedly "involved with" Baosheng's "largest customer," *id.* ¶ 47, which Golden elsewhere alleges also was "under investigation." *Id.* ¶ 73; *see also id.* ¶ 47 (alleging only that the gambling company was investigated "for illegal gambling and money laundering activities"). Golden bases these allegations entirely on "information and belief" and a June 2023 telephone call allegedly between an individual defendant it claims was a controlling shareholder of Baosheng and a principal of Plaintiff Orient. *E.g.*, *id.* ¶¶ 43, 47, 52; *see also id.* ¶ 17. The Transcript of that telephone call, however, materially contradicts Golden's allegations in the TAC—most notably by demonstrating that if there was an investigation that targeted Baosheng, it occurred ***after*** the IPO and thus after Friedman issued its Consents. Nevertheless, according to Golden, the Company's IPO documents were "materially misleading" because they "did not disclose" the alleged investigation into the Company (which had not yet occurred) to investors. *Id.* ¶ 53; *see also id.* ¶ 94.

## ARGUMENT

This Court should dismiss the Section 11 claim against the Independent Auditor Defendants for multiple, independent reasons. ***First,*** Golden fails as a matter of law to meet the requirements for alleging a false statement of opinion under the Supreme Court's *Omnicare* decision. ***Second***, Golden's claim fails because the TAC does not allege facts showing that Baosheng's audited financial statements violated GAAP or any disclosure requirements, which is a prerequisite for Golden's Section 11 claim. ***Third***, with regard to Friedman specifically, Golden's claim is barred under Section 11's three-year statute of repose.

**I.**     **Golden Fails to Allege Facts Supporting Opinion Liability Under *Omnicare***

The Court should dismiss Golden's Section 11 claim against the Independent Auditor Defendants because the statements in Friedman's Audit Report are statements of opinion under well-settled Second Circuit law, and Golden fails to meet the stringent requirements for alleging a false statement of opinion under *Omnicare*.

Section 11 permits purchasers of a public company's securities to sue independent auditors for material false statements or material omissions ***made by the independent auditor*** in documents filed in connection with a registration statement. 15 U.S.C. § 77k. In *Omnicare*, the Supreme Court articulated specific requirements for challenges to statements of opinion—as distinct from statements of fact—in a registration statement. *See* 575 U.S. at 182–97. The Court held that "a sincere statement of pure opinion is not an 'untrue statement of material fact,' regardless [of] whether an investor can ultimately prove the belief wrong." *Id.* at 186. Rather, under Section 11, a statement of opinion is "actionable under Section 11 of the Securities Act" as a false statement only if: (1) "the speaker did not hold the belief she professed," (2) "the statement of opinion contains embedded statements of fact that are untrue," or (3) "the statement omits information whose omission conveys false facts about the speaker's basis for holding that view and makes the opinion statement misleading to a reasonable investor." *New Eng. Carpenters*, 122 F.4th at 42 (quoting *Omnicare*, 575 U.S. at 185–86); *accord Abramson v. Newlink Genetics Corp.*, 965 F.3d 165, 175 (2d Cir. 2020).

**A.**     **The Alleged Misstatements In Friedman's Audit Report Are Statements Of Opinion Under *Omnicare***

The statements in Friedman's May 2020 Audit Report, which Friedman consented to have incorporated into the IPO materials, are indisputably statements of opinion under *Omnicare*, including because the Audit Report facially identifies them as such.

Statements labeled "opinions" or that use words such as "[w]e believe" are, on their face, statements of opinion. *Omnicare*, 575 U.S. at 184, 188. As the *Omnicare* Court explained, this is because reasonable investors recognize such statements "convey some lack of certainty as to the statement's content." *Id.* at 187; *see also id.* at 188–89 ("Reasonable investors do not understand such statements as guarantees, and § 11's omissions clause therefore does not treat them that way."); *New Eng. Carpenters*, 122 F.4th at 40–41 ("[Q]ualifying language (like 'I believe' or 'I think') [] conveys a lack of certainty about the thing being expressed [and] marks the statement as reflecting the speaker's impression or point of view rather than an objective truth . . . .").

The statements in the Audit Report are identified on their face as statements of opinion:

### *Opinion* on the Financial Statements

In our ***opinion***, the consolidated financial statements present fairly, in all material respects, the financial position of the Company as of December 31, 2019 and 2018, and the results of its operations and its cash flows for each of the years in the two-year period ended December 31, 2019, in conformity with accounting principles generally accepted in the United States of America.

Ex. B at F-2 (PDF p. 166) (emphases added); *see also* TAC ¶ 81(a) (quoting *id.*). Consistent with this language, Friedman stated in its Audit Report that its role was "express[ing] ***an opinion*** on the Company's consolidated financial statements[,]" and it "***believe[d]*** that [its] audits provide a reasonable basis for [its] ***opinion***." *Id.* (emphases added).

It is well settled in the Second Circuit that *Omnicare* applies to the statements contained in an independent auditor's report. *See, e.g.*, *New Eng. Carpenters*, 122 F.4th at 51–55 (analyzing statement contained in auditor's report as opinion statement under *Omnicare* framework); *Special Situations*, 645 F. App'x at 75–76 (same); *Querub*, 649 F. App'x at 58 ("Audit reports, labeled 'opinions' and involving considerable subjective judgment, are statements of opinion subject to the *Omnicare* standard for Section 11 claims."). In so holding, the Second Circuit and courts in

11

this District have recognized the significant degree of judgment and subjectivity necessary to apply GAAP and the professional auditing standards. *See Querub*, 649 F. App'x at 58; *In re AmTrust Fin. Servs., Inc. Sec. Litig.*, 2019 WL 4257110, at \*15 (S.D.N.Y. Sept. 9, 2019) ("*AmTrust*") (recognizing that GAAP "call[ed] for subjective judgments," even where the company later used the word "error" to describe its original accounting), *aff'd in relevant part by New Eng. Carpenters*, 122 F.4th at 51–55; *In re SunEdison, Inc. Sec. Litig.*, 300 F. Supp. 3d 444, 499 (S.D.N.Y. 2018) ("*SunEdison*") (noting "the breadth and subjectivity of" auditors' obligations).

Accordingly, the statements contained in Friedman's Audit Report are not actionable—even if Golden was able to establish the opinions expressed in the report later proved to be incorrect—**unless** Golden pleads specific **facts** showing that Friedman's opinions were false in any of the three possible ways set forth in *Omnicare. See* 575 U.S. at 184, 189; *supra* at 11–12. As explained below, Golden does not and cannot satisfy that pleading standard.

### B.  Golden Fails to Allege A False Statement of Opinion Under *Omnicare*

Golden fails to plead that Friedman's statements give rise to liability under any of *Omnicare*'s three avenues for establishing falsity of a statement of opinion.

#### 1.  Golden Fails to Plead—And In Fact Disclaims—Subjective Falsity

To proceed on the first path to pleading a false statement of opinion under *Omnicare*, Golden must plead that Friedman "did not hold" the opinions in the Audit Report. *See New Eng. Carpenters*, 122 F.4th at 42 (quoting *Omnicare*, 575 U.S. at 185–86). Golden has pled itself out of satisfying this standard for pleading subjective falsity because it **expressly disavows** any allegations of intentional wrongdoing, fraud, or recklessness by Friedman. See TAC ¶ 134 (conceding that "Golden does not claim in this pleading that Defendants committed intentional or reckless misconduct or that Defendants acted with scienter or fraudulent intent"). This express disavowal precludes any inference that Friedman did not sincerely believe the opinions contained

in its Audit Report at the time it issued the Consents. *See Omnicare*, 575 U.S. at 186 (by expressly "exclud[ing] and disclaim[ing] any allegation sounding in fraud or deception," plaintiffs "do not contest that Omnicare's opinion was honestly held"); *Mehedi v. View, Inc.*, 2023 WL 3592098, at *10 (N.D. Cal. May 22, 2023) (dismissing Section 11 claims brought against auditor and holding that plaintiff could not plead subjective falsity because he "disclaims any allegations of fraud," which "would be inconsistent with any allegation that [defendant] knew that its statements were false"); *Stein v. U.S. Xpress Enters., Inc.*, 2020 WL 3584800, at *10 n.15 (E.D. Tenn. June 30, 2020) (holding that plaintiffs' "disclaimer" of fraud "bars" them "from pursuing [] a [subjective falsity] theory" under *Omnicare*); *In re Velti PLC Sec. Litig.*, 2015 WL 5736589, at *17–18 (N.D. Cal. Oct. 1, 2015) (dismissing claim because plaintiff "repeatedly disavow[ed] any allegation sounding in fraud or deception"); *CBD*, 2016 WL 3654657, at *12 (similar).

In any event, Golden does not plead facts that would demonstrate Friedman did not subjectively believe the opinions in its Audit Report. It is well settled that without such allegations, a plaintiff cannot sustain a cause of action under *Omnicare*'s subjective falsity prong. See *New Eng. Carpenters*, 122 F.4th at 47 (affirming dismissal of Section 11 claims where "the Complaint fail[ed] to adequately allege that the [defendants] . . . did not believe what they certified"); *Special Situations*, 645 F. App'x at 75–76 (affirming dismissal of claim against independent auditor because plaintiff did not allege that auditor "lacked a subjective belief in its opinions"); *Martin v. Quartermain*, 732 F. App'x 37, 40–41 (2d Cir. 2018) (affirming dismissal of claims against company where "all the . . . allegations in the complaint suggest[ed] that" the company believed its own statements); *SunEdison*, 300 F. Supp. 3d at 499–500 (dismissing complaint, including Section 11 claim, because plaintiffs failed to plead facts "to support a conclusion" that independent auditor "did not honestly hold its stated opinions"); *In re Aegean Marine Petroleum Network, Inc.*

13

*Sec. Litig.*, 529 F. Supp. 3d 111, 156 (S.D.N.Y. 2021) (considering *Omnicare* in allowing claim to proceed where plaintiff had alleged sufficient number of red flags permitting inference of subjective disbelief); *see also City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 616–17 (9th Cir. 2017) (affirming dismissal of claims where complaint "contain[ed] no allegations of subjective falsity," nor "sufficient facts . . . to infer subjective falsity"); *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1161–62 (9th Cir. 2009) (upholding dismissal of Section 11 claim with prejudice; plaintiffs "fail[ed] to plead facts indicating that [the defendant] believed [the statements to be] incorrect").

2.    <u>Golden Does Not Allege Materially False "Embedded" Statements of Fact</u>

Golden's second possible route to stating a Section 11 claim is foreclosed because Golden does not allege that, in its Audit Report or Consents, Friedman made any embedded factual statements that were materially false. This theory of Section 11 liability applies only where a statement of opinion contains a material embedded "factual and falsifiable" statement. *Abramson*, 965 F.3d at 175; *see also Omnicare*, 575 U.S. at 185 (providing example of CEO who expresses opinion that his company's televisions are of high quality and supports that opinion with "embedded" fact that the TVs use "patented technology").

The TAC does not purport to identify any materially false, embedded statement of fact. Nor can it. Unlike the statement of opinion in the example from *Omnicare*, Friedman's Audit Report simply expressed an opinion on information prepared by a third party (Baosheng), and the Consents simply gave the Company permission to include the Report in the IPO filings. Virtually every court that has addressed the embedded-facts theory of liability in the context of an audit opinion has held that a plaintiff cannot proceed against an auditor under that theory. *See CBD*, 2016 WL 3654657, at *12; *Hunt*, 2021 WL 4461171, at *15; *Marrone Bio*, 243 F. Supp. 3d at 1119; *City of Warwick I* at 23 (Exhibit A) (in case involving Section 11 claim brought against

14

auditor, stating that "the financial statements themselves were not 'embedded' in the [auditor's] opinion" and concluding that "[t]he Complaint does not allege that there were any 'embedded' facts in the audit opinion that were materially untrue"); *accord Special Situations*, 645 F. App'x at 75–76 (stating that the ***only*** "two ways relevant" to challenging an audit report are under the subjective falsity and omission theories); *New Eng. Carpenters*, 122 F.4th at 51–55 (evaluating auditor's report only under omission theory of liability).[4]

### 3.    Golden Has Not Alleged A Material Omission Of Fact

Lastly, Golden fails to state a claim under the omission theory of liability, its final possible avenue for stating a Section 11 claim. Under the omission theory, statements of opinion are "actionable as false or misleading under Section 11's omission clause if the opinion 'omits material facts about the issuer's inquiry into or knowledge concerning a statement of opinion, and if those facts conflict with what a reasonable investor would take from the statement [of opinion] itself.'" *New Eng. Carpenters*, 122 F.4th at 42–43 (quoting *Omnicare*, 575 U.S. at 188). It is insufficient for a plaintiff to "just say that the issuer failed to reveal [the] basis" for the opinion at issue. *Omnicare*, 575 U.S. at 194. Nor is it enough to allege that a statement of opinion is false "because

---

[4] Indeed, only one court has ever found that an auditor's report contains embedded facts that are actionable under *Omnicare*, *see In re Petrobras Sec. Litig.*, 2016 WL 1533553, at *4 (S.D.N.Y. Feb. 19, 2016), and that opinion has repeatedly been recognized as wrongly decided. *See CBD*, 2016 WL 3654657, at *12 (*Petrobras* "misreads" *Omnicare*'s "'embedded statement of fact' concept"); *Hunt*, 2021 WL 4461171, at *15 (*Petrobras* "misinterpret[ed] . . . *Omnicare*."); *Marrone Bio*, 243 F. Supp. 3d at 1119 (similar); *accord Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*, 2022 WL 3572474, at *49 (M.D. Pa. Aug. 18, 2022) (financial statements not "embedded" into SOX certifications, which by their "plain language" expressed opinions). The Second Circuit has also since recognized subjective falsity and the omission theory as the "only" vehicles for showing that an auditor's statement of opinion is false. *Querub*, 649 F. App'x at 58.

there is 'some fact cutting the other way' that the speaker omitted." *Abramson*, 965 F.3d at 175

(quoting *Omnicare*, 575 U.S. at 189–90). Rather, a plaintiff must:

> [I]dentify ***particular (and material) facts*** going to the basis for the
> issuer's opinion—***facts*** about the inquiry the issuer did or did not
> conduct or the knowledge it did or did not have—whose omission
> makes the opinion statement at issue misleading to a reasonable
> person reading the statement fairly and in context.

*Omnicare*, 575 U.S. at 194 (emphasis added).

The Supreme Court has "emphasized that meeting the standard under *Omnicare* 'is no

small task for an investor,'" *Tongue*, 816 F.3d at 210 (quoting *Omnicare*, 575 U.S. at 194), and

that "[c]onclusory assertions" will not do. *Omnicare*, 575 U.S. at 194; *see also Jaroslawicz v. M&T*

*Bank Corp.*, 962 F.3d 701, 717–18 (3d Cir. 2020) (describing benchmark as "rigorous"). In

addition, the Second Circuit recognizes that a plaintiff cannot allege merely that an opinion "falsely

conveyed the existence of 'some meaningful . . . inquiry,'" without alleging "*facts that establish* a

lack of meaningful inquiry." *New Eng. Carpenters*, 122 F.4th at 47 (emphasis added).

Golden here comes nowhere close to meeting the high bar for alleging a false statement of

opinion under the omission theory. Golden pleads no facts—none—establishing that Friedman

failed to conduct a meaningful inquiry. Instead, Golden first recites allegedly applicable PCAOB

auditing standards, TAC ¶¶ 85–89, and then surmises that because the purported investigation by

"Chinese authorities" was not disclosed in connection with the IPO, Friedman must not have

"complied with the applicable professional standards" or "perform[ed] sufficient procedures" to

confirm that subsequent events did not change the opinions in its Audit Report. TAC ¶¶ 90–92,

124. None of these allegations (and no other allegations) alleges any ***facts*** regarding Friedman's

"inquiry" or "knowledge"—much less "particular" or "material" facts, the omission of which

would have caused the inclusion of Friedman's Audit Report in the IPO materials to be materially

misleading to a reasonable investor. *See Omnicare*, 575 U.S. at 189–90. Golden simply tries to use the outcome to establish the premise, without alleging a single fact about Friedman's work. *See id.* ¶¶ 90–92.

Golden's formulaic allegations against Friedman flout *Omnicare*'s admonition that a plaintiff's simple "recitation of the statutory language—that [the defendant] 'omitted to state facts necessary to make the statements made not misleading'—is not sufficient." *Id.* at 196. Indeed, courts in the Second Circuit and elsewhere have consistently seen through attempts like this to use language from the professional auditing standards (*e.g.*, TAC ¶¶ 86, 88–89) to create a veneer of substance without any actual facts about the auditor's underlying procedures. *See Special Situations*, 645 F. App'x at 76 (plaintiff failed to "adequately state" a claim under the omission theory where it alleged that auditor omitted to disclose its performance of a "deficient audit investigation" and "knew of numerous facts that outright contradicted [its] opinions"); *SunEdison*, 300 F. Supp. 3d at 500 (dismissing Section 11 claim premised on allegations that auditor violated standards governing audit evidence and the exercise of due professional care because the complaint did not "include facts" and instead "merely reverse-engineer[ed]" the company's corrective disclosures and sought "to apply them to unrelated statements contained in the Audit Report"); *Se. Pa. Transp. Auth.*, 2015 WL 3833849, at *34 (allegations invoking PCAOB standards amounted to "little more than the conclusory assertion" that IPO documents lacked a reasonable basis); *see also Hunt*, 2021 WL 4461171, at *5–6 (dismissing Section 11 claim because complaint's "conclusory" allegations about defendants' knowledge failed to "address what 'inquiry' [d]efendants did or did not make with respect to" defendant's "GAAP compliance" and what "purported knowledge . . . should have been accounted for differently under GAAP"); *City of Warwick Ret. Syst. v. Carvana Co.*, CV 2022-013054, slip op. at 27 (Ariz. Sup. Ct. Oct. 26, 2023)

(attached as Exhibit E) (dismissing Section 11 claim where complaint alleged that audit failed to comply with certain auditing standards but made "no effort to connect the [auditing] standards to material facts about [the defendant's] audit"). And these courts have done so with good reason— if boilerplate allegations like Golden's were deemed sufficient to state a claim, *Omnicare*'s opinion-liability standard would effectively be dead letter, because any plaintiff could repurpose the language in the auditing standards into conclusory allegations that an auditor failed to comply with them.[5]

Moreover, Golden fails to connect the purported Baosheng investigation sufficiently with Friedman's audit opinion. *See Omnicare*, 575 U.S. at 194 (plaintiffs cannot bring a Section 11 claim "merely by means of conclusory assertions"); *AmTrust*, 2019 WL 4257110, at *13 (plaintiffs failed to plead that a particular statement "was untrue or misleading" where they "fail[ed] to plead any facts in support of [the] assumptions" on which they relied). Rather than build "a bridge" between information Friedman allegedly omitted from its Consents and any facts about Friedman's inquiries and knowledge, *see AmTrust*, 2019 WL 4257110, at *34, Golden uses disclosures it believes Friedman should have made to "reverse-engineer" conclusions, *see SunEdison*, 300 F. Supp. 3d at 500, about what Friedman could or "would" have learned "*[i]f*" certain "*possible*" facts were true. *See* TAC ¶¶ 90–92 (emphasis added).

---

[5] Even putting aside the stringent requirements for alleging a false opinion under *Omnicare*, Golden's threadbare, conclusory allegations fail to state a claim under Federal Rule of Civil Procedure 8(a)(2). *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions.") (cleaned up); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'") (citations omitted).

But the procedures an auditor is required to perform in connection with a consent are very limited. With regard to interactions with management, an auditor generally is required only to "[i]nquire of and obtain written representations from officers and other executives" regarding whether any subsequent events have happened since the issuance of the report that would have a material effect on the financial statements. PCAOB AS 4101.10(b). The TAC contains no allegations regarding the impact of the alleged Baosheng investigation on these limited procedures. Instead, Golden's factual allegations regarding the investigation are riddled with gaps, relying on chains of assumptions without supporting facts or explanations of how Friedman would have learned about the Baosheng investigation in the course of performing its limited consent procedures.

To be specific, Golden surmises that "due to the [alleged] detention of the Company's executives and managers," Friedman could not "have complied with" the professional standard requiring auditors to make inquiries with "officers and other executives" because Friedman purportedly "would have learned" that the "management team was no longer running the Company," which allegedly "would have" led Friedman to withdraw its Audit Report or refuse to issue the Consents. TAC ¶¶ 86, 90–92, 140–41. But the factual allegations themselves do not support this narrative. Golden references detained "executives and managers," and an "in-hiding" CEO, but the TAC says nothing about the nature, length, severity, or timing of these events to support the inference that Friedman could not have performed the limited procedures necessary to support the issuance of a consent. The TAC contains no facts indicating whether the Baosheng executives and managers were all detained or in hiding simultaneously and for a prolonged period, whether the detentions rendered these executives and managers unable to communicate with Friedman, or whether the detentions lasted through the entirety of the period in which Friedman

19

was obligated to make the limited inquiries necessary for its Consents. *See id.*; *cf. id.* ¶ 39 (alleging that the Company did in fact successfully make an initial public offering—which it thus must have been operational to do); *id.* ¶ 52 (alleging only that the detentions began "one to two months before and continu[ed] through the date of the IPO," without providing any further specificity).

Nor could Golden make allegations connecting the supposed investigation to Friedman's consent procedures. The very transcript on which Golden relies to support its claims, from a call involving a Baosheng investor who allegedly "took control of the Company" (*e.g.*, TAC ¶¶ 43–52), demonstrates that any Boasheng detentions or investor takeover occurred ***after*** the Company became publicly listed and thus ***after*** Friedman completed its consent procedures. *See* Exhibit A to TAC at 45, 48 (emphasis added) (stating that the investor "handle[d] this matter"—*i.e.*, purportedly took over the Company due to the detentions of management —"***after the listing***" and that the Chinese authorities "***don't bother companies that are not listed***"). Thus, the Transcript undermines the foundational premise of Golden's claim: that prior to the IPO, Baosheng was a target of the investigation and Chinese government detentions.

Golden attempts to impute statements onto Friedman that Baosheng's management made in its 2018 and 2019 financial statements, by virtue of Friedman having consented to inclusion of the Audit Report in the IPO documents. TAC ¶¶ 93–94 (alleging that statements regarding management's review of certain financial data and identifying the Company's CEO were false and misleading). These allegations fail to allege a material omission of fact because they concern statements about inquiries conducted by ***the Company***—not facts about the inquiry ***Friedman*** did or did not conduct or knowledge ***Friedman*** did or did not have. *See Herman & MacLean v. Huddleston*, 459 U.S. 375, 381 n.11 (1983) (citing 15 U.S.C. § 77k(a)(4)) ("Accountants are liable under Section 11 only for those matters which purport to have been prepared or certified by

them."); *Deephaven Priv. Placement Trading, Ltd. v. Grant Thornton & Co.*, 454 F.3d 1168, 1174 (10th Cir. 2006) (auditors do not "somehow make, own or adopt the assertions" contained in a company's financial statements); *see also CBD*, 2016 WL 3654657, at *11 (dismissing Section 11 claims and explaining that an auditor is not responsible for a company's "financial statements as statements of fact" under *Omnicare*); *City of Warwick I* at 23 (attached as Exhibit A) (rejecting argument that auditor could be liable under *Omnicare* for assertions in a company's financial statements under *Omnicare*).

*    *    *

Golden's allegations do not come close to meeting *Omnicare* and its progeny's requirements for alleging Section 11 liability against an auditor for an alleged false statement of opinion. Accordingly, the Court should dismiss the sole claim against the Independent Auditor Defendants.

II.     **Golden Fails To Allege Facts Demonstrating That Baosheng's Financial Statements**
        **Violated GAAP or Other Disclosure Requirements**

The Court should dismiss the claim against the Independent Auditor Defendants for a second, independent reason—the TAC does not allege that the underlying financial statements on which Friedman opined violated GAAP  (or, for that matter, any other disclosure requirements). *See In re Tarragon Corp. Sec. Litig.*, 2009 WL 10732259, at *6 (S.D.N.Y. Mar. 27, 2009) (GAAP "establishes the conventions, rules, and procedures that define accepted accounting practices," with which financial statements must comply (internal quotation marks omitted)). This defect in the TAC concerns Golden's allegations regarding Baosheng's financial statements and disclosures (which are the responsibility of management) rather than Friedman's opinion and consents. And it dooms Golden's Section 11 claim against the Independent Auditor Defendants at the threshold, because without a GAAP or other disclosure violation in the underlying financial statements, Golden cannot allege a material misstatement in Friedman's Audit Report. *See In re China Valves Tech.*, 979 F. Supp. 2d at 413.

Specifically, to bring a Section 11 claim against an auditor, a plaintiff must "plausibly" plead "in the first place" that the financial statements did not comply with GAAP. *Id.* Only then can the plaintiff allege that an auditor made a material misstatement or omission by "not discovering and/or disclosing" the GAAP violation. *Id.* (dismissing securities claims against auditors where plaintiffs failed to plead that financial statements did not comply with GAAP).

Here, Golden does not allege (nor can it allege) a violation of GAAP (or any other set of requirements) in Baosheng's financial statements for 2018 and 2019, which were the only financial statements subject to the Audit Report (and therefore the Consents). *See* TAC ¶ 123. Golden does not (and cannot) allege that Baosheng has ever restated its financial statements, which it would have been required to do if it had determined that the financial statements were materially

22

misstated.[6] Nor has any court or regulator found that the Company's financial statements violated GAAP or that the Company should have restated its financial statements to make the disclosures Golden alleges should have been made. The Independent Auditor Defendants are not aware of a single Section 11 case allowed to proceed against an independent auditor where, as here, there was not either a withdrawn audit report, a restatement, a determination by management that the financial statements were materially misstated, or a finding of a securities or financial-reporting violation by the company's management or by a regulator, auditor, or broker. *See SunEdison*, 300 F. Supp. 3d at 470 (dismissing Section 11 claim against independent auditor and noting that "[c]laims that successfully allege" a misstatement "typically . . . [lead] to restated financial results or [a]re accompanied by misconduct"); *Hurst v. Enphase Energy, Inc.*, 2021 WL 3633837, at *4 (N.D. Cal. Aug. 17, 2021) (rejecting plaintiff's "theory" predicated on a short-seller report that financial statements were materially misstated because plaintiff did not "point to any restatement of [the defendant's] accounting" and such allegations, "without more, do[] not plausibly allege a misstatement").[7]

In the glaring absence of a restatement by Baosheng, Golden strains to allege a material omission by resorting to speculative allegations regarding the yet-to-be-disclosed investigation into Baosheng by Chinese authorities. *See, e.g.*, TAC ¶¶ 58, 63, 68, 73, 74, 137, 158. But these allegations do not allege a GAAP violation under federal securities law, for two reasons.

---

[6] *See* SFAS No. 154, *Accounting for Changes and Error Corrections*, at FAS154–10.

[7] *See also, e.g.*, *Querub*, 649 F. App'x at 56 (auditor resigned and indicated its audit opinions "could no longer be relied upon"); *In re Pareteum Sec. Litig.*, 2021 WL 3540779, at *9, 22 (S.D.N.Y. Aug. 11, 2021) (restatement); *In re Aegean Marine*, 529 F. Supp. 3d at 126, 133, 150 (same); *In re OSG Sec. Litig.*, 971 F. Supp. 2d 387, 394 (S.D.N.Y. 2013) (company disclosed that prior financial statements should not be relied upon); *In re China Valves*, 979 F. Supp. 2d at 403 (subsequent filing disclosed the asset at issue was subject to FCPA investigation); *In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*, 381 F. Supp. 2d 192, 203 (S.D.N.Y. 2004) (restatement).

First, the Transcript attached to the TAC makes clear that the alleged investigation and supposed detentions, which Golden claims the Company should have disclosed in the IPO materials, did not focus on Baosheng until ***after the IPO***. *See* Transcript at 45 at 15:07-44, 48 at 18:30-55. This undermines Golden's factual premise that there was a material undisclosed event at the time of the IPO.

Second, even if the Transcript could be construed to suggest Baosheng became a target of the investigation before the IPO, Golden's claim fails because the TAC does not allege any ***facts*** demonstrating that the alleged investigation met the prescribed criteria under GAAP or any other set of requirements that would have necessitated disclosure in Baosheng's audited financial statements. "[T]here is no free-standing obligation under United States law to disclose even criminal conduct that is uncharged—let alone insufficient regulatory compliance." *Jiajia Luo*, 465 F. Supp. 3d at 413; *UBS AG*, 752 F.3d at 184; *see also In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 650 (S.D.N.Y. 2017) (there is "no affirmative duty to speculate or disclose uncharged, unadjudicated wrongdoing or mismanagement"). Here, Golden makes only one speculative, conclusory allegation that nondisclosure of the  investigation "rendered" Baosheng's "financial and accounting disclosures [] materially misleading or inaccurate." *See, e.g.*, *id.* ¶ 140. Golden never even references GAAP, nor does it allege that the Company's financial statements themselves failed to comply with any accounting standards. *Cf. id.* ¶ 94 (listing "materially false or misleading' statements in Baosheng's financial statements—without alleging the financial statements on which Friedman opined failed to comply with GAAP).

Golden's conclusory allegations fail to allege that Baosheng's financial statements did not comply with GAAP or any other disclosure requirements, and accordingly, the Court should dismiss Golden's claim against the Independent Auditor Defendants.

**III.**    **Golden's Claim Against Friedman Is Untimely**

The Court should also dismiss Golden's claim against Friedman because it is untimely under the applicable statute of repose. The Securities Act provides that Section 11 claims must be asserted "[i]n no event . . . more than three years after the security was bona fide offered to the public." 15 U.S.C. § 77m. The IPO filings at issue here became effective on February 5, 2021. *See* TAC ¶ 30. Golden pleaded its Section 11 claim against Marcum in its initial Complaint, filed on February 1, 2024—narrowly within three years of the that effective date. But Golden did not plead its Section 11 claim against Friedman until it filed its first Amended Complaint on March 5, 2024, *see* Dkt. No. 26, more than three years later, and thus after the claim already had been extinguished as a matter of law.

Golden might try to salvage its Section 11 claim against Friedman by invoking the relation back doctrine embodied in Federal Rule of Civil Procedure 15(c). But the overwhelming weight of authority in the Second Circuit holds relation back doctrine cannot be used to save the claim now that the statute of response has expired, because a statute of repose "create[s] an absolute bar on a defendant's temporal liability," *ANZ Sec.*, 582 U.S. at 507 (internal quotation marks omitted), which is subject to "no exceptions," and "supersedes Rule 15(c)'s relation back provision." *Fed. Deposit Ins. Corp. for Colonial Bank*, 291 F. Supp. 3d at 370 (internal quotation marks omitted); *see also Peifa Xu v. Gridsum Holding Inc.*, 2021 WL 773002, at *7 (S.D.N.Y. Feb. 23, 2021).

In contrast to a statute of limitations, which typically "gives leeway to a plaintiff who has not yet learned of a violation," a statute of repose "protects [a] defendant from an interminable threat of liability" by "establishing a fixed [time] limit" that is "unqualified" and "reflects the legislative objective to give a defendant *a complete defense to any suit* after a certain period." *ANZ Sec.*, 582 U.S. at 505–06 (emphasis added) (discussing the statute of repose in Section 13 of the Securities Act). A statute of repose thus "create[s] a substantive right in those protected to be free

from liability after a legislatively-determined period of time." *Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 106 (2d Cir. 2013) (citation and emphasis omitted). The Rules Enabling Act provides that the rules promulgated by the Supreme Court, including the Federal Rules of Civil Procedures, "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). "Permitting a plaintiff to file a complaint . . . after the repose period set forth in Section 13 of the Securities Act has run would therefore necessarily enlarge or modify a substantive right and violate the Rules Enabling Act." *IndyMac MBS*, 721 F.3d at 109; *see also Peifa Xu*, 2021 WL 773002, at \*7 (holding that Securities Act claims plaintiffs alleged in their third amended complaint were barred by the statute of repose because they were not subject to equitable tolling or the application of the relation-back doctrine); *Barilli v. Sky Solar Holdings, Ltd.*, 389 F. Supp. 3d 232, 264 (S.D.N.Y. 2019) (holding that claim that was untimely under the Securities Act's statute of repose and could not relate back to an earlier filing under Rule 15(c)); *Fed. Deposit Ins. Corp. for Colonial Bank*, 291 F. Supp. 3d at 370 (similar); *Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 248 F. Supp. 3d 428, 450–51 (S.D.N.Y. 2017) (similar); *Bensinger v. Denbury Res. Inc.*, 31 F. Supp. 3d 503, 510 (E.D.N.Y. 2014) (similar). Indeed, "the language of Section 13's statute of repose itself provides strong support for the interpretation that the statute of repose permits no exceptions, as it provides that '[*i*]*n no event* shall any such action be brought.'" *Silvercreek Mgmt.*, 248 F. Supp. 3d at 451 (quoting 15 U.S.C. § 77m); *accord ANZ Sec.*, 582 U.S. at 505 ("This instruction [in Section 13] admits of no exception and on its face creates a fixed bar against future liability.").

Golden filed its original Complaint in this action on February 1, 2024. That Complaint did not name Friedman as a defendant, even though it acknowledged that the IPO materials identify Friedman as Baosheng's independent public accountant. *See* Complaint, Dkt. 1 ¶ 40. Golden

instead chose to name only Marcum as a defendant in the original Complaint, alleging that Marcum was the successor entity to Friedman and that Marcum violated Section 11. *See id.* ¶ 63. Golden filed its First Amended Complaint on March 5, 2024, naming Friedman as a defendant for the first time, *see* Dkt. 26 ¶ 72–73—after the three-year statute of repose had extinguished. As explained, a statute of repose permits no exceptions, and therefore Golden's Section 11 claim against should be dismissed.

## IV.    Baosheng's Arguments Regarding the Statute of Limitations Also Apply to the Independent Auditor Defendants

Lastly, Baosheng has asserted in its own motion to dismiss that Golden's claim is barred pursuant to Section 11's one-year statute of limitations. In the event the Court dismisses Golden's Section 11 claim against Baosheng on that ground, the Court should dismiss the claims against the Independent Auditor Defendants for the same reason, because the same statute of limitations period applies to Golden's claim against Marcum and Friedman. *See* 15 U.S.C. §77m.

## CONCLUSION

For the foregoing reasons, Friedman and Marcum respectfully request that this Court dismiss Golden's claim against Friedman and Marcum, with prejudice.


Dated: December 20, 2024          By: /s/ *Karim Basaria*
                                  Karim Basaria

                                  Bruce R. Braun (admitted *pro hac vice*)
                                  Karim Basaria (admitted *pro hac vice*)
                                  Rebecca B. Shafer (admitted *pro hac vice*)
                                  SIDLEY AUSTIN LLP
                                  One South Dearborn
                                  Chicago, IL 60603
                                  Telephone: (312) 853-7000
                                  Facsimile: (312) 853-7036
                                  Email: bbraun@sidley.com
                                  kbasaria@sidley.com
                                  rshafer@sidley.com

27

Nicholas P. Crowell
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
Email: ncrowell@sidley.com

*Attorneys for Defendants Friedman LLP and Marcum LLP*

## **CERTIFICATE OF COMPLIANCE**

I, Karim Basaria, an attorney duly admitted *pro hac vice* to practice law in this Court, certify that, in accordance with the Court's Individual Rules of Practice, the foregoing memorandum of law contains 8,629 words, exclusive of the Table of Contents, Table of Authorities, the cover page, the signature block, and this certification.  In preparing this certification, I relied on the word count of the word processing system used to prepare this memorandum of law.

*s/ Karim Basaria*
Karim Basaria

## CERTIFICATE OF SERVICE

The undersigned certifies that on December 20, 2024, he caused the foregoing to be served upon all parties to this action by means of the Court's electronic filing system.


By:    *s/ Karim Basaria*

Karim Basaria (admitted *pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7000
kbasaria@sidley.com