UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Orient Plus International Limited; Union Hi-Tech Development Limited; and Golden Genius International Limited,<br><br>               Plaintiffs,<br><br>        v.<br><br>Baosheng Media Group Holdings Limited; Wenxiu Zhong; Sheng Gong; Yu Zhong; Zuohao Hu; Adam (Xin) He; Yue Jin; Yanjun Hu; Univest Securities, LLC; The Benchmark Company, LLC; WestPark Capital, Inc.; Friedman LLP; and Marcum LLP,<br><br>               Defendants. | Case No. 1:24-cv-00744-JLR |

**MEMORANDUM OF LAW IN SUPPORT OF
BAOSHENG MEDIA GROUP HOLDINGS LIMITED'S
MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

HOLLAND & KNIGHT LLP
787 Seventh Avenue, 31st Floor
New York, New York  10019
Tel:  (212) 513-3200

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................ 1

FACTS ............................................................................................................................... 2

    I.     Baosheng's Business and 2021 Initial Public Offering.......................................... 2

    II.    Plaintiffs' Purchases of Baosheng Securities ...................................................... 4

    III.   Plaintiffs' (Unsubstantiated) Allegations of an "Investigation" ....................... 4

    IV.   Baosheng's Risk Disclosures .............................................................................. 6

    V.    Baosheng's Post-Prospectus Filings .................................................................. 7

LEGAL STANDARD ........................................................................................................ 8

ARGUMENT .................................................................................................................... 9

    I.     Golden's Securities Claims Fail As A Matter of Law. ........................................ 9

       A.    Baosheng Was Not Required to Accuse Itself of Speculative Wrongdoing ............ 10

       B.    Baosheng Had No Duty to Disclose a Nascent Investigation ................................... 12

       C.    The TAC Does Not Plausibly Allege a Material Investigation................................ 15

       D.    Baosheng Specifically Disclosed the Risk of Losing Sogou as a Client.................. 17

    II.    Golden's Claims Are Otherwise Time-Barred.................................................... 19

    III.   Plaintiffs Fail To Satisfy Rule 9(b)'s Heightened Pleading Standard.......................... 21

    IV.   Orient and Union Fail To State A Claim For Breach of Contract. .............................. 22

       A.    Orient and Union's Claim for Breach of the Section 3.1(l) Warranty Fails ............ 22

       B.    Orient and Union's Claim for Breach of Sections 3.1(i) and (j) Warranties Fail ..... 23

       C.    Orient and Union's Claim for Breach of the Section 3.1(x) Warranty Fails............. 25

CONCLUSION ................................................................................................................ 26

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abuhamdan v. Blyth, Inc.*,
   9 F. Supp. 3d 175 (D. Conn. 2014) ..........................................................15

*Asay v. Pinduoduo Inc.*,
   18-cv-7625, 2020 WL 1530745 (S.D.N.Y. Mar. 30, 2020),
   *aff'd*, 2021 WL 3871269 (2d Cir. Aug. 31, 2021) ...................................19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..........................................................................8, 9, 21

*Barnum v. Millbrook Care Ltd. Partnership*,
   850 F.Supp. 1227 (S.D.N.Y. 1994) ...........................................................9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................8

*Chapman v. Mueller Water Products, Inc.*,
   466 F. Supp. 3d 382 (S.D.N.Y. 2020) .....................................................22

*Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*,
   364 F. Supp. 3d 253 (S.D.N.Y. 2019) .......................................................2

*Christine Asia Co., Ltd. v. Alibaba Grp. Holding Ltd.*,
   718 Fed. Appx. 20 (2d Cir. 2017) .......................................................5, 26

*Citizens United v. Schneiderman*,
   882 F.3d 374 (2d Cir. 2018)......................................................................25

*City of Pontiac Policemen's and Firemen's Ret. System v. UBS AG*,
   752 F.3d 173 (2d Cir. 2014)......................................................................10

*City of Westland Police and Fire Ret. Sys. v. Metlife, Inc.*,
   129 F. Supp. 3d 48 (S.D.N.Y. 2015) ........................................................14

*Constr. Laborers Pension Tr. for S. Cal. v. CBS Corp.*,
   433 F. Supp. 3d 515 (S.D.N.Y. 2020) .....................................................17

*Davidoff v. Farina*,
   2005 WL 2030501 (S.D.N.Y. Aug. 22, 2005) .........................................19

*DeJesus v. HF Mgmt. Servs., LLC*,
   726 F.3d 85 (2d Cir. 2013)..........................................................................8

*Diehl v. Omega Protein Corp.*,
   339 F. Supp. 3d 153 (S.D.N.Y. 2018) ..........................................................................17

*DiFolco v. MSNBC Cable LLC*,
   622 F.3d 104 (2d Cir. 2010) ......................................................................................... 3

*Dodds v. Cigna Sec., Inc.*,
   12 F.3d 346 (2d Cir. 1993) ...........................................................................................19

*ECA & Local 134 Ibew Joint Pension Trust v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009) .........................................................................................16

*Flag Telecom Holdings, Ltd. Sec. Litig.*,
   308 F. Supp. 2d 249 (S.D.N.Y. 2004) ..........................................................................16

*Goodman v. Goodman*,
   21-CV-10902 (GHW)(RWL) 2022 WL 17826390 (S.D.N.Y. 2022) ...........................25

*Gordon v. Tencent Music Entertainment Group*,
   19-CV-5465 (LDH)(TAM), 2023 WL 2734743 (E.D.N.Y. 2023) ...............................26

*Gray v. Alpha and Omega Semiconductor Ltd.*,
   No. 20 Civ. 2414 (RA), 2021 WL 4429499 (S.D.N.Y. Sept. 27, 2021) .....................11

*Halperin v. eBanker USA.com, Inc.*,
   295 F.3d 352 (2d Cir. 2002) .........................................................................................16

*Ho v. Duoyuan Glob. Water, Inc.*,
   887 F. Supp. 2d 547 (S.D.N.Y. 2012) ..........................................................................19

*In re Axis Capital Holdings, Ltd. Sec. Litig.*,
   456 F. Supp. 2d 576 (S.D.N.Y. 2006) ..........................................................................11

*In re Banco Bradesco S.A. Sec. Litig.*,
   277 F. Supp. 3d at 651 ..................................................................................................15

*In re Bank of America AIG Disclosure Sec. Litig.*,
   980 F. Supp. 2d. 564 (S.D.N.Y. 2013) ..........................................................................18

*In re Coty Inc. Sec. Litig.*,
   No. 14-cv-919, 2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016) .....................................15

*In re Fuwei Films Sec. Litig.*,
   634 F. Supp. 2d 419 (S.D.N.Y. 2009) ..........................................................................21

*In re Lions Gate Entm't Corp. Sec. Litig.*,
   165 F. Supp. 3d 1 (S.D.N.Y. 2016) ....................................................................12, 13, 26

*In re Magnum Hunter Resources Corp. Securities Litig.*,
   616 Fed. Appx. 442 (2d Cir. 2015) ...............................................................................20

*In re Marsh & Mclennan Cos., Inc. Sec. Litig.*,
    501 F.Supp.2d 452 (S.D.N.Y. 2006) ............................................................................. 13

*In re Merrill Lynch & Co., Inc. Research Reps. Sec. Litig.*,
    272 F. Supp. 2d 243 (S.D.N.Y. 2003) ............................................................................. 9

*In re Morgan Stanley Info. Fund Sec. Litig.*,
    592 F.3d 347 (2d Cir. 2010) ............................................................................................ 9

*In re Morgan Stanley Tech. Fund Sec. Litig.*,
    643 F. Supp. 2d 366 (S.D.N.Y. 2009) ............................................................................. 9

*In re Noah Educ. Holdings, Ltd. Sec. Litig.*,
    No. 08 Civ. 9203 (RJS), 2010 WL 1372709 (S.D.N.Y. Mar. 31, 2010) ........................ 13

*In re ProShares Trust Sec. Litig.*,
    728 F.3d 96, 102 (2d Cir. 2013) .................................................................................... 19

*In re TVIX Sec Litig.*,
    25 F. Supp. 3d 444 (S.D.N.Y. 2014) ............................................................................. 17

*In re UBS AG Sec. Litig.*,
    2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012) .............................................................. 10

*In re Wachovia Eq. Securities Litig.*,
    753 F. Supp. 2d 326 (S.D.N.Y. 2011) ........................................................................... 14

*In re Yukos Oil Co. Sec. Litig.*,
    No. 04 CIV. 5243 (WHP), 2006 WL 3026024 (S.D.N.Y. Oct. 25, 2006) ............... 11, 22

*Ind. Pub. Ret. Sys. v. SAIC, Inc.*,
    818 F.3d 85 (2d Cir. 2016) ............................................................................................ 13

*Jiajia Luo v. Sogou, Inc.*,
    465 F. Supp. 3d 393 (S.D.N.Y. 2020) ............................................................. 10, 18, 21

*Klamberg v. Roth*,
    473 F. Supp. 544 (S.D.N.Y. 1979) ............................................................................... 10

*Local No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Exp. Co.*,
    724 F. Supp. 2d 447 (S.D.N.Y. 2010), aff'd, 430 F. App'x 63 (2d Cir. 2011) ............ 13

*Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*,
    164 F. Supp. 3d 568 (S.D.N.Y. 2016) ........................................................................... 11

*Menora Mivtachim Ins. Ltd. v. Intl. Flavors & Fragrances Inc.*,
    No. 19 CIV. 7536 (NRB), 2021 WL 1199035 (S.D.N.Y. Mar. 30, 2021) ....... 11, 12, 14, 16

*Merck & Co., Inc. v. Reynolds*,
    559 U.S. 633 (2010) ...................................................................................................... 19

iv

*Olkey v. Hyperion 1999 Term Trust, Inc.*,
  98 F.3d 2 (2d Cir. 1996) .................................................................................................. 18

*Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*,
  538 F. Supp. 2d 662 (S.D.N.Y. 2008) ............................................................................ 17

*Poindexter v. EMI Record Group Inc.*,
  No. 11-CV-559, 2012 WL 1027639 (S.D.N.Y. Mar. 27, 2012) ...................................... 9

*Police and Fire Ret. Sys. of the City of Detroit v. La Quinta Hldgs. Inc.*,
  2017 WL 4082482 (S.D.N.Y. Aug. 24, 2017) .................................................................. 9

*Prime Mover Capital Partners, L.P. v. Elixir Gaming Technologies, Inc.*,
  793 F. Supp. 2d 651, 678 (S.D.N.Y. 2011) .................................................................... 22

*Rapoport v. Asia Elecs. Holding Co.*,
  88 F. Supp. 2d 179 (S.D.N.Y. 2010) .............................................................................. 12

*Resnik v. Swartz*,
  303 F.3d 147 (2d Cir. 2002) ............................................................................................ 9

*Richman v. Goldman Sachs Grp., Inc.*,
  868 F. Supp. 2d 261 (S.D.N.Y. 2012) ............................................................................ 12

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004) .......................................................................................... 21

*Rubinstein v Credit Suisse Group AG*,
  457 F. Supp. 3d 289 (S.D.N.Y. 2020) ............................................................................ 14

*Sandoz v. Waterdrop, Inc.*,
  2023 WL 1767526, at *10 (S.D.N.Y. Feb. 3, 2023) ...................................................... 18

*Saskatchewan Healthcare Employee's Pension Plan v KE Holdings Inc.*,
  718 F Supp 3d 344 (S.D.N.Y. 2024) ................................................................................ 8

*Singh v. Schikan*,
  106 F. Supp. 3d 439 (S.D.N.Y. 2015) ............................................................................ 10

*Staehr v. Hartford Fin. Servs. Grp.*,
  547 F.3d 406 (2d Cir. 2008) ..................................................................................... 2, 20

*Wandel v. Gao*,
  590 F. Supp. 3d 630 (S.D.N.Y. 2022) ......................................................................... 9-10

*White v. UMG Recordings, Inc.*,
  2021 WL 6052106 (S.D.N.Y. Dec. 21, 2021) .................................................................. 8

**Statutes**

15 U.S.C. § 77e .................................................................................................................. 4

15 U.S.C. § 77k(a) ........................................................................................................... 9

15 U.S.C. § 77l(a)(2) ....................................................................................................... 9

Fed. R. Civ. Proc. § 9(b) ............................................................................................ 2, 21

Fed. R. Civ. Proc. § 12(b)(6) ....................................................................................... 1, 8

Securities Act § 11 ................................................................................................ 9, 10, 19

Securities Act § 12 ................................................................................................ 9, 10, 19

**Other Authorities**

17 CFR § 229.103 ........................................................................................................... 12

17 CFR § 229.303 ........................................................................................................... 13

Defendant Baosheng Media Group Holdings Limited ("Baosheng" or the "Company"), by and through undersigned counsel, respectfully submits this memorandum in support of its motion, pursuant to FRCP 12(b)(6), to dismiss the Third Amended Complaint ("TAC").

## PRELIMINARY STATEMENT

Unhappy with the performance of their investments, Plaintiffs now accuse Baosheng of misrepresentations in its 2021 IPO disclosures and other unlawful acts. But the TAC should be dismissed with prejudice as to Baosheng on the following bases:

| Plaintiff | Claim | Bases for Dismissal |
|---|---|---|
| Golden Genius International Limited ("Golden") | Section 11; Section 12(a)(2) | Time-barred<br>Failure to plead duty<br>Failure to plead materiality<br>Failure to satisfy pleading standard |
| Orient Plus International Limited ("Orient')<br><br>*and*<br><br>Union Hi-Tech Development Limited ("Union") | Breach of Contract | Failure to plead duty<br>Failure to plead materiality<br>Failure to satisfy pleading standard |

Golden's security claims do not plausibly allege (i) that Baosheng had any *duty* to disclose, in early 2021, a purported ongoing investigation of a third party, or (ii) *how* that investigation was material to Baosheng at that time – *i.e.*, that such events would proximately give rise to a duty of disclosure. Governmental investigations where publicly traded companies are potential witnesses are routine; many conclude without violations or charges. Plaintiffs cannot point to any precedent, statute, or regulation that mandates disclosure of the commencement of an investigation.  Orient and Union's contract claim against Baosheng merely recasts Plaintiffs' deficient securities claims by alleging that Baosheng breached the representations and warranties provisions of the Securities Purchase Agreement ("SPA") based on false or misleading statements contained in Baosheng's

IPO filings. Given the allegations of fraudulent misconduct that permeate the TAC (and the parallel Cayman Petition), Plaintiffs bear the burden to satisfy the Rule 9(b) heightened pleading standard, which is not erased by Plaintiffs' conclusory disclaimer that no fraud is alleged.

Not only do the allegations fail to state any plausible claim for relief, but Plaintiffs' allegations rely ***exclusively*** on statements attributed to Defendant Yanjun Hu – an individual who has never held a management position or seat on Baosheng's board – from an allegedly recorded phone call in June 2023 ( "Alleged June 2023 Call"). In the absence of the Alleged June 2023 Call, Baosheng honestly believed that Plaintiffs had no basis to plausibly allege that Baosheng executives were questioned as witnesses. Baosheng agrees that Plaintiffs are entitled to the benefit of reasonable inferences from properly stated facts. However, having exhibited the Alleged June 2023 Call, what Plaintiffs may not do is ***contradict*** the contents of the translated transcript of the Alleged June 2023 Call. As such, with respect to these contradictory allegations, Plaintiffs enjoy no presumption of truth. Baosheng respectfully submits that, absent those contradictory contentions, Plaintiffs claims inherently fail.

As set forth more fully herein, the Court should dismiss with prejudice the TAC in its entirety as against Baosheng.

## **FACTS**[1]

### I.    **Baosheng's Business and 2021 Initial Public Offering**

Founded in 2014 as an online marketing agency, Baosheng grew into a multi-channel online marketing solutions provider. The company is incorporated under the laws of the Cayman Islands

---

[1] Citations to "Ex. __" refer to exhibits attached to the Declaration of Shasha Mi in support of this motion ("Shasha Mi Decl."). Baosheng respectfully requests that this Court take judicial notice of various publicly-filed documents, including press releases and SEC filings. *See, e.g.*, *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008) (judicial notice of regulatory filings); *Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*, 364 F. Supp. 3d 253, 262 (S.D.N.Y. 2019) (judicial notice of press release).

and headquartered and operating in Beijing, China. TAC ¶ 5; Ex. C (Prospectus).[2] Through its relationships with a range of media entities, Baosheng helps advertisers optimize their online marketing and advertising strategies. Ex. C at 4. Baosheng also partners with search engine operators and social media platforms to procure advertisers and facilitate content deployment on their advertising channels. *Id.*

Pursuant to an amended Form F-1,[3] filed on February 8, 2021 but declared effective by the SEC on February 5, 2021 ("Registration Statement"), Baosheng registered 6,000,000 ordinary shares of stock. TAC ¶ 30; Ex. B (Registration Statement). On February 8, 2021, Baosheng made its initial public offering of those 6,000,000 ordinary shares at a price of $5 per share, and those shares commenced trading on Nasdaq stock exchange ("IPO"), where they continue to trade . *See* Ex. D (Feb. 8, 2021 Press Release on Pricing of the Company's Initial Public Offering).  The IPO was effectuated via a prospectus filed on February 9, 2021 ("Prospectus").  TAC ¶ 39; Ex.  C.  On February 10, 2021, Baosheng completed its IPO in a firm-commitment underwriting that raised $30 million and granted the underwriters an over-allotment option to purchase additional ordinary shares at the public offering price. *See* Ex. D (Feb. 10, 2021 Press Release on Closing of the Company's Initial Public Offering). Univest Securities, LLC ("Univest") was the lead underwriter on Baosheng's IPO, and Benchmark Company, LLC ("Benchmark") and WestPark Capital, Inc. (WestPark") served as secondary underwriters. TAC ¶¶ 103, 108.

---

[2] Baosheng's Prospectus and other SEC filings are incorporated by reference into the TAC and may be considered by this Court in deciding this motion.  *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).

[3] Foreign private issuers ("FPIs") are required to file certain forms with the Securities and Exchange Commission ("SEC"), such as Form F-1 – the registration statement for an initial public offering.

## II.    Plaintiffs' Purchases of Baosheng Securities

On March 2, 2021, Univest exercised its over-allotment option to purchase $4.5 million worth of ordinary shares and, in turn, sold $3.5 million of those shares directly to Golden. *Id.* ¶¶ 40-41; Ex. E (Mar. 3, 2021 Form 6-K).

Orient and Union entered into a Securities Purchase Agreement with Baosheng ("SPA"), pursuant to which they purchased $10 million worth of unregistered shares from Baosheng under Regulation S ("Private Placement").[4] TAC ¶ 42; Ex. F (SPA) at 1. On March 18, Baosheng closed the Private Placement. Ex. G (Mar. 18, 2021 Form 6-K).

## III.    Plaintiffs' (Unsubstantiated) Allegations of an "Investigation"

Plaintiffs allege that ten Baosheng executives were detained or questioned (apparently *as witnesses*), in connection with an investigation by Chinese authorities into gaming company Suncity Group ("Suncity") for illegal gambling and money laundering activities. TAC ¶ 47.

But Plaintiffs do not (and cannot) seriously contend that Baosheng was required to disclose that it actually violated any law – which makes sense, given that they do not and cannot allege that Baosheng ever *did* violate any law. The TAC does not include any substantive details about the supposed investigation on which Plaintiffs base their allegations, including what Chinese law Baosheng allegedly violated, what the investigation concluded, or why Baosheng supposedly was "fined" (Baosheng was not) – the very details required for a material and disclosable event. Importantly, Plaintiffs do not allege that such key details were known by or even available to Baosheng at the time of the IPO in February 2021, and there is no allegation that the Chinese government threatened a specific sanction against Baosheng at such time. Nor have Plaintiffs pled

---

[4] Regulation S provides an exemption from such registration requirements for securities offerings made outside the United States to non-U.S. purchasers.  15 U.S.C. § 77e; 17 C.F.R 230.901 *et seq.*

(other than in a conclusory fashion) that disclosure of early-stage investigations (let alone witness involvement) is either required or the norm in the United States.

Plaintiffs' allegations rest solely on the unsubstantiated hearsay statements that Yanjun Hu allegedly made to Hu Dong (a principal for Orient) in June 2023,[5] but otherwise lack any documentary support (itself notable and odd).[6] *Id.* ¶¶ 43-55. Plaintiffs acknowledge that the Transcript does not identify the individuals speaking but assert that "[t]he person identified as person 'A' is Yanjun Hu" and "[t]he person identified as person 'B' is Hu Dong." *Id.* ¶ 45. Curiously, Plaintiffs filed no accompanying affidavit to support these designations. Nonetheless, Baosheng accepts these allegations as true for the purposes of this motion.

It appears undisputed that Yanjun Hu was never a board member, executive, or employee of Baosheng. *See id.* ¶ 52(d) (noting that Yanjun Hu is a "non-management, non-director stockholder"). Yet Plaintiffs contend, without any support other than the plausible inferences from the Transcript, that Yanjun Hu had "inside knowledge of the operations and conduct of BAOS executives leading up to the IPO," *Id.* ¶ 129, and "controlled" Baosheng around that time. *Id.* ¶¶ 17, 52(d), 63. Without independent corroboration, Plaintiffs offer the following assertions based on their interpretation of the Alleged June 2023 Call:

- Baosheng was under investigation "[b]eginning one to two months before and continuing through the date of the IPO," and this investigation "involved China's Ministry of Public Security." *Id.* ¶ 52(a).

- Chinese authorities detained "ten members" of Baosheng's "management team," causing Baosheng to completely "suspend[] its operations in the months leading up to the IPO." *Id.* ¶ 52(b). Baosheng's CEO also "went into hiding because of this

---

[5] Plaintiffs' prior three complaints never identified these individuals or this call. Now, however, Plaintiffs proffer a translated transcript of the Alleged June 2023 Call as Exhibit A. *Id.* ¶ 45; *see also* Exhibit A to the TAC (ECF No. 128-1) ("Transcript").

[6] *See, e.g.,* C*hristine Asia Co., Ltd. v. Alibaba Grp. Holding Ltd.*, 718 Fed. Appx. 20, 23 (2d Cir. 2017) (detailed allegations, including a white paper, showing regulators reached and *communicated to the issuer* a firm conclusion of wrongdoing before the IPO) (emphasis added).

investigation," so Baosheng was "controlled by" Yanjun Hu during this time. *Id.* ¶ 52(b)-(d).

- "Chinese Authorities" targeted Baosheng "because of its relationship with Sogou, a large internet search engine and BAO's largest customer" and "because, upon information and belief, BAOS promoted Suncity on Sogou." *Id.* ¶ 47.

- This investigation "was not resolved until the second half of 2021" and resulted in a "fine" of 10 RMB (around $1,372,721). *Id.* ¶ 52(e). Baosheng also lost its "largest client" –Sogou – as a "direct result." *Id.* ¶ 52(f).

While Plaintiffs may be entitled to reasonable inferences in relation to the presumptive truth of their allegations, they are not entitled to *unreasonable* inferences.   At this point, it is important to review the contents of the Transcript as compared to Plaintiffs' allegations.

Plaintiffs quote the Transcript in support of their contention that the investigation into Baosheng began and Baosheng personnel were detained "a month or two before the company was listed." TAC ¶ 49. But read in its entirety, the Transcript belies Plaintiffs' characterization because Yanjun Hu was referencing "arrests" at Suncity, not Baosheng.  *See* Transcript at 13:28-13:49 ("A month or two before the company was listed. They started arresting people. But at that time, I thought it was just a temporary thing… [A]t the time, we thought that arrests would only happen to that game company, and... that Sogou would not be affected."). In fact, contrary to Plaintiffs' assertions, Yanjun Hu clarified that Baosheng became a target ***after* the IPO**.  *See id.* at 18:30 ("[T]hey see that BAOSHENG is a listed company. They don't bother companies that are not listed.").

## IV.    Baosheng's Risk Disclosures

Baosheng's IPO filings included detailed risk disclosures, including the evolving regulatory landscape for digital marketing in China and potential liability under so-called "Advertising Laws"; government investigations and regulatory and criminal penalties and the risk that Baosheng could be pursued for the unlawful actions *of its clients*; and its agency agreement with Sogou that was not guaranteed for renewal. Specifically, Baosheng disclosed:

- Sogou, a "top customer" made up "a significant percentage" of Baosheng's total revenue, and failure to renew their "agency agreement" contract "could result in a material adverse impact on our financial performance and business prospects." Ex. C at 15-16, 18. Agency agreements with "top customers" had a "term of one year or shorter, which are subject to renewal after expiry." *Id.* at 18. Further, "media [*e.g.*, Sogou] usually retain the right to terminate the authorized agency relationship based on business needs at their discretion." *Id.* at 15.

- Regulatory penalties or other punishments could be entered "against our business stakeholders (i.e., advertisers and media)," exposing Baosheng to "penalties and disruption of our business, which may adversely affect our results of operations and financial performance." *Id.* at 21.

- Government actions and civil claims that Baosheng could face as an "advertising operator" subject to China's Advertising Law "in connection with false, fraudulent misleading, or otherwise illegal marketing content for which [they] provide agency services," where Chinese authority could impose "penalties" or "confiscate [its] advertising revenue," and cause Baosheng "to lose market share, advertising customers, industry partners, and other business partnerships." Baosheng could "even be subject to government or regulatory investigation (including but not limited to those relating to advertising materials which are alleged to be illegal) as a result of such third-party conduct." *Id.* at 22.

- Government investigations, regulatory enforcement actions, and civil and criminal penalties that Baosheng could face by operating in "the online advertising industry in China with constantly evolving legal and regulatory frameworks," with no assurance that Baosheng "employees or agents" would adequately follow compliance procedures. *Id.* at 26.

- Other risks and uncertainties relating to relatively new regulation of the digital marketing industry, noting the Chinese government "prohibited the dissemination of information through the Internet" in violation of Chinese laws and regulations, and Baosheng faced "potential liability for any unlawful actions of our clients," emphasizing it had "no control over" how its advertiser and media clients applied review standards and it was "difficult to determine the type of content that may result in liability to us." *Id.* at 29.

## V.    Baosheng's Post-Prospectus Filings

In April 2021, Baosheng disclosed negative financial results, including a 33.3% decrease in annual revenues, a 33.4% decrease in profits, and a 37.9% decrease in net income, primarily attributed to the COVID pandemic. *See* Ex. H (Apr. 30, 2021 Form 20-F). In September 2021,

Baosheng reported further decreases in revenue in the first half of 2021 due to the expiration of its agency agreement with Sogou, a risk it had previously disclosed. *See* Ex. I (Sept. 30, 2021 Press Release Baosheng Media Group Holdings Limited Reports Financial Results for the First Half of 2021). In May 2022, Baosheng filed its annual report for fiscal year 2021 where it noted its agency agreement with Sogou expired. *See* Ex. J (May 17, 2022 Form 20-F) at 84.

## LEGAL STANDARD

Under Rule 12(b)(6), a complaint may be dismissed "for failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A complaint will not survive a motion to dismiss if it does not contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A claim has facial plausibility only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "It is not enough for a plaintiff to allege facts consistent with liability; the complaint must 'nudge[ ]' claims 'across the line from conceivable to plausible.'" *Saskatchewan Healthcare Employee's Pension Plan v KE Holdings Inc.*, 718 F Supp 3d 344, 374 (S.D.N.Y. 2024) (quoting *Twombly*, 550 U.S. at 570).

"Although courts must draw all reasonable inferences in the plaintiff's favor and assume all well-pleaded factual allegations to be true, they are not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *White v. UMG Recordings, Inc.*, 2021 WL 6052106, at *2 (S.D.N.Y. Dec. 21, 2021) (quotations omitted). "Pleadings that contain no more than conclusions ... are not entitled to the assumption of truth otherwise applicable to complaints in the context of motions to dismiss." *DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87–88 (2d Cir. 2013) (internal citations omitted). A complaint that relies on "labels and

conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (alteration in original) (citation omitted).

Moreover, and particularly relevant here, when a document relied on in a complaint contradicts the plaintiff's allegations, "the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *Poindexter v. EMI Record Group Inc.*, No. 11-CV-559, 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012) (citing *Barnum v. Millbrook Care Ltd. Partnership*, 850 F.Supp. 1227, 1232–33 (S.D.N.Y. 1994).

## **ARGUMENT**

## I.    **Golden's Securities Claims Fail As A Matter of Law.**

Section 11 provides a right of action for material misstatements or omissions in a registration statement, and Section 12(a)(2) provides a right of action for material misstatements or omissions in a "prospectus or oral communication." 15 U.S.C. §§ 77k(a), 77l(a)(2). To prevail on its Section 11 or 12(a)(2) claim, Golden must adequately plead "(1) the existence of either a misstatement or an unlawful omission; and (2) materiality." *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 360 (2d Cir. 2010).[7]

An alleged omission is not actionable "in the absence of a duty to disclose, even if the information would have been material." *In re Morgan Stanley Tech. Fund Sec. Litig.,* 643 F. Supp. 2d 366, 375 (S.D.N.Y. 2009) (citing *Resnik v. Swartz*, 303 F.3d 147, 154 (2d Cir. 2002)). To plead its Securities Act claims, Golden must allege that Baosheng "had a legal obligation to disclose the allegedly omitted information." *In re Merrill Lynch & Co., Inc. Research Reps. Sec. Litig.*, 272 F. Supp. 2d 243, 248 (S.D.N.Y. 2003). This duty "arises only when the issuer knew – or should have

---

[7] The alleged misrepresentations or omissions underlying the Section 11 and Section 12 claims are the same and analyzed together. *See, e.g., Police and Fire Ret. Sys. of the City of Detroit v. La Quinta Hldgs. Inc.*, 2017 WL 4082482, at *5 (S.D.N.Y. Aug. 24, 2017) ("The standard for determining whether a defendant made a material misstatement or omission is essentially the same under Section 10(b), Section 11, and Section 12.") (citations omitted).

known – of the omitted fact at the time the statements were made." *Wandel v. Gao*, 590 F. Supp. 3d 630, 640 (S.D.N.Y. 2022) (citations omitted).  "Clairvoyance is not required." *Id.* (citation omitted).

### A.    Baosheng Was Not Required to Accuse Itself of Speculative Wrongdoing

Setting aside the fact that no regulator took any affirmative, concrete actions against Baosheng, the securities laws do not require a company to accuse itself of wrongdoing under the circumstances alleged.  In particular, the TAC complains that *in February 2021* Baosheng was obligated to disclose a nascent investigation into an unadjudicated "violation" of Chinese law in its Registration Statement and Prospectus.

"There is no free-standing obligation under United States law to disclose even criminal conduct that is uncharged—let alone insufficient regulatory compliance." *Jiajia Luo v. Sogou, Inc.*, 465 F. Supp. 3d 393, 413 (S.D.N.Y. 2020). Absent an express prior disclosure about the matter, "a corporation has no affirmative duty to speculate or disclose uncharged, unadjudicated wrongdoings or mismanagement, illegal internal policies, or violations of a company's internal codes of conduct and legal policies." *In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *31 (S.D.N.Y. Sept. 28, 2012), *aff'd sub nom. City of Pontiac Policemen's and Firemen's Ret. System v. UBS AG*, 752 F.3d 173 (2d Cir. 2014). Even where – unlike here – some wrongdoing arguably occurred, the result is the same. *City of Pontiac*, 752 F.3d at 184.  Moreover, "the law is clear that companies need not depict facts in a negative or pejorative light or draw negative inferences to have made adequate disclosures." *Singh v. Schikan*, 106 F. Supp. 3d 439, 448 (S.D.N.Y. 2015); *see also Klamberg v. Roth*, 473 F. Supp. 544, 551 (S.D.N.Y. 1979) ("[S]o long as material facts are disclosed or already known, it is not deceptive to fail to characterize those facts with pejorative nouns and adjectives, or to fail to verbalize all adverse inferences expressly.") (internal quotation marks omitted).

Allegations that Baosheng engaged in unlawful conduct or violated Chinese law are speculative – the TAC offers no facts showing such underlying illegal conduct occurred. *See, e.g.*, *Gray v. Alpha and Omega Semiconductor Ltd.*, No. 20 Civ. 2414 (RA), 2021 WL 4429499, at *9 (S.D.N.Y. Sept. 27, 2021) (without analysis of applicable regulation, claim that American corporation's sales to regulated Chinese entity were "necessarily illegal" was conclusory); *Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 164 F. Supp. 3d 568, 578 (S.D.N.Y. 2016) (dismissing complaint that did not identify details of transaction that allegedly violated sanctions); "If the complaint fails to allege facts which would establish [the alleged] illegal scheme, then the securities law claims premised on the nondisclosure of the alleged scheme are fatally flawed." *In re Axis Capital Holdings, Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 585 (S.D.N.Y. 2006); *see also In re Yukos Oil Co. Sec. Litig.,* No. 04 CIV. 5243 (WHP), 2006 WL 3026024, at *14 (S.D.N.Y. Oct. 25, 2006) ("[T]he complaint fails to plead with particularity sufficient facts demonstrating that Yukos' tax strategy violated Article 40 of the Russian Federation Tax Code.").

Here, the TAC alleges that "Chinese Authorities" targeted Baosheng for "promot[ing] Suncity on Sogou," TAC ¶ 47, with no elaboration on how this conduct violated Chinese law – let alone what law Baosheng allegedly violated – or any evidence of charges filed or that a fine was paid.

At core, the implausible story of the "investigation" hangs on abstract speculation within the Alleged June 2023 Call.  Moreover, the Transcript does not support the proposition that Baosheng knew about the "investigation" at the time of the IPO and provides no basis for the otherwise boilerplate allegation that Yanjun Hu, a mere shareholder, had authority or supposed insight of Baosheng operations leading up to the IPO. Courts routinely dismiss claims predicated on similarly conclusory and generic allegations from secondhand sources. *See, e.g.*, *Menora Mivtachim Ins. Ltd. v. Intl. Flavors & Fragrances Inc.*, No. 19 CIV. 7536 (NRB), 2021 WL

1199035, at *11 (S.D.N.Y. Mar. 30, 2021), *aff'd sub nom. Menora Mivtachim Ins. Ltd. v. Frutarom Industries Ltd.*, 49 F.4th 790 (2d Cir. 2022), and *aff'd sub nom. Menora Mivtachim Ins. Ltd. v. Frutarom Industries Ltd.*, 54 F.4th 82 (2d Cir. 2022) ("Courts generally have not credited the statements in situations where the information attributed to them was sourced secondhand and lack sufficient independent corroboration or is insufficiently particular."); *Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2010) (new article driven "complaint does not identify any portion of Chinese law that Defendants have transgressed or even articulate a basic description of how Plaintiffs allegedly committed the violation").

### B.    Baosheng Had No Duty to Disclose a Nascent Investigation

At most, by the TAC's own allegations, at the time of the IPO, Baosheng was only the subject of a nascent investigation. TAC ¶ 52. As a matter of law, Baosheng had no duty to disclose the investigation at the time in question (in February 2021). *See In re Lions Gate Entm't Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 12 (S.D.N.Y. 2016) ("[A] government investigation, without more, does not trigger a generalized duty to disclose.").

Recognizing this hard rule, Golden creatively attempts to impose additional duties on Baosheng by suggesting that Item 8 of Form 20-F (TAC ¶¶ 136, 157) and Item 103 of Regulation S-K (TAC ¶¶ 97-98) result in supplemental disclosure obligations at the investigation stage. They are wrong. Item 8 requires disclosures of "legal or arbitration proceedings," Form 20-F, Item 8(7). Similarly, Item 103 requires disclosure of "any material *pending* legal proceedings." 17 CFR § 229.103 (emphasis added). But a "proceeding" is plainly not the same as an "investigation." There is a reason public companies do not disclose governmental interviews, investigations, or grand jury subpoenas on a daily basis even though they so occur. Rather, "[a]n investigation on its own is not a 'pending legal proceeding' until it reaches a stage when the agency or prosecutorial authority *makes known* that it is contemplating filing suit or bringing charges." *Richman v. Goldman Sachs*

*Grp., Inc.*, 868 F. Supp. 2d 261, 272 (S.D.N.Y. 2012) (referring to disclosures under Item 103) (emphasis added); *see also Lions Gate*, 165 F. Supp. 3d at 12 ("[D]efendants did not have a duty to disclose the SEC investigation . . . because the securities laws do not impose an obligation on a company to predict the outcome of investigations.") (internal quotation marks and citation omitted); *In re Marsh & Mclennan Cos., Inc. Sec. Litig.*, 501 F.Supp.2d 452, 471 (S.D.N.Y. 2006) ("With respect to a company's failure to disclose impending litigation, there is no requirement to make disclosures predicting such litigation, absent an allegation that the litigation was substantially certain to occur during the relevant period.") (internal citations and quotations omitted).

There is no allegation that Chinese authorities specifically informed Baosheng that any finding or penalty against Baosheng was imminent at the time of the IPO, so the TAC's attempt to characterize the investigation as a "legal proceeding" falls decidedly flat. TAC ¶ 58. *See, e.g.*, *Local No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Exp. Co.*, 724 F. Supp. 2d 447, 461 (S.D.N.Y. 2010) (rejecting allegations that "do not establish what specific contradictory information the [defendant] received or when they received it"), *aff'd*, 430 F. App'x 63 (2d Cir. 2011). In fact, there is no allegation specifying what the alleged "detention" of Baosheng employees constituted beyond witness investigation.

For similar reasons, Golden is wrong that Item 303 of Regulation S-K creates a duty to disclose under these same circumstances. TAC ¶¶ 95-96. Item 303 of Regulation S-K, 17 CFR § 229.303, requires disclosure only where "a trend, demand, commitment, event or uncertainty is both *presently known* to management *and reasonably likely* to have *material* effects on the registrant's financial condition or results of operations." Exchange Act Release No. 6835 (emphasis added); 17 C.F.R. § 229.303. "Knowledge of a trend is an essential element triggering disclosure under Item 303." *In re Noah Educ. Holdings, Ltd. Sec. Litig.*, No. 08 Civ. 9203 (RJS), 2010 WL 1372709, at *6 (S.D.N.Y. Mar. 31, 2010); s*ee also Ind. Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85,

95 (2d Cir. 2016) ("The plain language of Item 303 confirms our previous assumption that it requires the registrant's *actual* knowledge of the relevant trend or uncertainty.") (emphasis added).

To be clear, for Baosheng to liable, this knowledge had to exist as of February 2021. Yet, the Transcript belies Plaintiffs' conclusory allegations on timing. *See Menora Mivtachim Ins. Ltd.*, 2021 WL 1199035, at *10 ("for a misstatement to be actionable, plaintiffs must plead its contemporaneous falsity") (internal quotation marks and citation omitted); *In re Wachovia Eq. Securities Litig.*, 753 F. Supp. 2d 326, 352 (S.D.N.Y. 2011) ("[A]llegations about an unspecified time period cannot supply specific contradictory facts available to Defendants *at the time* of an alleged misstatement.") (emphasis in original). Nor does Item 303 create a duty to disclose the existence of an investigation in the absence of any plausible inference that a defendant "reasonably expected . . . that it would incur fines and/or liabilities—let alone fines and/or liabilities that would impact materially the Company's financial performance—as a result of the state investigations[.]" *City of Westland Police and Fire Ret. Sys. v. Metlife, Inc.*, 129 F. Supp. 3d 48, 84 (S.D.N.Y. 2015); *see also Rubinstein v Credit Suisse Group AG*, 457 F. Supp. 3d 289, 300-1 (S.D.N.Y. 2020) (rejecting allegations of violations where plaintiffs alleged that defendant could be "presumed to have known" of risk).

There is no basis here to draw such an inference because at the time of the IPO there was no material impact for Baosheng to know or disclose. Plaintiffs' argument, at best, is that Baosheng needed to *predict* what the outcome of an investigation into Baosheng's customer would be on Baosheng's future performance. In fact, once the overall impact of the increased Chinese regulatory environment began to take effect, Baosheng *did* make disclosures as it relates to potentially lowered revenue in September 2021:

> [M]any of our customers operating in Fintech, gaming, education, and real estate industries have experienced consumption declines, ***amid policy adjustment by the Chinese government to enhance regulation and supervision of these industries***, which resulted in lower advertisement expenditures. Under the current

14

circumstance, we have actively optimized our business plans and strategies and made progress in our Ocean Engine business, including establishing partnerships with well-known customers, such as Alibaba and Bytedance, in order to counter the adverse effects of COVID-19 and the governmental policy developments on the Company's operations and financial results.

*See* Ex. J.

Plaintiffs' entire case, in addition to being fatally untrue, amounts to a contention that Baosheng did not make the above disclosure *soon enough* – a fairly significant charge for which one would expect significant evidence. Here, Plaintiffs' interpretation of the timeline in its pleadings is based only on the Transcript *and* constitutes an impermissible departure from that Transcript. Accordingly, where all of Plaintiffs' claims (both contract and securities) depend directly on Baosheng's disclosure obligations, the TAC must be dismissed.

To the extent Golden attempts to hang its hat on Baosheng's duty to disclose a potential fine that may have been assessed around "the second half of 2021," that contention should be rejected. Even assuming arguendo that Baosheng *knew* of the investigation at the time of IPO and that the investigation was *of* Baosheng for wrongdoing *by* Baosheng, courts have rejected Golden's attempt to impose liability under Item 303 for not correctly foretelling possible future outcomes and once again ignores the maxim that Baosheng "had no affirmative duty to specifically accuse itself of wrongdoing." *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d at 651; *see also In re Coty Inc. Sec. Litig.*, No. 14-cv-919, 2016 WL 1271065, at *7–8 (S.D.N.Y. Mar. 29, 2016) ("mere[]" allegations, described in "broad, conclusory terms," "failed to raise a plausible inference . . . [of] material misstatements or omissions in violation of . . . Item 303"); *Abuhamdan v. Blyth, Inc.,* 9 F. Supp. 3d 175, 206-07 (D. Conn. 2014) ("[T]he allegations in the complaint are too vague to allow the Court to draw the inference [of materiality].").

### C.    The TAC Does Not Plausibly Allege a Material Investigation

Materiality must be determined as of the time Baosheng is alleged to have been required to disclose the investigation – in February 2021 as part of the IPO.  A statement or omission is material if "there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to act."  *ECA & Local 134 Ibew Joint Pension Trust v. JP Morgan Chase Co.*, 553 F.3d 187 (2d Cir. 2009).  That is, a fact is material if there is a substantial likelihood that its disclosure would significantly alter the total mix of information made available and thereby "mislead a reasonable investor regarding the nature of the securities offered." *Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 357 (2d Cir. 2002). In assessing materiality, courts evaluate both qualitative and quantitative factors, "adjudged by the facts as they existed when the registration statement became effective." *Flag Telecom Holdings, Ltd. Sec. Litig.*, 308 F. Supp. 2d 249, 254 (S.D.N.Y. 2004).

The TAC alleges that the risk "had already materialized" at the time of the IPO "because the uncertainties associated with the Chinese government's investigation and detention of BAOS executives had adversely impacted BAOS's business, operations, and profitability prior to its IPO." TAC ¶ 80. The TAC does not identify the ten "executives and directors" who allegedly were detained before the IPO, or their roles and positions, and as has already been explained, Plaintiffs' purported timeline does not hold water. *See Menora Mivtachim Ins. Ltd.*, 2021 WL  1199035, at *10 ("Such allegations cannot satisfy plaintiffs' particularized pleading burden, as they are 'temporally and logically insufficient,' especially when, as here, there are 'scant' allegations to establish the details of a company's unlawful conduct during the [relevant period].") (citations omitted).

The TAC also rests on a mischaracterization of the Transcript because the speaker clarified that there was no actual "arrest," and "they called in *three* people" – not ten – "to cooperate with the investigation." Transcript at 17:31.  Even extending every possible inference that China's

Ministry of Public Security was "involved" in the investigation into Baosheng only goes so far, TAC ¶ 52(a), as the Transcript only notes that the "Ministry of Public Security set up a special project to specifically investigate this case…the so-called 'Alvin Chau Cheok Wa' incident" [a reference to the CEO of Suncity not Baosheng].[8]

The TAC rather concedes that the investigation did not conclude until the second half of 2021, *after* Plaintiffs purchased their shares in the first quarter of 2021. *Id.* ¶ 52(e).  Once again, the TAC's legal theory amounts to a demand that companies be clairvoyant about possible worst outcomes in third-party investigations and immediately disclose any prognostications therefrom. But this is not and cannot be the law. Baosheng was not obligated to predict the likelihood of a forthcoming fine in the second half of 2021 (which did not happen) and further disclose that *likelihood* to investors. Courts routinely reject such pleadings that depend on a premature disclosure or a "chain of contingencies to materialize." *Diehl v. Omega Protein Corp.*, 339 F. Supp. 3d 153, 167 (S.D.N.Y. 2018). *See also Constr. Laborers Pension Tr. for S. Cal. v. CBS Corp.*, 433 F. Supp. 3d 515, 538 (S.D.N.Y. 2020) ("An increase in a risk does not mean the risk has already come to pass"); *In re TVIX Sec Litig.*, 25 F. Supp. 3d 444, 450 (S.D.N.Y. 2014) (rejecting "hindsight" or "backward-looking assessment"); *Panther Partners, Inc. v. Ikanos Commc'ns, Inc*., 538 F. Supp. 2d 662, 672 (S.D.N.Y. 2008) ("An earlier statement is not somehow made misleading simply because it failed to foretell a ... problem which later materialized.").

### D.    Baosheng Specifically Disclosed the Risk of Losing Sogou as a Client

The TAC alleges that "Chinese authorities investigated BAOS because of its relationship with Sogou," targeting Baosheng because it allegedly "promoted Suncity on Sogou." TAC ¶ 47. This exact risk was specifically disclosed in the Prospectus but had yet to materialize at the time of

---

[8] *See* Grace Tsoi, *Alvin Chau: Macau gambling kingpin jailed for 18 years*, BBC (Jan. 18, 2023), https://www.bbc.com/news/world-asia-china-64314043.

Plaintiffs' transactions because, by Plaintiffs' own allegations, the investigation was still ongoing. Courts dismiss claims where, as here, the IPO offering documents "warn[ed] investors of exactly the risk the plaintiffs claim was not disclosed." *Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2, 5 (2d Cir. 1996); *see also In re Bank of America AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d. 564, 579 (S.D.N.Y. 2013) ("[W]here there is disclosure that is broad enough to cover a specific risk, the disclosure is not misleading simply because it fails to discuss the specific risk. This is particularly so when there is ample disclosure of the broader risk.") (internal citation omitted).

Golden's argument that Baosheng failed to disclose the "significant risk" of losing its "biggest client" or potential investigation and penalty exposure is incompatible with the offering materials, which clearly identified Sogou as a "top customer," the risk of its revenue concentration with Sogou, various efforts to "mitigate" the company's "over-reliance" on Sogou, and even the risk of liability and business interruptions for their *customers'* non-compliance with the Advertising Laws. Ex. C at 21, 22, 26, 105. Simply put, Baosheng's offering materials "warned of the exact risk that was threatened and [allegedly] later materialized." *Jiajia Luo*, 465 F. Supp. 3d at 411. In the Prospectus, Baosheng informed investors that it was exposed to "civil and criminal penalties" and material "business interruptions" for their *media partners*' non-compliance with the Advertising Laws (even noting Baosheng had no ability to "identify" or "correct[] in a prompt and proper manner" their partners' "irregularities or non-compliance"). Ex. C at 21, 22, 26. *See Sandoz v. Waterdrop, Inc.*, 2023 WL 1767526, at *10 (S.D.N.Y. Feb. 3, 2023) (statements by Chinese company that it faced "'uncertainties relating to the change in regulatory regime'" and warned it "cannot ensure that it will be able to comply with new regulations in a timely manner" sufficiently "notified investors of the risks stemming from the regulatory environment"). Baosheng also disclosed that Baosheng's agency agreement with Sogou was subject to annual renewal and that there was no guarantee of renewal, which could have a material impact on Baosheng's operations.

Ex. C at 15-16, 18. Because this language specifically warned of the risk of losing Sogou as a client, Golden's claims "will not lie as a matter of law." *In re ProShares Trust Sec. Litig.,* 728 F.3d 96, 102 (2d Cir. 2013) (internal quotation marks omitted).

As a corollary, Golden does not and cannot plead "how further disclosure would have significantly altered the total mix of information available to a reasonable investor or disclosed a trend not otherwise explained in the offering documents." *Asay v. Pinduoduo Inc*., 18-cv-7625, 2020 WL 1530745, at *10 (S.D.N.Y. Mar. 30, 2020), *aff'd*, 2021 WL 3871269 (2d Cir. Aug. 31, 2021).  In the context of strict liability Securities Act omission cases, disclosures actually made are not fact questions, they are legal question that may be resolved on a motion to dismiss. *See generally, Davidoff v. Farina*, 2005 WL 2030501, at *10 (S.D.N.Y. Aug. 22, 2005).

## II.    Golden's Claims Are Otherwise Time-Barred.

There is a one-year limitations period for bringing claims under Section 11 and Section 12, commencing when the plaintiff discovers or should have discovered the "the facts constituting the alleged fraud." *Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 349 (2d Cir. 1993).

A plaintiff is on inquiry notice of a securities law violation "when a reasonably diligent plaintiff would have discovered the facts constituting the violation." *Ho v. Duoyuan Glob. Water, Inc.*, 887 F. Supp. 2d 547, 564 (S.D.N.Y. 2012) (citing *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633 (2010)). Golden must plead compliance with the statute of limitation by setting forth: "(1) the time and circumstances of the discovery of the fraudulent statement; (2) the reasons why it was not discovered earlier (if more than one year has lapsed); and (3) the diligent efforts which plaintiff undertook in making or seeking such discovery." *Ho*, 887 F. Supp. 2d at 565.  *See Dodds*, 12 F.3d at 350 ("[W]hen the circumstances would suggest to an investor of ordinary intelligence the probability that she has been defrauded, a duty of inquiry arises, and knowledge will be imputed to the investor who does not make such an inquiry.").

Golden's securities claims are untimely because this lawsuit was filed than one year after Golden could have discovered, with reasonable diligence, the alleged failure to disclose the investigation. Golden still provides no detail about the circumstances under which it finally came into possession of the allegedly recorded call or learned about the investigation from Hu Dong, and why it could not possibly have discovered it sooner. As a shareholder, Golden could have taken steps to request, obtain, and inspect Baosheng's books and records or made other efforts to assess whether there was cause for concern immediately upon the loss of Sogou as a customer.   Baosheng issued a press release on _September 30, 2021_ noting the negative impact on revenue "mainly caused by the decrease of $6.0 million in revenue from Sogou, as the authorized agency agreement between the Company and Sogou ended in March 2021," before which Sogou was the Company's "top publisher." Ex. J.

Golden – a sophisticated investor – had inquiry notice of negative financial and business developments at Baosheng more than two years before this lawsuit was commenced. *See In re Magnum Hunter Resources Corp. Securities Litig.*, 616 Fed. Appx. 442, 447 (2d Cir. 2015) (summary order) (finding securities act claims untimely because company's later disclosures "would have led a reasonably diligent plaintiff to have discovered the facts underlying his claim"); *see also Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 427 (2d Cir. 2008) (clarifying all wrongdoing details not required under inquiry notice doctrine).   While Baosheng certainly appreciates that notice and timing of acquiring the requisite knowledge *could* be fact issues, a fact issue *presupposes* allegations by a plaintiff that narrates reasonable diligence, which allegations are conspicuously absent despite Golden's prior awareness of the statute of limitations arguments presented herein. A conclusory contention that a plaintiff acted with reasonable promptness is insufficient:   Golden's failure to plead *any* facts giving rise to a rationale narrative that would render its filing delay reasonable inherently relegates the Court's analysis to one of law, not fact.

III.    **Plaintiffs Fail To Satisfy Rule 9(b)'s Heightened Pleading Standard.**

The TAC hinges on allegations that Baosheng's executive team knowingly "*concealed*" material information to "*induce* investors" to purchase common shares (as to all Plaintiffs). *See* TAC ¶¶ 54 (directors and executives "knew"), 152 (inducement), and 156 ("concealed and failed to disclose material facts"). Despite the TAC's generic fraud disclaimer, Plaintiffs' allegations unavoidably sound in fraud.[9] *See Jiajia Luo*, 465 F. Supp. 3d at 408 & n.7 (where a complaint alleges that defendants "knew" and "were aware" of adverse, undisclosed facts and hid them, the complaint is "replete with explicit claims of fraud").

Thus, Plaintiffs' claims are subject to Rule 9(b)'s heightened pleading requirements.[10] *See, e.g.*, *In re Fuwei Films Sec. Litig.*, 634 F. Supp. 2d 419, 436 (S.D.N.Y. 2009) ("[C]ourts have repeatedly noted that the insertion of a simple disclaimer of fraud is insufficient to avoid Rule 9(b) standards when Securities Act claims sound in fraud.") (internal quotation marks omitted). Rule 9(b) requires that Plaintiffs: "(1) specify the statements that the plaintiff[s] contend[] were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004). Plaintiffs cannot "couple[] a factual statement with a conclusory allegation of fraudulent intent" to support the inference that defendants acted recklessly or with fraudulent intent; Plaintiffs must "explain why the statements were fraudulent." *Id.* at 172, 176.

Plaintiffs do not point to any regulatory enforcement action or findings of wrongdoing based on Baosheng's conduct. Having failed to identify "even a single instance in which the

---

[9] The gravamen of the Cayman Petition also makes the Golden's coy disclaimer of scienter particularly meaningless. *See* Ex. K (Cayman Petition).

[10] *A fortiori,* Plaintiffs' threadbare assertions fail to meet the plausibility standard which "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

[regulator] challenged" the company's own conduct, *Yukos Oil*, 2006 WL 3026024, at *14, the

TAC—based on an isolated, unverified account—falls short of establishing the requisite degree of

particularity required by Rule 9(b).    Similarly, Plaintiffs' vague, conclusory (and incorrect)

allegations of that "investigation" resulting in a "multi-million RMB fine" at some unspecified

point in "the second half of 2021" itself depends on an *anecdote* from Yanjun Hu. "Such rumors

cannot reasonably satisfy the requirement that the facts alleged provide an adequate basis for

believing that the defendants' statements were false." *Chapman v. Mueller Water Products, Inc.*,

466 F. Supp. 3d 382, 399 (S.D.N.Y. 2020) (internal quotations and citation omitted).

## IV.    Orient and Union Fail To State A Claim For Breach of Contract.

Orient and Union relies on the same vague and conclusory allegations for their breach of

contract claim, asserting breach of warranties contained in Sections 3.1(i), (j), (l) and (x) of the

SPA. Orient and Union, however, fail to state a claim for breach of each of these warranties.

### A.    Orient and Union's Claim for Breach of the Section 3.1(l) Warranty Fails

Orient and Union allege a breach of the Section 3.1(l) warranty that Baosheng has not been

"in violation of any statute, rule, ordinance or regulation of any governmental authority having

proper jurisdiction over the Company or its Subsidiaries."  SPA ¶ 3.1(l). Specifically, Orient and

Union allege that "[t]he Chinese authorities investigation into BAOS ... (iii) showed that BAOS

was in violation of Chinese law." TAC ¶ 171.  Because Orient and Union fail to plead violation of

a specific statute, however, they fail to state a claim for breach of the Section 3.1(l) warranty.

In *Prime Mover Capital Partners, L.P. v. Elixir Gaming Technologies, Inc.*, the court

examined a similar warranty (that a sale did not "conflict with or result in a violation of any law,

rule or regulation"), and found that the plaintiff failed to allege breach of warranty because it did

not plead the breach of a *particular* law.  The court observed:

> [The plaintiff] has not alleged how the sale of stocks and warrants pursuant to the
> [agreement]... violated any particular law, rule or regulation.  While this Court can

conceive of theories on which such a claim might rest, it is the plaintiff's burden to plead its allegations with sufficient clarity to give defendants notice of the claim.

793 F. Supp. 2d 651, 678 (S.D.N.Y. 2011).

Baosheng's Section 3.1(l) warranty contains similar language, warranting that it is not "in violation of any statute, rule, ordinance or regulation of any governmental authority having proper jurisdiction..." SPA ¶ 3.1(l).  Notably, however, Orient and Union do not allege that Baosheng violated "any particular law, rule or regulation."  At best, they allege there was a violation "of Chinese law." TAC ¶ 171.  These allegations lack sufficient clarity to give Baosheng notice of Orient and Union's claim and thus fail.

**B.    Orient and Union's Claim for Breach of Sections 3.1(i) and (j) Warranties Fail**

Orient and Union assert a breach of the Section 3.1(i) warranty, alleging "that there had been no development that could reasonably be expected to have a material adverse effect on the company," TAC ¶ 170, and the Section 3.1(j) warranty, alleging "[t]hat there was no 'investigation pending' by any government entity that could reasonably be expected to have a Material Adverse Effect on the company."  TAC ¶¶ 100(b), 170.

Ultimately, this reduces to a *combination* of the duty and materiality points set forth in the securities law sections above and will not be repeated in full for brevity. But at core, Orient and Union do not competently plead that, at the time of the signing of the SPA, there was a reasonable expectation of a Material Adverse Effect.  Plaintiffs allege in conclusory fashion that "[t]he Chinese investigation into BAOS ... was reasonably expected to have material adverse impact on BAOS," TAC ¶ 171, and that the Individual Defendants "knew the investigation had caused BAOS to suspend its operations and that BAOS' relationships with Sogou was at significant risk." TAC ¶ 54.  However, these statements are outright unsupported by the Transcript. And the timeline associated with the SPA is not materially different from that associated with the securities claims.

23

Notably, Orient and Union do *not* allege a breach of Section 3.1(i) based on the warranty that an event "had" a Material Adverse Effect on Baosheng at the time of the signing of the SPA, only that such an event "could not reasonably be expected to result in a Material Adverse Effect." TAC ¶ 100(b).  To get around this, Plaintiffs vaguely suggest that Baosheng "breached the provisions in the SPA that warranted that there had been no events with a material adverse effect on the company" given their knowledge that "the investigation had caused BAOS[] to suspend its operations and that BAOS[] relationships with Sogou was at significant risk." TAC ¶ 55.  They do not, however, plead facts sufficient to support such an allegation.  Given the definition of Material Adverse Effect, Plaintiffs must specifically allege an impact "on the *results* of operations, assets, business, or condition ... of the Company." SPA § 3.1(b) (emphasis added). Orient and Union allege no such thing.

For instance, Orient and Union allege "[b]ased on the statements by Yanjun Hu and upon information and belief" that Baosheng "was under investigation" and that ten members of Baosheng's management were detained "one to two months before and continuing through the date of the IPO."  TAC ¶ 52(a)-(b).  They also allege that the investigation impacted operations (not the *results*) at Baosheng "in the months leading up to the IPO" and that around the time of the IPO, Baosheng was "controlled" by Yanjun Hu.  TAC ¶ 52(c)-(d).  These are not the sort of facts that are considered material to investors – Plaintiffs do not and cannot claim that the alleged suspension or fine had any material economic impact. Rather, it was a subsequent revenue and customer loss, ***the risk of which was disclosed,*** that had any material economic impact. This fact matrix is not sufficient to infer that Baosheng had a reasonable expectation, at the time of signing the SPA, of a "a Material Adverse Effect on the *results of* operations, assets, business, or condition (financial or otherwise) of the Company."

24

Again, these allegations are inconsistent with the Transcript. The speaker specifically states that, around the time of the IPO, the investigation was neither "affecting" Baosheng nor was there a reasonable expectation that Baosheng (or Sogou) would be adversely affected. *See* Transcript at 13:49 ("we thought that arrests would only happen to that game company…"). The Transcript also confirms that Baosheng was only allegedly targeted *after* it was listed; even then, Baosheng's involvement was limited to "cooperation."[11]

Orient and Union base their allegations "upon information and belief," which is permissible only where "the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018). Here, the facts are not peculiarly within the possession and control of Baosheng, as Plaintiffs base their allegations on the Alleged June 2023 Call in which they participated. Further, courts are not required to accept allegations pled upon information and belief where they are contradicted by documents upon which the pleadings rely. *See Goodman v. Goodman*, 21-CV-10902 (GHW)(RWL) 2022 WL 17826390, at *19 (S.D.N.Y. 2022) ("if a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true") (citations omitted).

### C.    Orient and Union's Claim for Breach of the Section 3.1(x) Warranty Fails

Orient and Union allege a breach of the Section 3.1(x) warranty, that Baosheng's SEC filings were "true and correct in all material respects and do not contain any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made therein...not misleading." However, Orient and Union plead only that Section 3.1(x) is false

---

[11] *See* Transcript at 17:31 ("There was cooperation with the investigation...It wasn't actually called 'arrest' either…").

*because* of the purported investigation by Chinese authorities.  Plaintiffs specifically plead that this investigation "established that BAOS's public disclosures contained material misrepresentations and omissions." TAC ¶ 171.

As set out above, there is no generalized duty to disclose unadjudicated wrongdoing, and the existence of an investigation "without more" does not trigger a duty to disclose.  *See Lions Gate*, 165 F. Supp. 3d at 12. In *Gordon v. Tencent Music Entertainment Group*, 19-CV-5465 (LDH)(TAM), 2023 WL 2734743 (E.D.N.Y. 2023), while a securities disclosure case, is relevant to the alleged failure to correct the "true and correct" basis of a contractual representation.  The *Gordon* court found that the mere existence of a government investigation was insufficient to demonstrate that defendants *omitted* material information in its registration statement.  The court contrasted its case to *Christine Asia Co., Ltd. v. Alibaba Grp. Holding Ltd.*, 718 Fed. Appx. 20 (2d Cir. 2017), where "the material adverse effect" of the investigation "was both supported and imminent" as it was publicly reported that a government agency was "prepared to penalize" the defendant  *Id.* at *7.  The *Gordon* court found that plaintiff's allegations were unsupported by the proffered supporting documentation, which suggested no targeted or imminent harm directed toward the defendant.  *Gordon*, 2023 WL 2734743 at *7 ("Plaintiff attempts to create an imminent threat here ... [b]ut, this is not a reasonable inference to draw in light of Plaintiff's own exhibits…").

Similarly, the Transcript does not support the allegation that any threat was imminent at the time of the signing of the SPA.  Yanjun Hu himself believed that arrests at Suncity would affect *neither* Sogou nor Baosheng. This cannot support the allegation that Baosheng breached Section 3.1(x).

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the TAC with prejudice.

Dated: New York, New York
December 20, 2024

Respectfully submitted,

HOLLAND & KNIGHT LLP

By:   */s/ Warren E. Gluck*
Warren E. Gluck, Esq.
787 Seventh Avenue, 31st Floor
New York, NY 10019
Tel:  212-513-3200
Email: Warren.Gluck@hklaw.com

*Counsel for Defendant*
*Baosheng Media Group Holdings Limited*

## CERTIFICATION

I, Warren E. Gluck, an attorney duly admitted to practice law before this Court, hereby certifies that this memorandum of law complies with the word limit set forth in Rule 3.C of Your Honor's Individual Rules of Practice in Civil Cases (rev. Oct. 10, 2024) because it contains 8,739 words, excluding the parts of the motion exempted from the word limit under Rule 3.C. In preparing this certification, I have relied on the word count of the word-proceeding system used to prepare this memorandum of law.

Dated: New York, New York
December 20, 2024

*/s/ Warren E. Gluck*
Warren E. Gluck, Esq.