**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Orient Plus International Limited; Union Hi-Tech Development Limited; and Golden Genius International Limited,<br><br>    Plaintiffs,<br><br>vs.<br><br>Baosheng Media Group Holdings Limited; Wenxiu Zhong; Sheng Gong; Yu Zhong; Zuohao Hu; Adam (Xin) He; Yue Jin; Yanjun Hu; Univest Securities, LLC; The Benchmark Company, LLC; WestPark Capital, Inc.; Friedman LLP; and Marcum LLP,<br><br>    Defendants. | Civil Action No. 1:24-cv-00744-JLR |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS**
**YU ZHONG, ZUOHAO HU AND ADAM (XIN) HE'S**
**MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT**

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................1
II.     STATEMENT OF FACTS ........................................................................................3
III.    STANDARD OF REVIEW ......................................................................................7
IV.     ARGUMENT .............................................................................................................8

      A.     The Court Does Not Have Personal Jurisdiction over the Independent
           Directors. .........................................................................................................8

      B.     Golden's Claims Are Time-Barred .................................................................10

      C.     The Investigation Was Not Material. ..............................................................13

      D.     The TAC Should Be Dismissed as There Was No Duty to Disclose. ..............16

      E.     The Risks Underlying the TAC's Allegations Were Disclosed. .......................19

      F.     Plaintiffs' Own Allegations Negate Causation. ..............................................21

      G.     Golden's Section 15 Claim Must Be Dismissed for Failure to Plead Control
           Person Liability. .............................................................................................22

           a.     Golden Has Not Sufficiently Alleged a Primary Violation under
               Sections 11 or 12 ...............................................................................22
           b.     Golden Has Not Sufficiently Alleged Control Person Liability as to
               the Independent Directors. .................................................................23

      III.    Conclusion .........................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.I. Trade Fin., Inc. v. Petra Bank*,
989 F.2d 76 (2d Cir. 1993)........................................................................................................8

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
529 F.Supp.3d 111 (S.D.N.Y. 2021) .....................................................................................10

*In re Alibaba Grp. Holding Ltd. Sec. Litig.*,
No. 20 CIV. 9568, 2023 WL 2601472 ...................................................................................10

*Asay v. Pinduoduo Inc.*,
18-cv-7625, 2020 WL 1530745 (S.D.N.Y. Mar. 30, 2020), *aff'd*, 2021 WL
3871269 (2d Cir. Aug. 31, 2021)............................................................................................21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................................7

*In re Banco Bradesco S.A. Sec. Litig.*,
277 F. Supp. 3d 600 (S.D.N.Y. 2017)....................................................................................17

*Banerjee v. Zhangmen Educ. Inc.*,
No. 21-cv-9634 (JPO), 2023 WL 2711279 (S.D.N.Y. Mar. 30, 2023) ..................................17

*In the Matter of Baosheng Media Group Holdings Limited*,
Cause No. FSD 113...................................................................................................................5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...........................................................................................................7, 24

*Bidonthecity.com LLC v. Halverston Holdings Ltd.*,
No. 12 CIV. 9258 ALC MHD, 2014 WL 1331046 (S.D.N.Y. Mar. 31, 2014).........................9

*In re BioScrip, Inc. Sec. Litig.*,
95 F. Supp. 3d 711 (S.D.N.Y. 2015)......................................................................................23

*In re Braskem S.A. Sec. Litig.*,
246 F. Supp. 3d 731 (S.D.N.Y. 2017)....................................................................................10

*Chen v. X Fin.*,
No. 19-cv-6908, 2021 WL 7449851 (E.D.N.Y. Dec. 9, 2021)...............................................13

*Chloe v. Queen Bee of Beverly Hills, LLC*,
616 F.3d 158 (2d Cir. 2010)....................................................................................................8

*In re CINAR Corp. Sec. Litig.*,
    186 F. Supp. 2d 279 (E.D.N.Y. 2002) ...................................................................9

*City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*,
    450 F. Supp. 3d 379 (S.D.N.Y. 2020)...................................................................24

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
    928 F. Supp. 2d 705 .............................................................................................24

*Constr. Laborers Pension Tr. for S. Cal. v. CBS Corp.*,
    433 F. Supp. 3d 515 (S.D.N.Y. 2020)...................................................................15

*Cross v. 21st Century Holding Co.*,
    00-cv-4333, 2001 WL 34808272 (S.D.N.Y. Aug. 6, 2001) ..................................12

*Davidoff v. Farina*,
    2005 WL 2030501 (S.D.N.Y. Aug. 22, 2005) .......................................................19

*Dodds v. Cigna Sec., Inc.*,
    12 F.3d 346 (2d Cir. 1993)....................................................................................11

*ECA & Local 134 Ibew Joint Pension Trust v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)..................................................................................13

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    308 F. Supp. 2d 249 (S.D.N.Y. 2004)...................................................................15

*Gilbert v. Indeed, Inc.*,
    513 F. Supp. 3d 374 (S.D.N.Y. 2021).....................................................................8

*In re Glob. Crossing, Ltd. Sec. Litig.*,
    No. 02 CIV. 910 (GEL), 2005 WL 2990646 (S.D.N.Y. Nov. 7, 2005)...................24

*Ho v. Duoyuan Glob. Water, Inc.*,
    887 F. Supp. 2d 547 (S.D.N.Y. 2012)..............................................................11, 24

*Jiajia Luo v. Sogou, Inc.*,
    465 F. Supp. 3d 393 (S.D.N.Y. 2020)...................................................................21

*Kramer v. Time Warner Inc.*,
    937 F.2d 767 (2d Cir. 1991)....................................................................................5

*In re Lehman Bros. Mortg.-Backed Sec. Litig.*,
    650 F.3d 167 (2d Cir. 2011)..............................................................................22, 23

*Lewis v. YRC Worldwide Inc.*,
    No. 1:19-CV-0001, 2020 WL 1493915 (N.D.N.Y. Mar. 27, 2020) .......................19

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
  673 F.3d 50 (2d Cir. 2012)..................................................................................9

*In re Lions Gate Ent. Corp. Sec. Litig.*,
  165 F. Supp. 3d 1 (S.D.N.Y. 2016) ........................................................14, 16, 18

*In re Marsh & Mclennan Companies, Inc. Sec. Litig.*,
  501 F. Supp. 2d 452 (S.D.N.Y. 2006)..................................................................17

*In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*,
  272 F. Supp. 2d 243 (S.D.N.Y. 2003)..............................................................17, 19

*In re MINISO Grp. Holding Ltd. Sec. Litig.*,
  No. 22-cv-9864, 2024 WL 759246 (S.D.N.Y. Feb. 23, 2024) ..............................22

*In re Morgan Stanley Info. Fund Sec. Litig.*,
  592 F.3d 347 (2d Cir. 2010)................................................................................13

*Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*,
  538 F. Supp. 2d 662 (S.D.N.Y. 2008)..................................................................16

*Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*,
  No. 14-civ-9443, 2017 WL 1192888 (S.D.N.Y. Mar. 29, 2017)...........................16

*Richman v. Goldman Sachs Grp., Inc.*,
  868 F. Supp. 2d 261 (S.D.N.Y. 2012)..................................................................17

*In re Satyam Computer Servs. Ltd. Sec. Litig.*,
  915 F.Supp.2d 450 (S.D.N.Y. 2013)....................................................................23

*SEC v. First Jersey Sec., Inc.*,
  101 F.3d 1450 (2d Cir. 1996)...............................................................................23

*In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*,
  774 F. Supp. 2d 584 (S.D.N.Y. 2011)..................................................................21

*Steadman v. Citigroup Glob. Markets Holdings Inc.*,
  592 F. Supp. 3d 230 (S.D.N.Y. 2022)..................................................................19

*Tamam v. Fransabank Sal*,
  677 F. Supp. 2d 720 (S.D.N.Y. 2010)....................................................................8

*Thomas v. Citigroup Glob. Markets Holdings Inc.*,
  No. 21-cv-3673, 2022 WL 1051158 (S.D.N.Y. Mar. 1, 2022), *report and
  recommendation adopted as modified,* 2022 WL 951112 (S.D.N.Y. Mar. 30,
  2022) ....................................................................................................................12

*In re TVIX Sec Litig.*,
    25 F. Supp. 3d 444 (S.D.N.Y. 2014)...................................................................................16

*In re XP Inc. Sec. Litig.*,
    524 F. Supp. 3d 23 (E.D.N.Y. 2021) ...............................................................................18

*Yukos Cap. S.A.R.L. v. Feldman*,
    No. 15-cv-4964, 2016 WL 209491 (S.D.N.Y. Jan. 13, 2016) ..................................8

**Statutes**

15 U.S.C. §§ 77k(e) .............................................................................................................21

Securities Act of 1933 ...........................................................................................................1

Securities Act of 1933, Sections 11 and 12(a)(2) .........................................................13, 17, 21

Securities Exchange Act of 1934 Section 20(a) .........................................................................23

**Other Authorities**

17 CFR § 229.103 & 229.303 ...............................................................................................17

Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) ..................................................1, 7, 8, 25

Global Times, *Crime Details Disclosed After Macao Gambling Kingpin Jailed for
    18 Years*, https://www.globaltimes.cn/page/202401/1305066.shtml (Jan. 9,
    2024) ..........................................................................................................................4

Macau News, *Suncity CEO Alvin Chau and 10 Others Arrested for Alleged
    Involvement in Organized Crime*,
    *https://macaonews.org/news/business/suncity-ceo-alvin-chau-and-10-others-
    arrested-for-alleged-involvement-in-organised-gambling-and-
    money-laundering/* (Nov. 28, 2021)..............................................................................4

Defendants Yu Zhong, Zuohao Hu and Adam (Xin) He (the **"Independent Directors"**) submit this Memorandum of Law in support of their Motion to Dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) to dismiss the Third Amended Complaint ("**TAC**;" ECF 128) filed by Plaintiffs Orient Plus International Limited ("**Orient**"), Union Hi-Tech Development Limited ("**Union**"), and Golden Genius International Limited ("**Golden**") (collectively, "**Plaintiffs**").

## I.    INTRODUCTION

The TAC should be dismissed with prejudice because Plaintiffs do not plead facts sufficient to establish personal jurisdiction or to state claims against the Independent Directors under Sections 11 or 15 of the Securities Act of 1933.

Plaintiffs' allegations are that an alleged Chinese Government investigation into illegal gambling and money laundering activities ("**Investigation**") committed by third parties[1] was omitted from Baosheng Media Group Holdings Limited's ("**Baosheng**") registration statement, which became effective over three years ago on February 5, 2021, and was filed with the Securities and Exchange Commission ("**SEC**") on February 8, 2021 (the "**Registration Statement**;" ECF 98-2), as well as Baosheng's prospectus that was filed with the SEC on February 9, 2021 (the "**Prospectus**;" ECF 102-1), in connection with Baosheng's initial public offering ("**IPO**").

---

[1] Plaintiffs conspicuously fail to define who the subject of the Investigation was. *See, e.g.,* TAC at ¶73 ("In connection with an investigation of Sogou,"); *id*. at ¶77 ("investigation into [Baosheng]"). For purposes of this Motion, and based off of the evidence presented by Plaintiffs, the Independent Directors understand that the alleged Investigation was into third-party entities' illegal gambling and money laundering activities and Baosheng was allegedly called in to cooperate. *See* ECF 128-1 at 13:49 ("Yes, at the time, we thought that arrests would only happen to that game company… So, at the time, we thought we would just have a dozen people over there to cooperate and to tell about the situation."); *id*. at 17:31 ("They were all just called in to cooperate with the investigation."). This cooperation allegedly eventually brought Baosheng within the Investigation and resulted in Baosheng being fined. Plaintiffs' description of the Investigation and fine are denied by Baosheng. *See, e.g.*, ECF 99 at 5.

Plaintiffs' allegations concerning this Investigation—including the very existence of it—are based exclusively on an unauthenticated and unsworn transcript (ECF 128-1; "**Transcript**") of an alleged phone call that took place in June 2023 between Yanjun Hu, who had and has no role at Baosheng, and a man by the name of Dong Hu, an alleged principal of Orient. *See* TAC at ¶129. The Investigation has not been corroborated by any other sources. The Investigation allegedly resulted in a fine and caused the loss of Baosheng's largest customer, Sogou Information Services Co., Ltd. ("**Sogou**"), *after the Registration Statement's filing and after Plaintiffs purchased shares in Baosheng in 2021*.

The TAC alleges that Wenxiu Zhong, Sheng Gong, and Yue Jin, members of the board and corporate executives, did not have control of Baosheng because they were "detained" by or "hiding" from Chinese Government authorities as a result of the Investigation, and that Yanjun Hu, who did not sign the Registration Statement and has never been a Baosheng director or officer, took over the operation of Baosheng and somehow directed that material information be misstated or withheld from the Registration Statement and Prospectus (*see, e.g.*, TAC at ¶63).  It makes no such allegations, however, as to the Independent Directors.

The TAC fails to allege material facts that are necessary for Plaintiffs to overcome a motion to dismiss. The alleged Investigation—even assuming it occurred as alleged—would not need to be disclosed in SEC filings. Any alleged damages would have occurred after the Registration Statement was filed.  Even taking Plaintiffs' Transcript as true, Wenxiu Zhong, Sheng Gong, and Yue Jin were only cooperating in an Investigation of third-party entities. To the extent there was an Investigation, Baosheng would not have been involved until after the Registration Statement was filed. And all the risks related to Baosheng potentially losing its top customer and facing governmental penalties *were disclosed*.

Further, Plaintiffs have not alleged facts showing that the Independent Directors reside in or directed any actions into New York, or that they had control over the Registration Statement, such that this Court would have personal jurisdiction over them.

## II.     STATEMENT OF FACTS

Baosheng is a multi-channel online marketing solutions provider incorporated under the laws of the Cayman Islands and based in China. Its mission, among other things, is to help advertisers manage and optimize their online marketing activities. *See* Prospectus at 4.

The Independent Directors did not become independent directors of Baosheng until the week of the Registration Statement becoming effective. *See* ECF 102 at 120. The Independent Directors did not sign the Registration Statement (and deny the conclusory allegation that they somehow authorized it by way of any agent). *See* ECF 98-2; Declarations of Zhong Yu, Zuohao Hu, and Adam (Xin) He, submitted herewith. The TAC admits that none of the directors reside in New York. TAC at ¶¶ 13-15. None of the Independent Directors have any contacts with the State of New York with the exception of occasional travels unrelated to the business of Baosheng. *See* Declarations of Zhong Yu, Zuohao Hu, and Adam (Xin) He, submitted herewith.

### A.  The Alleged "Investigation"

Plaintiffs' pleadings are based on an alleged "Investigation" conducted into Sogou that resulted in Baosheng's management being questioned by the Chinese Government. The Investigation allegedly resulted in Baosheng being fined and allegedly led Baosheng's largest customer, Sogou, to not renew its agency agreement with Baosheng.

The Investigation allegedly began a month or two before the Registration Statement was filed in February 2021. *See* Transcript at 13:28 (the Investigation began "[a] month or two before the company was listed. They started arresting people … at that time, I thought it was just a

temporary thing."); *id*. at 13:49 ("at the time, we thought we would just have a dozen people over there to cooperate and to tell about the situation."). Later in the alleged Transcript, Yanjun Hu corrected himself that it "wasn't actually an arrest, but rather" the Chinese Government "called in three people [from Baosheng] to cooperate with the investigation." *Id*. at 17:31 (stating that "they were all just called in to cooperate with the investigation.").

This Investigation was allegedly due to Sogou's involvement with Suncity and Alvin Chau Cheok Wa during what is now infamously known as the Alvin Chau Cheok Wa incident. *See id*. at 15:07. The Transcript alleged that:

> the outcome of the Alvin Chau Cheok Wa incident was that Sogou was considered an accomplice, and Sogou was a direct beneficiary of Alvin Chau Cheok Wa. Sogou was fined for the entirety of the proceeds, everything it earned and the like. Then, BAOSHENG's relevant proceeds over the last few years related to this client, amounting to over ten million, was also taken away in the form of fines.

*Id*. The Alvin Chau Cheok Wa incident relates to Mr. Chau being arrested in Macao for a litany of gambling and fraud-based allegations. Upon information and belief, the investigation into Mr. Chau began in April 2020,[2] Mr. Chau was detained in November 2021—nine months after the Registration Statement was filed—and Mr. Chau was not sentenced until January 2023.[3] *See, e.g.*, Global Times, *Crime Details Disclosed After Macao Gambling Kingpin Jailed for 18 Years*, https://www.globaltimes.cn/page/202401/1305066.shtml (Jan. 9, 2024).

---

[2] The Macau News, *Suncity CEO Alvin Chau and 10 Others Arrested for Alleged Involvement in Organized Crime*, *https://macaonews.org/news/business/suncity-ceo-alvin-chau-and-10-others-arrested-for-alleged-involvement-in-organised-crime-illegal-gambling-and-money-laundering/* (Nov. 28, 2021).

[3] Plaintiffs allege that Suncity had been under investigation by the Chinese authorities since 2019. TAC at ¶47. The TAC does not rely on any source for this statement.

In March of 2021, a month after the Registration Statement was filed, Baosheng's "annual authorized agency agreement" with Sogou expired in the ordinary course. *See* TAC at ¶50. This contract was not renewed and Baosheng lost "authorized agent status" with Sogou. *See* ECF 98-12 ("**Winding Up Petition**[4]") at ¶49; *see also* TAC at ¶50.

The TAC alleges that at some point, Wenxiu Zhong allegedly went into hiding to avoid the Investigation and approached Yanjun Hu to assist Baosheng. *See* Transcript at 14:29, 16:16. Yanjun Hu allegedly "took over" "as a matter of course" after Baosheng's IPO. *See id.* at 16:16; *see also id.* at 15:39-44 (Q: "When did you handle this matter? Before the company was listed? Or after listing?" A: "After the handling, after the listing."). Plaintiffs contend that Yanjun Hu stepped in to run Baosheng but the Transcript on these points lacks definitive statements as to what Yanjun Hu was "handling." Yanjun Hu was allegedly repeatedly told that Baosheng was targeted because it was a "listed company." *Id.* at 16:16 ("They kept saying, your BAOSHENG is also a listed company."); *id.* at 18:30 ("They see that Sogou is a listed company, and they see that BAOSHENG is a listed company. They don't bother companies that are not listed. They are actually just targeting you for becoming a listed company."). Thus, again and even as pleaded, these events occurred *after* the Registration Statement was filed.

---

[4] The Winding Up Petition, filed *In the Matter of Baosheng Media Group Holdings Limited*, Cause No. FSD 113 of 2024 (DDJ), was filed by Orient against Baosheng with the "support" of Golden and Union. Winding Up Petition at ¶12. This Court should take judicial notice of the Winding Up Petition. *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (taking judicial notice of adjudicative documents "not to prove the truth of their contents but only to determine what the documents stated.").

Plaintiffs allege that the Investigation ended in the second half of 2021. *See* TAC at ¶52(e).[5]
At the conclusion of the Investigation, Sogou allegedly received a 1.4 billion RMB fine and
Baosheng allegedly received a fine of less than 10 million RMB. *Id*. at 14:29, 15:04.

### B. Baosheng's Disclosure Efforts

Baosheng's Registration Statement and Prospectus provided comprehensive and detailed
disclosures regarding the possible risk of the very events that are alleged in the TAC. Baosheng's
disclosures address, among other things, the evolving regulatory environment for digital marketing
in China, as well as risks related to Sogou, government investigations, regulatory and criminal
penalties, and Baosheng's business operations. *See*, *e.g.*, Prospectus at 21 ("regulatory penalties
or punishments against [Baosheng's] business stakeholders (i.e., advertisers and media), even
without resulting in any legal or regulatory implications upon [Baosheng], may nonetheless cause
business interruptions […]"); *id*. at 16, 18 (stating that Sogou had been a "top customer" of
Baosheng and that "there is no assurance that [Baosheng] can maintain stable business
relationships with any media or their authorized agencies"); *id*. at 108 (Baosheng "may from time
to time become a party to various legal administrative proceedings arising in [its] ordinary course
of [] business").

Baosheng further made express disclosures regarding its financials after the filing of the
Prospectus and Registration Statement. In its Annual Report for Fiscal Year 2020, Baosheng
disclosed negative financial results, including a 33.3% decrease in revenues on a net basis, a 33.4%
decrease in gross profits, and a 37.9% decrease in net income. *See* ECF 98-9 (select pages of

---

[5] While the Transcript states that "everything was taken care of at the second half of 2021"
(Transcript at 15:44) and Plaintiffs allege that the Investigation "was not resolved until the second
half of 2021," (TAC at 52(e)), the Transcript does not specifically state when the fine occurred.
The Alvin Chau Cheok Wa incident was not resolved until January 2023. A 2023 fine would align
with the Transcript's statement that "2022 was largely impacted as well." Transcript at 14:29.

Baosheng's Apr. 30, 2021 Form 20-F for Fiscal Year 2020) at 5. In addition, in a September 2021 press release, Baosheng disclosed decreases in revenue in the first half of 2021 as a result of the expiration of its authorized agency agreement with Sogou, a risk that had already been disclosed in the Prospectus. *See* ECF 98-10 (Sept. 30, 2021 Press Release Baosheng Media Group Holdings Limited Reports Financial Results for the First Half of 2021) at 3-4. Similarly, in its Form 20-F for Fiscal Year 2021, Baosheng disclosed substantial losses between 2020 and 2021. *See* ECF 98-11 (select pages of Baosheng's May 17, 2022 Form 20-F for Fiscal Year 2021) at 15.

In light of the above information and relying heavily on the Transcript, Golden brought securities violation claims in February 2024 alleging that Baosheng had failed to disclose the Investigation and its related effects in February of 2021.

## III.    STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[] their claims across the line from conceivable to plausible" and the "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007); *see also Ashcroft,* 556 U.S. at 678 ("The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully."). And critically for present purposes, conclusory allegations cannot save a pleading from dismissal; "a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 556.

Under Rule 12(b)(2), a court "must dismiss the action against any defendant over whom it lacks personal jurisdiction." *Gilbert v. Indeed, Inc.*, 513 F. Supp. 3d 374, 391 (S.D.N.Y. 2021) (citations omitted). "'[C]onclusory non-fact-specific jurisdictional allegations' or a 'legal conclusion couched as a factual allegation' will not establish a *prima facie* showing of jurisdiction." *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 725 (S.D.N.Y. 2010).

## IV.    ARGUMENT

The Court should dismiss the TAC as to the Independent Directors pursuant to Rules 12(b)(2) and 12(b)(6) because: (i) the Court does not have personal jurisdiction over them; (ii) the claims are time-barred by the applicable statute of limitations; (iii) Plaintiffs' allegations fail to plead that the alleged Investigation was material; (iv) there is no requirement that the alleged Investigation (or its related effects) be disclosed in the Registration Statement; (v) the underlying risks allegedly omitted or misstated were disclosed in multiple SEC filings; (vi) Plaintiffs' own allegations negate causation; (vii) Plaintiffs fail to plead an underlying violation under Section 15; and (viii) Plaintiffs fail to plead control person liability under Section 15.

### A.  The Court Does Not Have Personal Jurisdiction over the Independent Directors.

At the dismissal stage, "the plaintiff bears the burden of showing jurisdiction." *Yukos Cap. S.A.R.L. v. Feldman*, No. 15-cv-4964, 2016 WL 209491, at *1 (S.D.N.Y. Jan. 13, 2016). The analysis regarding whether to exercise jurisdiction over an out-of-state defendant "has two related components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010). While courts must construe the jurisdictional allegations "in the light most favorable to the plaintiff[,]" *see A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79 (2d Cir. 1993), they need not accept legal conclusions as true, nor

will courts draw "argumentative inferences" in either party's favor. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (internal quotation omitted).

For a Securities Act claim asserted against a foreign defendant, federal courts may only exercise personal jurisdiction where the "foreign defendant ... (1) does business in the forum (Restatement § 35); (2) does an act in the forum (Restatement § 36); or (3) causes an effect in the forum by an act done elsewhere (Restatement § 37)." *See In re CINAR Corp. Sec. Litig.,* 186 F. Supp. 2d 279, 305 (E.D.N.Y. 2002) (citation omitted).

As is clear from Plaintiffs' own pleading, and the Independent Directors' declarations, they do not have sufficient contacts with New York, did not conduct any act within New York, and did not direct any actions into New York. *See* Yu Decl. at ¶ 3; Hu Decl. at ¶ 3; He Decl. at ¶ 3; *Bidonthecity.com LLC v. Halverston Holdings Ltd.*, No. 12 CIV. 9258 ALC MHD, 2014 WL 1331046, at *2 (S.D.N.Y. Mar. 31, 2014) ("On a motion to dismiss for lack of personal jurisdiction, the Court may consider affidavits submitted by the parties.") (collecting cases).

None of the Independent Directors personally signed the Registration Statement. *See* ECF 98-2. Instead, the TAC offers, at most, the conclusory allegation that the Independent Directors somehow "signed … the Registration Statement through an Attorney-in-Fact and/or caused its issuance." This allegation is denied by the Independent Directors, *see* Yu Decl. at ¶ 4; Hu Decl. at ¶ 4; He Decl. at ¶ 4; but even more fundamentally, the TAC offers no allegations of specific fact substantiating either of these propositions – that is, no allegations indicating how the Independent Directors ostensibly engaged Wenxiu Zhong as their "Attorney-in-Fact" to "sign" the Registration Statement, or indicating how they otherwise ostensibly "caused" the issuance of the Registration Statement. There are no allegations of specific fact as to what the Independent Directors ostensibly actually did, with regard to the Registration Statement, and "group pleading [to allege personal

jurisdiction over a defendant] is not permitted." *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.,* 529 F.Supp.3d 111, 135 (S.D.N.Y. 2021) (plaintiff required to establish personal jurisdiction separately as to each defendant for each claim asserted). The mere fact of their status as independent directors also does not establish personal jurisdiction. *See id.* at 140-43 (defendants' status of control, even as board members, was not sufficient to establish personal jurisdiction); *In re Alibaba Grp. Holding Ltd. Sec. Litig.,* No. 20 CIV. 9568, 2023 WL 2601472, at *7 (it is "well-established that [even] a person's status as a board member is not alone sufficient to establish jurisdiction.") (citations and quotations omitted). Indeed, "sweeping allegations regarding [defendant's] control over [the company] are insufficient to establish personal jurisdiction . . . [and] are a 'far cry' from concrete factual pleadings which allege 'specific facts making the foreign defendant accountable for an issuer's allegedly actionable corporate statements.'" *Id.* (internal citations omitted).

Accordingly, Plaintiffs have not satisfied their burden to plead a *prima facie* case showing that the Independent Directors are subject to this Court's jurisdiction. *See In re Braskem S.A. Sec. Litig.,* 246 F. Supp. 3d 731, 766-771 (S.D.N.Y. 2017) (dismissing securities claims where the defendant exercised control over the company through a majority of voting share capital, veto power over corporate actions, the ability to appoint officers and Board members, and power to approve the business plan but the pleadings did "not allege, concretely," that the defendant had "any role in making, proposing, editing or approving" the company's public filings with the SEC).

### B. Golden's Claims Are Time-Barred

Golden's claims under Sections 11 and 15 (based both on Section 11 and Section 12(a)(2)) are time-barred by the one-year statute of limitations set forth under Section 13, which requires Golden to bring its securities claims within one year from the date it discovered or should have

discovered the "facts constituting the alleged fraud." *Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 349-50, n.1 (2d Cir. 1993) ("Since Section 15 merely creates a derivative liability for violations of Sections 11 and 12, Section 13 applies to it as well.").

Inquiry notice arises "when 'a reasonably diligent plaintiff would have discover[ed] the facts constituting the violation.'" *Ho v. Duoyuan Glob. Water, Inc.*, 887 F. Supp. 2d 547, 564 (S.D.N.Y. 2012) (citation omitted). Moreover, "when the circumstances would suggest to an investor of ordinary intelligence the probability that she has been defrauded, a duty of inquiry arises, and knowledge will be imputed to the investor who does not make such an inquiry." *Dodds*, 12 F.3d at 350-51 (affirming dismissal; disclosed risks put plaintiff on inquiry notice) (citation omitted).

Plaintiffs allege that the Registration Statement containing the alleged fraud became effective on February 5, 2021 and Baosheng's IPO was completed on February 10, 2021. *See* TAC at ¶¶30, 39. While the Registration Statement was filed and became effective years ago, Golden allegedly learned "approximately seven months before filing the initial Complaint" that something was amiss. *Id*. at ¶127. This information, ostensibly from Dong Hu, was that there was an Investigation that resulted in Chinese authorities imposing an almost 10 million RMB fine on Baosheng. *Id*. at ¶52(e). This Investigation allegedly resulted in Baosheng losing its authorized agent status with Sogou in March of 2021—after the Registration Statement was filed. *Id*. at ¶¶50-52(f), 73.

In Orient's Winding Up Petition filed with the support of Golden and Union, Orient argued that it was bringing the Winding Up Petition in part due to Orient having "significant concerns regarding the veracity of the information provided as part of Baosheng's IPO process and in its more recent public filings." Winding Up Petition at ¶¶12, 56. In other words, Orient, with the

support of Golden and Union, admitted, as a reasonable investor, that it was then on notice of potential wrongdoing based on a review of Baosheng's public filings. The majority of the information contained in those public filings was disclosed in 2021 and 2022. *See, e.g.,* ECF 98-9 at 5; *see also* ECF 98-11 at 15.

Indeed, Baosheng disclosed in the Registration Statement all risks related to Sogou. *See infra* at § IV(E); *see supra* at 6-7. Baosheng further disclosed in September of 2021 that it reported decreases in revenue because its contract with Sougou ended in March of 2021. *See* ECF 98-10 at 3-4. Baosheng again noted in its May 2022 Annual Report that its agency agreement with Sogou expired in March of 2021 and caused a "decrease of $6.1 million in revenue." *See* ECF 98-11 at 17.

Golden, as a sophisticated shareholder, should have been on inquiry notice of the same negative financial and business developments that it is now claiming as the basis for its damages, years before filing this lawsuit.[6] *See Thomas v. Citigroup Glob. Markets Holdings Inc.*, No. 21-cv-3673, 2022 WL 1051158, at *12 (S.D.N.Y. Mar. 1, 2022), *report and recommendation adopted as modified,* 2022 WL 951112 (S.D.N.Y. Mar. 30, 2022) (dismissing claim, because plaintiff was on inquiry notice as of the time at which "he would have been notified of his monetary losses, caused by the alleged fraud").

Accordingly, all of Golden's claims against the Independent Directors are time-barred. *See Cross v. 21st Century Holding Co.*, 00-cv-4333, 2001 WL 34808272, at *6 (S.D.N.Y. Aug. 6, 2001) ("Because the Court has dismissed plaintiffs' section 11 claim as untimely, plaintiffs'

---

[6] While Plaintiffs state that they learned of the "Investigation" from "a significant shareholder of [Baosheng][,]" (TAC at ¶129), Plaintiffs avoid the fact that they are the significant shareholders of Baosheng.  Plaintiffs had every right to seek additional information from Baosheng when it lost its authorized agent status with Sogou in 2021, as well as when Baosheng reported losses.

section 15 claim necessarily fails."); *see also Chen v. X Fin.*, No. 19-cv-6908, 2021 WL 7449851, at *6-10, 13 (E.D.N.Y. Dec. 9, 2021), *report and recommendation adopted,* 2022 WL 765417 (E.D.N.Y. Mar. 13, 2022) (same).

### C.  The Investigation Was Not Material.

To prevail on Section 11 and 12(a)(2) claims, Plaintiffs must allege facts sufficient to show that the Registration Statement (Section 11) and Prospectus (Section 12(a)(2)) contained either a material: (i) misrepresentation; (ii) omission in contravention of an affirmative duty to disclose; or (iii) omission of information that is necessary to prevent an existing statement from being misleading. *See In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 360 (2d Cir. 2010) (affirming dismissal of Section 11 and 12 claims). A statement or omission is material if "there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to act." *ECA & Local 134 Ibew Joint Pension Trust v. JP Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009) (internal quotations and citations omitted).

Golden's claims necessarily hinge on the notion that the Independent Directors supposedly ordered or negligently approved the omission of material information in the Registration Statement—namely, (i) that Baosheng was under Investigation by Chinese authorities (TAC at ¶73), (ii) that due to the Investigation Baosheng "knew, or should have known, that it would lose its relationship with Sogou," (*id*. at ¶75), (iii) that its management was "detained or in hiding as a result of the investigation by Chinese authorities[,]" (*id*. at ¶83(b)), (iv) that the Chinese Government was "already investigating [Baosheng] and that investigation led to significant civil

penalties[,]" (*id.* at ¶79), and (v) that the Investigation had "impacted [Baosheng's] business, operations, and profitability prior to its IPO"[7] (*id.* at ¶80).[8]

Golden has never pleaded that the Investigation was material enough to stop Baosheng from trading shares or that Golden would not have bought shares. Golden does not allege this because Baosheng's Prospectus contained clear statements that there was a possibility that Baosheng could lose and not replace potential advertisers and media (including Sogou), as well as the possibility of facing government investigations and criminal penalties for various reasons, including unlawful actions of its clients or third parties. *See*, *e.g.*, Prospectus at 15-16, 18, 21-22, 26, 29. Plaintiffs were on notice and knew the risks.

Further, the Investigation would not satisfy Item 103's "distinct materiality test" that requires a plaintiff to allege that the amount sought by the governmental authority exceeds 10 percent of the entity's current assets. *See In re Lions Gate Ent. Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 19 (S.D.N.Y. 2016) (citing 17 C.F.R. § 229.103(2)) (dismissing action in part because "the plaintiffs have not alleged that the civil penalty sought by the SEC exceeded ten percent of the Company's assets and subsidiaries on a consolidated basis."). Plaintiffs have not alleged that the civil penalty sought exceeded ten percent of Baosheng's assets and subsidiaries on a consolidated basis. Plaintiffs only allege that the Investigation resulted in an almost 10 million RMB fine, or

---

[7] Plaintiffs' allegations that the Investigation "impacted [Baosheng's] business, operations, and profitability prior to its IPO" (TAC at ¶80) should be disregarded as puffery without any factual support. While Plaintiffs allege that Baosheng was essentially "shut down" prior to the Registration Statement being filed, Plaintiffs have not alleged any damages as to the alleged shutdown. *See* TAC at ¶58.

[8] While these five citations are to the TAC at ¶¶73, 75, 83(b), 79, and 80, all factual allegations are repetitively based on the same set of allegations—that the Investigation and its related effects should have been disclosed.

roughly $1.55 million.[9] The Prospectus states that Baosheng's total assets on June 30, 2020 were $79,758,226. *See* Prospectus at 13. Therefore, to the extent the Investigation resulted in a fine, the alleged fine only amounts to roughly 2% of Baosheng's total assets and the Investigation did not need to be disclosed.

Even if the Investigation did satisfy Item 103's distinct materiality test, the materiality of the omission must be determined at the time of the public filings containing such omissions were made, not at some later time. *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 308 F. Supp. 2d 249, 254 (S.D.N.Y. 2004) ("The truth of a statement made in the prospectus is adjudged by the facts as they existed when the registration statement became effective.").

As stated in the Transcript, the alleged "Investigation" was into third-party entities, Suncity and Sogou. Baosheng, if it was involved *as alleged*, was merely cooperating. *See supra* at 3-5. Baosheng had no reason to believe that it was a *subject* of the Investigation, nor did it know the length of time that the cooperation would entail, whether the Investigation would affect Baosheng, whether civil penalties would be issued, or what the outcome of the Investigation would be. Indeed, to the extent that Baosheng was drawn into the Investigation, that would have occurred after the Registration Statement was filed. *See, e.g.*, Transcript at 18:30 ("They don't bother companies that are not listed. They are actually just targeting you for becoming a listed company.").

Even if Baosheng was brought in to cooperate with the alleged Investigation, neither Baosheng, nor certainly the Independent Directors, had a duty to guess at the outcome of the Investigation and 'disclose' such speculation. *See Constr. Laborers Pension Tr. for S. Cal. v. CBS Corp.*, 433 F. Supp. 3d 515, 538 (S.D.N.Y. 2020) ("An increase in a risk does not mean the risk

---

[9] *See* Chinese Yuan Renminbi (CNY) to US Dollars (USD) Exchange Rate History for June 30, 2021,  https://wise.com/us/currency-converter/cny-to-usd-rate/history/30-06-2021  (last visited Dec. 17, 2024).

has already come to pass"); *In re TVIX Sec Litig.*, 25 F. Supp. 3d 444, 450 (S.D.N.Y. 2014) (rejecting "hindsight" or "backward-looking assessment").

 Instead of guessing what could occur, Baosheng identified these risk factors in its public filings. *See infra* at IV(E); *see supra* at 6-7. The Prospectus stated that there was a possibility that Baosheng could lose and not replace potential advertisers and media (including Sogou), as well as the possibility of facing government investigations and criminal penalties for various reasons, including unlawful actions by third parties. *See* Prospectus at 15-16, 18, 21-22, 26, 29. Common practice is to set forth risk factors that put investors on notice of the risks of investing.  Baosheng did this. *Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, 538 F. Supp. 2d 662, 672 (S.D.N.Y. 2008) ("An earlier statement is not somehow made misleading simply because it failed to foretell a ... problem which later materialized.").

Accordingly, the claims against the Independent Directors must be dismissed. *See Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*, No. 14-civ-9443, 2017 WL 1192888, at *9 (S.D.N.Y. Mar. 29, 2017) ("Because the Company's registration statements and prospectuses from 2009 to 2013 could not be false or misleading as to conduct that did not even begin to take place until 2015, Plaintiff's claims under Sections 11 and 12(a)(2) must be dismissed."); *In re Lions Gate Ent. Corp. Sec. Litig.*, 165 F. Supp. 3d at 12 ("[T]he securities laws do not impose an obligation on a company to predict the outcome of investigations. There is no duty to disclose litigation that is not 'substantially certain to occur.'") (collecting cases).

**D.  The TAC Should Be Dismissed as There Was No Duty to Disclose.**

Golden's allegations of misconduct against the Independent Directors also hinge on the omission of the alleged Investigation and alleged "detention" of Baosheng's management as part of the Investigation. *See, e.g.*, TAC at ¶63. However, "the existence of 'a government

investigation, *without more*, does not trigger a generalized duty to disclose[.]'" *Banerjee v. Zhangmen Educ. Inc.*, No. 21-cv-9634 (JPO), 2023 WL 2711279, at *11 (S.D.N.Y. Mar. 30, 2023) (citing cases); *In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 272 F. Supp. 2d 243, 248 (S.D.N.Y. 2003) ("To state a claim under Sections 11 and 12(a)(2), a plaintiff must allege that the defendants had a legal obligation to disclose the allegedly omitted information.").

Plaintiffs misstate the law when they claim that Form 20-F Part I, Item 8(7), Item 103 of Regulation S-K, 17 CFR § 229.103, and Item 303 of Regulation S-K, § 229.303 impose a duty to disclose investigations.[10] *See* TAC at ¶¶95-98, 136 (alleging that an investigation would fall under Form 20-F Part I, Item 8(7) and Item 303 of Regulation S-K, 17 CFR § 229.103 & 229.303); *see also In re Marsh & Mclennan Companies, Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 469 (S.D.N.Y. 2006) ("the securities laws do not impose a duty to disclose uncharged criminal conduct"); *see also In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 650 (S.D.N.Y. 2017) (there is "no affirmative duty to speculate or disclose uncharged, unadjudicated wrongdoing or mismanagement") (citation omitted).

Form 20-F Part I, Item 8(7) only requires the disclosure of legal or arbitration proceedings, similarly Item 103, § 229.103 only requires disclosure of pending legal proceedings, and Item 303, § 229.303 only requires disclosure of material known trends or uncertainties.[11] The alleged Investigation—in which Baosheng was not the subject and believed it was merely cooperating with Chinese authorities (*see* ECF 128-1 at 17:31)—was none of the above. *See* SEC Form 20-F Part I, Item 8(7); *Richman v. Goldman Sachs Grp., Inc.*, 868 F. Supp. 2d 261, 272 (S.D.N.Y. 2012)

---

[10] As discussed above, Plaintiffs' allegations that there were material misstatements and omissions regarding statements about management, growth, and Sogou are all based on the alleged Investigation and fail for the same reasons. *See, e.g.*, TAC at ¶¶56-80, 95-101; *see supra* at n.11.

[11] As discussed above, the Investigation and its related effects were not material. Further, the Investigation fails Item 103's distinct materiality test. *See supra* at § IV(C).

("An investigation on its own is not a 'pending legal proceeding' until it reaches a stage when the agency or prosecutorial authority makes known that it is contemplating filing suit or bringing charges.") (citation omitted); *see also In re XP Inc. Sec. Litig.*, 524 F. Supp. 3d 23, 37-38 (E.D.N.Y. 2021) ("'a government investigation, without more, does not trigger a generalized duty to disclose[]' … Nor do federal securities laws 'require a company to accuse itself of wrongdoing.' … several courts have dismissed claims premised on the failure to disclose ongoing regulatory investigations.") (citations omitted).

This matter is similar to *In re Lions Gate Ent. Corp. Sec. Litig.*, 165 F. Supp. 3d at 18 (overruling risk on other grounds), in which plaintiffs argued that Lions Gate Entertainment Corporation had a duty to disclose an SEC investigation pursuant to Item 103 of Regulation S-K. The Court held that the "SEC investigation was not a 'pending legal proceeding' as 'the SEC had not yet decided whether it would charge [the individuals and entity] with securities violations." *Id*. ("In the context of a case where more than thirty states were investigating whether an insurance company had violated state unclaimed property laws, Item 103 was held to be inapplicable because a state investigation is not a 'pending legal proceeding.') (citations omitted). The court based its decision in part on defendants' failure to be able to provide the information that "Item 103 requires," including specific information related to a legal action. *Id*. at 19 (citing § 229.103). There was no legal action filed in this case that would require disclosure.

In addition, regarding plaintiffs' Item 303 allegations, the *Lions Gate* Court found that an SEC investigation could not be characterized as a "known trend" or "uncertainty" as the plaintiffs did not point to any "trend" or "uncertainty" linked to Lions Gate Entertainment Corporation's liquidity. *Id*. at 20. The plaintiffs also failed to allege that the settlement amount "was material." *Id*. Golden has similarly failed to allege any known trend linked to the Investigation, that Baosheng

should have known at the time that it would result in a threat to its liquidity, or that the purported Investigation could result in a material payment.

Accordingly, the claims against the Independent Directors must be dismissed because there was no duty to disclose any alleged Investigation (to the extent there was one) prior to the Registration Statement's filing. *See In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 272 F. Supp. 2d at 248-53 (dismissing claims as the "Plaintiff [] failed to plead any material omissions that the Defendants had a duty to disclose."); *Lewis v. YRC Worldwide Inc.*, No. 1:19-CV-0001 (GTS/ATB), 2020 WL 1493915, at *10 (N.D.N.Y. Mar. 27, 2020) (finding defendants had no duty under Item 303 to disclose a DOJ investigation that lasted 9 years even though "dozens of [] employees were deposed" and defendant corporation participated in settlement negotiations with the DOJ given plaintiffs' failure to "adequately allege[] that Defendants had actual knowledge about the outcome of the DOJ investigation"); *see also Steadman v. Citigroup Glob. Markets Holdings Inc.*, 592 F. Supp. 3d 230, 249-50 (S.D.N.Y. 2022) (dismissing claim as statements became untrue after they were made).

**E. The Risks Underlying the TAC's Allegations Were Disclosed.**

Courts routinely dismiss complaints predicated on IPO statements where the risks and facts underlying the statement have been disclosed. *See, e.g.*, *Davidoff v. Farina*, 2005 WL 2030501, at *10 (S.D.N.Y. Aug. 22, 2005). Plaintiffs' allegations hinge on the notion that Baosheng was questioned regarding the alleged criminal Investigation of Suncity and Sogou. *See* Winding Up Petition at ¶44 (the Investigation was allegedly "in relation to an ongoing criminal investigation of Sogou and its relationship with Suncity Group."); *see also* TAC at ¶73 ("In connection with an investigation of Sogou, Chinese authorities detained ten executives and managements or others

went into hiding."). Plaintiffs allege that this Investigation[12] into Sogou resulted in a fine of almost 10 million RMB against Baosheng in the second half of 2021 and a fine of RMB 1.4 billion against Sogou. *See* Transcript at 14:29-15:04; *see also* TAC at ¶52(a)-(f).

Risks related to Sogou, as well as possible governmental penalties, were disclosed in the Prospectus. Baosheng informed investors that it could be exposed to liability and could face "civil and criminal penalties" and material "business interruptions" for their media and advisor partners' non-compliance with Advertising Laws. *See, e.g.*, Prospectus at 21-22, 26 ("We are subject to, and may expend significant resources in defending against, government actions and civil claims in connection with false, fraudulent, misleading or otherwise illegal marketing content for which we provide agency services.").

The Prospectus further disclosed that any failure to renew its agency agreement with Sogou could have a material impact on Baosheng's operations. *See, e,g.*, Prospectus at 15-16, 18 (Sogou was Baosheng's top customer and "[c]*ertain customers contributed to a significant percentage of our total revenue during the six months ended June 30, 2020 and the fiscal years 2019 and 2018, and losing one or more of them could result in a material adverse impact on our financial performance and business prospects.*"). Sogou was mentioned in the Prospectus over 25 times. *See generally* Prospectus.

As the Investigation was not allegedly concluded until months after the Registration Statement became effective, there was no "further disclosure [that] would have significantly altered the total mix of information available to a reasonable investor or disclosed a trend not

---

[12] All of Plaintiffs' allegations relate to the Investigation and its related effects. *See e.g.*, TAC at 56-80, 95-101.

otherwise explained in the offering documents." *Asay v. Pinduoduo Inc.*, 18-cv-7625, 2020 WL 1530745, at *10 (S.D.N.Y. Mar. 30, 2020), *aff'd*, 2021 WL 3871269 (2d Cir. Aug. 31, 2021).

Accordingly, the TAC should be dismissed as the underlying risks were extensively disclosed. *See Jiajia Luo v. Sogou, Inc.*, 465 F. Supp. 3d 393, 411 (S.D.N.Y. 2020) (dismissing claim where the prospectus "warn[ed] investors of exactly the risk the plaintiffs claim was not disclosed.") (citation omitted).

### F. Plaintiffs' Own Allegations Negate Causation.

Claims under Sections 11 and 12(a)(2) of the Securities Act are subject to an affirmative defense of "negative causation," which precludes recovery for price declines that are not the result of an alleged misrepresentation. *See* 15 U.S.C. §§ 77k(e) (Section 11 affirmative defense), 77l(b) (Section 12(a)(2) affirmative defense); *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, 774 F. Supp. 2d 584, 595-96 (S.D.N.Y. 2011) (granting motion to dismiss where alleged loss was not connected to alleged misrepresentation).

Plaintiffs have admitted that Baosheng's "decline in revenue from 2021 onwards" was due to the loss of Sogou as client after Baosheng's and Sogou's "existing authorised agency agreement expired and [Baosheng] was unsuccessful in re-negotiating any new agency agreement." Winding Up Petition at ¶¶49, 54; *see also* TAC at ¶¶50, 69-73. Indeed, while Plaintiffs allege that "the Chinese government's investigation and detention of [Baosheng's] executives had adversely impacted [Baosheng]'s business, operations, and profitability prior to its IPO" (TAC at ¶80), the only actual losses claimed are by way of "loss of [Baosheng's] key client," Sogou. *See* TAC at ¶131. The loss of Sogou as a client occurred, at the earliest, *after* the Registration Statement became effective.

As Plaintiffs' allegations are connected to the loss of Sogou *after the Registration Statement became effective*, the alleged damages are not connected to any alleged misrepresentation that could have been included in the Registration Statement. *See In re MINISO Grp. Holding Ltd. Sec. Litig.*, No. 22-cv-9864, 2024 WL 759246, at *19 (S.D.N.Y. Feb. 23, 2024) (granting motion to dismiss where alleged loss was not the result of alleged false and misleading statements).

**G. Golden's Section 15 Claim Must Be Dismissed for Failure to Plead Control Person Liability.**

Golden's Section 15 claim must be dismissed as it fails to sufficiently plead a primary Section 11 or Section 12 violation, or that the Independent Directors had the requisite control over the contents of the Registration Statement.

*a.  Golden Has Not Sufficiently Alleged a Primary Violation under Sections 11 or 12*

Control personal liability only attaches upon a showing of both (i) a primary violation of Section 11 or Section 12, and (ii) control of the primary violator by defendants.  *See, e.g.*, *In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 185 (2d Cir. 2011).  As explained *supra* under Sections II(B)-(F) Plaintiffs have failed to sufficiently plead a primary violation under Section 11 or Section 12(a)(2)[13], and as a result, no control person liability attaches to any of the Independent Directors pursuant to Section 15.

---

[13] Golden has not specifically alleged what the underlying claims are against the Independent Directors pursuant to Section 15. To the extent the claims encompass the Section 12(a)(2) claims against Baosheng, the Independent Directors incorporate Baosheng's past filed and to be filed motions to dismiss regarding Section 12(a)(2). *See generally* ECF 99. To the extent the Section 12(a)(2) claims are dismissed against Baosheng, the underlying Section 15 claim based on Section 12(a)(2) must be dismissed against the Independent Directors.

      b.   *Golden Has Not Sufficiently Alleged Control Person Liability as to the Independent Directors.*

Golden's Section 15 claim must be dismissed against the Independent Directors because it has failed to establish that they had actual control over Baosheng and the Registration Statement.

The Second Circuit has adopted the same definition of "control" for Section 15 claims of the Securities Act as applied in the context of Section 20(a) of the Securities Exchange Act of 1934 ("**1934 Act**"). *See In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d at 185 (finding the control person provisions "roughly parallel" and adopting the definition of "control" applied in Section 20(a) cases) (quoting *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472–73 (2d Cir. 1996)); *see also In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 746 (S.D.N.Y. 2015). Accordingly, "control" refers to "the power to direct or cause the direction of the management and policies of [the primary violators], whether through the ownership of voting securities, by contract, or otherwise." *See First Jersey Sec., Inc.*, 101 F.3d at 1473 (internal quotation marks omitted).

The allegations made in the TAC do not state that the Independent Directors controlled or directed the management and policies of Baosheng through ownership of voting shares or by contract—as required to satisfy the definition of "control" for Section 15 purposes. Instead – to the extent to which the TAC is even legible on this point – the TAC assigns the Independent Directors on the basis of their status as directors, and as members of Baosheng's audit committee. *See* TAC ¶¶ 32-33, 166. But that status alone does not suffice to support an allegation of "control" for purposes of a Section 15 claim (especially in light of the fact that the Independent Directors took up their roles in the same week in which the Registration Statement became effective). *See In re Satyam Computer Servs. Ltd. Sec. Litig.,* 915 F.Supp.2d 450, 482 (S.D.N.Y. 2013) ("Neither director status nor mere membership on an audit committee, standing alone, is sufficient to demonstrate actual control over a company or an allegedly fraudulent transaction."). And again,

the allegation that the Independent Directors somehow "signed … the Registration Statement through an Attorney-in-Fact and/or caused its issuance" is conclusory and thus incompetent to state any claim. *Twombly*, 550 U.S. at 556; s*ee also City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 429 (S.D.N.Y. 2020) (dismissing Section 15 claims where the complaint "rest[s] on a conclusory, generalized allegation that the 'Executive Defendants possessed and exercised their power and authority to control the contents of the Company's SEC filings,'" and where "Plaintiffs do not allege that *their positions provided them control over the transactions at issue*") (emphasis added); *see also Ho*, 887 F. Supp. 2d at 578 (dismissing motion where the complaint only contained "conclusory allegations that these Director Defendants exercised control over [the company]").

The speculative and confusing allegations in the TAC are so inadequate that it is clearly "implausible" that Plaintiffs "could develop some set of facts that would pass muster" to survive a motion to dismiss. *See In re Glob. Crossing, Ltd. Sec. Litig.*, No. 02 CIV. 910 (GEL), 2005 WL 2990646, at *8 (S.D.N.Y. Nov. 7, 2005) (recognizing a category of cases "in which it is 'implausible' or mere 'unlikely speculation' that plaintiffs can develop a record that would support a finding of control . . . especially given the 'decidedly fact-based' nature of the control inquiry") (citations omitted); *see also City of Westland Police & Fire Ret. Sys. v. MetLife, Inc*., 928 F. Supp. 2d 705 at 721-22 (finding allegations insufficient to show actual control by director defendant who "is alleged only to have served as a director, not to have signed any financial or registration statements"). Accordingly, the TAC fails to establish the Independent Directors' control person status, and therefore, Plaintiffs' Section 15 claim against them should be dismissed with prejudice.

## III.    Conclusion

For all the foregoing reasons, the Independent Director Defendants respectfully request that the Court grant their Motion to Dismiss the TAC pursuant to Rules 12(b)(2) and 12(b)(6), in full and with prejudice, and grant such other and further relief as deemed just and proper.

Date:         December 20, 2024
              New York, NY

                                        */s/ Timothy J. McCarthy*
                                        Timothy J. McCarthy
                                        New York State Bar No. 3996345
                                        Federal Bar No. TM-2118
                                        **DYKEMA GOSSETT PLLC**
                                        1717 Main Street, Suite 4200
                                        Dallas, Texas 75201
                                        (214) 462-6400 (Main Number)
                                        (214) 698-7847 (Direct Number)
                                        (855) 245-0197 (Facsimile)
                                        tmccarthy@dykema.com

                                        **ATTORNEY FOR DEFENDANTS
                                        YU ZHONG, ADAM (XIN) HE,**
                                        and **ZUOHAO HU**

## <u>CERTIFICATE OF WORD COUNT</u>

The undersigned certifies that this Motion to Dismiss complies with the Court's formatting rules. The Motion to Dismiss, excluding the table of contents, table of authorities, and certificate of word count, contains 7,679 words.


Date:          December 20, 2024
               New York, NY

*/s/ Timothy J. McCarthy*
Timothy J. McCarthy
New York State Bar No. 3996345
Federal Bar No. TM-2118
**DYKEMA GOSSETT PLLC**
1717 Main Street, Suite 4200
Dallas, Texas 75201
(214) 462-6400 (Main Number)
(214) 698-7847 (Direct Number)
(855) 245-0197 (Facsimile)
tmccarthy@dykema.com

**ATTORNEY FOR DEFENDANTS**
Yu Zhong, Zuohao Hu and Adam (Xin) He

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing document was served in accordance with the FEDERAL RULES OF CIVIL PROCEDURE upon all counsel of record on this the 20th day of December 2024.


 */s/ Timothy J. McCarthy*
Timothy J. McCarthy
