UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Orient Plus International Limited; Union Hi-Tech Development Limited; and Golden Genius International Limited,<br><br>  Plaintiffs,<br><br>  v.<br><br>Baosheng Media Group Holdings Limited; Wenxiu Zhong; Sheng Gong; Yu Zhong; Zuohao Hu; Adam (Xin) He; Yue Jin; Yanjun Hu; Univest Securities, LLC; The Benchmark Company, LLC; WestPark Capital, Inc.; Friedman LLP; and Marcum LLP,<br><br>  Defendants. | Case No. 1:24-cv-00744-JLR<br><br>Honorable Jennifer L. Rochon<br><br>**ORAL ARGUMENT REQUESTED** |

**FRIEDMAN LLP'S AND MARCUM LLP'S JOINT REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

# TABLE OF CONTENTS

I. Golden Fails To Plead Facts Establishing Any Underlying False Statement. ..................... 2

   A. Golden's Interpretation of the Transcript is Facially Implausible. ................................. 2

   B. Golden Fails to Allege a Violation of GAAP or Other Disclosure Requirements. ........ 4

II. Golden Fails To Allege Section 11 Claims Against the Independent Auditor Defendants. .................................................................................................................................. 5

   A. Golden Fails To Allege "Particular" and "Material" Facts About Friedman's Inquiry and Knowledge To Support Liability Under the Omission Theory. .......................... 5

   B. Friedman's Consent Does Not Provide An Independent Basis For Liability Under Section 11 ............................................................................................................................ 8

III. Golden's Claim Against Friedman Is Untimely. .......................................................... 10

CONCLUSION ............................................................................................................................ 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abady v. Lipocine Inc.*,
 2023 WL 2938210 (D. Utah Apr. 13, 2023) ................................................................. 9

*Acierno v. New Castle Cnty.*,
 2000 WL 718346 (D. Del. May 23, 2000) .................................................................. 11

*In re Am. Realty Cap. Props., Inc. Litig.*,
 2016 WL 11110435 (S.D.N.Y. Aug. 5, 2016) ............................................................... 6

*In re Am. Realty Cap. Props., Inc.*,
 No. 1:15-mc-00040-AKH (S.D.N.Y. Sept. 30, 2016), ECF 312 ................................... 5

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ...................................................................................................... 4

*U.S. ex rel. Carter v. Halliburton Co.*,
 315 F.R.D. 56 (E.D. Va. 2016) ................................................................................... 11

*In re China Valves Tech. Sec. Litig.*,
 979 F. Supp. 2d 395 (S.D.N.Y. 2013) (Opp. ) ............................................................... 4

*City of Warwick Ret. Sys. v. Carvana Co.*,
 CV 2022-103054 (Ariz. Sup. Ct. Oct. 26, 2023) (ECF. 142-5) .................................... 6

*Fisher v. Aetna Life Ins. Co.*,
 32 F.4th 124 (2d Cir. 2022) ........................................................................................ 11

*Francis v. Kings Park Manor, Inc.*,
 992 F.3d 67 (2d Cir. 2021) ........................................................................................... 4

*Hunt v. Bloom Energy Corp.*,
 2021 WL 4461171 (N.D. Cal. Sept. 29, 2021) ............................................................. 8

*Kessev Tov, LLC v. Doe(s)*,
 2022 WL 2356626 (N.D. Ill. June 30, 2022) .............................................................. 11

*Levy v. Luo*,
 2025 WL 437022 (D. Del. Feb. 7, 2025) ...................................................................... 8

*New Eng. Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*,
 122 F.4th 28 (2d Cir. 2023) .......................................................................................... 7

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015) ............................................................................................... *passim*

*U.S. ex rel. Osinek v. Permanente Med. Grp., Inc.*,
    2022 WL 16943886 (N.D. Cal. Nov. 14, 2022) ...................................................................10

*Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*,
    721 F.3d 95 (2d Cir. 2013).....................................................................................................10

*Querub v. Hong Kong*,
    649 F. App'x 55 (2d Cir. 2016) ..............................................................................................8

*Se. Pa. Transp. Auth. v. Orrstown Fin. Servs.*,
    2015 WL 3833849 (M.D. Pa. June 22, 2015) .........................................................................6

*Se. Pa. Transp. Auth. v. Orrstown Fin. Servs. Inc.*,
    12 F.4th 337 (3d Cir. 2021) ...........................................................................................10, 11

*Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*,
    2022 WL 3572474 (M.D. Pa. Aug. 18, 2022) .........................................................................5

*Silvercreek Mgmt., Inc. v. Citigroup, Inc.*,
    248 F. Supp. 3d 428 (S.D.N.Y. 2017)...................................................................................10

*Special Situations Fund III QP, L.P. v. Marrone Bio Innovations, Inc.*,
    243 F. Supp. 3d 1109 (E.D. Cal. 2017)...................................................................................8

*In re SunEdison, Inc. Sec. Litig.*,
    300 F. Supp. 3d 444 (S.D.N.Y. 2018)..................................................................................6, 7

*In re Teva Sec. Litig.*,
    512 F. Supp. 3d 321 (D. Conn. 2021)....................................................................................10

**Statutes**

15 U.S.C. § 77k(a)(4)......................................................................................................................2

15 U.S.C. § 77g(a)(1)......................................................................................................................8

**Other Authorities**

17 CFR § 230.436(a).......................................................................................................................9

PCAOB AS 2905.04–.07.................................................................................................................9

PCAOB AS 4101.12........................................................................................................................9

The Court should grant the Independent Auditor Defendants' Motion to Dismiss.[1] The TAC comes nowhere close to alleging Section 11 claims against them, and the statute of repose bars the claim against Friedman. Nothing in Golden's Opposition supports a different result.

*First*, Golden fails as a threshold matter to allege any false statement in Baosheng's IPO documents. Golden attempts to recast the Transcript of a telephone call about a purported investigation into Baosheng to fit its theory that Baosheng's executives were unavailable at the time of the IPO. But the Transcript itself makes clear that while arrests at ***another*** company began before Baosheng's IPO, arrests at Baosheng did not start until ***after*** the IPO. While Golden is entitled to have reasonable inferences drawn in its favor, it is not entitled to a facially implausible reading of the Transcript.

Moreover, Golden's argument that the Independent Auditor Defendants can be liable for material misstatements anywhere in Baosheng's IPO documents (as opposed to in the Audit Report or financial statements on which Friedman opined) is wrong as a matter of law. Golden does not cite a single case holding otherwise, and none exists.

*Second,* Golden's argument that the TAC alleges an actionable omission in the Audit Report under *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 575 U.S. 175 (2015), is meritless. Neither Golden's factual allegations (based on Golden's implausible inferences from the Transcript) nor its discussions about consent procedures (which contain no factual allegations about Friedman) have anything to do with Friedman's inquiry or knowledge. Golden simply relies on its own implausible conclusion—that some unidentified members of management were inaccessible at some indeterminate times prior to the IPO—to speculate that Friedman must not have performed adequate procedures. TAC ¶¶ 90–92. If such

---

[1] All capitalized words have the same meaning as in the Motion to Dismiss.

naked surmisal was enough, any plaintiff could evade the Supreme Court's demanding standard for pleading opinion liability. Myriad decisions applying *Omnicare* hold that much more is required, and Golden's Opposition fails to distinguish these cases.

Nor can Golden circumvent *Omnicare*'s requirements by insisting Friedman's Consent should have disclosed certain facts about Baosheng. Golden does not identify any authority to support this novel proposition. Nor is there any. Consents do not purport to disclose any operative information about a company. Consistent with the professional standards governing independent accountants, consents simply assert one fact: that the auditor consents to the inclusion of its previously issued audit report in registration materials. Friedman's Consent did just that and never purported to do more.

*Finally*, the claim against Friedman is time-barred. Golden ignores the weight of authority in this Circuit holding that statutes of repose are absolute, and the out-of-Circuit authority it relies on is nonbinding and distinguishable.

**I.      Golden Fails To Plead Facts Establishing Any Underlying False Statement.**

Golden fails to establish that "any part of" Baosheng's registration statement "contained an untrue statement of material fact or omitted a material fact," as required by Section 11. 15 U.S.C. § 77k(a)(4).

**A.      *Golden's Interpretation of the Transcript is Facially Implausible.***

Golden's claims are premised on the theory Defendants did not disclose to investors alleged "mass arrests Chinese law enforcement executed on [Baosheng's] executive team" and corresponding alleged consequences. Opp. at 3. Golden's sole source for these allegations is the Transcript. *Id.* at 28–32. Golden asks the Court to infer from the Transcript that, prior to the IPO: (i) "Chinese law enforcement arrested ten" unnamed members of Baosheng's management, *id.* at 1; (ii) Baosheng's CEO "went into hiding," *id.*; (iii) these executives all were unavailable "for a

significant," unspecified "period," *id.* at 4; (iv) a "shadow CEO" "took control," *id.* at 1; (v) Friedman needed representations from the very executives who were unavailable, *id.* at 5; and (vi) Friedman "could not have" obtained these representations, *id.* at 5. Golden insists that adopting its interpretation of the Transcript simply requires drawing reasonable inferences in its favor. *Id.* at 28–32. In fact, Golden's interpretation contradicts the Transcript itself and calls on the Court to draw numerous implausible inferences.

Golden selectively quotes from statements by Baosheng investor Yanjun Hu in the Transcript to claim arrests began "[a] month or two before the company was listed." Opp. at 29–30. But the Transcript makes clear that Hu is referring to arrests beginning at a ***different*** company (Suncity), ***not at Baosheng***. Within ten lines of the text Golden quotes, Hu states: "[T]here were several layers of separation here. First, ***it was the game company*** …. That company was completely controlled and people were arrested." TAC Ex. A at 42, 13:37; *see also id.* at 43, 13:59 ("***[A]t the time, we thought that arrests would only happen to the game company***.").

What is more, Golden claims Hu "took control" of Baosheng before the IPO because the Company's executives were unavailable, and thus, Friedman could not have obtained representations from those executives as part of its consent procedures. But in the Transcript, Hu states he took control ***after*** the IPO. Specifically, he clarifies he "handl[ed]" the issues relating to Baosheng "[a]fter the listing" in the "second half of 2021" (*id.* at 45, 15:44), and "***later***, when I dealt with this issue, I took over the company." *Id.* at 46, 16:16. Hu even explains why arrests did not occur at Baosheng before the IPO: Chinese authorities "don't bother companies that are not listed." *Id.* at 48, 18:30.

3

The Transcript leaves many questions unanswered, but regarding the sequence of events, the only reasonable and plausible interpretation is that arrests at Suncity began before Baosheng's IPO, and any arrests at Baosheng did not begin until after the IPO and, therefore, after Friedman issued its consent. The contrary inference Golden insists upon is not "plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 74 (2d Cir. 2021).

### B. *Golden Fails to Allege a Violation of GAAP or Other Disclosure Requirements.*

Golden's failure to point to any GAAP violation is also fatal to its claims against the Independent Auditor Defendants. Golden tries to avoid the TAC's flaws by contending an auditor can be liable for any material misstatement in a registration statement. Opp. at 62–63. This, too, fails.

As Golden acknowledges, Section 11 "itself makes auditors liable for any part of a registration statement *they* 'prepared or certified.'" *Id.* at 62 (quoting 15 U.S.C. § 77k(a)(4)). Here, Friedman prepared only the Audit Report, which opined only on the financial statements. Golden does not and cannot cite any cases where an auditor was liable for an entire registration statement.[2]

Golden also does not identify any misstatements in the financial statements upon which Friedman opined. Golden insists this is not necessary, but it does not point to a single case where a Section 11 claim against an auditor was found viable absent either a withdrawn audit report, restatement, determination by management that the financial statements were materially misstated, or finding of a securities or financial-reporting violation. *Id.* at 63; Mot. at 23.

---

[2] Golden's reliance on *In re China Valves Tech. Sec. Litig.*, 979 F. Supp. 2d 395 (S.D.N.Y. 2013) (Opp. at 62), is misplaced. Like every other Section 11 case involving an auditor that the parties cite in their briefs, *China Valves* addressed only an audit report and financial statements—not a registration statement overall. *Id.* at 412–13.

4

Golden's failure to allege any such misstatement is independently fatal to its claims against the Independent Auditor Defendants.

**II.     Golden Fails To Allege Section 11 Claims Against the Independent Auditor Defendants**.

Golden presents two theories regarding Friedman's Audit Report and Consent: the Audit Report is materially false under *Omnicare*'s omission prong, Opp. at 54–61; and the Consent itself provides a basis for liability because it omits facts and is not subject to *Omnicare*. *Id.* at 52–54. Both theories fail.

> **A.     *Golden Fails To Allege "Particular" and "Material" Facts About Friedman's Inquiry and Knowledge To Support Liability Under the Omission Theory.***

Golden fails to allege the falsity of any opinions in Friedman's Audit Report, which it agrees are subject to *Omnicare*. *See* Opp. at 54, 60. Under the omission theory, Golden needed to plead "particular" and "material" facts "going to the basis for" Friedman's opinion—"facts about the inquiry [Friedman] did or did not conduct or the knowledge [Friedman] did or did not have"—the omission of which made Friedman's opinion misleading to a reasonable investor. *Omnicare*, 575 U.S. at 194. The TAC does not come close to meeting this standard.

In cases where courts have allowed claims against independent auditors to proceed under the omission theory, the plaintiffs alleged particular facts discussing how the auditors' inquiries (or lack thereof) or knowledge were directly tied to incorrect financial statements on which they opined. *See, e.g.*, *Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*, 2022 WL 3572474, at *53, *55, *57 (M.D. Pa. Aug. 18, 2022) (plaintiff alleged material omission by making "extensive" allegations about auditor's interactions with company and "information available to it," including numerous facts about auditor's specific knowledge and actual audit methodology); *In re Am. Realty Cap. Props., Inc.*, No. 1:15-mc-00040-AKH (S.D.N.Y. Sept. 30, 2016), ECF 312 ¶ 66 (alleging issuer's Chief Accounting Officer told auditor about alleged fraud and auditor had

access to information about "both sides" of allegedly fraudulent transactions), and *In re Am. Realty Cap. Props., Inc. Litig.*, 2016 WL 11110435, at *1–2 (S.D.N.Y. Aug. 5, 2016) (allowing Section 11 claim to proceed where complaint)).

Golden points to no such factual allegations "going to the basis for" the opinions in Friedman's Audit Report. The only allegations purportedly about Friedman's "inquiry" or "knowledge" describe how Golden believes the auditing standards *should* apply. TAC ¶¶ 85–86, 90–92, 124–26, 140–41. These allegations rely on the conclusory assertion (based on a faulty reading of the Transcript) that an undisclosed investigation made management unavailable at the time of the IPO, to establish the premise that Friedman did not perform adequate procedures. *See, e.g.*, *id.* ¶¶ 90–92. The TAC asserts no ***facts***—much less "particular" or "material" facts— about Friedman's inquiries, knowledge, or consent procedures.

Golden does not cite a single case where a court has allowed a Section 11 claim to proceed against an independent auditor based on such flimsy allegations. And numerous courts have dismissed Section 11 claims against auditors that were based on similar, unsupported allegations. *See In re SunEdison, Inc. Sec. Litig.*, 300 F. Supp. 3d 444, 499–500 (S.D.N.Y. 2018) (complaint did not "include facts to support the assertion" that auditor "had an insufficient basis to state its opinion"); *Se. Pa. Transp. Auth. v. Orrstown Fin. Servs.*, 2015 WL 3833849, at *33–34 (M.D. Pa. June 22, 2015) (plaintiff "fail[ed] to identify actual and material steps taken or not taken by [auditor] in its audit or knowledge it did or did not have in the formation of its opinion"); *City of Warwick Ret. Sys. v. Carvana Co.*, CV 2022-103054 (Ariz. Sup. Ct. Oct. 26, 2023) (ECF. 142-5) (complaint made "no effort to connect the PCAOB standards to material facts about [auditor's] audit"). Golden's attempts to distinguish these cases fall flat. Golden incorrectly contends that the court in *SunEdison* did not address the "omissions theory."

*Compare* Opp. at 60 *with SunEdison*, 300 F. Supp. 3d at 500 (addressing subjective falsity under *Omnicare* and then finding complaint also failed to allege facts about auditor's procedures or bases for opinion). And in claiming its allegations are more particularized than those in *Orrstown* or *City of Warwick*, Golden mischaracterizes its own pleading. For example, Golden claims that, unlike the complaint in *Orrstown*, the TAC "identif[ies] actual and material steps taken or not taken by" Friedman. Opp. at 60. But the TAC includes *no* such factual allegations, and Golden points to none. *See id.*

The cases Golden cites in fact underscore the degree of particularity needed to state a claim under the omissions theory and highlight the deficiencies in the TAC. In finding a Section 11 claim against an auditor viable in *New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*, 122 F.4th 28 (2d Cir. 2023), the Second Circuit found there were numerous factual allegations that provided "key" support for the plaintiff's contention that the auditor "never conducted" a meaningful inquiry, including that audit partners "failed to complete the necessary checks," "signed several audit work papers without reviewing them," "failed to verify that all the necessary audit work was performed," and were found by the SEC to have violated PCAOB standards. *Id.* at 52–53.[3] The TAC, by comparison, contains no such factual allegations about Friedman's inquiry.[4]

---

[3] Golden tries to distinguish *Deloitte Touche* and *DeCarlo* by pointing out that they involved Section 10(b) claims (Opp. at 56, 59–60), but *Omnicare*'s holding and reasoning applies to such claims. *DeCarlo*, 122 F.4th at 50, n.16.

[4] Golden mischaracterizes *DeCarlo* to suggest that plaintiffs are "not required to allege a link" between professional standards and factual allegations (Opp. at 61 n.29), but the court discussed in detail the allegations establishing such a link. 122 F. 4th at 52–53. Golden also argues that the district court decision in *AmTrust* "should be given no weight" due to the case's subsequent history. Opp. at 61 n.29. As explained, the Second Circuit's opinion in *DeCarlo* endorses the district court's reasoning about the particularity required under *Omnicare*—the reasoning relevant here.

The second case upon which Golden relies, the out-of-Circuit decision in *Special Situations Fund III QP, L.P. v. Marrone Bio Innovations, Inc.*, 243 F. Supp. 3d 1109 (E.D. Cal. 2017), also is not persuasive. *Marrone* directly contradicts and expressly declined to follow *Querub v. Hong Kong*, 649 F. App'x 55 (2d Cir. 2016) (*see Marrone*, 243 F. Supp. 3d at 1118), where the Second Circuit held that *Omnicare*'s opinion-liability framework applies to Section 11 claims against auditors. *See Querub*, 49 F. App'x at 58. And time has confirmed that the *Marrone* decision was wrong. In the nearly eight years since *Marrone* was decided, no court has cited it for the proposition Golden advances. Indeed, the courts that have addressed it in the context of Section 11 claims against auditors have done so only to say it was wrongly decided. *See, e.g.*, *Hunt v. Bloom Energy Corp.*, 2021 WL 4461171, at *14 (N.D. Cal. Sept. 29, 2021); *Levy v. Luo*, 2025 WL 437022, at *10 (D. Del. Feb. 7, 2025).

**B.** ***Friedman's Consent Does Not Provide An Independent Basis For Liability Under Section 11.***

Unable to allege a claim under *Omnicare*, Golden attempts to evade over a decade of post-*Omnicare* precedent by arguing that the Independent Auditor Defendants can be liable under Section 11 for not disclosing additional facts about the company in Friedman's Consent. Opp. at 53–54. This argument misunderstands the purpose of an auditor's consent, ignores the distinction between a consent and an audit report, is not supported by any authority, and fails as a matter of law.

As Golden acknowledges, a consent "is not a statement of opinion." *Id.* at 52 n.25. Its "purpose," rather, is simple: to provide "assur[ance] that the auditor is aware of the use of its report and the context it which it was used,"[5] as required under the Securities Act. 15 U.S.C. §

---

[5] U.S. Sec. & Exch. Comm'n, Div. of Corp. Fin., Financial Reporting Manual § 4810.1, https://www.sec.gov/about/divisions-offices/division-corporation-finance/financial-reporting-manual/frm-topic-4 (last visited February 11, 2025).

77g(a)(1). Accordingly, a consent "is short and formulaic" (Opp. at 53), and expresses one fact—that the auditor "consents to" the incorporation of its audit report in a company's filings. *See* 17 CFR § 230.436(a); *Omnicare*, 575 U.S. at 190 ("[W]hether an omission makes an expression of opinion misleading always depends on context."); *e.g.*, *Abady v. Lipocine Inc.*, 2023 WL 2938210, at *22 (D. Utah Apr. 13, 2023) (alleged omissions were not actionable where reasonable investors would not have expected their disclosure given the "context"). Friedman's Consent was no different. Dkt. 142-4. The factual assertion in the Consent was true; Friedman did give consent for its Audit Report to be incorporated into Baosheng's registration statement.

Consents are not required to contain—nor do they purport to contain—factual disclosures about the auditor's procedures or the company. In fact, the professional standard that sets forth an auditor's responsibilities when providing consent expressly states that, even when the auditor discovers disclosable facts through the limited procedures performed prior to issuing a consent, the proper course is ***not*** for the auditor itself to disclose those facts. PCAOB AS 4101.12. Rather, an auditor must advise its client to "make appropriate adjustment or disclosure in the financial statements." *Id.* And even if the company refuses, the auditor is not required to disclose the facts but instead "take [certain] steps … to prevent future reliance upon its report" and "consider withholding its consent." *Id.*; *see also* PCAOB AS 2905.04–.07.

Golden does not cite a single case to support its theory that an auditor's consent can contain an actionable omission under Section 11. Nor can it. The undersigned counsel is not aware of any case in any jurisdiction where a court has allowed a Section 11 claim to proceed based on alleged misstatements or omissions in an auditor's consent (rather than the auditor's report). Not one of the decisions the parties cite entertains support for the notion that a plaintiff can circumvent *Omnicare* simply by redirecting its theory to allege the consent was missing

material facts. And with good reason: if Golden's position was deemed valid, the guardrails *Omnicare* erected around Section 11 liability for opinion statements would become meaningless.

## III. Golden's Claim Against Friedman Is Untimely.

Finally, Golden fails to address the case law in this Circuit regarding statutes of repose, instead largely relying on a nonbinding, distinguishable Third Circuit opinion. Opp. at 67–69.

While the Second Circuit has not directly considered whether the relation back doctrine may save "claims otherwise barred by a statute of repose," *Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 110 n.18 (2d Cir. 2013) (declining to address issue), the overwhelming weight of authority in this Circuit holds that claims filed after a statute of repose has run are "barred"—with "no exceptions." *E.g.*, *Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 248 F. Supp. 3d 428, 451 (S.D.N.Y. 2017) (collecting cases); Mot. at 25–26 (same); *In re Teva Sec. Litig.*, 512 F. Supp. 3d 321, 332 (D. Conn. 2021). Golden ignores the reasoning in these cases. Opp. at 69 n.36. Golden also ignores that these courts have cited *IndyMac*—where the Second Circuit "made clear" that "permitting claims after the repose period would 'violate' the Rules Enabling Act"—and the statute of repose itself. *Silvercreek*, 248 F. Supp. 3d at 451 (quoting 721 F.3d at 109 and citing 15 U.S.C. § 77m).

Golden's reliance on *Southeastern Pennsylvania Transportation Authority v. Orrstown Financial Services Inc.*, 12 F.4th 337 (3d Cir. 2021) ("*SEPTA*"), is misplaced. As Golden acknowledges (Opp. at 69), in *SEPTA* the Third Circuit expressly declined to consider the factual scenario here: "whether a plaintiff may use relation back … to add new parties" outside of a repose period. 12 F.4th at 350–51; *see also* Opp. at 69; *United States ex rel. Osinek v. Permanente Med. Grp., Inc.*, 2022 WL 16943886, at *10 (N.D. Cal. Nov. 14, 2022) (*SEPTA* does not "sanction[]" the use of relation back to add a new party to a case after a repose period has lapsed). And the plaintiffs in *SEPTA* attempted to "reassert the *same* claims against the *same*

parties" named in an earlier, timely filed complaint that had been dismissed. 12 F.4th at 344, 350–51. By contrast, Golden never sued Friedman within the repose period.

Golden's citations to other nonbinding authority are equally unavailing. In *Kessev Tov, LLC v. Doe(s)*, 2022 WL 2356626 (N.D. Ill. June 30, 2022), the defendants **already** were "participating in the case." *Id.* at *6. The plaintiff in *United States ex rel. Carter v. Halliburton Co.*, 315 F.R.D. 56 (E.D. Va. 2016), merely sought to "clarify and add specificity" to a complaint he had already filed against the same defendant. *Id.* at 65. And *Acierno v. New Castle County*, 2000 WL 718346 (D. Del. May 23, 2000), involved a Delaware zoning statute and contains little analysis about the statue of repose. *Id.* at *9.

Nor can Golden save the claim by insisting it was misled by public statements about the Marcum-Friedman merger. Opp. at 63–65. Again, a statute of repose permits no exceptions. In any event, had Golden done its research, Friedman's continued existence and status as an "active entity" would have been clear from the New York Department of State's website. *See* Ex. F (attached).[6]

## CONCLUSION

For the foregoing reasons, the Court should dismiss Golden's claims against Friedman and Marcum, with prejudice.

Dated: March 7, 2025            By: /s/ *Karim Basaria*
                                                     Karim Basaria

                                                     Bruce R. Braun (admitted *pro hac vice*)
                                                     Karim Basaria (admitted *pro hac vice*)
                                                     Rebecca B. Shafer (admitted *pro hac vice*)
                                                     SIDLEY AUSTIN LLP
                                                     One South Dearborn

---

[6] Courts may take judicial notice of "publicly available" documents. *Fisher v. Aetna Life Ins. Co.*, 32 F.4th 124, 139 n.5 (2d Cir. 2022).

Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
Email: bbraun@sidley.com
kbasaria@sidley.com
rshafer@sidley.com

Nicholas P. Crowell
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
Email: ncrowell@sidley.com

*Attorneys for Defendants Friedman LLP and Marcum LLP*

# CERTIFICATE OF COMPLIANCE

I, Karim Basaria, an attorney duly admitted *pro hac vice* to practice law in this Court, certify that, in accordance with the Court's Individual Rules of Practice, the foregoing memorandum of law contains 3,498 words, exclusive of the Table of Contents, Table of Authorities, the cover page, the signature block, and this certification. In preparing this certification, I relied on the word count of the word processing system used to prepare this memorandum of law.

*s/ Karim Basaria*
Karim Basaria

# CERTIFICATE OF SERVICE

The undersigned certifies that on March 7, 2025, he caused the foregoing to be served upon all parties to this action by means of the Court's electronic filing system.

By: *s/ Karim Basaria*
Karim Basaria (admitted *pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7000
kbasaria@sidley.com