UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Orient Plus International Limited; Union Hi-Tech Development Limited; and Golden Genius International Limited,<br><br>      Plaintiffs,<br>vs.<br><br>Baosheng Media Group Holdings Limited; Wenxiu Zhong; Sheng Gong; Yu Zhong; Zuohao Hu; Adam (Xin) He; Yue Jin; Yanjun Hu; Univest Securities, LLC; The Benchmark Company, LLC; WestPark Capital, Inc.; Friedman LLP; and Marcum LLP,<br><br>      Defendants. | Civil Action No. 1:24-cv-00744-JLR |

**UNDERWRITER DEFENDANTS UNIVEST SECURITIES, LLC,
THE BENCHMARK COMPANY, LLC, AND WESTPARK CAPITAL, INC.'S
REPLY IN SUPPORT OF THEIR MOTION TO DISMISS
THE THIRD AMENDED COMPLAINT**

# TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | ARGUMENT | 1 |
| | A. Plaintiff Misstates The Applicable Standard | 1 |
| | B. The "Conduct Alleged" Sounds In Fraud | 3 |
| | C. Golden Fail To Meet The Rule 9(b) Standard | 5 |
| | 1. Golden Fails To Adequately Plead Intent | 5 |
| | 2. Golden's Evidence Undercuts Its Falsity Allegations | 7 |
| | D. Even Assuming The Claims Sound In Negligence, The Underwriters' Due Diligence Defense Warrants Dismissal | 9 |
| | 1. The Due Diligence Affirmative Defense Can Be Considered Here | 9 |
| | 2. The Underwriters May Properly Rely On The Opinion | 10 |
| III. | CONCLUSION | 11 |

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*In re Ambac Fin. Grp., Inc. Sec. Litig.*,
 693 F. Supp. 2d 241 (S.D.N.Y. 2010).................................................................................4

*In re Merrill Lynch & Co., Inc., Sec., Derivative & ERISA Litig.*,
 No. 07 CIV. 9633 (JSR), 2009 WL 4030869 (S.D.N.Y. Mar. 3, 2009) ..........................2, 4, 9

*In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.*,
 No. 03 CIV. 8208 (RO), 2006 WL 1008138 (S.D.N.Y. Apr. 18, 2006)...................................6

*Nelson v. Bolles (In re Bolles)*,
 593 B.R. 832 (Bankr. D.N.M. 2018) .......................................................................................3

*Pappas v. Qutoutiao Inc.*,
 No. 23-1233, 2024 WL 4588491 (2d Cir. Oct. 28, 2024)................................................ passim

*Police Fire Retirement System v. Safenet*,
 645 F. Supp. 2d 210 (S.D.N.Y. 2009)..................................................................................5, 6

*In re Sanofi Sec. Litig.*,
 87 F. Supp. 3d 510 (S.D.N.Y. 2015).......................................................................................6

*Sewell v. Bernardin*,
 795 F.3d 337 (2d Cir. 2015)....................................................................................................9

*Sinay v. CNOOC Ltd.*,
 554 Fed.Appx. 40 (2d Cir.2014)..............................................................................................6

*Skiadas v. Acer Therapeutics Inc.*,
 No. 1:19-CV-6137-GHW, 2020 WL 3268495 (S.D.N.Y. June 16, 2020) .............................10

*South Cherry St. v. Hennessee Group*,
 573 F.3d 98 (2d Cir. 2009)......................................................................................................5

*Vtech Holdings, Ltd. v. Pricewaterhouse Coopers*,
 348 F. Supp. 2d 255 (S.D.N.Y. 2004).....................................................................................7

*Zirkin v. Quanta Cap. Holdings Ltd.*,
 No. 07 CIV. 851 (RPP), 2009 WL 185940 (S.D.N.Y. Jan. 23, 2009) .....................................2

**Other Authorities**

FRCP Rule 8 ..................................................................................................................................2, 4

FRCP Rule 9(b)......................................................................................................................... passim

## I. INTRODUCTION

Golden Genius International Limited ("Golden") is the sole Plaintiff still pursuing meritless claims against the Underwriters. In an attempt to avoid the heightened pleading requirements of Rule 9(b), Golden seeks to recast the Third Amended Complaint ("TAC") by repackaging clear allegations of fraud as negligence claims. However, Rule 9(b) focuses on substance over form. The TAC alleges that the Underwriters knew about a business-ending situation pre-IPO but chose not to disclose it. TAC ¶¶ 107, 112. Such allegations cannot be characterized as mere negligence, regardless of how Golden labels them.

The TAC fails to state a claim against the Underwriters for at least four reasons:

*First*, Golden erroneously asserts that negligence is a subset of fraud and provides a way to avoid Rule 9(b), without any legal basis.

*Second*, Golden incorrectly claims that there is no need to particularize "intent" under Rule 9(b).

*Third*, Golden mischaracterizes a phone call transcript central to its claims. The transcript, attached to the TAC and properly before the Court, undermines Golden's allegations when read in full.

*Finally*, Golden fails to rebut well-settled law that affirmative defenses can warrant dismissal under Rule 12(b)(6) when clear from the face of the pleading. Golden also fails to address the unambiguous Dentons legal opinion, attached to the registration statement, which concluded that no material legal proceedings affecting BAOS existed as of the IPO.

## II. ARGUMENT

### A. Plaintiff Misstates The Applicable Standard

Golden suggests that *Pappas v. Qutoutiao Inc.*, No. 23-1233, 2024 WL 4588491, at *2 (2d Cir. Oct. 28, 2024), upended "older cases" applying Rule 9(b) to Securities Act claims

sounding in fraud when it applied Rule 8 to claims framed in the "classic language of negligence and strict liability" while disclaiming fraud. Opp. at 8. However, *Pappas* held:

> In assessing the applicable pleading standard, *Rombach* instructs district courts to look not only to whether allegations are "styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action" but also to "the conduct alleged." 355 F.3d at 171. A plaintiff cannot avoid the strictures of Rule 9(b) by the mere expedient of disclaiming that its claims sound in fraud.

*Pappas v. Qutoutiao Inc.*, No. 23-1233, 2024 WL 4588491, at *2 (2d Cir. Oct. 28, 2024)

Golden also argues that the Underwriters' authorities are distinguishable because they involved both Exchange Act and Securities Act claims, whereas Golden asserts only the latter. Opp. at 8-9. This distinction is immaterial. The decisive factor is the nature of "the conduct alleged." *Pappas*, at *2. In fact, *Pappas* explicitly rejected the idea that the presence of Exchange Act claims is determinative, holding that a Securities Act claim would not be subject to Rule 9(b) "merely because of the complaint's other claims." *Id.* Courts routinely apply Rule 9(b) to pleadings that exclusively allege Securities Act claims sounding in fraud. *See, e.g., Zirkin v. Quanta Cap. Holdings Ltd.*, No. 07 CIV. 851 (RPP), 2009 WL 185940, at *11-12 (S.D.N.Y. Jan. 23, 2009) (applying Rule 9(b) to a complaint alleging only a Securities Act claim); *In re Merrill Lynch & Co., Inc., Sec., Derivative & ERISA Litig.*, No. 07 CIV. 9633 (JSR), 2009 WL 4030869 (S.D.N.Y. Mar. 3, 2009) (finding a complaint, asserting only Securities Act claims, subject to Rule 9(b)).

Golden next contends that, as the master of its complaint, it can choose to pursue a negligence or fraud theory. Opp. at 9. However, the law is clear: the application of Rule 9(b) turns on the substance of the conduct alleged, not how the plaintiff labels the claims. *Pappas*, at 2. Golden also argues that even if both negligence and fraud are alleged, "the TAC adequately alleges negligence, thus necessitating application of Rule 8." Opp. at 9. This argument fails

because a claim centered on specific conduct cannot fairly allege that the conduct was both unintentional and intentional. As one court aptly stated: "An intentional fraud cannot be a negligent misrepresentation ... . Negligent misrepresentation is not, of course, a 'lesser included' cause of action with a claim for deceit or fraud." *Nelson v. Bolles (In re Bolles)*, 593 B.R. 832 (Bankr. D.N.M. 2018). Fraud and negligence are by definition mutually exclusive—fraud requires intent, while negligence does not. *See* MTD at 12-13 (citing cases).

**B.** **The "Conduct Alleged" Sounds In Fraud**

As detailed in the Underwriters' Motion to Dismiss, the TAC is replete with allegations that have the hallmarks of fraud. *See* MTD, at 12. Golden now attempts to minimize these allegations as "anodyne." Opp. at 10. But anodyne or not, the reality is that Golden alleges that the Underwriters knew about a business-ending situation pre-IPO but ***chose*** not to disclose it. TAC ¶¶ 43-80, 107, 112. These are quintessential allegations of fraud.

The TAC explicitly states that "Univest … fail[ed] to conduct adequate diligence or investigation into the accuracy of the Registration Statement and Prospectus when ***it became clear that BAOS was under investigation***." TAC ¶ 107, ¶ 112 (same for other underwriters). Unable to make the words "became clear" go away, Golden pivots to arguing that even if this amounts to alleging knowledge, "that a fact was known and not disclosed does not mean, as a matter of law, that the circumstances of the resulting omission sound in fraud." Opp. at 10-11 (quoting *Pappas*, at *2). Golden misreads *Pappas*. Immediately after this quoted sentence, the Second Circuit explained:

> The signer of, or underwriter with respect to, a registration statement … may negligently fail to disclose conduct that ***another*** has engaged in intentionally.
>
> Such circumstances may be contrasted with cases in which the plaintiff alleged that ***defendants intentionally concealed*** information in the filing at issue. [citations] Here, although the ***underlying conduct*** was alleged to have been intentional, Plaintiff does not allege that the ***failure to disclose that conduct*** was either

intentional or reckless.

*Pappas*, at *2-3 (emphasis added).

Unlike *Pappas*, the "underlying conduct" here *is* the alleged intentional failure to disclose. *Id.* It sounds squarely in fraud because "plaintiff alleged that defendants intentionally concealed information in the filing at issue." *Id.*

Golden further contends without legal basis that the TAC's use of "negligence-type language" warrants treatment under Rule 8. Opp. at 11. But Golden's own authority refutes this. As the court held in *In re Refco, Inc. Sec. Litig*, "a case-by-case analysis of particular pleadings" is required to determine whether "the gravamen of the complaint is plainly fraud." 503 F. Supp. 2d 611, 632 (S.D.N.Y. 2007). The court found that the claims asserted in that pleading sounded in negligence, not based on how they were styled, but because there were "no allegations … that contain even a hint of fraud." *Id.*; *see also Pappas*, at *2 (courts should not only look to how allegations are "styled or denominated").

Similarly, Golden argues that *In re Ambac*, which the Underwriters cited in their Motion to Dismiss, applied Rule 8 simply due to "negligence"-like wording. Opp. at 11-12. But that court applied Rule 8 because the complaint lacked any allegation that the defendants engaged in fraudulent conduct. *In re Ambac Fin. Grp., Inc. Sec. Litig.*, 693 F. Supp. 2d 241, 275 (S.D.N.Y. 2010). This is not the case here.

According to the TAC, the undisclosed investigation was so devastating that nearly all members of BAOS's management were detained, its CEO went missing, and the company effectively shut down. TAC ¶¶ 43-53. By comparison, in the negligence cases Golden cites, the undisclosed facts were far less obvious—such as risky but "profit-seeking business strategies" (*Pappas*, at *2) or "uncollectible receivables" (*In re Refco*, at 619). None remotely compares to

the sort of concealed facts alleged here. As the Second Circuit has held, "[a]n *egregious* refusal to see the *obvious,* or to *investigate the doubtful,* may in some cases give rise to an inference of … recklessness." *South Cherry St. v. Hennessee Group,* 573 F.3d 98, 109 (2d Cir. 2009) (emphasis added); MTD, at 13-14.

C. <u>**Golden Fail To Meet The Rule 9(b) Standard**</u>

Assuming Golden can plausibly meet the pleading standard for fraud, the Underwriters would not dispute that they would have to at least answer for the allegations. But Golden has not done so here under Rule 9(b).

### 1. **Golden Fails To Plead Intent**

Golden must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). While the rule permits intent to be alleged "generally" (*id*.), Golden misunderstand this to mean it can plead intent in a conclusory manner via a single allegation that the Underwriters' "level of access and communication should have alerted [them]." Opp. at 15. This is not how Rule 9(b) works.

It is well settled that under Rule 9(b), a plaintiff must "provide[] a ***factual basis*** that gives rise to ***a strong inference of intent*** to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Trustees of Plumber Pipefitters Natl. Pension*, 896 F. Supp. 342, 347 (S.D.N.Y. 1995) (emphasis added) (collecting cases). "Fraudulent intent is commonly pled by alleging facts showing a ***motive*** for committing fraud and a ***clear opportunity*** for doing so… [or] by identifying factual circumstances that indicate ***conscious behavior*** by the defendant." *Id*. (emphasis added); *Police Fire Retirement System v. Safenet,* 645 F. Supp. 2d 210, 241 (S.D.N.Y. 2009) (when a Securities Act claim sounds in fraud, a plaintiff is required to allege "***fraudulent***

***intent*** with more specificity.")[1]

Golden fails to do any of this. The TAC pleads (1) no motive for fraud, (2) no clear opportunity to defraud, and (3) no factual specifics reflecting conscious behavior of the Underwriters. Instead, Golden makes a single conclusory assertion that the Underwriters "would or should have known" of the alleged situation due to their "level of access" to information— *i.e.* that they must have known because they were Underwriters. Courts routinely reject this. *See* MTD, at 16-17 (intent cannot be based solely on a defendant's position); *Sinay v. CNOOC Ltd.*, 554 Fed. Appx. 40, 42 (2d Cir.2014) (no scienter based on what defendant "must have known").

Worse, as set forth below, Golden's own evidence cuts against any inference of intent. The transcript shows that even BAOS's own "shadow" CEO did not believe anything was going to happen to BAOS until executives who voluntarily went to "cooperate" with an investigation into a *third party* "game company" failed to return, well after the IPO. *Infra* § C(2); TAC, Tr. at 43 ("at the time, we thought we would just have a dozen people over there to cooperate … they didn't come back after a week, two weeks, then a month.") In short, if BAOS's insider saw no red flags at the time, its Underwriters not have possibly formed an intent to commit fraud.

---

[1] In a footnote, Golden quotes *In re Sanofi Sec. Litig.,* 87 F. Supp. 3d 510, 549, fn. 8 (S.D.N.Y. 2015), stated that Rule 9(b) "does not add substantive elements such as scienter to any claim." Opp. at 13, fn. 8. Golden argues that this means no scienter is required even under Rule 9(b). However, this quote *Sanofi* is dicta, as the court dismissed all securities claims—fraud-based or otherwise—on the grounds that the statements at issue were not false or misleading. Moreover, to support this dicta, *Sanofi* cited *Rombach*'s holding that "[w]hile a plaintiff need allege no more than negligence to proceed under Section 11 and Section 12(a)(2), claims that do rely upon averments of fraud are subject to the test of Rule 9(b)." *Id*. fn. 8 (citing *Rombach*, at 175). The *Rombach* court merely clarified that Securities Act claims sounding in fraud are subject to Rule 9(b), which, by its own terms, requires pleading intent. Contrary to Golden's reliance on *Sanofi*'s dicta, courts in this district have routinely applied *Rombach* to require scienter when Securities Act claims sound in fraud. *See In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.*, No. 03 CIV. 8208 (RO), 2006 WL 1008138, at *6, n.12 (S.D.N.Y. Apr. 18, 2006) ("When Section 11 and 12(a)(2) claims sound in fraud, however, the scienter requirements of Rule 9(b) of the Federal Rules of Civil Procedure apply.") (citing *Rombach*, at 175); *Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, 645 F. Supp. 2d 210, fn. 12 (S.D.N.Y. 2009) (same).

### 2. Golden's Evidence Undercuts Its Falsity Allegations

To satisfy Rule 9(b), the TAC must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Opp. at 13. This is impossible here.

Specifically, Golden asserts that the "critical [undisclosed] information" here is "the executives' arrests, the CEO's retreat to a hiding place, and Defendant Yanjun Hu's control" due to a government investigation. Opp. at 15-16. But as the call transcript makes clear, these "critical" events occurred *post-IPO*. MTD, at 9-11.

Golden asks the Court to draw inferences in its favor. Opp. at 28-29. While courts must draw reasonable inferences in favor of the plaintiff, they do not indulge inferences contradicted by the record. *See Vtech Holdings, Ltd. v. Pricewaterhouse Coopers*, 348 F. Supp. 2d 255 (S.D.N.Y. 2004) ("a court is not required to accept as true allegations that are contradicted by documentary evidence that may be considered on a motion to dismiss.")

*First*, Golden asks the Court to ignore the full 20-minute conversation and instead draw inferences from *one* isolated remark that "[a] month or two before the company was listed. They started arresting people." Opp. at 30. Even accepting Golden's request for an unwarranted inference that disregards all context, the statement is ambiguous standing alone, as it could refer to arrests of personnel at other companies that were the actual subjects of the investigation.

*Second*, two sentences later, BAOS's Yanjun Hu (A) clarified to Orient's Hu Dong (B) that meant people from *another* company were arrested, not BAOS's.

> [13:28] A: A month or two before the company was listed. They started arresting people. But at that time, I thought it was just a temporary thing.
>
> [13:37] B: Oh...
>
> [13:37] A: Because there were *several layers of separation* here. *First, it was the game company, which was in Wuxi. That company was completely controlled*

*and people were arrested.*

[13:47] B: So it was totally wiped out. OK.

[13:49] A: Yes, at the time, we thought that arrests *would only happen to that game company*, and that they wouldn't ... that *Sogou would not be affected*. So, at the time, we thought we would just have a dozen people over there to cooperate and to tell about the situation.

TAC, Tr. at 41-42.

Three minutes later, the conversation makes this point even clearer:

[17:21] B: When they first started arresting people, this company wasn't listed yet, right? It wasn't listed when people started being arrested? Were things still OK back then?

[17:26] A: There was cooperation with the investigation.

[17:30] B: *So it was really listed first, and then*...

[17:31] A: It wasn't actually called "arrest" either. Anyway, at first they called in three people to *cooperate with the investigation*. At that time, we thought, OK, *that's normal*. …

*Id*. at 46. In short, the transcript eviscerates Golden's invitation to fixate on one ambiguous statement to the exclusion of all else.

*Finally*, when Orient's principal (B) asked Hu (A) point blank "[w]hen did you handle this matter? Before the company was listed? Or after listing?" Hu responded: "after the listing." *Id*. at 44. To escape this, Golden now posits that, with all inferences in its favor, the proper reading of the word "handle" should be "fully resolve the investigation (i.e., pay the fine)." Opp. at 30. Interpreted this way, the exchange comes to mean that things were only "resolved" after the listing, but that troubles began earlier. *Id.* at 30-31.

But just one sentence later, Hu showed that he did not interpret "handle this matter" to mean "fully resolve" the matter. He explained that he went about it "step-by-step", first by going "to Wuxi to bail people out", and then by finding "connections" to get BAOS's CEO "off the hook on this matter", which "took two or three months," and finally "what happened was that a

fine was imposed … . That's how this thing ended." TAC, Tr. at 45.

Finally, Hu told Dong that the authorities "don't bother companies that are not listed. They are actually just targeting you for becoming a listed company." *Id.* at 47. Because this suggests that BAOS did not become a target until after it became listed, Golden posits that "bother" means "impose fines on companies." Opp. at 30-31. The idea is that, drawing all inferences in Plaintiff's favor, the Court should read the transcript to say that the authorities were already investigating BAOS, but only decided to impose a fine after it got listed.

This interpretation is textually unwarranted. The conversation about "bothering" concerns the authorities' ***motive*** for commencing an investigation in the first place. Golden's interpretation would suggest a bizarre sequence of events where the authorities first arrested executives, shut down operation, all while hoping the company would be listed one day so they could finally "bother" it with a fine. Golden's textually unsupported inferences should not be accepted at face value.

**D. Even Assuming The Claims Sound In Negligence, The Underwriters' Due Diligence Defense Warrants Dismissal**

**1. The Due Diligence Affirmative Defense Can Be Considered Here**

Golden argues that an affirmative defense cannot be considered on a motion to dismiss. But the law is clear to the contrary. *See Sewell v. Bernardin*, 795 F.3d 337, 339 (2d Cir. 2015) (dismissal is appropriate in light of an affirmative defense when "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law."); *see also* MTD, at 19. Golden's cited cases do not rebut this principle. Opp. at 47. *In re Friedman's, Inc. Sec. Litig.*, an out of circuit case, denied dismissal because, unlike here, affirmative defenses were not established on the face of the complaint. 385 F. Supp. 2d 1345, 1369 (N.D. Ga. 2005). Similarly, Golden quotes *In re Morgan*

*Stanley Info. Fund Sec. Litig.* for the proposition that "defendants bear the burden [on affirmative defenses], which are therefore unavailing as a means of defeating a motion to dismiss", but omits the first two words of the sentence, which begins: "***Generally speaking,*** defendants bear the burden … ." 592 F.3d 347, 360 (2d Cir. 2010) (emphasis added).

Here, by contrast, the affirmative defense can be established on the face of the TAC. The Dentons legal opinion at issue was: (1) attached to the Registration Statement and Prospectus, which are integral to the TAC, and (2) is subject to judicial notice. *Skiadas v. Acer Therapeutics Inc.*, No. 1:19-CV-6137-GHW, 2020 WL 3268495, at *6 (S.D.N.Y. June 16, 2020) (on a motion to dismiss, a court may also consider "any statements or documents incorporated in [the complaint] by reference, and any document upon which the complaint heavily relies," and the court may "take judicial notice of … documents filed with the SEC.")

### 2. The Underwriters May Properly Rely On The Opinion

Golden raises three arguments against the Underwriters' reliance on Dentons' legal opinion, all of which fail.

***First***, Golden argues that the opinion was given to the Company, not the Underwriters. Opp. at 49. This is incorrect. The opinion was delivered to BAOS *for* the investing public, to whom the Underwriters would sell shares. This is precisely why the Underwriters are entitled to rely on it for the matters it specifically addresses.

***Second***, Golden contends that the opinion's "no legal proceedings" statement pertains only to "liquidation, winding up, dissolution, or bankruptcy," and does not speak to "whether the executive team was detained or the Company suspended operations." *Id*. at 50. This argument ignores the plain language of the opinion, which expressly includes proceedings "for any adverse suspension … of any of its Governmental Authorization." *Id*. "Governmental Authorization" is defined broadly to cover any "license, approval, consent, … permission, … annual inspection,

clearance…" from "*any* Government Agency pursuant to *any* PRC Laws." Mot. Ex. 3, at 2. Golden cannot plausibly claim there was no "adverse suspension" of any authorization to conduct business if, as alleged, the government arrested BAOS's management team and shut down its operations.

*Finally*, Golden argues that the opinion letter's sign off on various risk disclosures is "narrow—relating only to the statements in the Prospectus, not the Registration Statement." Opp. at 50. This is incorrect. The TAC *itself alleges* that "[t]he Registration Statement incorporated by reference each prospectus filed by the Company … Each prospectus was deemed to be part of the Registration Statement … ." TAC ¶ 30. Golden also fails to explain how the alleged arrest and "shutdown" stemming from a government investigation into illegal activities does not qualify as a "legal or regulatory matter[]." Opp. at 50.

### III.  CONCLUSION

For these reasons, the Court should dismiss the TAC as to the Underwriters with prejudice.

Respectfully Submitted,

Dated: March 7, 2025  **MORROW NI LLP**

By: _____

Angus F. Ni
41 Madison Ave, 31st Floor,
New York, NY 10010
(773) 543-3223
angus@moni.law

*Attorneys for Underwriters*

## CERTIFICATE OF FORMATTING COMPLIANCE

The undersigned certifies that this brief complies with the Court's formatting and word limit rules, requiring all text to be double spaced. The brief contains 3496 words.

Dated: March 7, 2025

**MORROW NI LLP**

By: _____

Angus F. Ni
41 Madison Ave, 31st Floor,
New York, NY 10010
(773) 543-3223
angus@moni.law

*Attorneys for Underwriters*