UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Orient Plus International Limited; Union Hi-Tech Development Limited; and Golden Genius International Limited,<br><br>           Plaintiffs,<br><br>    v.<br><br>Baosheng Media Group Holdings Limited; Wenxiu Zhong; Sheng Gong; Yu Zhong; Zuohao Hu; Adam (Xin) He; Yue Jin; Yanjun Hu; Univest Securities, LLC; The Benchmark Company, LLC; WestPark Capital, Inc.; Friedman LLP; and Marcum LLP,<br><br>           Defendants. | Case No. 1:24-cv-00744-JLR |

## BAOSHENG MEDIA GROUP HOLDINGS LIMITED'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT

HOLLAND & KNIGHT LLP
787 Seventh Avenue, 31st Floor
New York, New York 10019
Tel:  (212) 513-3200

# TABLE OF CONTENTS

**Page**

ARGUMENT ..................................................................................................................... 1

I.      Plaintiffs Assert the Wrong Pleading Standard ............................................................ 2

II.     Plaintiffs' Allegations Are Either Contradicted by the Transcript or Are Pled on
        Information and Belief ................................................................................................... 3

        A.      The Transcript Contradicts Plaintiffs' Allegation About the Timing of an
                Investigation ...................................................................................................... 3

        B.      The Transcript Contradicts Plaintiffs' Allegation About the Timing of Arrests . 3

        C.      The Transcript Contradicts Plaintiffs' Allegation About the Timing and Extent
                of Suspensions in Operations ............................................................................. 3

        D.      The Transcript Contradicts Plaintiffs' Allegation About Hu's Control over the
                Company ............................................................................................................. 4

        E.      Neither Plaintiffs nor Hu Actually State That Baosheng Violated Chinese Law  4

III.    Plaintiffs' Claims "Sound in Fraud," Requiring Compliance With Rule 9(b)'s
        Heightened Pleading Standard ..................................................................................... 5

IV.     Golden Fails to Plead Item 303 Violation ................................................................... 8

V.      Golden Fails to Plead Section 11 and Section 12 Violations, Given its Failure to
        Plead Any Material Misrepresentation ....................................................................... 10

VI.     Golden's Securities Claims are Otherwise Time Barred .......................................... 11

VII.    Orient and Union's Breach of Contract Arguments Fail ........................................... 13

        A.      Orient and Union Fails to Plead Breach of Section 3.1(l) Warranty ................. 13

        B.      Orient and Union Fails to Plead Breach of Section 3.1(i) and (j) Warranty ...... 14

        C.      Orient and Union Fails to Plead Breach of Section 3.1(x) ................................ 15

CONCLUSION ............................................................................................................... 15

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*In re AppHarvest Sec. Litig.*,
684 F. Supp. 3d 201 (S.D.N.Y. 2023)................................................................. 9

*Caiola v. Citibank, N.A.*,
295 F.3d 312 (2d Cir. 2002).............................................................................. 10

*City of Pontiac Gen. Employees' Ret. Sys. v. MBIA, Inc.*,
637 F.3d 169 (2d Cir. 2011).............................................................................. 12

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
928 F. Supp. 2d 705 (S.D.N.Y. 2013)............................................................. 8, 9

*Danjanovich v. Robbins*,
2006 U.S. Dixt. LEXIS 52508 (D. Utah July 28, 2006) ................................. 11

*Flynn v. Sientra, Inc.*,
No. CV1507548, 2016 WL 3360676 (C.D. Cal. June 9, 2016) ........................ 10

*Gerszberg v. Iconix Brand Grp., Inc.*,
17-cv-8421, 2018 WL 2108239 (S.D.N.Y. May 7, 2018) ................................ 13

*Hirsch v. Arthur Anderson & Co.*,
72 F.3d 1085 (2d Cir. 1995)................................................................................ 2

*Indiana Public Retirement System v. SAIC, Inc.*,
818 F.3d 85 (2d Cir. 2016)............................................................................... 8, 9

*Jiajia Luo v. Sogou Inc.*
465 F. Supp. 3d 393 (S.D.N.Y. 2020).............................................................. 5, 14

*Kasper Glob. Collection & Brokers, Inc. v. Glob. Cabinets & Furniture Mfrs. Inc.*,
952 F. Supp. 2d 542 (S.D.N.Y. 2013) ................................................................ 1

*Kline v. First Western Government Secs.*,
24 F.3d 480 (3d Cir. 1994)................................................................................ 10

*LeMatta v. Casper Sleep, Inc.*,
20-CV-2744, 2022 WL 4637795 (E.D.N.Y. Sept. 30, 2022)......................... 10, 11

*Litwin v. Blackstone Grp., L.P.*,
634 F.3d 705 (2d Cir. 2011)................................................................................ 8

*Merck & Co. v. Reynolds*, 559 U.S. 633 (2010).......................................................... 12

*Meyer v. JinkoSolar Holdings Co.*,
    761 F.3d 245 (2d Cir. 2014) ........................................................................ 10

*Ngueyn v. MaxPoint Interactive, Inc.*,
    234 F. Supp. 3d 540 (S.D.N.Y. 2017) ........................................................... 9

*Pappas v. Qutoutiao Inc.*,
    No. 23-1233, 2024 WL 4588491 (2d Cir. Oct. 28, 2024) ......................... 5, 6, 7, 8

*Poindexter v. EMI Record Group Inc.*,
    No. 11 Civ. 559, 2012 WL 1027639 (S.D.N.Y. Mar. 27, 2012) ...................... 2

*Rapoport v. Asia Electronics Holdings Co., Inc.*,
    88 F. Supp. 2d 179 (S.D.N.Y. 2000) ........................................................ 1, 2, 13

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004) ...................................................................... 5, 8

*SEC v. Nielson*,
    No. 1:18-cv-01217, 2020 WL 9439395 (D.D.C. Feb. 13, 2020) .................. 10, 11

*SEC v. Poirier*,
    140 F. Supp. 2d 1033 (D. Ariz. 2001) ........................................................ 11

*Yi Xiang v. Inovalon Holdings, Inc.*,
    268 F. Supp. 3d 515 (S.D.N.Y. 2017) ......................................................... 12

*Youngers v. Virtus Inv. Partners Inc.*,
    195 F. Supp. 3d 499 (S.D.N.Y. 2016) ...................................................... 12, 13

*Zuckerman v. Smart Choice Auto Grp., Inc.*,
    No. 6:99-CV-237, 2000 WL 33996254 (M.D. Fla. Aug. 29, 2000) ............... 10, 11

**Statutes**

17 CFR § 229.303 ........................................................................................... 9

# ARGUMENT

Plaintiffs' opposition brief ("Opposition" or "Opp.") does not dispute that Baosheng had cautioned investors of the risks it faced as an advertising operator subject to China's advertising law, that Chinese authorities could impose penalties that might cause Baosheng to lose advertising and media clients and impact its financial performance, that Baosheng faced potential liability for the unlawful actions of its clients, or that the market was aware of the specific risk of non-renewal of the Baosheng-Sogou agency agreement and its potential impact given Baosheng's overreliance and revenue concentration with Sogou.[1] Tellingly, Plaintiffs' securities and breach of contract claims rely wholly on a "violation" they are unable to articulate.

Plaintiffs obfuscate the Court's analysis by proffering a tortured synthesis of the Transcript. (Opp. 31) ("Though Plaintiffs have the far better interpretations of the transcript, on a motion to dismiss, that does not matter because all reasonable inferences must be drawn in favor of Plaintiffs."). Courts, however, do not accept allegations in the complaint that are contradicted by the documents on which they rely and will reject self-serving interpretations supplied by plaintiffs. *See Rapoport v. Asia Electronics Holdings Co., Inc.*, 88 F. Supp. 2d 179, 184-85 (S.D.N.Y. 2000) (rejecting plaintiff's interpretation of news article in dismissing claims).[2]

---

[1] All capitalized terms not defined herein have the meaning ascribed to them in the Memorandum of Law of Baosheng Media Group Holdings Limited's Motion to Dismiss the Third Amended Complaint filed on December 20, 2024 (Dkt. No. 145) ("Motion to Dismiss" or "MTD").

[2] Although Plaintiffs' factual allegations are accepted as true at this stage, Baosheng asks the court to rely on the Transcript where it contradicts the pleadings. That said, Baosheng does not concede that the Transcript accurately describes the events that are the subject of this action. Baosheng has grave concerns regarding the provenance, chain of custody, authentication, and completeness of the English translation of the Chinese transcript based on an unverified recording of a purported phone call in which the participants are not even identified by name. Importantly, the Transcript's certification is not signed by the translator nor indicates the translator's credentials; it is signed by a vice president at Divergent Language Solutions, LLC. *See Kasper Glob. Collection & Brokers, Inc. v. Glob. Cabinets & Furniture Mfrs. Inc.*, 952 F. Supp. 2d 542, 555 (S.D.N.Y. 2013) ("A certified translation is one to which the author swears that the contents are true and accurate and also swears to his or her identity and qualifications to translate the relevant languages."). Baosheng reserves the right to challenge the admissibility of the Transcript at the appropriate time.

In any event, Plaintiffs do not plausibly plead any material false statements in Baosheng's IPO disclosures. The TAC is premised on the allegation that Baosheng knowingly chose not to disclose a purported Chinese investigation, the detention of "executives," and a monetary fine, even though their own pleadings make clear that the investigation was not over until after the second half of 2021 – after the IPO and after entering into the SPA with Orient and Union. Each of these allegations is contradicted by the Transcript or is a conclusory allegation made upon information and belief, or both. Underlying this fatal pleading defect is the **glaring omission of *any* allegation** that Baosheng actually violated a Chinese law or the identification of such law. And while Golden purports to plead strict liability claims under Sections 11 and 12 of the Securities Act with a generic fraud disclaimer, the allegations in the TAC unavoidably sound in fraud.

## I.    Plaintiffs Assert the Wrong Pleading Standard

Plaintiffs attempt to stifle the court's reading of the Transcript on the flawed argument that the court must adopt Plaintiffs' interpretation of the document. (Opp. 1, 31). Plaintiffs, however, cite no authority undercutting the long-established rule that where a document relied on in the complaint contradicts the complaint's allegations, "***the document, not the allegations, controls***." *Poindexter v. EMI Record Group Inc.*, No. 11 Civ. 559, 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012) (emphasis added); *see also Hirsch v. Arthur Anderson & Co.*, 72 F.3d 1085, 1096 (2d Cir. 1995) (affirming dismissal where "attenuated allegations" were "contradicted ... by facts of which [the court] may take judicial notice").

Accordingly, where the Transcript contradicts the pleadings, the Court should determine that the Transcript controls. *See Rapoport,* 88 F. Supp. 2d at 184-185 ("[W]hen read as a whole, the article itself calls into question and, apparently, contradicts Plaintiffs' contention that Defendants violated Chinese law…[B]ased on the vague nature of Plaintiffs' allegations and

Plaintiffs' unconvincing reliance on the newspaper article, this Court concludes that Plaintiffs have failed to state a claim").

## II. Plaintiffs' Allegations Are Either Contradicted by the Transcript or Are Pled on Information and Belief

### A. The Transcript Contradicts Plaintiffs' Allegation About the Timing of an Investigation

In self-serving fashion, Plaintiffs allege that Baosheng was investigated by Chinese authorities "one to two months before and continuing through the date of the IPO." (TAC ¶ 52). In so doing, Plaintiffs coyly co-opt and transpose the "a month or two" language from the Transcript, which refers to Hu's statement that "[a] month or two before the company was listed. They started arresting *people*." (Tr: 13:28). But Hu clarified that "people" were first arrested at **Suncity**: "at the time, we thought arrests would only happen to that game company... **that Sogou** would not be affected." (Tr. 13:37-49). The Transcript shows that any "targeting" of Baosheng did not begin until after its IPO.

### B. The Transcript Contradicts Plaintiffs' Allegation About the Timing of Arrests

The Transcript documents Hu's statement that, **after** the IPO, "three people" were called in to "cooperate with the investigation," not arrested (Tr: 17:30-31) ("B: So it was really **listed first, and then** ... A: It wasn't actually called 'arrest' either…"). Plaintiffs' interpretation plainly contradicts the Transcript. (TAC ¶ 52(b)) ("Beginning one or two months before and continuing through the date of the IPO, Chinese authorities detained ten members of BAOS management team and its CEO went into hiding because of this investigation."); (Opp. 30-31)

### C. The Transcript Contradicts Plaintiffs' Allegation About the Timing and Extent of Suspensions in Operations

Contradicting Hu's express statement that the targeting of Baosheng did not begin until after the IPO, Plaintiffs allege that the investigation and detentions "caused significant disruptions" that "suspended its operations in the months leading up to the IPO." (TAC ¶ 52(c)). But Plaintiffs

plead no facts that even vaguely support what these "disruptions" were and how they were "significant." Plaintiffs never explain why the detention of "ten members" of "senior management" would have materially impacted the company's financials or operations. Plaintiffs provide no color on whether "ten members" constituted a majority of Baosheng's management team or these members' titles and positions, or how their detention impacted Baosheng's financials at the time of the IPO. Absent well-pleaded allegations in the TAC to support their vague assertion of "significant disruptions," Plaintiffs' claims should be dismissed.

### D. The Transcript Contradicts Plaintiffs' Allegation About Hu's Control over the Company

Plaintiffs allege that "around the time of the IPO, the Company was controlled by Hu, an undisclosed non-management, non-director stockholder." (TAC ¶ 52(d)). But the Transcript is clear: Hu states he took "control" after the IPO. (Tr 16:16) ("I took over the company as a matter of course… …Then what happened was that a fine was imposed, confiscating the entirety of income from this customer…That how this thing ended…They kept saying your BAOSHENG is also a listed company.")

### E. Neither Plaintiffs nor Hu Actually State That Baosheng Violated Chinese Law

Finally, and remarkably, Plaintiffs never allege that Baosheng violated a specific Chinese law. Plaintiffs never even attempt to allege how or why they claim Baosheng's violated any law – only offering one statement that Baosheng was targeted for "promot[ing] Suncity on Sogou" and was under investigation "because of its relationship with Sogou." (TAC ¶ 47). This fails to meet the Rule 8's more generous plausibility standard and also stands in stark contrast to their statements relating to the Suncity investigation (*Id.*) (explaining that Suncity was under investigation "since 2019 for illegal gambling and money laundering activity.").

Plaintiffs assert that "[b]ecause it possessed this information, BAOS breached the provisions in the SPA that warranted ... that it was not in violation of any law." (TAC ¶ 55).[3] The Opposition attempts to cure this defect with more vague assertions, arguing "BAOS falsely warranted that it had not violated Chinese law when the evidence indicates otherwise," (Opp. 72) (citing TAC ¶ 170), and that Baosheng "had been acting in violation of Chinese laws related to illegal gambling and money laundering." (*Id.)* (citing TAC ¶¶ 44, 47).

What Plaintiffs *do* allege is that Baosheng was fined 10 million RMB. (TAC ¶ 52(e)). Importantly, such an allegation is not tantamount to alleging a violation of the law. In *JiaJia Luo v. Sogou Inc.*, a case that also involved Sogou, the court acknowledged as much.[4] Nowhere in the Transcript is there any mention of Baosheng being found in violation of any law. Indeed, Hu states that Sogou was found to be an accomplice and fined, while Baosheng was fined but was not similarly found to be an accomplice.[5]

### III. Plaintiffs' Claims "Sound in Fraud," Requiring Compliance With Rule 9(b)'s Heightened Pleading Standard

In arguing that Rule 8 and not Rule 9(b) is the applicable pleading standard, Plaintiffs offers an inaccurate summary of *Pappas*,[6] suggesting it somehow undercuts *Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004), cited by Baosheng. (Opp. 8); (MTD 21). But *Pappas* explicitly recognizes that *Rombach* continues to provide the operative analysis for pleading standards in the Second Circuit. *Pappas,* 2024 WL at *2 ("*Rombach* instructs district courts to look not only to whether allegations

---

[3] The "information" is a reference to the allegations regarding the Chinese authorities' investigation, the detentions and "significant disruptions" to Baosheng, and Hu taking over the company. (TAC ¶¶ 51, 52, 55).

[4] *Jiajia Luo v. Sogou Inc.*, 465 F. Supp. 3d 393, 402 (S.D.N.Y. 2020) ("Following the investigation, regulatory authorities fined Sogou …[But] there was never a 'finding ... made by the Chinese authorities that Sogou's procedures prior to the IPO were in breach of any statute or law or were in fact deficient at all.") (citations and internal quotations omitted).

[5] (Tr. 15:07).

[6] *Pappas v. Qutoutiao Inc.*, No. 23-1233, 2024 WL 4588491 (2d Cir. Oct. 28, 2024).

are 'styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action' but also to '*the conduct alleged*.'") (citation omitted) (emphasis added).

Citing no authority at all, Golden claims that "[b]ecause Section 11 and 12 claims sound in strict liability or negligence, such claims are presumed to be subject to the Rule 8 notice pleading standard." (Opp. 7.) *Pappas* says no such thing. Indeed, the Second Circuit emphasized that district courts must engage in a careful analysis of the conduct, and the analysis is the same whether a party brings a Security Act claim or Exchange Act claim.[7] *See Pappas*, 2024 WL 4588491 at *1 ("When assessing the sufficiency of claims under [S]ections 11 and 12(a)(2) of the Securities Act, the structure of the analysis is guided by a preliminary inquiry into the nature of the plaintiff's allegations. [W]hile a plaintiff need allege no more than negligence to proceed under [Sections 11 and 12], ***claims that do rely upon averments of fraud are subject to the test of Rule 9(b).***") (citations and internal quotation omitted) (emphasis added). In *Pappas*, the Second Circuit concluded that the Securities Act claims were "framed in the classic language of negligence and strict liability," i.e., defendants had "failed to satisfy their duty" to ensure that the offering documents did not contain misstatements or omissions." *Id.* at *2. The Court emphasized that while "the underlying conduct was alleged to have been intentional, Plaintiff does not allege that the failure to disclose that conduct was either intentional or reckless." *Id.* at *3.

Here, Plaintiff are alleging more than mere "failure to disclose" as would give rise to strict liability. Instead, they assert that Baosheng acted *intentionally* by choosing not to disclose what Plaintiffs paint as a complete displacement of the company's management at the time of the IPO where only Hu was in control. (Opp. 4-5) ("In the absence of any executive management team, Yanjun Hu admitted he 'took over the company as a matter of course…[T]he the Registration

---

[7] Thus, Golden's attempt to distinguish this case from cases bringing Exchange Act and Securities Act claims falls short. (Opp. 8).

Statement and Prospectus painted a far rosier picture. For example, BAOS trumpeted 'management's extensive industry experience, deep industry insights and well-establish network of media resources,' while those skilled managers were sitting in a Chinese jail cell.") (citing TAC ¶¶ 51, 59, 52(b)).  Despite Plaintiffs attempt to frame this as a negligence case, these claims unambiguously sound in fraud. *See also* MTD 21 ("The TAC hinges on allegations that Baosheng's executive team knowingly 'concealed' material information to 'induce investors' to purchase common shares ... *See* TAC ¶¶ 54 (directors and executives 'knew'), 152 (inducement), and 156 ('concealed and failed to disclose material facts').").[8] *Pappas* recognized that these are the precise circumstances where courts will apply Rule 9(b)'s heightened pleading standard. *Pappas*, 2024 WL 4588491 at *2-3 (The signer of…a registration statement under Section 11 of the Securities Act or the offeror or seller of a security under Section 12 may negligently fail to disclose conduct that another has engaged in intentionally. Such circumstances may be contrasted with cases in which the plaintiff alleged that defendants ***intentionally concealed information in the filing*** at issue.") (emphasis added)).

Plaintiffs proclaim that Baosheng "possessed this information," (TAC ¶ 55), referring to the purported investigation that was ongoing "through the date of the IPO,"[9] the detentions, and other activities (TAC ¶ 55).  Referring to "the investigation by Chinese authorities," the detention of Baosheng managers, and the CEO going "into hiding" in the "months leading up to the IPO," Plaintiffs assert that Baosheng "did not disclose any of this information to investors."  (TAC ¶ 53). Plaintiffs double down on this language in the Opposition. *See, e.g.*, Opp. 21 ("Yanjun Hu was

---

[8] Plaintiffs wrongly claim that Baosheng only relies on "references to or direct quotes from" the Securities Act. (Opp. 10) ("As evidence, they claim the TAC uses phrases like 'materially misleading,' 'untrue statements of material facts,' and 'failed to disclose material facts.'") (misciting MTD at 21).

[9] By Plaintiffs' own allegations (which Baosheng is required to credit as true only for the limited purpose of this motion but notes their actual falsity), at the time of the IPO, Baosheng was only the subject of an ongoing investigation, not any criminal charge or adjudication. (TAC ¶ 55).

never publicly identified as being in control of BAOS, the TAC adequately alleges that he controlled BAOS behind the scenes when it filed false statements in the United States); *id.* 38-39 (asserting that Baosheng knew but failed to disclose "the detention of BAO's executive team or its CEO secreting into hiding," while simultaneously filing a Registration Statement and Prospectus that "trumpeted the talent and experience of the management team").

These allegations taken together constitute a pairing "classically associated with fraud" *Rombach*, 355 F.3d at 172 (2d Cir. 2004). Having affirmatively chosen to allege conduct that sounds in fraud, Plaintiffs cannot then cherry-pick its own pleadings to sidestep its way to a different pleading standard.[10]

## IV.    Golden Fails to Plead Item 303 Violation

Item 303 of Regulation S-K requires disclosure of "any known trends or uncertainties" that have had or that the registrant reasonably expects will have a material ... unfavorable impact on net sales or revenues or income from continuing operations." 17 CFR § 229.303. Golden alleges that under Item 303 Baosheng had an obligation to disclose that "its executive team had been detained, its CEO went into hiding, the company suspended operations, that Hu took control of BAOS, and the impeding loss of its relationship with Sogou."  (Opp. 33). The cases relied on by Golden are distinguishable.[11]

In each, the *results of an ongoing investigation* were likely to generate liability—and thus a material unfavorable impact—for the defendant.  In *City of Westland*, the court concluded that

---

[10] Plaintiffs also cite *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 705, 715 (2d Cir. 2011) for the proposition that "Rule 8 applies ... where the complaint 'explicitly does not allege fraud.'" This is not an actual finding in *Litwin*, as the court decided to apply a notice pleading standard where defendant "does not argue on appeal that plaintiffs' claims are premised on allegations of fraud." In any case, the Second Circuit has repeatedly underscored that "[a] plaintiff cannot avoid the strictures of Rule 9(b) by the mere expedient of disclaiming that its claims sound in fraud." *Pappas*, 2024 WL at *2.
[11] *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 928 F. Supp. 2d 705 (S.D.N.Y. 2013); *Indiana Public Retirement System v. SAIC, Inc.,* 818 F.3d 85 (2d Cir. 2016).

the plaintiff adequately pleaded a violation of Item 303 for not reporting an investigation in alleging defendant MetLife failed to utilize a government database in determining payments to life insurance policyholders, for which MetLife acknowledged would likely result in payouts to additional life insurance beneficiaries. *City of Westland*, 928 F. Supp. 2d at 718 ("Defendants reasonably should have expected that the state investigation would cause MetLife to alter its ... reserves."). In *Indiana Public*, the Second Circuit concluded that the plaintiff adequately pleaded a violation of Item 303 for not reporting an investigation based on allegations that the defendant knew about a fraudulent overbilling scheme in which it could be implicated to repay fraudulent bills. *Indiana Public*, 818 F.3d at 96.

Plaintiffs do not allege anything to support a violation under Item 303 and, in particular, a "material ... unfavorable impact." Although Plaintiffs allege that Hu "took control" of Baosheng, such an allegation would, if anything, suggest that there was ultimately no disruption in operations at Baosheng (due to the continuation of operation through a control person). Finally, Plaintiffs' allegation that Baosheng failed to report "the impending loss of its relationship with Sogou" is entirely conclusory, as it presupposes the existence of "any known trends" that might lead to that result, which Plaintiffs fail to plead. Setting Plaintiffs' case law aside, the existence of events taking place only two months prior to the IPO is insufficient to establish "any known trends" as outlined in Item 303. *See, e.g.*, *In re AppHarvest Sec. Litig.*, 684 F. Supp. 3d 201, 271 (S.D.N.Y. 2023) ("Courts in this District thus have repeatedly held that events occurring within a few months prior to a defendants' public filing do not establish a trend for the purposes of the discloses required by Item 303"); *Ngueyn v. MaxPoint Interactive, Inc.*, 234 F. Supp. 3d 540, 546 (S.D.N.Y. 2017) ("[E]vents occurring within a two month period of time do not establish a 'trend' for purposes of the discloses required by Item 303"). At best, Plaintiffs allege events taking place "one to two months" prior to the IPO, and as such, they cannot even plead a "known trend."

**V.     Golden Fails to Plead Section 11 and Section 12 Violations, Given its Failure to Plead Any Material Misrepresentation**

The Opposition does not disagree with Baosheng's argument that there is no independent obligation to disclose an investigation.

Notably, Golden cites to *Meyer v. JinkoSolar Holdings Co.*, 761 F.3d 245, 250 (2d Cir. 2014) for the proposition that "[e]ven when there is no existing independent duty to disclose information, once a company speaks on an issue or topic, there is a duty to tell the whole truth." *Id.*   According to Golden, Baosheng's IPO disclosures required Baosheng to make further disclosures "including disclosing the investigation, suspension of activities, its shadow CEO, and the imminent loss of Sogou as a client." (Opp. 36).[12] Golden omits the necessary qualifier highlighted in its own citations, that "upon choosing to speak, one must speak truthfully about *material issues*." *JinkoSolar*, 761 F.3d at 250 (quoting *Caiola v. Citibank, N.A.*, 295 F.3d 312, 331 (2d Cir. 2002) (emphasis added); *see also id.* at 251 ("[o]f course, the misleading omission must be *material*") (emphasis added).

Plaintiffs' citations[13] in support of the proposition that "[c]ourts have concluded that operational-based misrepresentations and omissions of far less consequence are material" are highly misleading. For instance, in *Flynn* and *JinkoSolar*, the courts found that plaintiff had adequately alleged material misrepresentations because the defendant made false representations about regulatory compliance, not their operations.  *See Flynn*, 2015 WL at *11; *JinkSolar*, 761 F.3d 245 at 251. Regarding the remaining cases, the alleged material representations or omissions

---

[12] Plaintiffs' reliance on *Kline v. First Western Government Securities* is misplaced. 24 F.3d 480, 490-91 (3d Cir. 1994) ("[t]his case ... presents the question of whether, once a law firm has chosen to speak, it may omit facts *material* to its non-confidential opinions") (emphasis added).

[13] (Opp 37-38) (citing *SEC v. Nielson*, 2020 WL 9439395 (D.D.C. Feb. 13, 2020), *Flynn v. Sientra, Inc.*, 2016 WL 3360676 (C.D. Cal. June 9, 2016), *Zuckerman v. Smart Choice Auto Grp., Inc.*, 2000 WL 33996254 (M.D. Fla. Aug. 29, 2000); *JinkoSolar*, 761 F.3d 245 at 251; *LeMatta v. Casper Sleep, Inc.*, 2022 WL 4637795 (E.D.N.Y. Sept. 30, 2022)).

concerned long-term fundamental aspects of the business' operations. *Nielson*, 2020 WL 9439395 at *14 (defendant corporation had ceased operations entirely, with no plans to continue operation at the time of its statemen); *Zuckerman*, 2000 WL 33996254, at *5 (defendant's subsidiary had been *sold* and so would have no continuing operations); *LeMatta*, 2022 WL 4637795, at *10 (defendant made affirmative misrepresentations regarding fundamental aspects of its long-term business fundamentals, leading reasonable investors to believe that Casper's purported secure distribution and manufacturing network would significantly contribute to its growth, and thus the sustainability and profitability of Casper.")

Similarly, Golden cites inapposite decisions[14] for its proposition that representations about "the identity of who is running the Company" are material. The defendants in *Danjanovich* defendants misrepresented that one of its leaders had a felony conviction. In *Poirer*, defendants failed to disclose the existence of a control group of defendants' corporations. As before, these cases concern long-term fundamental conditions of the relevant entity. In contrast, here, Golden alleges temporary operational disruptions relating to an investigation, *in which Baosheng is not alleged to have violated the law*. And as outlined above, there is no tangible allegation in the TAC or Transcript of significant disruptions in operations before the IPO. *Supra* Section II.

## VI.     Golden's Securities Claims are Otherwise Time Barred

Golden, a sophisticated investor, was on inquiry notice of its Securities Act claims when Baosheng disclosed the risks of failing to renew its contract with Sogou in its January 2021 IPO disclosures and then issued a press release in September 2021 when the termination of its agency agreement with Sogou did, in fact, cause a negative impact on the Company's revenue. MTD 20.

---

[14] (Opp. 38-39) (citing *Danjanovich v. Robbins*, 2006 U.S. Dixt. LEXIS 52508 (D. Utah July 28, 2006) and *SEC v. Poirier*, 140 F. Supp. 2d 1033 (D. Ariz. 2001)).

To plead around these undisputed facts, Golden mainly relies on the "discovery" standard and argues the loss of Sogou's business, on its own, "would not – and did not – provide an ordinary investor with any indication of a securities violation." (Opp. 25-26).[15] The Opposition fallaciously argues that "nothing in BAOS's forward-looking statements or disclaimer in the Registration Statements and Prospectus about the possibility of losing Sogou provide any basis for a reasonable investor to conduct additional investigation." But Baosheng's Prospectus *specifically* warned that the non-compliance of third parties could disrupt its business. MTD 6-7 (citing Prospectus 21). This non-compliance by third-parties is, moreover, explicitly identified by Hu as the basis of the investigation which Golden argues needed to be reported.

Oddly, the Opposition states that "[m]ost courts in this District" apply the "discovery" notice standard, as adopted by the Supreme Court in *Merck & Co. v. Reynolds*, 559 U.S. 633 (2010), "to Securities Act claims." (Opp. 23 n. 15). Golden omits that the Supreme Court adopted this standard in the context of *an Exchange Act claim*, and the Second Circuit has confirmed that *Merck* applies to Exchange Act claims but has not decided which standard applies to Securities Act claims. *Yi Xiang v. Inovalon Holdings, Inc.*, 268 F. Supp. 3d 515, 520 (S.D.N.Y. 2017) (citing *City of Pontiac Gen. Employees' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 174 (2d Cir. 2011)) (emphasis added).

"Even uinder the less-onerous discovery rule, courts have acknowledged that a reasonably diligent plaintiff would undertake an investigation based on ... 'news articles and analyst's reports' and 'prospectuses, quarterly reports, and other information related to their investments.'" *Youngers*

---

[15] In response to Baosheng's assertion that Golden could have taken steps to inspect Baosheng's books and records, the Opposition asserts that Baosheng "prohibited" Golden's access to the Company's books and records. (Opp. 23). However, Baosheng only presented the inspection of books and records as one option among many for learning of the basis for its claims. (MTD 27) ("...or made other efforts to assess whether there was cause for concern...").

*v. Virtus Inv. Partners Inc.,* 195 F. Supp. 3d 499, 521 (S.D.N.Y. 2016). Golden understood that Baosheng's contract with Sogou accounted for over 80% of Baosheng's revenue in some years and that Sogou was a "top customer" since 2016. (TAC ¶¶ 70, 75). Baosheng's loss of Sogou as a client, which was clearly disclosed by September 2021, should have prompted Sogou to investigate their Securities Act claims three years ago and are thus time-barred.

## VII.     Orient and Union's Breach of Contract Arguments Fail

### A.     Orient and Union Fails to Plead Breach of Section 3.1(l) Warranty

Orient and Union argue that they "were not required to identify a particular statute that was at issue in the investigation" in pleading breach of the Section 3.1(l) warranty (Opp. 86). Orient and Union mischaracterize *Gerszberg v. Iconix Brand Grp., Inc.* to suggest that the plaintiff there merely alleged that defendant "had been acting in violation of U.S. securities laws." 17-cv-8421, 2018 WL 2108239, at *8 (S.D.N.Y. May 7, 2018). In reality, *Gerszberg* involved detailed allegations of specific activities of improper accounting practices and issuing false financial statements, i.e., clear examples of activities that violated U.S. securities laws. *Id.* at *8. By not only referencing U.S. federal securities law but also pleading the specific activity purportedly violating the law, the plaintiff in *Gerszberg* gave the defendant sufficient notice – the hallmark of the notice pleading standard.

But Orient and Union ***do not even plead that Baosheng violated a specific Chinese law, let alone plead that Baosheng violated Chinese law at all***. Orient and Union deserve no favorable inferences. Plainly, a mere reference to Baosheng's "relationship" with Sogou and an investigation into Suncity's illegal activities is not enough. (TAC ¶ 47). *See Rapaport*, 88 F. Supp. 2d at 184 ("Neither the article nor the amended complaint identifies in any way the specific Chinese law that Defendants violated or the nature of the alleged violation.").

It cannot be overstated that Hu does not say in the Transcript that Baosheng violated Chinese law. At best, Hu suggests that Baosheng incurred a fine. *JiaJia Luo*, 465 F. Fupp. 3d at 402 (noting that Sogou incurred a fine and there was never a 'finding ... made by the Chinese authorities that Sogou's procedures prior to the IPO were in breach of any statute or law or were in fact deficient at all."). As such, the TAC falls woefully short of adequately pleading breach of Section 3.1(l) of the SPA.

## B. Orient and Union Fails to Plead Breach of Section 3.1(i) and (j) Warranty

Union and Orient persistently miscast the definition of Material Adverse Effect. In order to allege a Material Adverse Effect, Union and Orient must allege "a material adverse effect on the *results of operations*, assets, business, or condition (financial or otherwise) of the Company and the Subsidiaries, taken as a whole." (MTD Ex. F, Section 3.1(b)) (emphasis added). However, the barebones allegations of the detention, a CEO in hiding, the suspension of operations, and Hu taking control, at best, would be no more than an effect *on the operations themselves*, not the "results of operations." Union and Orient fail to correctly parse the language of the SPA and thus fail to plead breach of Section 3.1(i) and (j).

Again, it bears emphasis that Plaintiffs' allegations contradict the Transcript, which clearly states that (i) Baosheng was not targeted until after the IPO; (ii) it was not actually an arrest or detention, but rather Baosheng sent "a dozen people over there to cooperate and to tell about the situation," referring to the investigation of Suncity; and (iii) at that time, ***nobody expected Baosheng to be affected*** by the investigation, and even "that Sogou would not be affected." (Tr. 13:49).

### C. Orient and Union Fails to Plead Breach of Section 3.1(x)

Orient's and Union's arguments for breach of Section 3.1(x) are not substantively different from arguments it makes elsewhere. Accordingly, Baosheng reiterates the points above regarding the insufficiency of Plaintiff's pleadings, and their being contradicted by the Transcript.

Orient and Union allege breach of Section 3.1(x) based on Baosheng's "public disclosures contain[ing] material misrepresentations and omissions." (TAC ¶ 171). In their Opposition, Orient and Union note this claim derives from their securities claims, as their securities claims allege misstatement and omission with respect to the very same public disclosures (i.e., the Registration Statement and Prospectus). (Opp. 28-39, 74). As such, Orient and Union's arguments for breach of Section 3.1(x) are not substantively different from their securities claims argued earlier. Accordingly, Baosheng reiterates its earlier arguments regarding the insufficiency of Plaintiff's pleadings, and their being contradicted by the Transcript. *See supra* Section V.

### CONCLUSION

For the reasons set forth in the moving papers and herein, the Court should dismiss the Third Amended Complaint with prejudice and grant such other relief as is just and necessary.

Dated: New York, New York
March 7, 2025

Respectfully submitted,

HOLLAND & KNIGHT LLP

By: ___*/s/ Warren E. Gluck*___
Warren E. Gluck
787 Seventh Avenue, 31st Floor
New York, New York 10019
Telephone: (212) 513-3200
warren.gluck@hklaw.com

*Counsel for Defendant*
*Baosheng Media Group Holdings Limited*

I, Warren E. Gluck, an attorney duly admitted to practice law before this Court, hereby certifies that this memorandum of law complies with the word limit set forth in Rule 3.C of Your Honor's Individual Rules of Practice in Civil Cases (rev. Oct. 10, 2024) because it contains 4,983 words, excluding the parts of the motion exempted from the word limit under Rule 3.C. In preparing this certification, I have relied on the word count of the word-proceeding system used to prepare this memorandum of law.

Dated: New York, New York
      March 7, 2027

                                             */s/ Warren E. Gluck*
                                             Warren E. Gluck, Esq.