UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ORIENT PLUS INTERNATIONAL
LIMITED; UNION HI-TECH
DEVELOPMENT LIMITED; and GOLDEN
GENIUS INTERNATIONAL LIMITED,

                              Plaintiffs,

        -against-                                          Case No. 1:24-cv-00744 (JLR)

BAOSHENG MEDIA GROUP HOLDINGS                              **<u>OPINION AND ORDER</u>**
LIMITED; WENXIU ZHONG; SHENG
GONG; YU ZHONG; ZUOHAO HU; ADAM
(XIN) HE; YUE JIN; UNIVEST
SECURITIES, LLC; THE BENCHMARK
COMPANY, LLC; and WESTPARK
CAPITAL, INC.,

                              Defendants.

JENNIFER L. ROCHON, United States District Judge:

        Last month, the Court held that Golden Genius International Limited ("Golden")

adequately stated claims under the Securities Act of 1933, 15 U.S.C. § 77a *et seq.*,

against Baosheng Media Group Holdings Limited ("Baosheng"), seven individuals, and

three underwriters. *See generally Orient Plus Int'l Ltd. v. Baosheng Media Grp.

Holdings Ltd.* (*Orient I*), --- F. Supp. 3d. ---, 2025 WL 2613530 (S.D.N.Y. Sept. 10,

2025). In relevant part, the Court found that Golden plausibly alleged that three of

Baosheng's independent directors, Yu Zhong, Zuohao Hu, and Adam (Xin) He

(the "Independent Directors"), violated section 11 of the Securities Act, 15 U.S.C. § 77k.

The Independent Directors had also moved to dismiss those section 11 claims for lack of

personal jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2), but

the Court deferred ruling on that motion due to the novel questions raised by the Supreme

Court's intervening decision in *Fuld v. Palestine Liberation Organization. See* 145 S. Ct.

2090, 2106 (2025) ("[W]e hold today that the Fifth Amendment does not impose the same jurisdictional limitations as the Fourteenth . . . ."). The Court requested additional briefing on the issue of personal jurisdiction, and Plaintiffs and the Independent Directors have since submitted supplemental briefs addressing the impact of *Fuld* on this case. *See* Dkt. 182 ("Df. Br."); Dkt. 186 ("Pl. Br.").

As set forth below, the Court finds that Plaintiffs have made a *prima facie* showing that the exercise of personal jurisdiction over the Independent Directors is proper and consistent with the Fifth Amendment. Accordingly, the Independent Directors' motion to dismiss for lack of personal jurisdiction is DENIED.

## LEGAL STANDARD

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, 'the plaintiff bears the burden of establishing personal jurisdiction over the defendant.'" *Contant v. Bank of Am. Corp.*, 385 F. Supp. 3d 284, 290 (S.D.N.Y. 2019) (quoting *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012)). "[T]he showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it 'varies depending on the procedural posture of the litigation.'" *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). "'[W]hen a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing' of jurisdiction." *Contant*, 385 F. Supp. 3d at 290 (alteration in original) (quoting *MacDermid*, 702 F.3d at 727). "[T]he pleadings and affidavits [are to be construed] in the light most favorable to plaintiffs, resolving all doubts in their favor." *Id.* (alterations in original) (quoting *Dorchester*, 722 F.3d at 85). "A prima facie showing of personal jurisdiction requires: (1) procedurally

proper service of process, (2) 'a statutory basis for personal jurisdiction that renders such service of process effective' and (3) that 'the exercise of personal jurisdiction . . . comport with constitutional due process principles.'"  *Id.* (quoting *Waldman v. Pal. Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016)).

Relevant here, Rule 4(k)(1)(C) provides that "[s]erving a summons . . . establishes personal jurisdiction over a defendant . . . when authorized by a federal statute."  Fed. R. Civ. P. 4(k)(1)(C); *see also BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 409 (2017) ("Congress' typical mode of providing for the exercise of personal jurisdiction has been to authorize service of process.").  In this case, section 22 of the Securities Act supplies that authorization and permits both nationwide and worldwide service of process.  15 U.S.C. § 77v(a) ("[P]rocess . . . may be served . . . in any . . . district of which the defendant is an inhabitant or wherever the defendant may be found."); *see Sec. & Exch. Comm'n v. Straub*, 921 F. Supp. 2d 244, 252 (S.D.N.Y. 2013) (noting that section 22 "provid[es] for worldwide service of process"); Fed. R. Civ. P. 4 advisory committee's notes to 1963 amendment ("[Section 22] authoriz[es] service on nonresidents in such terms as to warrant the interpretation that service abroad is permissible."); *see also Daniel v. Am. Bd. of Emerg. Med.*, 428 F.3d 408, 422 (2d Cir. 2005) (noting that similar language in section 12 of the Clayton Act "provides for worldwide service of process" in properly venued cases); *Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1340 (2d Cir. 1972) (noting that similar language in section 27 of the Securities Exchange Act of 1934 "demonstrates an intention to authorize service on a defendant who can be 'found' only in a foreign country").  Together, Rule 4(k)(1)(C) and section 22 empower this Court to exercise personal jurisdiction over all properly served Defendants in this case — including those who are neither citizens nor residents of the United

States — "to the extent that the Due Process Clause of the Fifth Amendment permits." *Orient I*, 2025 WL 2613530, at *10 (quoting *In re Alstom SA*, 406 F. Supp. 2d 346, 398 (S.D.N.Y. 2005)); *cf. Leasco*, 468 F.2d at 1340 (interpreting section 27 of the Exchange Act to "infer that Congress meant to assert personal jurisdiction over foreigners not present in the United States to but, of course, not beyond the bounds permitted by the due process clause of the Fifth Amendment").

## DISCUSSION

The Independent Directors do not contest the propriety of Plaintiffs' service of process or section 22's authorization of personal jurisdiction. Rather, they argue that this Court's exercise of personal jurisdiction over them would not comport with the Due Process Clause of the Fifth Amendment. For the reasons that follow, the Court disagrees and finds that Plaintiffs have made a *prima facie* showing of personal jurisdiction over the Independent Directors.

### I.    *Fuld v. Palestine Liberation Organization*

As this Court explained in *Orient I*, the "due process test for personal jurisdiction" under the Fourteenth Amendment "has two related components: the 'minimum contacts inquiry' and the 'reasonableness' inquiry." 2025 WL 2613530, at *10 (quoting *Straub*, 921 F. Supp. 2d at 252). While the Fifth Amendment analysis used to be "basically the same" under Second Circuit precedent, *id.* (quoting *Fuld v. Pal. Liberation Org.*, 82 F.4th 74, 86 (2d Cir. 2023)), the Supreme Court upended that precedent in *Fuld* "and 'decline[d] to import the Fourteenth Amendment minimum contacts standard into the Fifth Amendment,'" *id.* at *11 (quoting *Fuld*, 145 S. Ct. at 2105). As *Fuld* explains, both amendments "protect[] the individual's right to be subject only to lawful power," but "whether a judicial judgment is lawful depends on whether the

sovereign has authority to render it." 145 S. Ct. at 2105 (quoting *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011) (plurality opinion)). And while "State sovereign authority is bounded by the States' respective borders[,] . . . '[t]he Constitution creates no such relation between the United States and foreign countries as it creates between the States themselves.'" *Id.* at 2104 (second alteration in original) (quoting *Burnet v. Brooks*, 288 U.S. 378, 405 (1933)). Thus, "the Due Process Clause of the Fifth Amendment necessarily permits a more flexible jurisdictional inquiry commensurate with the Federal Government's broader sovereign authority." *Id.* at 2105.

The Supreme Court did not set forth a precise Fifth Amendment standard in *Fuld*, nor did it "purport to delineate the outer bounds of the Federal Government's power, consistent with due process, to hale foreign defendants into U.S. courts." *Id.* at 2106. Instead, it determined that "whatever the Fifth Amendment's outer limits on the territorial jurisdiction of federal courts, the [Promoting Security and Justice for Victims of Terrorism Act ('PSJVTA')] does not transgress them." *Id.*; *see* 18 U.S.C. §§ 2333, 2334. In lieu of conducting a minimum-contacts analysis, and without "further consider[ing] the matter through the lens of consent," the *Fuld* Court found it sufficient "that the statute ties the assertion of jurisdiction to predicate conduct that in and of itself bears a meaningful relationship to the United States." 145 S. Ct. at 2109. The Court next deemed it unnecessary to decide whether a separate "reasonableness" analysis was required under the Fifth Amendment "because, even if it were, the PSVJTA easily comports with the factors [the Court has] previously applied to determine 'the reasonableness of the exercise of jurisdiction' even under the Fourteenth Amendment." *Id.* (quoting *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 113 (1987)).

## II.    Defendant Adam (Xin) He Has Minimum Contacts with the United States

The Court begins its analysis with Defendant He, who is not a U.S. citizen but resides in the United States.  *See* Dkt. 128 ("TAC") ¶ 15 ("Adam (Xin) He is a citizen of China and resides in the United States and China."); Dkt. 147-1 (declaring that "I [Adam (Xin) He] currently live and work in Chicago, Illinois").  Plaintiffs contend that "[e]ven before the Supreme Court's decision in [*Fuld*], this Court had personal jurisdiction over Defendant Adam (Xin) He" because he "liv[es] within the territorial borders of the United States."  Pl. Br. at 1.  The Court agrees.

Prior to *Fuld*, it was "well established that a nationwide service of process statute provides personal jurisdiction over any defendant with minimum contacts with the United States as a whole."  *PACE Indus. Union-Mgmt. Pension Fund v. Singer*, No. 10-cv-02387 (JG) (JMA), 2011 WL 841142, at *2 (E.D.N.Y. Mar. 8, 2011); *accord Straub*, 921 F. Supp. 2d at 253 ("When the jurisdictional issue flows from a federal statutory grant that authorizes suit under federal-question jurisdiction and nationwide service of process, . . . the Fifth Amendment applies, and the Second Circuit has consistently held that the minimum-contacts test in such circumstances looks to contacts with the entire United States rather than with the forum state.").  And, as the Second Circuit held more than fifty years ago in *Mariash v. Morrill*, "where . . . the defendants reside within the territorial boundaries of the United States, the 'minimal contacts,' required to justify the federal government's exercise of power over them, are present."  496 F.2d 1138, 1143 (2d Cir. 1974) (footnote omitted); *accord Saba Cap. Master Fund, Ltd. v. BlackRock Mun. Income Fund, Inc.*, 710 F. Supp. 3d 213, 223 (S.D.N.Y. 2024), *aff'd sub nom. Saba Cap. Master Fund, LTD. v. Blackrock ESG Cap. Allocation Tr.*, No. 23-8104, 2024 WL 3174971 (2d Cir. June 26, 2024) (summary order), *cert. granted sub nom. FS Credit*

*Opportunities Corp. v. Saba Cap. Master Fund, Ltd.*, 145 S. Ct. 2842 (2025) (mem.);

*FTC ex rel. James v. Quincy Bioscience Holding Co., Inc.*, 389 F. Supp. 3d 211, 218

(S.D.N.Y. 2019). "Indeed," the court reasoned, "the 'minimal contacts' principle does

not . . . seem particularly relevant in evaluating the constitutionality of in personam

jurisdiction based on nationwide, but not extraterritorial, service of process. It is only the

latter, quite simply, which even raises a question of the forum's power to assert control

over the defendant." *Mariash*, 496 F.2d at 1143 (footnote omitted); *see also First Fed.*

*Sav. & Loan Ass'n of Pitt. v. Oppenheim, Appel, Dixon & Co.*, 634 F. Supp. 1341, 1347

(S.D.N.Y. 1986) (noting that *Mariash* stands for the proposition that "'minimum

contacts' limitations do not apply to *in personam* jurisdiction based on nationwide service

of process under [the Exchange Act]").

Thus, where a federal statute authorizes nationwide service of process, the

court may generally exercise personal jurisdiction, consistent with due process, over a

properly served defendant who resides in the United States. *See SLSJ, LLC v. Kleban*,

No. 14-cv-00390 (CSH), 2015 WL 1973307, at *12 (D. Conn. Apr. 30, 2015) ("Under

such circumstances, the 'exercise of jurisdiction is justified if the defendant resides

within the territorial boundaries of the United States and has been properly served.'"

(quoting *In re Michaelesco*, 288 B.R. 646, 652 (D. Conn. 2003))); *Steinberg & Lyman v.*

*Takacs*, 690 F. Supp. 263, 265 (S.D.N.Y. 1988) (similar); *see, e.g.*, *NLRB v. Schmidt*,

No. 23-mc-00051 (VEC), 2023 WL 8005766, at *2 (S.D.N.Y. Nov. 16, 2023) (finding

that defendants who lived in the United States and were properly served pursuant to a

nationwide service-of-process provision had sufficient minimum contacts with the United

States); *PACE Indus.*, 2011 WL 841142, at *2 (similar); *Am. Med. Ass'n v. United*

*Healthcare Corp.*, No. 00-cv-02800 (LMM), 2001 WL 863561, at *5 (S.D.N.Y. July 31,

2001) ("As corporations which reside in the United States, [defendants] are subject to nationwide service of process under ERISA and to the personal jurisdiction of this [c]ourt."). Because Defendant He resides and works in the United States and does not dispute that he was properly served, the Court finds that he has sufficient minimum contacts with the United States under the more exacting pre-*Fuld* standard.

"While the exercise of jurisdiction is favored where the plaintiff has made a threshold showing of minimum contacts at the first stage of the inquiry, it may be defeated where the defendant presents 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Straub*, 921 F. Supp. 2d at 258 (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996)). "The burden is on the defendant to demonstrate that the assertion of jurisdiction in the forum will 'make litigation "so gravely difficult and inconvenient" that a party unfairly is at a "severe disadvantage" in comparison to his opponent.'" *Sec. & Exch. Comm'n v. Stubos*, 634 F. Supp. 3d 174, 187 (S.D.N.Y. 2022) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)). "Reasonableness . . . will depend in each case 'on an evaluation of several factors,' including 'the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief.'" *Fuld*, 145 S. Ct. at 2109 (quoting *Asahi*, 480 U.S. at 113); *see id.* (declining to "determine whether such analysis is constitutionally required" because the "[t]he PSJVTA ticks all three boxes").

To the extent that a "reasonableness" inquiry under the Fifth Amendment is still necessary after *Fuld*, the Court finds it easily satisfied as to Defendant He. "Where, as here, a non-diversity action is brought under a federal law which provides for nationwide service of process, '[t]he reasonableness inquiry is largely academic . . . because of the strong federal interests involved.'" *U.S. Sec. & Exch. Comm'n v. Passos*, 760 F. Supp.

3d 95, 113 (S.D.N.Y. 2024) (alteration and omission in original) (quoting *Stubos*, 634 F. Supp. 3d at 187). Only rarely have courts "declined jurisdiction, on fairness grounds, in such cases." *Straub*, 921 F. Supp. 2d at 259 (quoting *Sec. & Exch. Comm'n v. Syndicated Food Servs. Int'l, Inc.*, No. 04-cv-01303 (NGG) (ALC), 2010 WL 3528406, at *3 (E.D.N.Y. Sept. 3, 2010)). This case presents no exception. Defendant He lives and works in Chicago and would suffer little hardship litigating this case in New York. *Cf. Passos*, 760 F. Supp. 3d at 113 (finding no reasonableness barrier where noncitizen defendant spoke little English, lived abroad, and "ha[d] no ties to the United States" (citation omitted)). It is also well established that "[t]he United States has a substantial interest in the enforcement of its securities laws and the protection of investors in United States securities markets." *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 479 (S.D.N.Y. 2001); *see Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 802 (S.D.N.Y. 2018) ("[B]ecause this [securities] case was brought under federal law, the judicial system has a strong federal interest in resolving this issue here." (quoting *Straub*, 921 F. Supp. 2d at 259)); *cf. Fuld*, 145 S. Ct. at 2109 (highlighting the Supreme Court's past recognition of "the 'significant interests' of a forum State in 'providing [its] residents with a convenient forum for redressing injuries inflicted by out-of-state actors'" (alteration in original) (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 368 (2021))). Similarly, Plaintiffs' "interest in obtaining a convenient and efficient resolution of this [securities] dispute is self-evidently strong." *In re Banco Bradesco*, 277 F. Supp. 3d 600, 646 (S.D.N.Y. 2017). At bottom, there is no indication that Defendant He's participation in this case would be "'so gravely difficult and inconvenient' as to render the 'exercise of personal jurisdiction . . . unreasonable and unfair.'" *Fuld*, 145 S. Ct. at 2110 (omission in

original) (citations omitted) (first quoting *Burger King*, 471 U.S. at 478; and then quoting *Asahi*, 480 U.S. at 116).

In sum, both prongs of the pre-*Fuld* Fifth Amendment inquiry — minimum contacts and reasonableness — are satisfied as to Defendant He.  Because satisfying that standard necessarily "satisf[ies] the more flexible personal jurisdictional standards set forth in *Fuld*," *In re Fairfield Sentry Ltd.*, 671 B.R. 404, 418 (Bankr. S.D.N.Y. 2025), the Court finds that the exercise of personal jurisdiction over Defendant He comports with due process.

## III.    The Independent Directors' Meaningful Relationship with the United States

The Independent Directors maintain that *Fuld* "leaves undisturbed a fundamental requirement of due process under both the Fifth Amendment and the Fourteenth" — "that there must be some meaningful nexus among the United States, the defendant's alleged conduct, and the cause of action."  Df. Br. at 2; *see Fuld*, 145 S. Ct. at 2109 (holding that the PSJVTA "ties the assertion of jurisdiction to predicate conduct that in and of itself bears a meaningful relationship to the United States").  They emphasize that "the Supreme Court explicitly declined to adopt the *Fuld* petitioners' 'maximalist' theory of personal jurisdiction under the Fifth Amendment, which would 'impose[] no territorial limits on personal jurisdiction,'" Df. Br. at 2-3 (alteration in original) (emphasis omitted) (quoting *Fuld*, 145 S. Ct. at 2106), and urge this Court not to dispense with the "foundational due process requirements [that] are necessary to protect defendants' liberty interests in not being haled into courts of fora with which they have no meaningful relationship, and in having fair warning that a particular activity might subject them to such jurisdiction," *id.* at 3.  In response, Plaintiffs argue that the Independent Directors' "'meaningful territorial nexus' test," grounded in individual-liberty considerations, "is

irreconcilable with *Fuld*." Pl. Br. at 2. They maintain that Defendants' meaningful-nexus test is really a "minimum-contacts-by-any-other-name test" and that "general fairness considerations" do not require the application of that test. *Id.* at 2.

Absent a clear directive from the Supreme Court, this Court is not inclined to adopt the maximalist theory of personal jurisdiction, nor is it keen to disregard the individual-liberty considerations that have undergirded the circuit courts' Fifth Amendment case law for many decades. The Court thus agrees with the Independent Directors that it makes good sense to conduct some form of "meaningful relationship" or "meaningful nexus" analysis, consistent with *Fuld*, to assess whether the extraterritorial exercise of personal jurisdiction over a noncitizen defendant would be consistent with the Fifth Amendment. "To take an extreme example," without any Fifth Amendment constraints, "Congress could criminalize a high stakes poker game between two Australians sailing an Australian sailboat from Australia to Fiji" — and this Court could exercise personal jurisdiction over those Australian defendants. Lea Brilmayer & Charles Norchi, *Federal Extraterritoriality and Fifth Amendment Due Process*, 105 Harv. L. Rev. 1217, 1253 (1992). But, as Plaintiffs warn, the Court must also be mindful not to embrace a thinly disguised minimum-contacts test, which the *Fuld* Court explicitly rejected. 145 S. Ct. at 2109 ("[W]e have already made clear that that the Due Process Clause of the Fifth Amendment does not incorporate the Fourteenth Amendment minimum contacts standard . . . .").

To strike the appropriate balance in this case, the Court will borrow from the Second Circuit's "'sufficient nexus' test," which is employed in the criminal context to "determine[] whether the extraterritorial application of federal criminal law comport[s] with constitutional due process" under the Fifth Amendment. *United States v. Epskamp*,

832 F.3d 154, 168 (2d Cir. 2016).  Under that test, "[w]hether extraterritorial application

violates due process depends on whether there is a sufficient nexus between defendant

and the United States such that application would be neither arbitrary nor fundamentally

unfair."  *United States v. Mostafa*, 965 F. Supp. 2d 451, 458 (S.D.N.Y. 2013) (citing

*United States v. Al Kassar*, 660 F.3d 108, 118 (2d Cir. 2011)).  While both the minimum-

contacts test and the sufficient-nexus test "ensure[] that a United States court will assert

jurisdiction only over a defendant who 'should reasonably anticipate being haled into

court' in this country," *United States v. Bin Laden*, 92 F. Supp. 2d 189, 219 (S.D.N.Y.

2000) (quoting *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1257 (9th Cir. 1998),

*cert. denied*, 528 U.S. 842 (1999)),[1] the sufficient-nexus test is "more expansive,"

*Waldman*, 835 F.3d at 341, and is grounded in the sovereignty considerations underlying

*Fuld*, *see, e.g.*, *Bin Laden*, 92 F. Supp. 2d at 219 ("[P]unishing a crime committed on

foreign soil . . . is an intrusion into the sovereign territory of another nation.  As a matter

---

[1] Fair-notice concerns underlie both the sufficient-next test and the minimum-contacts framework as set forth in *International Shoe*.  *Compare Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 320 (1945) ("[Appellant's] operations establish sufficient contacts or ties with the state of the forum to make it reasonable and just according to our traditional conception of fair play and substantial justice to permit the state to enforce the obligations which appellant has incurred there. . . . It is enough that appellant has established such contacts with the state that the particular form of substituted service adopted there gives reasonable assurance that the notice will be actual."), *with United States v. Van der End*, 943 F.3d 98, 106 (2d Cir. 2019) ("The purpose of requiring a sufficient nexus with the United States is to prevent extraterritorial application of U.S. criminal laws from being 'arbitrary or fundamentally unfair.'  That 'ultimate question' of arbitrariness or unfairness, in turn, hinges in part on the notion of 'fair warning.'" (citations omitted)).  And, as Professor Maggie Gardner has observed, *Fuld*'s Fifth Amendment analysis "bears a striking resemblance to *International Shoe* . . . , shorn of all the subsequent caselaw scaffolding built on top of that original standard."  Maggie Gardner, *Supreme Court Decides* Fuld v. PLO, Transnat'l Litig. Blog (June 20, 2025), https://tlblog.org/supreme-court-decides-fuld-v-plo [https://perma.cc/35RL-LKNX]; *see also* Maggie Gardner, *Their Beef Is with* Burger King, 56 N.Y.U. J. Int'l L. & Pol. 215, 217 (2024) (discussing the "barnacles of interpretation that have accumulated on top of *International Shoe*" (footnote omitted)).

of comity and fairness, such an intrusion should not be undertaken absent proof that there is a connection between the criminal conduct and the United States sufficient to justify the United States' pursuit of its interests." (alteration and omission in original) (quoting *United States v. Caicedo*, 47 F.3d 370, 372 (9th Cir. 1995))); *Fuld v. Pal. Liberation Org.*, 101 F.4th 190, 222-23 (2d Cir. 2024) (Menashi, J., dissenting from the denial of rehearing en banc) (noting that the minimum-contacts test is more protective than the sufficient-nexus test, leading to inconsistent limitations on the federal government's extraterritorial reach in civil versus criminal cases).  Extending the sufficient-nexus test to the civil context will allow the Court to conduct a broader due-process analysis that is consistent with *Fuld* while remaining faithful to the Fifth Amendment precedent that remains good law in this Circuit.

"Courts have found a sufficient nexus to exist based upon factors such as the 'defendant's citizenship or residency, the location of the acts allegedly giving rise to the suit and whether those acts could be expected to or did produce an effect in the United States.'"  *Mostafa*, 965 F. Supp. 2d at 459 (quoting *Goldberg v. UBS AG*, 690 F. Supp. 2d 92, 106 (E.D.N.Y. 2010)).  "The ultimate question is whether defendant's conduct is not 'so unrelated to American interests as to render their [being sued] in the United States arbitrary or fundamentally unfair.'"  *Goldberg*, 690 F. Supp. 2d at 106 (alteration in original) (quoting *Goldberg v. UBS AG*, 660 F. Supp. 2d 410, 431 (E.D.N.Y. 2009)); *see also United States v. Ballestas*, 795 F.3d 138, 148 (D.C. Cir. 2015) ("[N]exus with the United States merely serves as a 'proxy for due process' requirements.  'The "ultimate question"' under the Due Process Clause is not nexus, but is 'whether "application of the statute to the defendant [would] be arbitrary or fundamentally unfair."'" (first alteration in original) (citation omitted)).  Where, as here, "Congress expressly intends for a statute

to apply extraterritorially, . . . the 'burden is a heavy one' for a defendant seeking to show that extraterritorial application of the statute violates due process." *Epskamp*, 832 F.3d at 168 (quoting *United States v. Ali*, 718 F.3d 929, 944 n.7 (D.C. Cir. 2013)).  "The 'nexus' requirement is satisfied where, '[a]lthough it may be true that the [d]efendant did not act with the specific purpose of harming interests of or related to the United States, the evidence supports the conclusion that he was aware that [his] conduct would have such an effect.'" *United States v. Bout*, No. 08-cr-00365 (SAS), 2011 WL 2693720, at *2 (S.D.N.Y. July 11, 2011) (first alteration in original) (quoting *United States v. Yousef*, No. 08-cr-01213 (JFK), 2010 WL 3377499, at *4 (S.D.N.Y. Aug. 23, 2010)), *aff'd*, 731 F.3d 233 (2d Cir. 2013).

The Independent Directors contend that the TAC offers only a single allegation that meaningfully connects them to the United States, specifically, that they "somehow 'signed . . . the Registration Statement through an Attorney-in-Fact.'"  Df. Br. at 3 (omission in original) (quoting TAC ¶ 138).  They argue that this allegation is not sufficient to support the exercise of personal jurisdiction because they "unanimously and firmly deny that they ever authorized any such execution by any such agent, and the TAC offers no allegations of specific fact substantiating th[at] proposition."  *Id.* (citations omitted).  While the Court agrees that Plaintiffs do not plausibly allege that the Independent Directors signed the Registration Statement — and Plaintiffs do not attempt to argue otherwise — section 11 extends potential liability not only to "every person who signed the registration statement," but also to "every person who was a director of . . . the issuer at the time of the filing," including outside directors, and "every person who, with his consent, is named in the registration statement as being or about to become a

director."[2]  15 U.S.C. § 77k(a)(1)-(3); *see In re WorldCom, Inc. Sec. Litig.*, No. 02-cv-03288 (DLC), 2005 WL 638268, at *8 (S.D.N.Y. Mar. 21, 2005) ("Whether a director is properly categorized as an inside or outside director, . . . the law has consistently placed upon directors the duty to conduct a reasonable investigation of the non-expertised portions of registration statements and has not permitted them simply to accept at face value the representations of management and auditors." (citing *Escott v. BarChris Constr. Corp.*, 283 F. Supp. 643, 690 (S.D.N.Y. 1968))).  To be sure, Plaintiffs' remaining allegations regarding the Independent Directors' corporate positions, without more, would likely not satisfy the pre-*Fuld* minimum-contacts test.  *See, e.g.*, *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 140 (S.D.N.Y. 2021) (determining that Exchange Act defendants' "status as [b]oard members" was insufficient to establish personal jurisdiction "[i]n the absence of an allegation that . . . [they] expressly aimed their conduct at the United States"); *In re Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d 731, 770 (S.D.N.Y. 2017) (dismissing claim against defendant for lack of personal jurisdiction where plaintiff did not plead "specific facts making the foreign defendant accountable for an issuer's allegedly actionable corporate statements" (collecting cases)).  But the Court finds that the "more expansive" sufficient-nexus test, *Waldman*, 835 F.3d at 341, applied in the civil context, is broad enough to permit the

---

[2] The Court thus denies the Independent Directors' request for reconsideration of the Court's denial of their Rule 12(b)(6) motion to dismiss Plaintiffs' section 11 claims on the basis that Plaintiffs have not plausibly alleged that they signed the Registration Statement.  *See* Df. Br. at 4 n.3.

exercise of personal jurisdiction over the Independent Directors based on their positions

within the company, consistent with Congress's design of section 11.[3]

The Securities Act was enacted pursuant to the federal government's broad

"sovereign power to regulate commerce." *Sanitary Dist. of Chi. v. United States*, 266

U.S. 405, 425 (1925); *see N. Am. Co. v. Sec. & Exch. Comm'n,* 327 U.S. 686, 705 (1946)

("This broad commerce clause does not operate so as to render the nation powerless to

defend itself against economic forces that Congress decrees inimical or destructive of the

national economy. Rather it is an affirmative power commensurate with the national

needs."). Congress structured section 11 "to assure compliance with the disclosure

provisions of the Act by imposing a stringent standard of liability on the parties," such as

directors, "who play a direct role in a registered offering," *Herman & MacLean v.*

*Huddleston*, 459 U.S. 375, 381-82 (1983) (footnote omitted), and "whose moral

responsibility to the public is particularly heavy," *Gustafson v. Alloyd Co.*, 513 U.S. 561,

582 (1995) (quoting H.R. Rep. No. 73-85, at 9 (1933)). Thus, when Baosheng issued

---

[3] Prior to *Fuld*, courts have held that while a defendant's corporate position, without more, is insufficient to support the exercise of personal jurisdiction, the defendant's "signing of documents filed with the SEC which form the basis for [the] [p]laintiffs' claims is sufficient contact with the jurisdiction to justify th[e] [c]ourt's exercise of jurisdiction." *In re Alstom*, 406 F. Supp. 2d at 399 (collecting cases). As a matter of first impression, another court in this district recently held in *In re GigaCloud Technology Inc. Securities Litigation* that personal jurisdiction extended to a defendant who did not sign the registration statement but who signed a letter, pursuant to 17 C.F.R. § 230.438, consenting to being named in the registration statement as an incoming director. *See* No. 23-cv-10645 (JMF), 2025 WL 307378, at *9 (S.D.N.Y. Jan. 27, 2025). While the parties have not addressed *In re GigaCloud* in their briefing, it appears that the Independent Directors signed similar consent forms, attached as exhibits to the Registration Statement, consenting to being named in the Registration Statement as director nominees pursuant to 17 C.F.R. § 230.438. *See* Dkt. 142-2 at 120, II-8. While *In re GigaCloud*'s logic could thus theoretically extend to the instant case to support a finding of minimum contacts under the *pre*-Fuld standard, the Court finds it to be a close question and still analyzes personal jurisdiction under the more flexible post-*Fuld* standard.

securities on an American exchange, section 11 placed upon its directors "an affirmative duty of reasonable investigation" flowing from their status. *Lanza v. Drexel & Co.*, 479 F.2d 1277, 1297 (2d Cir. 1973); *see In re WorldCom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 656 (S.D.N.Y. 2004) ("The 'primary innovation' of the Securities Act was the creation of duties in connection with public offerings, principally 'registration and disclosure obligations.' [It] 'was designed to provide investors with full disclosure of material information concerning public offerings of securities in commerce, to protect investors against fraud and, through the imposition of specified civil liabilities, to promote ethical standards of honesty and fair dealing.'" (citation omitted) (first quoting *Gustafson*, 513 U.S. at 571; and then quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 195 (1976))). The Independent Directors' alleged failure to comply with that longstanding mandate, which Congress imposed to protect U.S. markets and its investors, directly implicates "American interests" and supplies the requisite nexus in this case. *Goldberg*, 660 F. Supp. 2d at 431 (quoting *United States v. Yousef*, 327 F.3d 56, 112 (2d Cir. 2003)). Given the clear and weighty obligations that the Securities Act imposes on directors — including nonsignatories — it would not be "arbitrary or fundamentally unfair" to require the Independent Directors to defend themselves in U.S. courts against plausible allegations that they failed to satisfy a duty they owed to the American public and its markets. *Cf. Waldman*, 835 F.3d at 340 ("[I]t is not arbitrary to prosecute a defendant in the United States if his actions affected significant American interests — even if the defendant did not mean to affect those interests." (alteration in original) (quoting *United States v. Murillo*, 826 F.3d 152, 157 (4th Cir. 2016))).[4] As that

---

[4] Indeed, binding precedent in the Second Circuit would seem to permit the extraterritorial exercise of personal jurisdiction over nonresident defendants with more

obligation on issuers' directors has stood for nearly a century, the Independent Directors certainly had "'fair warning' that their extraterritorial conduct [could] expose[] them to" securities litigation in the United States. *United States v. Naseer*, 38 F. Supp. 3d 269 (E.D.N.Y. 2014) (quoting *Al Kassar*, 660 F.3d at 119); *cf. Fuld*, 145 S. Ct. at 2108 (emphasizing that the PSJVTA's "targeted applicability put the [defendants] on full notice that they could be subject 'to personal jurisdiction' . . . in U.S. courts").

More generally, the Securities Act's jurisdictional grant, as applied here, does not put noncitizen corporate directors without a meaningful connection to the United States "at broad risk of being haled" from across the globe, without warning, into this country's courts. *Fuld*, 145 S. Ct. at 2107. Section 22 confers jurisdiction only in certain securities cases and, even then, only to an enumerated set of individuals and entities whom Congress deemed to hold special positions of responsibility in the American financial system. *See id.* ("[W]hen Congress has undertaken to enact a nationwide service statute applicable to a certain class of disputes, that statute should be afforded substantial weight as a legislative articulation of federal social policy." (alteration in original) (quoting 4 Charles Alan Wright, Arthur R. Miller & Adam N. Steinman, *Federal Practice and Procedure* § 1068.1 (4th ed. 2015))); *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 104 F. Supp. 2d 279, 286 (S.D.N.Y. 2000) ("[I]t cannot be gainsaid that

---

attenuated ties to the United States based on a theory of "conspiracy jurisdiction," through which "courts attribute the purposefully established, conspiracy-related forum contacts of one conspirator to a second conspirator who lacks such contacts." *In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 270 n.8 (2d Cir. 2023) (quoting Alex Carver, Note, *Rethinking Conspiracy Jurisdiction in Light of Stream of Commerce and Effects-Based Jurisdictional Principles*, 71 Vand. L. Rev. 1333, 1337 (2018)). While the Second Circuit has questioned whether conspiracy jurisdiction is consistent with the minimum-contacts test, *see id.* at 272-73, it does appear to be more consistent with the sufficient-nexus test in certain circumstances, *see, e.g.*, *United States v. Hayes*, 118 F. Supp. 3d 620, 629 (S.D.N.Y. 2015) (collecting cases).

nationwide service provisions often are central to major federal regulatory efforts in areas at the core of Congress' power under the Commerce Clause, including antitrust and securities regulation."). A contrary holding that limits the Act's intended reach would unduly interfere with the political branches' reasonably circumscribed exercise of federal commerce powers and improperly "construct[] an imaginary constitutional barrier around the exterior confines of the United States for the purpose of shutting that government off from the exertion of powers which inherently belong to it by virtue of its sovereignty." *Fuld*, 145 S. Ct. at 2104 (quoting *United States v. Bennett*, 232 U.S. 299, 306 (1914)); *see Wickard v. Filburn*, 317 U.S. 111, 120 (1942) ("At the beginning Chief Justice Marshall . . . made emphatic the embracing and penetrating nature of [the Federal commerce] power by warning that effective restraints on its exercise must proceed from political rather than from judicial processes." (citing *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 194-195, 197 (1824))). For these reasons, the Court finds that the requisite "meaningful relationship" exists between the Independent Directors and the United States to support the exercise of personal jurisdiction in accordance with the Fifth Amendment.

While the sufficient-nexus test already considers fairness, the Court also finds that the exercise of personal jurisdiction over the Independent Directors would comply with the reasonableness standard that the Supreme Court has, for now, left undisturbed. *See Fuld*, 145 S. Ct. at 2109 ("Although we have already made clear that the Due Process Clause of the Fifth Amendment does not incorporate the Fourteenth Amendment minimum contacts standard, the prospect remains that the Fifth Amendment might entail a similar 'inquiry into the reasonableness of the assertion of jurisdiction in the particular case.'" (quoting *Asahi*, 480 U.S. at 115)). As previously noted, the United States and the investors in its markets, including Plaintiffs, have a strong interest in the extraterritorial

19

exercise of personal jurisdiction in federal securities cases involving issuers of securities on American exchanges. *See supra* pp. 16-18. And while it might not be especially convenient for the Independent Directors based in China to litigate in New York, they are sophisticated actors who are "represented by U.S. counsel," *In re Fairfield*, 671 B.R. at 432, and "[t]he realities of modern transportation and communication, as well as the nature of civil litigation . . . , serve to reduce the burdens of litigating in a distant forum," *Sec. & Exch. Comm'n v. Comm. on Ways & Means of the U.S. House of Representatives*, 161 F. Supp. 3d 199, 223 (S.D.N.Y. 2015) (omission in original) (quoting *Sec. & Exch. Comm'n v. Softpoint, Inc.*, No. 95-cv-02951 (GEL), 2001 WL 43611, at *6 (S.D.N.Y. Jan. 18, 2001)); *accord Passos*, 760 F. Supp. 3d at 113; *cf. In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 273 (2d Cir. 2023) ("[W]e have previously held with respect to a Puerto Rican defendant sued in New York that this factor provides 'only weak support' because 'the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago.'" (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129-30 (2d Cir. 2002))).[5]

---

[5] The Second Circuit has noted that "international rapport concerns" do not carry as much weight in cases involving the extraterritorial exercise of specific, rather than general, jurisdiction over noncitizen defendants who reside abroad. *In re Platinum & Palladium*, 61 F.4th at 274 (rejecting argument that it would be "'insulting to the sovereignty of foreign nations to subject their residents to personal jurisdiction in the United States' based on a conspiracy jurisdiction theory" (citation omitted)). In any case, the Court notes that U.S. securities regulation has historically "not resulted in state-to-state conflict," and while "[m]any states define prohibited conduct with respect to securities differently from the United States, . . . the likelihood of conflict with regulation by other states is slight." Restatement (Third) of Foreign Relations Law § 416 reporters' note 3 (1987) (October 2024 Update).

The Court concludes that the exercise of personal jurisdiction over the Independent Directors comports with the Fifth Amendment — their alleged violations of the Securities Act bear a meaningful relationship to the United States and the exercise of jurisdiction would not be unreasonable or unfair.  Because the propriety of service and the statutory basis for personal jurisdiction are not in dispute, Plaintiffs have made a *prima facie* showing of personal jurisdiction over the Independent Directors.

## CONCLUSION

For the foregoing reasons, the Independent Directors' Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction is DENIED without prejudice.

The Defendants shall answer the TAC no later than **November 12, 2025**, and the parties shall appear for an Initial Pretrial Conference on **December 11, 2025**, at 3:00 p.m. via Microsoft Teams video conference.  Counsel will receive login credentials at the email addresses listed on the docket.  The public listen-only line may be accessed by dialing Phone Number: 646-453-4442 | Phone Conference ID: 250 812 551#.  By **December 4, 2025**, the parties shall submit a Proposed Civil Case Management Plan and Scheduling Order, available at https://www.nysd.uscourts.gov/hon-jennifer-l-rochon.

Dated:  October 29, 2025
         New York, New York

SO ORDERED.

JENNIFER L. ROCHON
United States District Judge