UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ORIENT PLUS INTERNATIONAL
LIMITED; UNION HI-TECH
DEVELOPMENT LIMITED; and GOLDEN
GENIUS INTERNATIONAL LIMITED,

                   Plaintiffs,

-against-

BAOSHENG MEDIA GROUP HOLDINGS
LIMITED; WENXIU ZHONG; SHENG
GONG; YU ZHONG; ZUOHAO HU; ADAM
(XIN) HE; YUE JIN; UNIVEST
SECURITIES, LLC; THE BENCHMARK
COMPANY, LLC; and WESTPARK
CAPITAL, INC.,

                   Defendants.

Case No. 1:24-cv-00744 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

Before the Court is a motion from Plaintiffs Orient Plus International Limited, Union Hi-Tech Development Limited, and Golden Genius International Limited (together, "Plaintiffs") seeking issuance of a letter of request for judicial assistance pursuant to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Convention"). For the following reasons, the motion is GRANTED.

## BACKGROUND

The facts of this case are set forth in detail in a previous opinion by this Court, *see Orient Plus Int'l Ltd. v. Baosheng Media Grp. Holdings Ltd.*, 799 F. Supp. 3d 310 (S.D.N.Y. 2025), and therefore the Court briefly discusses only those facts pertinent to this motion. Plaintiffs are shareholders of Defendant Baosheng Media Group Holdings ("Baosheng"). *Id.* at 322. Baosheng went public in February 2021, after filing a registration statement (the "Registration

Statement") and prospectus (the "Prospectus") with the U.S. Securities and Exchange Commission earlier the same month, and Plaintiffs bought their shares in the company in March 2021.  *Id.* at 323-24.  However, Plaintiffs allege that Baosheng failed to disclose in their Registration Statement and Prospectus that it was under investigation by Chinese authorities in the months leading up to its IPO, that the investigation involved the detention of multiple Baosheng executives and managers, and that the investigation ultimately resulted in Baosheng losing its largest client and, thus, a significant source of its revenue.  *Id.* at 326.  Plaintiffs later filed this action bringing multiple claims against Baosheng and several other parties — among them, Baosheng directors Wenxiu Zhong, Sheng Gong, and Yue Jin (the "Individual Defendants" and, together with Baosheng, "Defendants"), *id.* at 322 — including that Baosheng omitted the investigation from its Registration Statement and Prospectus in violation of Sections 11 and 12(a)(2) of the Securities Act of 1933, 15 U.S.C. §§77k, 77*l*.  *Id.* at 341-42.  On Defendants' motion to dismiss, this Court held that "there was no duty to disclose th[at] investigation as a 'legal proceeding' under" Item 103 of Regulation S-K or Item 8.A.7 of Form 20-F, but that Plaintiffs had adequately pleaded that disclosure was required under Item 303 of Regulation S-K.  *Id.* at 344.

Here, Plaintiffs represent that they have filed a civil action in the People's Republic of China (the "PRC Action") against the Individual Defendants, as well as two other defendants who are not (or are no longer) parties in this action.  *See* Dkt. 207 ("Chen Decl.") ¶ 2.  The PRC Action also names Baosheng as a third party.  *Id.*  In the PRC Action, Plaintiffs allege that the Individual Defendants engaged in certain illegal conduct while managing Baosheng.  *Id.*  At an appearance in the PRC Action, Plaintiffs were permitted to examine certain criminal case files from China's investigative authority (the Yixing Public Security Bureau) and a police department under its supervision.  *Id.* ¶¶ 3, 6.  According to Plaintiffs, those files establish that

Sheng Gong was investigated and detained in July 2020 "on suspicion of the crime of Assisting

Cyber Criminal Activities," was released on bail in August 2020, and was referred "to the

prosecution authority" along with several other Baosheng executives in June 2021 "for review

and prosecution."  *Id.* ¶ 6.  Plaintiffs now ask this Court to issue a letter of request (i.e. letter

rogatory) to China so that they may obtain those records from the Yixing Public Security Bureau,

along with other records that may relate to them, for use in the instant matter.  *See* Dkt. 206

("Br.") at 3-4.

## LEGAL STANDARD

"The letter rogatory is a centuries-old judicial vehicle" for facilitation of foreign

discovery.  *In re Customs & Tax Admin. of the Kingdom of Den. (SKAT) Tax Refund Litig.*, No.

18-md-02865 (LAK), 2024 WL 3184978, at *4 (S.D.N.Y. June 26, 2024); *see also Crouch v.

Liberty Pride Corp.*, No. 15-cv-00974 (JS) (AYS), 2016 WL 4718431, at *2 n.1 (E.D.N.Y. Sept.

9, 2016) (explaining that "letter of request" and "letter rogatory" are used "interchangeably").

Such a letter may be used both to serve process on and to obtain evidence from an individual or

entity abroad.  *See Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 841 F. Supp. 2d 769, 775

(S.D.N.Y. 2012).

In determining whether to issue letters rogatory, "courts apply the discovery principles

contained in [Federal] Rule [of Civil Procedure ("Rule")] 26."  *Id.* at 776.  "[T]he scope of

discovery under [Rule 26] is very broad, 'encompass[ing] any matter that bears on, or that

reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'"

*Maresco v. Evans Chemetics*, 964 F.2d 106, 114 (2d Cir. 1992) (third alteration in original)

(quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).  Indeed, "[i]nformation

within this scope of discovery need not be admissible in evidence to be discoverable."  *Villella v.*

3

*Chem. & Mining Co. of Chile Inc.*, No. 15-cv-02106 (ER), 2019 WL 171987, at \*2 (S.D.N.Y. Jan. 11, 2019) (quoting Fed. R. Civ. P. 26(b)(1)).  The party seeking foreign discovery through a letter rogatory "bears the burden of persuasion, but that burden is not heavy."  *Id.* at \*3 (citation omitted).  "Nevertheless, 'discovery may be curtailed where the information sought would be unreasonably cumulative or duplicative or when the burden or expense of the proposed discovery outweighs its likely benefit.'"  *Nespresso USA, Inc. v. Williams-Sonoma, Inc.*, No. 19-cv-04223 (LAP) (KHP), 2021 WL 942736, at \*2 (S.D.N.Y. Mar. 12, 2021) (alteration adopted) (internal quotation marks omitted) (quoting *Blagman v. Apple, Inc.*, No. 12-cv-05453 (ALC) (JCF), 2014 WL 1285496, at \*4 (S.D.N.Y. Mar. 31, 2014)).

Although Rule 26 is "controlling" in this analysis, "courts should also be mindful of the possible burden placed on foreign authorities by the issuance of letters rogatory under the Hague Convention . . . [and] 'should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position.'"  *Id.* (quoting *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court*, 482 U.S. 522, 546 (1987)).  Ultimately, "[t]he determination to issue letters rogatory is committed to the court's discretion."  *Blagman*, 2014 WL 1285496, at \*4; *accord Villella*, 2019 WL 171987, at \*2.

## DISCUSSION

### I.   Rule 26 Discovery Principles

Rule 26 permits discovery of materials that are both "relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  The Court will address each requirement in turn.

**A.      Relevance**

Plaintiffs contend that documents concerning the investigation and detention of Baosheng directors and employees leading up to Baosheng's IPO (the "Requested Materials") are "directly relevant to [their] claims" that Baosheng failed to disclose this same information in its Registration Statement and Prospectus.  Br. at 5-6.  The Court agrees.

"Information is relevant if: '(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.'"  *Vaigasi v. Solow Mgmt. Corp.*, No. 11-cv-05088 (RMB) (HBP), 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016) (quoting Fed. R. Evid. 401).  In their Third Amended Complaint, Plaintiffs allege that Baosheng "was under investigation by the Chinese authorities" "[b]eginning one to two months before and continuing through the date of the IPO," Dkt. 128 ("TAC") ¶ 52b; that this investigation "caused significant disruptions" at Baosheng, *id.* ¶ 52c, including the detention of "ten members of [Baosheng's] management team," the self-exile of its CEO, and the "suspen[sion] of its operations in the months leading up to the IPO," *id.* ¶ 52b-c; and that, therefore, "[a]t and around the time of the IPO, [Baosheng] was controlled by Yanjun Hun, an undisclosed non-management, non-director stockholder," *id.* ¶ 52d.  Chinese law enforcement records of this investigation, specifically those indicating the detention of Gong and other Baosheng directors in that time period, make these consequential facts more probable, and Plaintiffs are entitled to discovery of those records to support their claims.  *See, e.g.*, *Billhofer v. Flamel Techs., SA*, 663 F. Supp. 2d 288, 304 (S.D.N.Y. 2006) ("[T]he point of discovery [is] to see whether plaintiff's well-pleaded factual allegations are true."); *accord Diaz v. N.Y. Paving Inc.*, 553 F. Supp. 3d 11, 22 (S.D.N.Y. 2021); *see also Orient Plus*, 799 F. Supp. 3d at 345-46 (finding that the TAC "plausibly alleged that Baosheng and its management had actual knowledge, prior to the IPO, of the ongoing government investigation, the resulting detention of

5

Baosheng and Sogou executives, and the subsequent suspension or interruption of Baosheng's operations," as well as that "the investigation, prior to the IPO, already 'had' or was 'reasonably likely to have' a material effect on Baosheng's financial condition or results of its operations").

In opposing Plaintiffs' motion, the Individual Defendants misconstrue the pleadings, the proposed letter of request, and this Court's previous opinion. First, the Individual Defendants argue that the Requested Materials are irrelevant, because they are not "tie[d] . . . to Sogou, Suncity, or Alvin Chau, the targets of the alleged investigation." Dkt. 218 ("Ind. Defs. Opp.") at 5 (citing TAC ¶ 47); *see also* Dkt. 220 ("Baosheng Opp.") at 1 ("Plaintiffs' own description shows that the materials sought do not concern any investigation into Sogou."). But the TAC alleges that Baosheng was the target of the investigation. *See* TAC ¶ 47 ("Chinese authorities investigated [Baosheng] because of its relationship with Sogou . . . . The Chinese Authorities then targeted [Baosheng] because, upon information and belief, [Baosheng] promoted Suncity on Sogou."). Second, the Individual Defendants stress that this Court previously held that Baosheng need not "disclose a criminal investigation which did not mature into a formal legal proceeding," and that Plaintiffs' motion "does not address" whether the documents Plaintiffs seek pertain to a formal legal proceeding. Ind. Def. Opp. at 5. Both statements are correct, but the Individual Defendants ignore the rest of the Court's previous decision: Even though Item 103 does not require disclosure of mere investigations, Item 303 does require disclosure of ongoing investigations that are known to management and reasonably likely to materially affect finances or operations. *See Orient Plus*, 799 F. Supp. 3d at 344. And the Court held that Plaintiffs had adequately pleaded both actual knowledge and material effect of the investigation. *Id.* at 345-46.

The Individual Defendants also argue that "salient facts" are missing from Plaintiffs' motion and supporting papers, "such as the nature of the crime involved, or the role of Sheng Gong as witness," and they point out that, ultimately, none of the Individual Defendants was

6

"ever subject to prosecution." Ind. Def. Opp. at 6; *see also* Dkt. 218-1 ("Yang Decl.") ¶ 17-18 (referring to "certificates of no criminal record for the Individual Defendants" issued by Chinese authorities in 2024). The Court does not share these concerns. For one, Plaintiffs do state the nature of the crime: Assisting Cyber Criminal Activities. *See* Chen Decl. ¶ 6. And regardless of whether Gong was detained as suspect or as witness, the Court has already "f[ound] it plausible that a government investigation into Baosheng's largest client for possible violations of Chinese law, which resulted in the detention of three to ten Baosheng executives as at least cooperators and was expansive enough to interrupt Baosheng's operations even briefly, created a reasonably likely risk that Sogou would sever its relationship with Baosheng, which would have a material impact on the company" and thus required disclosure under Item 303. *Orient Plus*, 799 F. Supp. 3d at 346. For the same reason, the fact that this investigation did not result in prosecution, or some other formal legal proceeding within the meaning of Item 103, has no role in the calculus of Baosheng's obligation to disclose it under Item 303. In other words, a certificate issued by Chinese authorities in 2024 does not mean that Baosheng had no Item 303 disclosure obligation in 2021.

Therefore, the Court agrees with Plaintiffs that the Requested Materials are relevant under Rule 26.

## B. Proportionality

The next question under Rule 26 is whether the Requested Materials are proportional to the needs of this case. Courts analyzing proportionality measure the sought-after materials against "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Moreover, "[p]roportionality goes 'hand-

in-hand' with relevance." *Gilead Scis., Inc. v. Safe Chain Sols. LLC*, 345 F.R.D. 22, 29-30 (E.D.N.Y. 2024) (citation omitted). Thus, "the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate." *Vaigasi*, 2016 WL 616386, at *14. Having found that the Requested Materials are relevant to Plaintiffs' claims, the Court also finds that they are proportional to this litigation.

In opposing proportionality, both the Individual Defendants and Baosheng emphasize the burdens imposed by Plaintiffs' request. *See* Ind. Def. Opp. at 6-7; Baosheng Opp. at 5-6. But the Defendants do not possess, and will not be producing, the Requested Materials, and so those purported burdens are not Defendants' to shoulder. As a result, Plaintiffs contend that Defendants lack standing to challenge the issuance of the letter rogatory on this basis. *See* Dkt. 222 ("Reply") at 4. At least one court in this District — albeit in the context of deciding whether to execute a letter of request from a foreign court under 28 U.S.C. § 1792, rather than whether to issue one to a foreign court — has similarly suggested that, because "parties against whom the requested information will be used may have standing to challenge the lawfulness of discovery orders directed to third parties," such parties may only properly "challenge[] the breadth of the sought-after discovery, as opposed to the burden it will impose on" the producing party. *Union Fenosa Gas, S.A. v. Depository Tr. Co.*, No. 20-mc-00188 (PAE), 2020 WL 2793055, at *8 (S.D.N.Y. May 29, 2020) (quoting *Application of Sarrio, S.A.*, 119 F.3d 143, 148 (2d Cir. 1997)). Under that logic, Defendants appear to lack standing to raise this challenge.

Even assuming they have standing to oppose Plaintiffs' request on this ground, however, Defendants' argument is not persuasive. Baosheng specifically argues that "[r]equiring a foreign government's law enforcement authorities" to produce documents like the Requested Materials "naturally imposes" significant burden on that government. Baosheng Opp. at 5. But letters of request do not require: They request. Thus, while Chinese law's apparent restrictions on

documents such as the Requested Materials may well make it "implausible" that a Chinese court will execute Plaintiffs' letter rogatory, Baosheng Opp. at 6, that is a determination for that nation's courts to make, not a basis for this Court to decline the letter's issuance in the first instance. *See Crouch*, 2016 WL 4718431, at *2 ("[W]hile the propriety of issuance of the LOR is a matter for this [c]ourt, the decision of whether to execute the LOR will be decided by the sovereign court to which the LOR is addressed."); *Pearlstein v. BlackBerry Ltd.*, 332 F.R.D. 117, 120 (S.D.N.Y. 2019) ("Foreign courts receiving letters rogatory may have different rules and standards that govern if and how letters rogatory are executed."). Indeed, the possibility that Chinese law does not permit production of the Requested Materials is all the more reason that letters rogatory are the appropriate method of seeking them. *See Ings v. Ferguson*, 282 F.2d 149, 152 (2d Cir. 1960) (explaining that letters rogatory, and not a subpoena, are the proper vehicle to seek foreign discovery, because "[w]hether removal of records from Canada is prohibited is a question of Canadian law and is best resolved by Canadian courts"); *see also Saudi v. Marine Atl., Ltd.*, No. 02-cv-02495 (JG) (LB), 2003 WL 27384297, at *1 (E.D.N.Y. July 22, 2003) ("[A]s a matter of international comity, the [c]ourt should defer to Swiss courts for a determination of whether particular information is barred from disclosure under Swiss law.").

Defendants' other proportionality arguments are equally unavailing. Baosheng argues that the Requested Materials are not proportional because, it predicts, Plaintiffs will be unable to overcome "[a]uthentication and hearsay issues" that inhere in police reports. Baosheng Opp. at 4. But Rule 26 expressly excludes admissibility from the proportionality analysis. Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."); *accord Villella*, 2019 WL 171987, at *2. For their part, the Individual Defendants contend that the Requested Materials "sweep in non-parties, such as Shasha Mi, Na Jin, and Horgos Baosheng Advertising Co., Ltd., and span a two-year period (January 1, 2020

through December 31, 2021)." Ind. Def. Opp. at 6.  However, both Baosheng and the Individual Defendants have identified those same non-parties as individuals likely to have discoverable information concerning the Chinese investigation.  *See* Dkt. 223-2 at 4 (Baosheng Rule 26 initial disclosures listing Shasha Mi and Na Jin as having knowledge of "the alleged Chinese authorities' investigation"); Dkt. 223-3 at 4-5 (Individual Defendants' Rule 26 initial disclosures listing same individuals as having knowledge of "facts surrounding Baosheng's employees' cooperation with Chinese authorities' inquiries during the relevant time period").  Moreover, Horgos Baosheng is a subsidiary of Baosheng, *see* Dkt. 223-1 at 3, and Baosheng allegedly included that entity's pending and recently completed legal matters in its Registration Statement and Prospectus, *see* TAC ¶ 57.  Finally, the timeframe Plaintiffs have provided is consistent with the alleged timeframe of the Chinese investigation.  *See id.* ¶ 52e (alleging that "[t]he investigation was not resolved until the second half of 2021").  Under these circumstances, Defendants do not convincingly argue that the Requested Materials are unproportional.

Therefore, Plaintiffs' Requested Materials are proportional under Rule 26, and, because they are also relevant, the Court finds that Plaintiffs have met their burden of persuasion as to the issuance of the proposed letter of request.

## II.    Comity

Even though Plaintiffs have satisfied Rule 26's requirements, the Court still must "be mindful of the possible burden placed on foreign authorities by the issuance of letters rogatory under the Hague Convention."  *Nespresso*, 2021 WL 942736, at *2.  The parties suggest that this burden should be analyzed through the following comity factors, as set forth in *Société Nationale* and incorporated by *Lantheus*:

> (1) the importance to the . . . litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and

(5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

*Société Nationale*, 482 U.S. at 544 n.28; *accord Lantheus*, 841 F. Supp. 2d at 792. *See also* Br. at 6-7; Ind. Def. Opp. at 9-10; Baosheng Opp. at 6. Courts in this Circuit consider two additional factors: "the hardship of compliance on the party or witness from whom discovery is sought; and . . . the good faith of the party resisting discovery." *Wultz v. Bank of China Ltd.*, 910 F. Supp. 2d 548, 553 (S.D.N.Y. 2012).

Typically, however, courts engaging in this comity analysis are deciding between issuing a letter of request and directly compelling discovery from a foreign entity or sovereign using methods authorized by the Federal Rules of Civil Procedure — it is the latter option that may run afoul of comity considerations, inasmuch as it involves one sovereign asserting power over another. *See Application of Chase Manhattan Bank*, 297 F.2d 611, 613 (2d Cir. 1962) ("[U]pon fundamental principles of international comity, our courts dedicated to the enforcement of our laws should not take such action as may cause a violation of the laws of a friendly neighbor or, at the least, an unnecessary circumvention of its procedures." (quoting *Ings*, 282 F.2d at 152)). As this Court has noted, however, a letter rogatory does not compel, but rather requests, and accordingly it does not threaten to undermine comity in the same way. *Compare* Restatement (Fourth) of Foreign Relations Law of the United States § 426, cmt. a (2018) (setting forth same factors as *Société Nationale* but noting that courts should take them into account "[i]n deciding whether to issue an order *directing production* of information located abroad" (emphasis added)), *and Next Investments, LLC v. Bank of China*, 12 F.4th 119, 131-32 (2d Cir. 2021) (analyzing comity factors with respect to court-ordered asset restraints that "will infringe on sovereign interests of a foreign state" (quoting *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 139 (2d Cir. 2014)), *and Schansman v. Sberbank of Russia PJSC*, 768 F. Supp. 3d 619, 637

11

(S.D.N.Y. 2025) ("[W]e consider five factors in deciding whether to issue an order directing production of information located abroad[.]"), *with Nespresso*, 2021 WL 942736 , at \*2-6 (granting request solely for issuance of letters rogatory without conducting comity analysis), *and Joseph v. Gnutti Carlo S.p.A.*, No. 15-cv-08910 (AJN), 2016 WL 4083433, at \*2 (S.D.N.Y. July 25, 2016) (same), *and Crouch*, 2016 WL 4718431, at \*2 (same), *and Villella*, 2019 WL 171987, at \*2 (same).  However, even assuming a full comity analysis is required here, the relevant factors do not weigh against issuance of Plaintiffs' letter of request.

Defendants' arguments as to the first two comity factors — the importance of the Requested Materials and the specificity of Plaintiffs' requests for them — largely repeat their Rule 26 relevance and proportionality contentions, which the Court has already evaluated and rejected.  *See* Ind. Def. Opp. at 12 (arguing that requests are overbroad and insufficiently specific because they implicate non-parties and span overlong timeframe); Baosheng Opp. at 6-7 (arguing that Requested Materials "are unlikely to reveal evidence of criminal convictions or penalties" and span overlong timeframe).  Those arguments fare no better in the comity context.  Nor is the Court persuaded by Baosheng's additional specificity contention that Plaintiffs' request for "'additional criminal case files' related to the alleged investigation . . . invites a fishing expedition into confidential law enforcement records."  Baosheng Opp. at 7.  To the contrary, Plaintiffs represent that they have seen certain documents from Chinese law enforcement records that support their claims in this action, *see* Chen Decl. ¶ 6, and their proposed letter rogatory seeks the remainder of those same relevant records, *see* Dkt. 205-1 at 8-9 (specifying that requests pertain to investigatory materials "provided by Yixing City Public Security Bureau to the Beijing No. 4 Intermediate People's Court per the investigation order dated August 20, 2025, and later transferred to the Beijing Shijingshan District People's Court").  That one of Plaintiffs' request includes "open-ended language," Baosheng Opp. at 7, does not

make the entire endeavor a fishing expedition or fatally unspecific, but rather reflects that Plaintiffs have not seen every document in the Chinese authorities' possession and cannot know exactly what is there; this is a common aspect of discovery.  *See* Local Civ. R. 26.4(b) ("Discovery requests must be read reasonably in the recognition that the attorney serving them generally does not have the information being sought and the attorney receiving them generally does have the information or can obtain it from the client.").

As to the third factor, it is true that the Requested Materials originated outside the United States, which weighs against issuance of the letter of request.  *See* Baosheng Opp. at 7; Ind. Def. Opp. at 10-11.  But this factor is by no means dispositive.  *See, e.g.*, *King v. Habib Bank Ltd.*, No. 20-cv-04322 (LGS) (OTW), 2025 WL 965809, at *4 (S.D.N.Y. Mar. 31, 2025) ("While this fact [of international origin] underscores the importance of a careful comity analysis, it is not fatal to Plaintiffs' motion." (quoting *Bartlett v. Société Générale de Banque au Liban SAL*, No. 19-cv-00007 (CBA) (TAM), 2023 WL 2734641, at *12 (E.D.N.Y. Mar. 31, 2023))).

As to the fourth factor, Defendants argue Plaintiffs can obtain the Requested Materials through other means, such as by waiting to receive them as part of the PRC Action, *see* Ind. Def. Opp. at 9, or by "various discovery tools, including party discovery, depositions, interrogatories, and requests for admission," *see* Baosheng Opp. at 7.  But Defendants' own characterizations of Chinese law suggests that production through the PRC Action is unlikely.  *See* Ind. Def. Opp. at 11 ("[T]he fact that the parties and their counsel were permitted only in camera inspection [of the Requested Materials] during court proceedings confirms their confidential and sensitive character."); Baosheng Opp. at 5-6 (noting that "Chinese law expressly restricts the disclosure of non-public criminal investigative materials absent government approval," that the Requested Materials "were available only for limited supervised inspection at a single jurisdictional hearing," and that "Chinese courts themselves restrict access to these materials even in

13

proceedings before them"). Moreover, despite Defendants' stated concerns that any production through a letter of request will be delayed, *see* Ind. Def. Opp. at 7-8; Baosheng Opp. at 5, they provide no basis to conclude that the PRC Action would be faster. Nor should Plaintiffs be limited to seeking alternative discovery from Defendants when Plaintiffs are aware of documentary evidence that may support their claims and undermine Defendants' representations concerning the investigation.

As to the fifth factor, Defendants contend that the United States' interest in Plaintiffs' receiving the Requested Materials is minimal, Baosheng Opp. at 8, and constrained to a "generalized interest in obtaining discovery," Ind. Def. Opp. at 11-12. In so arguing, Defendants concede that the United States has some interest here. And a limited interest does not necessarily counsel against issuance of this letter of request. *See, e.g.*, *Owen v. Elastos Found.*, 343 F.R.D. 268, 288 (S.D.N.Y. 2023) (finding fifth factor weighed in favor of discovery where "the United States has an 'obvious interest' in having its own procedural rules applied to discovery" as well as "a significant interest in 'the protection of investors'" (citations omitted)); *United States v. Buff*, 636 F. Supp. 3d 441, 448 (S.D.N.Y. 2022) (finding that fifth factor weighed in favor of discovery where "[t]he United States has a general interest in ensuring compliance with discovery rules, and in ensuring that plaintiffs have access to discoverable information" (citation omitted)). Defendants' additional arguments regarding the fifth factor, like their proportionality arguments, largely turn on their belief that the Chinese court will not (and should not) execute Plaintiffs' proposed letter rogatory. Ind. Def. Opp. at 12-13; Baosheng Opp. at 7-8. But as the Court noted above with respect to Rule 26, to the extent the Chinese court finds that production of the Requested Materials would undermine Chinese law, that court can and should decline Plaintiffs' letter of request, and it is in the best position to make that determination. The same logic applies to the sixth factor, hardship. Indeed, "the [Chinese] Court — which, as noted, is the

judicial body in the best position to determine the reach of [Chinese] laws that may restrict [the Requested Materials'] production — may limit the enforcement of the letter[] rogatory to those [r]equests that do not violate [Chinese] law," and "[t]hus, the hardship prong does not weigh against issuing" the letter of request. *Lantheus*, 841 F. Supp. 2d at 796.

With respect to the fifth factor, the Individual Defendants cite *Stein v. Skatteforvaltningen*, No. 23-cv-02508 (NRB), 2024 WL 1313094 (S.D.N.Y. Mar. 27, 2024). *See* Ind. Def. Opp. at 10. In that case, the party requesting issuance of letters rogatory sought documents from a Danish prosecutor that had commenced criminal proceedings against him in Denmark. *Stein*, 2024 WL 1313094, at *1. In denying that request, the court noted its concern that the requesting party sought "to obtain discovery for use in the criminal case which may not be available to [him] in that proceeding," and thus that "the requests [were] being advanced either with an ulterior motive or in violation of Danish criminal procedure." *Id.* at *2. Those concerns are not present here, where the Requested Materials do not involve Plaintiffs but rather pertain to their claims in this action, and where there are no discernible ulterior motives for Plaintiffs' request. The Individual Defendants also cite *Wultz* for this point, but they mischaracterize it. *See* Ind. Def. Opp. at 10 (describing *Wultz* as "refusing to issue letters rogatory 'call[ing] for the production of confidential regulatory documents created by the Chinese government whose production is clearly prohibited under Chinese law'" (quoting *Wultz*, 910 F. Supp. 2d at 556)). As Plaintiffs point out, Reply at 7-8, the question in *Wultz* was whether to grant a motion to compel, not whether to issue letters rogatory. *See Wultz*, 910 F. Supp. 2d at 550 ("Before the Court is plaintiffs' motion to compel [Bank of China] to produce documents under its control. Some of these documents are the subject of an outstanding Letter of Request from this Court to the Ministry of Justice of China under the Hague Convention[.]"). And as the

15

Court has explained, a motion to compel implicates greater comity concerns than a letter of request.

Finally, the seventh factor — good faith of the party opposing issuance of the letter of request — does not apply here, given that there is no indication that Defendants' opposition is in bad faith.

Therefore, to the extent comity considerations apply to a letter of request (as opposed to a motion to compel, a subpoena, or another avenue for discovery provided by the Federal Rules of Civil Procedure), the Court finds that they do not counsel against its issuance.

### III. Compliance with the Hague Convention

Defendants do not contest that the proposed letter rogatory complies with the Hague Convention, and the Court agrees with Plaintiffs, *see* Br. at 6, that it does. Indeed, "the request specifies: (1) the judicial authority requesting execution of the Letter of Request and the judicial authority requested to execute it; (2) the names and addresses of the parties and their representatives; (3) the nature of the proceedings for which the evidence is sought, and a summary of the complaint; and (4) a description of the evidence to be obtained or the judicial act to be performed." *Crouch*, 2016 WL 4718431, at *3. *See also* Dkt. 205-1 at 1 (specifying this Court as the judicial authority requesting execution and the Ministry of Justice of China as the judicial authority requested to execute it); *id.* at 3-6 (specifying names and addresses of parties and representatives); *id.* at 6-7 (specifying nature of proceedings and summary of complaint); *id.* at 7-9 (describing evidence to be obtained).

### CONCLUSION

For all the foregoing reasons, the Court finds that Plaintiffs' letter of request seeks relevant and proportional information, does not infringe on China's sovereign interests, and is in

16

proper form.  Therefore, Plaintiffs' motion is GRANTED, and the Court will issue the letter of

request.

Dated: April 21, 2026
New York, New York

SO ORDERED.

JENNIFER L. ROCHON
United States District Judge

17